JOHN KEVIN CROWLEY (SBN: 88189)
**ATTORNEY AT LAW**
125 S. Market Street, Suite 1200
San Jose, California 95113-2288
Telephone: (408) 288-8100
Facsimile:   (408) 288-9409
e-mail: jkclaw@pacbell.net

Attorney for Plaintiffs
**JESSICA DOMINGUEZ INDIVIDUALLY
AND JESSICA DOMINGUEZ AS GUARDIAN
AD LITEM FOR JAD (1), JAD (2)
AND JAD (3)**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JESSICA DOMINGUEZ INDIVIDUALLY AND JESSICA DOMINGUEZ AS GUARDIAN AD LITEM FOR JAD (1), JAD (2) AND JAD (3), | Case No.: 5:18-cv-04826 BLM |
| Plaintiffs, | **PLAINTIFFS' BRIEF IN SUPPORT OF SUMMARY JUDGMENT MOTION, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT, MICHAEL PINA, AND DOE POLICE OFFICERS 2 through 5, | DATE:    April 21, 2022<br>TIME:    9:00 a.m.<br>DEPT.:   3, Fifth Floor<br>JUDGE:   Hon. Beth Labson Freeman |
| Defendants. | Trial Date: August 22, 2022 |

Pursuant to Federal Rules of Civil Procedure, Rule 56 and United States District Court, Northern District of California, Local Civil Rule 56-1, plaintiffs submit the following briefing in support of their motion for summary judgment, or in the alternative, partial summary judgment, and in opposition to defendants' motion for summary judgment.

# **TABLE OF CONTENTS**

INTRODUCTION...............................................................................................6

DISCUSSION..................................................................................................7

A.  Defendants' Motion For Summary Judgment Cannot Be Granted Where, As Here, The Evidence Demonstrates No Triable Issue Of Fact With Respect To Plaintiffs' Causes Of Action And Defendants' Qualified Immunity Defense.............................7

B.  Defendants' Putative Justification For The Use Of Excessive Force Against Dominguez Is Unreasonable As A Matter Of Law And Summary Judgment Is Therefore Appropriate............................................................................................8

    1. Dominguez' passive non-compliance is not a valid reason to kill him.................10

C.  Defendants' Qualified Immunity Defense Fails..................................................13

    1.  Qualified Immunity does not apply because long-established case law governs the conduct at issue and clearly establishes that killing Dominguez was excessive force and unreasonable under the circumstances...................15

    2.  Defendants' legal authority in support of the reasonableness of defendant Pina's acts are inapposite......................................................................................19

D.  Both The City And Police Department's Endorsement And Promulgation Of Pina's False Justification For Dominguez' Killing Demonstrates Defendants' Liability.........23

E.  Plaintiffs Demonstrate Sufficient Evidence In Support Of Their State Law Claims.....26

F.  Contrary To Defendants' Depiction, Dominguez Had Begun The Path To Recovery Prior To His Death........................................................................................28

CONCLUSION................................................................................................29

1

## **TABLE OF AUTHORITIES**

2

**Federal Cases**

3    *Ambat v. City & County of San Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2014)...............7

4    *Anderson v. Russell,* 247 F.3d 125, 130, 132 (4th Cir. 2001).......................................19

5    *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir.2006)........................................23

6    *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011)......................................................13

7    *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005).........................15

8    *Brosseau v. Hagan,* 534 U.S. 194, 195, 198 (2004).................................................14

9    *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010)......................................12

10   *Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014)...............................27

11   *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)................................................12

12   *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)..........................................23

13
14   *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*, 387 F.Supp.2d 1084, 1102-1103 (N.D. Cal. 2005)........................................................................27

15   *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002).............................................15-16

16   *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324-25 (9th Cir. 1991).......................12, 17

17   *Deorle v Rutherford,* 272 F.3d 1272, 1279-1282, 1285-86 (9th Cir. 2001)..........8, 11-12, 17

18   *Estate of Aguirre v. County of Riverside*, 2022 WL 871286 (9th Cir. 2022)..............17-18

19   *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 328 (2nd Cir. 1986)....................23-24

20   *Forrett v. Richardson*, 112 F.3d 416, 420 (9th Cir. 1997).....................................17, 19

21   *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).........................................23

22   *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)...........................................23

23   *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014)..................................7

24   *Graham v Connor*, 490 U.S. 386, 395-397 (1989)..............................................12, 15

25   *Green v. City & County of San Francisco*, 751 F.3d 1039, 1045, 1049 (9th Cir. 2014)....7-8

26   *Gulley v. Elizabeth City Police Dept.,* 340 Fed. App'x. 108 at 110...............................16

27   *Harris v. Roderick*, 126 F.3d 1189, 1201, 1203-1204 (9th Cir. 1997)..................11-12, 16

28   *Headwaters Forest Def. v. County of Humboldt,* 276 F.3d 1125 (9th Cir. 2002)..............11

1 | *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997)………………………………...24

2 | *Hope v. Pelzer*, 536 U.S. 730, 731 (2002)……………………………………………………...13

3 | *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001)……………………………23

4 | *Kedra v. Schroeter*, 876 F.3d 424, 449 (3d Cir. 2017)……………………………………………16

5 | *Lamont v. New Jersey*, 637 F.3d at 177, 180-181, 184-185……………………………15, 21-22

6 | *Long v. City and Cnty of Honolulu,* 511 F.3d 901, 906 (9th Cir. 2007)……………………...15

7 | *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000)……………………………………………23

8 | *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)…………………………………………12

9 | *Monell v. Department of Social Services*, 436 U.S. 658, 690-91, 694 (1978)…………..23-25

10 | *Nadell v. Las Vegas Metro Police Dept.*, 979 F.3d 924, 930 (9th Cir. 2001)………………..23

11 | *Neal v. City of Fresno*, 2015 WL 1137077 *5 (E.D. Cal. 2015)…………………………………22

12 | *Nelson v. City of Davis,* 685 F.3d 867, 881, 884 (9th Cir. 2012)…………………………11, 14

13 | *Orozco v. County of Yolo,* 814 F.Supp. 885, 890 (E.D. Cal. 1992)…………………………….7

14 | *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)……………………………………………23

15 | *Pearson v. Callahan,* 555 U.S. 223, 236 (2009)………………………………………………….13

16 | *Reese v. Anderson,* 926 F.2d 494, 496, 498, 500 (5th Cir. 1991)……………………....20-21

17 | *Reese v. County of Sacramento*, 888 F.3d 1030, 1043, 1045 Cir. (2018)…………………..27

18 | *Robinson v. Solano County*, 278 F.3d 1007, 1015 (9th Cir. 2002)……………………………17

19 | *Rodriguez v. County of Los Angeles*, 96 F.Supp. 3d 990,999 (C.D. Cal. 2014)…………..27

20 | *Saucier v. Katz,* 533 U.S. 194, 201-02 (2001)……………………………………………….13-14

21 | *Schneyder v. Smith*, 653 F.3d 313, 330 (3d Cir. 2011)………………………………………….13

22 | *Scott v. Henrich,* 39 F.3d at 194……………………………………………………………...15

23 | *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)……………………………………8, 12

24 | *Tennessee v. Garner*, 471 U.S. 1, 3, 9, 11-12 (1985)…………………………….12, 15, 17-19

25 | *Thompson v. Hubbard*, 257 F.3d 896, 898 (8th Cir. 2001)…………………………………….20

26 | *Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991)……………………………………12

27 | *Tolan v. Cotton,* 572 U.S. 650, 657 (2014)………………………………………………………13

28 | *Torres v. City of Madera,* 648 F.3d 1119, 1123, 1210 (9th Cir. 2011)………………………13-14

*Wood v. Moss,* 572 U.S. 744, 758 (2014) ..............................................................13

**California Cases**

*Austin v. Escondido Union School Dist.*, 149 Cal.App.4th 869, 882 (2007)....................27

*Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 349 (1996)............................26

**United States Constitution**

Fourth Amendment to the United States Constitution...............................9, 15-18, 27-29

Fourteenth Amendment to the United States Constitution.........................................29

**Federal Statutes**

Fed. R. Civ. P. 56(a).....................................................................................7

28 U.S.C. §1983.....................................................................................6, 23

**California Statutes**

California Civil Code §51.7................................................................6, 26, 29

California Civil Code §51.7(a)................................................................26

California Civil Code §51(b)................................................................26

California Civil Code §52.1................................................................6, 27-29

# INTRODUCTION

Defendants' opposing papers fail to set forth either admissible evidence creating a genuine issue of material fact or persuasive argument that plaintiffs are not entitled to judgment as a matter of law on their causes of action based upon 28 U.S.C. section 1983, and California Civil Code sections 51.7 and 52.1.   The objectively reasonable evidence demonstrates that Decedent Dominguez never reached for a weapon prior to being shot by defendant Pina, and moreover, all putative evidence to the contrary set forth by defendants is an ineffectual and improper attempt to cover-up defendants' illegal acts.   Nonetheless, defendants filed a cross-motion for summary judgment, and plaintiffs hereby submit this briefing to buttress their own motion for summary judgment, and to address the arguments raised in defendants' cross-motion for summary judgment.

Notably, and irreversibly fatal to defendants' motion for summary judgment, defendants do not address, in any manner, the opinion of their own ballistics' expert witness that states Decedent Dominguez' arm was raised when the fatal bullet was fired. Declaration of John Kevin Crowley in Support of Plaintiffs' Motion ("*Crowley Dec.*", Exhibit 7; Edwards Depo., pg. 61, l. 11 through pg. 62, l. 4; *Crowley Dec.*, Exhibit 6; Edwards Rule 26 Declaration, p. 31, ¶5).   Instead of addressing the determinative evidence at issue in this case, defendants' motion chooses to cast Dominguez as a degenerate for which the world should shed few tears as a result of his death.   But as explained herein, Dominguez was in the process of rehabilitating his life and defendant Pina's bullet unjustly denied Dominguez' path to redemption.

And the City of San Jose and San Jose Police Department are liable for the actions of defendant Pina, because absent the official stamp of the District Attorney's report and the complicit, convenient non-observations of defendant Pina's fellow officers at the scene, the true fact that an unarmed Decedent was killed while his arms were raised and seated in his vehicle would have come to light immediately.   As set forth below and in plaintiffs' moving papers, even under defendants' version of the facts, no reasonable jury could find in defendants' favor and the relevant law was clearly established.   Thus, the Court should

grant plaintiffs' motion for summary judgment on their causes of action and deny defendants' qualified immunity defense.

### DISCUSSION

**A.** **<u>Defendants' Motion For Summary Judgment Cannot Be Granted Where, As Here, The Evidence Demonstrates No Triable Issue Of Fact With Respect To Plaintiffs' Causes Of Action And Defendants' Qualified Immunity Defense</u>**

"A party moving for summary judgment has the initial burden of informing the court of the basis of the motion and identifying for the court those portions of the materials on file that demonstrate the absence of any issues of material fact." *Orozco v. County of Yolo,* 814 F.Supp. 885, 890 (E.D. Cal. 1992).   Here, plaintiffs have submitted the evidence necessary to demonstrate that Decedent was shot with his arms raised, and the key evidence that supports plaintiffs' position, i.e., defendants' own expert witness opinion, <u>is completely ignored and unaddressed by defendants</u>.   To overcome a motion for summary judgment, an opposing party need only adduce evidence that raises a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a). And while the Court views the evidence in the light most favorable to the non-moving party, nonetheless the Court must place great weight on the fact that the defendants do not submit evidence that either explains or addresses their own expert witness testimony. *See Green v. City & County of San Francisco*, 751 F.3d 1039, 1045 (9th Cir. 2014); *see also Ambat v. City & County of San Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2014).

With respect to plaintiffs' opposition to defendants' motion for summary judgment, it is not the function of the Court to determine the weight to be given to the evidence produced; courts must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014). And while plaintiffs acknowledge that, because an inquiry into excessive force nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, the Courts have held on many occasions that summary judgment or judgment as a matter of law in excessive

force cases should be granted sparingly, in this case where even the defendants' expert witness affirms the facts in support of excessive force, summary judgment is appropriate on behalf of plaintiffs. *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005); *see also Green,* 751 F.3d at 1049.

**B. Defendants' Putative Justification For The Use Of Excessive Force Against Dominguez Is Unreasonable As A Matter Of Law And Summary Judgment Is Therefore Appropriate**

As an initial matter, defendants ignore the facts of this case and cite to cases that are not germane to this scenario.   Here, the evidence demonstrates that defendant Pina violated proper police procedures by not seeking cover and creating "time and distance" once the suspect was "contained", i.e., the SJC special squad "CRU" (Covert Response Unit) properly executed the VCT (Vehicle Containment technique).   Given the tactics employed by defendants, defendant Pina escalated the situation by breaking with normal police protocol.

This is because the VCT had worked as intended, Dominguez had been successfully contained, and was not physically resisting or attempting to flee; in addition, seven to nine CRU members were active in response to the situation.   (*Crowley Supp. Decl.*, Exh. 12, DeFoe Depo., pg. 11, l. 16-19; pg. 12, l. 14-20; pg. 20, l. 11-14).   To expound on that point, once the VCT was accomplished, and it was properly perfected, the suspect was "contained," the officers then need to *seek cover and gain distance and wait for support*. That was not done here. Pina voluntarily placed himself in danger by positioning himself in an "open air" standing stance, over the front quarter panel of Officer Ferguson's vehicle, perpendicular to the suspect, and only 10 feet away. (*Crowley Supp. Decl.,* Exh. 13, Pina Depo., pg. 75, l. 19 through pg. 76, l. 1; *Crowley Supp. Decl.,* Exh. 12, DeFoe Depo., pg. 13, l. 18-22.)   This was a poor tactical decision on defendant Pina's part and cannot be used to support the reasonableness of his actions in shooting Dominguez.   Defendant Pina's own acts placed him in a position in which he had to improperly rely on his *subjective belief* that Decedent posed an imminent threat in direct contravention of the directive of *Deorle v Rutherford,* 272 F.3d 1272-1281 (9th Cir. 2001).

1  What should have transpired on that fateful day is that defendant Pina should have
2  worked his way to the rear of Detective Ferguson's vehicle and ultimately moved to position
3  to Detective Lopez's vehicle where he could have cover - the vehicle was boxed in at that
4  time; the K-9 was approaching the scene and in the event that the suspect fled, they would
5  have the capability of the K-9 to either conduct a systematic search or direct deployment of
6  K-9. (*Crowley Supp. Dec.*, Exh. 12, DeFoe Depo., pg. 12, l. 24 through pg. 13, l. 13; pg.
7  14, l. 1-7.)  And this is the crux of the unreasonableness of the totality of defendants'
8  actions: no properly trained officer, if they truly believed the suspect had a gun, would
9  voluntarily put themselves in such a position of vulnerability and exposure. A suspect who
10  truly had a gun could shoot defendant Pina as he stood in the open, mere feet from the
11  Decedent.   Standard police tactics mandate that Pina should have sought cover behind the
12  suspect's vehicle, and from that position of safety, began to issue commands, like drop the
13  car keys out the window.  (*Crowley Supp. Decl.*, Exh. 12, DeFoe Depo., pg. 37, l. 6-9.)

14  Moreover, Dominguez was not actively non-compliant before being shot, and if the
15  suspect is passively noncompliant, the officer cannot shoot him absent a Fourth Amendment
16  violation.   Passive noncompliance is not a lethal threat justifying a response of deadly force.
17  (*Crowley Supp. Decl.*, Exh. 12, DeFoe Depo., pg. 27, l. 9-13.) This was a case of a felony
18  warrant, accessory to an armed robbery not the "fleeing felon" rule that arose from a
19  shooting death or grave violent felony incident. This is not a fugitive who used deadly force
20  to evade or deter capture; the vehicle is not being used as a weapon and this is not a bring
21  him in "dead or alive" scenario. It is not the "direst" of circumstance at the time in which
22  deadly force was used. (*Crowley Supp. Decl.*, Exh. 12, DeFoe Depo., pg. 68, l. 7-14, l. 22-
23  23.)   Regardless, even if Dominguez had escaped from the car on foot, the officers still
24  could not legally shoot him absent some other aggravating circumstance which was not
25  present in this case.  (*Crowley Supp. Decl.*, Exh. 12, DeFoe Depo., pg. 68, l. 13-14.)

26  Crucially, as the officers are supposed to keep cover and distance from the suspect,
27  and after the suspect is "contained," then the officers have time on their side.   However, no
28  such patience was exhibited by the defendants in this case.   Instead, defendant Pina

1   placed himself in an open air (no cover) standing position, 10 feet perpendicular to the
2   suspect (no distance, in a very exposed vulnerable and dangerous position). (*Crowley Supp.*
3   *Decl.,* Pina Depo., pg. 75, l. 19 through pg. 76, l. 1.)   If Pina moved behind Lopez's vehicle
4   where all three officers were behind the suspect, and thereafter the suspect displayed a
5   gun, the suspect would have to turn towards the officers while in the driver's seat and try to
6   shoot them. (*Crowley Supp. Decl.*, Exh. 12, DeFoe Depo., pg. 77, l. 1-20.) There would have
7   been three AR-15 assault rifles pointed at him, any lethal threat would have been eliminated.
8   The evidence is clear that defendant Pina voluntarily put himself in a vulnerable position;
9   officers should not choose to put themselves in a bad position and have to respond to that
10  bad position; he chose to place himself in a vulnerable position and failed to follow proper
11  police protocol and tactics. (*Crowley Supp. Decl.*, Exh. 12, DeFoe Depo., pg. 73, l. 11-21.)

12       **1.   <u>Dominguez' passive non-compliance is not a valid reason to kill him</u>**.

13       Police practices expert witness, Scott DeFoe, opined that an officer cannot arbitrarily
14  shoot a suspect because the suspect was passively non-complaint. (*Crowley Supp. Decl.*,
15  Exh. 12, DeFoe Depo., pg. 47, l. 13-14.)   And while the putative response by Dominguez,
16  "Fuck you, shoot me, bitch," is unkind, it raises a greater standard of care for the officer to
17  even be more cautious to avoid being trapped into reacting improperly or provoke an
18  improper and unreasonable response.   (*Crowley Supp. Decl.*, Exh. 12, DeFoe Depo., pg.
19  49, l. 11-20.)

20       Here, the evidence demonstrates there was no lethal threat. Defendant Pina could
21  see there was nothing in Dominguez's hands, no weapon when he had his hands up. When
22  Pina fired, he said he could not see what Dominguez's hands were doing.   (*Crowley Supp.*
23  *Decl.*, Exh. 12, DeFoe Depo., pg. 55, l. 3-7.)   If what defendant Pina says is true, which
24  plaintiffs vehemently dispute, putting down your hands is not a justification to use deadly
25  force.   Violating the commands of a police officer in this circumstance is not justification to
26  use lethal force and shoot Dominguez in the head. The conduct of Dominguez is simply
27  "passive non-cooperation."   Dominguez could have been texting his wife saying he is being
28  arrested. The mere fact the suspect's hands are out of view and underneath the actual frame

1   of the door, in itself, does not mean the suspect is arming himself.  (*Crowley Supp. Decl.*,

2   Exh. 12, DeFoe Depo., pg. 59, l. 13-15; pg. 67, l. 20-22.)   At the time Pina fired the two

3   rounds from his rifle, it was not an immediate defense of life situation. (*Crowley Supp. Decl.*,

4   Exh. 12, DeFoe Depo., pg. 67, l. 24-25.)

5        The right to be free from the application of deadly force for engaging in

6   mere passive resistance was clearly established prior to 2008. *See Nelson v. City of*

7   *Davis,* 685 F.3d 867, 881 (9th Cir. 2012) (cases dating back to 2001 have established that

8   "[a] failure to fully or immediately comply with an officer's orders neither rises to the level of

9   active resistance nor justifies the application of a non-trivial amount of force"). In *Deorle,* for

10  example, the Court held that shooting a beanbag projectile at a suicidal, irrational individual

11  who was walking directly towards an officer was excessive, given that the crime he

12  committed was minor, the danger to the officer and others was minimal, there was no

13  immediate need to subdue him, and he was not given any warning that he would be shot if

14  he continued to approach the officer. *Deorle,* 272 F.3d at 1282.   Courts have also denied

15  qualified immunity, concluding that every police officer should have known that it was

16  objectively unreasonable to use such force under those circumstances.   *See Id.* at

17  1285.  In *Headwaters Forest Def. v. County of Humboldt,* 276 F.3d 1125 (9th Cir. 2002), the

18  Court considered the use of pepper spray to subdue, remove, or arrest nonviolent protesters

19  and held that "[t]he law regarding a police officer's use of force against a passive individual

20  was sufficiently clear" in 1997 to put officers on notice that such force was excessive.  *Id.* at

21  1131.

22       Moreover, defendant Pina has experienced situations in the past wherein he has

23  been confronted with passive noncompliance. (*Crowley Supp. Decl.*, Exh. 12, DeFoe Depo,

24  p. 27, l. 4-13.)   Passive resistance occurs frequently in police work, and accordingly, officers

25  are trained on how to deal with passive noncompliance.   It's not a legitimate justification to

26  use deadly force.   *Id.*   As such, plaintiffs' evidence demonstrates that defendants used

27  excessive force in killing Dominguez on September 15, 2017.   See generally *Harris v.*

28  *Roderick*, 126 F.3d 1189 (9th Cir. 1997).   Long standing principles of jurisprudence dictate

1   that force is excessive when it is greater than is reasonably necessary under the
2   circumstances, and the evidence shows far less than deadly force was appropriate. *Graham*
3   *v Connor*, 490 U.S. 386, 395 (1989).

4       Accordingly, it cannot seriously be disputed that these circumstances constitute
5   excessive force as a matter of law. There was no need to resort to deadly force, and the
6   Court must "'balance the amount of force applied against the need for that force.'" *Bryan v.*
7   *McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057,
8   1061 (9th Cir. 2003)).   "[T]he most important single element" is "whether the suspect
9   pose[d] an *immediate threat* to the safety of the officers or others." *Chew v. Gates*, 27 F.3d
10  1432, 1441 (9th Cir. 1994) (emphasis added). Yet "a simple statement by an officer that he
11  fears for his safety, or the safety of others is not enough; there must be objective factors to
12  justify such a concern." *Deorle,* 272 F.3d at 1281. "A desire to resolve quickly a potentially
13  dangerous situation" does not justify deadly force. *Id*. at 1281.

14      Defendant Pina simply could not have possessed an objectively reasonable belief
15  that Dominguez posed a significant, immediate threat of death or serious physical harm to
16  him when he fired the fatal shot. *See Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985);
17  *Graham,* 490 U.S. at 396-97; *Harris*, 126 F.3d at 1201, 1204 (holding it was "patently
18  unreasonable" for officer to shoot without warning an *armed* murder suspect who was
19  retreating to safety); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 324-25 (9th Cir. 1991)
20  (holding it was unreasonable to shoot suspect who possessed a gun but was not pointing it
21  at officers and was facing away); *Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991)
22  (unreasonable to shoot wounded felon who was merely lying on floor when shot).   Here,
23  defendant Pina also did not utilize reasonable alternative methods of arresting Decedent
24  such as giving commands, deploying his taser, taking appropriate cover, waiting for
25  additional backup to arrive or releasing the K-9 (which was done, but only after Dominguez
26  was shot).   *Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (*en banc*).

27  //

28  //

## C. <u>Defendants' Qualified Immunity Defense Fails</u>

Contrary to defendants' contention, defendant Pina should not be granted qualified immunity by this Court, and it should not serve as a basis upon which this Court grants summary judgment in defendants' favor.   The doctrine of qualified immunity protects a government official from liability for civil damages except where the official violates a constitutional right that " 'was "clearly established" at the time of the challenged conduct.' " *Wood v. Moss,* 572 U.S. 744, 758 (2014) (*quoting Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011)).   "A plaintiff can demonstrate that the right was clearly established by presenting a closely analogous case that establishes that the defendant's conduct was unconstitutional or by presenting evidence that the Defendants' conduct was so patently violative of the constitutional right that reasonable officials would know without guidance from a court." *Schneyder v. Smith,* 653 F.3d 313, 330 (3d Cir. 2011) (internal quotations omitted). However, there need not be a case on point.   *Hope v. Pelzer,* 536 U.S. 730, 731 (2002) (in Eighth Amendment case, reversing district court's entry of summary judgment on qualified immunity grounds, explaining, "officials can be on notice that their conduct violates established law even in novel factual situations").

As discussed in plaintiffs' Motion, this Court's qualified immunity inquiry has two prongs: (1) whether the officer's conduct violated a constitutional right; and, (2) whether "the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in the situation." *Torres v. City of Madera,* 648 F.3d 1119, 1123 (9th Cir. 2011) (quoting *Saucier v. Katz,* 533 U.S. 194, 201-02 (2001)).   The Court has discretion to consider the two factors in either order. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

At summary judgment, resolution of the qualified immunity defense turns whether the undisputed facts and the inferences to be drawn therefrom, viewed in the light most favorable to the non-moving party, show a violation of clearly established federal constitutional rights. *See Tolan v. Cotton,* 572 U.S. 650, 657 (2014).   In cases alleging unreasonable searches or seizures, courts should define the "clearly established" right at

1   issue on the basis of the "specific context of the case." *Saucier, supra,* at 201.   Accordingly,

2   courts must take care not to define a case's "context" in a manner that imports genuinely

3   disputed factual propositions.   *See Brosseau v. Hagan,* 534 U.S. 194, 195, 198 (2004)

4   (inquiring as to whether conduct violated clearly established law "'in light of the specific

5   context of the case'" and construing "facts...in a light most favorable to" the nonmovant).

6   The question of whether a defendant is entitled to qualified immunity is a question of law for

7   the court.   *Torres,* 548 F.3d at 1210.   However, the court only resolves that question of law

8   if all material facts are undisputed and, taken in the light most favorable to the plaintiff, the

9   facts show the defendant did not violate clearly established federal constitutional rights. *Id.*

10       With respect to seizure, the *Nelson* Court determined that "it was clearly established

11   prior to April 2004, that the intentional application of force which terminates an individual's

12   freedom of movement results in a seizure." *Nelson v. City of Davis,* 685 F.3d 867, 884.   In

13   *Nelson,* the officers unreasonably used pepper-ball projectiles, a less-than-lethal method of

14   force, on a group of people, of which Nelson was a part, in order to seize the entire group.

15   The *Nelson* Court determined that although the use of pepper-ball projectiles represented a

16   relatively new mechanism by which to inflict pain, the type of pain it inflicts is the same or

17   greater than that of other well-seasoned and litigated mechanisms of inflicting pain (i.e.,

18   projectile weapon with concussive force) and was a clearly established violation.   *Id.* It is

19   axiomatic that defendant Pina be denied qualified immunity by his employment of a well-

20   tested mechanism of pain (i.e., a firearm and bullets) and deadly force to seize Decedent.

21   The egregious nature of defendants' conduct in shooting Dominguez is more brightly

22   exhibited when juxtaposed with the fact that the VCT maneuver had successfully, and safely,

23   contained Dominguez.

24       Moving to the second prong of the qualified immunity analysis, the Court is required

25   to decide whether it would have been clear to a reasonable officer in the defendant's position

26   that his use of deadly force was unlawful in the situation presented. The issue of qualified

27   immunity is a question of law for the court. *Torres,* 548 F.3d at 1210. However, the court

28   only resolves that question of law if all material facts are undisputed and, taken in the light

1  most favorable to the plaintiff, the facts show the defendant did not violate clearly established

2  federal constitutional rights. *Id.* At all times relevant to this action, it was clearly established

3  that the use of deadly force was reasonable only if an officer "'has probable cause to believe

4  that the suspect poses a significant threat of death or serious physical injury to the officer or

5  others.'" *Long v. City and Cnty of Honolulu,* 511 F.3d 901, 906 (9th Cir. 2007) (quoting *Scott*

6  *v. Henrich,* 39 F.3d at 194, in turn quoting *Tennessee v. Garner,* 471 U.S. at 3 (1985)). With

7  respect, the same factual and credibility questions that preclude defendants' request for

8  summary judgment on the merits of plaintiffs' Fourth Amendment claims preclude a finding

9  that the defendant Officers are entitled to qualified immunity for their use of deadly force.

10       In *Blanford v. Sacramento County*, 406 F.3d 1110, 1115 (9th Cir. 2005), cited by

11  defendants, the Ninth Circuit described the reasonableness standard as requiring a balance

12  between the nature and quality of the individual's Fourth Amendment interests against the

13  countervailing governmental interests at stake. The analysis of an excessive force claim

14  further "requires careful attention to the facts and circumstances of each particular case,

15  including the severity of the crime at issue, whether the suspect poses an immediate threat

16  to the safety of the officers or others and whether he is actively resisting arrest or attempting

17  to evade arrest by flight." *Graham, supra,* at p. 396. An officer's use of lethal force is only

18  reasonable if "the officer has probable cause to believe that the suspect poses a significant

19  threat of death or serious physical injury to the officer or others." *Garner, supra,* 471 U.S. at

20  3.

21       **1. Qualified Immunity does not apply because long-established case law**
         **governs the conduct at issue and clearly establishes that killing**
22       **Dominguez was excessive force and unreasonable under the**
         **circumstances**.

23       "Just as the granting of summary judgment is inappropriate when a genuine issue

24  exists as to any material fact, a decision on qualified immunity will be premature when there

25  are unresolved disputes of historical fact relevant to the immunity analysis." *Curley v. Klem*,

26  298 F.3d 271, 278 (3d Cir. 2002) (in Fourth Amendment excessive force case, reversing

27  district court's entry of qualified immunity at summary

28  judgment); *Lamont,* 637 F.3d at 185 ("In short, the dispute in this case is about the facts, not

the law. The doctrine of qualified immunity is therefore inapposite.").   Akin to the excessive force arguments put forth by defendants, they now invite the Court to prematurely resolve disputed material facts germane to qualified immunity, something forbidden by *Curley*.   In this instance, summary judgment on behalf of the defendants would be improper as plaintiffs have demonstrated the strength of their evidence of defendant Pina's unreasonableness in shooting Decedent.   Thus framed, defendants ignore compelling evidence that Dominguez was unarmed, had his arms raised and was immobilized by the VCT at the time deadly force was utilized.   With respect to defendants' motion for summary judgment, the Court must resolve factual disputes in plaintiffs' favor, and defendants' qualified immunity defense is properly framed in two parts.

As for the first inquiry, does an officer violate clearly-established Fourth Amendment law by shooting an unarmed suspect, where the suspect is boxed-in by the VCT, the situation is contained, and the suspect wouldn't be able to escape from that point?   Next, does an officer violate clearly-established Fourth Amendment law by shooting that suspect, while the suspect is boxed in, the situation still contained, while the Decedent's arms are raised?   *See Gulley v. Elizabeth City Police Dept.*, 340 Fed. App'x. 108 at 110 (framing qualified immunity inquiry as "beating a suspect on the face and head, who is lying down and not resisting arrest"); *cf. Kedra v. Schroeter*, 876 F.3d 424, 449 (3d Cir. 2017) (reversing dismissal in due process/state-created danger case and defining right for qualified immunity purposes as: "an individual's right not to be subjected, defenseless, to a police officer's demonstration of the use of deadly force in a manner contrary to all applicable safety protocols.").   Finally, the Third Circuit in *Gulley* warns officers not to use force against a suspect "not resisting arrest," even where that suspect previously fled and is suspected of committing serious crimes, armed carjacking and kidnapping. *Gulley*, 340 F. App'x. 108 at 110.

In addition, even when a novel and unique set of facts arises, such as in *Harris*, the Ninth Circuit has found that qualified immunity was not proper because the law regarding the use of deadly force was clearly established and well defined. *See Harris* at 1203-04

1   (finding that no reasonable officer could believe it to be proper to shoot an armed individual
2   who had killed a fellow agent the day before because that individual was not immediately
3   threatening anyone at the time or an imminent threat of danger to others.); *Deorle*, 272 F.3d
4   at 1285-86 (noting that plaintiffs need not produce a case directly on point to demonstrate
5   that the right is clearly established).   Moreover, in *Forrett v. Richardson*, 112 F.3d 416 (9th
6   Cir. 1997), a case decided many years prior to this case, the Court explicitly noted the
7   concrete guidance provided by the Supreme Court to assess when an officer can use deadly
8   force upon an escaping felon, "[t]he Supreme Court in *Garner* identified specific situations
9   in which a fleeing felony suspect may be deemed to pose a threat of serious harm to the
10  officer or others." *Forrett* at 420 (citing to *Garner*).

11       To say it another way, this is not a case where an officer is dealing with a new law
12  enforcement tool or a quantum of force whose parameters have not been well established
13  such as in *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002), in which the Court
14  found qualified immunity applied because the law, as of 1995, had not put reasonable
15  officers on notice of when it is appropriate to draw their weapon on a suspect.   *Id*. at 1015.
16  Conversely, in this case, the law has, since 1985, put reasonable officers on notice of when
17  it is appropriate to use deadly force. *See also Curnow,* 952 F.2d at 325.

18       Further guidance on this Court's decision on whether the defense of qualified
19  immunity applies in this case was recently handed down by the Ninth Circuit on March 24,
20  2022, in *Estate of Aguirre v. County of Riverside*, 2022 WL 871286 (9th Cir. 2022).   In
21  *Aguirre*, the Court held that police shootings, like all Fourth Amendment seizures, must be
22  objectively reasonable, and when a suspect poses no immediate threat to an officer or
23  others, killing the suspect violates his Fourth Amendment rights.   *Aguirre*, 2022 WL 871286
24  *1.   In *Aguirre*, an officer with the Riverside County Sheriff's Department responded to
25  reports that a suspect was destroying property with a bat-like object and had threatened a
26  woman with a baby. *Aguirre*, at *2.   Upon arrival at the scene, the officer exited the patrol
27  car with his gun drawn and confronted the suspect.   *Id.*   The officer motioned for the
28

suspect to back away and demanded that he drop the stick; however, the suspect did not drop it, and by some accounts verbally refused to do so.  *Id.*

Thereafter, the officer attempted to pepper-spray the suspect, but the spray blew back in the officer's face while the suspect remained largely unaffected.  *Aguirre*, at *2. Next, the officer pointed his gun at the suspect, and ordered him to drop the stick, but the suspect did not comply.  *Id.*  Eyewitness accounts of what transpired next differed between whether the suspect then retrieved a baseball bat from nearby bushes and advanced quickly toward the officer with at least one weapon raised, or whether the suspect stood still, holding a single stick pointed down.  *Id.*  Whichever the case, the officer, without issuing a warning, shot the suspect six times from no more than fifteen feet away and the suspect died.  *Id.* The officer contended that the suspect stood facing him during all six shots, but the coroner's report found that the suspect died from two shots to his back.  *Id.*  The bullet paths suggested that the suspect had turned away from the officer and was falling to the ground when the bullets struck.  *Id.*

The Ninth Circuit found that the aforementioned key facts precluded the officer's application of a qualified immunity defense and affirmed the District Court's denial of summary judgment on plaintiffs' Fourth Amendment claim based upon qualified immunity. *Aguirre,* at *1, *4 (in this scenario, the government's interest in the use of force did not justify the "unmatched" intrusion on the suspect's constitutional rights, thus the officer's conduct was not objectively reasonable, and his use of excessive force violated the Fourth Amendment); *see also Garner*, 471 U.S. at 9.

Here, much like the suspect in *Aguirre*, the Decedent posed no immediate threat to defendant Pina or anybody else before he was shot.   Moreover, in *Aguirre* the officer could visualize the bat or stick in the hand of the suspect before shooting, and here, no corresponding weapon was ever visualized in Decedent's hands by the defendants.   In fact, the only evidence that supports the inference that Decedent posed a threat is the self-serving testimony of defendant Pina, and which testimony is contradicted by his own expert

1   witness.   As in *Aguirre*, this Court should find defendant Pina's actions unreasonable as a

2   matter of law.

3          In this case, defendants cannot point to any reasonable misinterpretation of the facts

4   that necessitated the use of deadly force.   There is no debate (nor could have the

5   defendants reasonably believed otherwise) that Decedent was not threatening anyone at

6   the time of the shootings, and Dominguez was not committing a violent crime nor was he

7   engaging in any violent conduct that demonstrated that he was inclined to cause serious

8   physical harm at the moment he was killed.   Thus, the defendants do not have any basis

9   for a reasonable factual mistake allowing them to be entitled to qualified immunity in this

10  matter.

11        **2.   Defendants' legal authority in support of the reasonableness of defendant**
          **Pina's acts are inapposite.**
12

13         Defendants cite to several cases in support of the reasonableness of defendant

14  Pina's actions, however, each of the cases are distinguishable, if not inapplicable, to the

15  present case.   A review of those cases demonstrates that the fact pattern and the proper

16  analysis to be applied in this action is not unique and therefore defendants cannot argue

17  that the law was not clearly established.   Simply, in all of the cases relied upon by the

18  defendants and the ones set forth by plaintiffs, the question of whether or not the officer

19  used deadly force was answered by looking at the language set forth in *Garner*. *See e.g.,*

20  *Forrett* at 420. To wit, only if the laws of physics and, in general, life are ignored can

21  defendant Pina's putative justification for pulling the trigger ever reach the trier of fact for

22  consideration.

23         Here, defendants place support for their position in a Fourth Circuit case, *Anderson*

24  *v. Russell,* 247 F.3d 125 (4th Cir. 2001). As set forth in defendants' motion for summary

25  judgment, Russell used force (which caused serious injuries, but not fatal injuries) after an

26  independent witness informed him that plaintiff appeared to have a gun. Russell himself

27  observed plaintiff for 20 minutes to confirm that he appeared to have a gun, and this

28  evidence was not refuted by plaintiff.   *Id.* at 130. In *Russell,* the unarmed suspect

    had "initially complied with the order to raise his hands, [but] later lowered them, without

1   explanation to the officers, in an *attempt to reach into his back left pocket* to turn off his

2   Walkman radio."  *Id.*   It was only after plaintiff disobeyed Russell's orders to raise his hands

3   and reached toward his gun, that Russell shot him.  *Id.* at 132.   As defendants note, the

4   officer in that case shot the suspect "[b]elieving that [the suspect] was reaching for a

5   weapon."  Def.'s Br. 13.   Here, defendants possessed information that Decedent <u>could be</u>

6   armed, but this information was tenuous, at best, and is refuted by the facts that existed at

7   the time of the shooting; indeed, defendants recovered weapons at the residence where

8   Anchondo and Ruiz were arrested in Morgan Hill prior to the encounter wherein Dominguez

9   was killed. (*Crowley Supp. Decl.*, Exh. 15, Lopez Depo., pg. 51, l. 2-17).  Moreover,

10  defendants do not even claim that they, or anybody else that could provide such a hearsay

11  communication, saw Dominguez with a gun prior to his being killed.

12       Next, *Thompson v. Hubbard*, 257 F.3d 896 (8th Cir. 2001), cited by defendants, is

13  distinguishable from the present case for similar reasons.  Def.'s Br. 14.   In *Thompson*, the

14  defendant   officer   responded   to   a   report   of   shots   fired   and   an   armed

15  robbery. *Thompson*, 257 F.3d at 898. The officer approached one of the robbery suspects,

16  who began to flee. *Id.* A foot chase ensued, and the suspect ran between two buildings and

17  climbed over a short fence. *Id.* The suspect then got up from the ground, looked over his

18  shoulder at the officer, and moved his arms as though reaching for a weapon at waist

19  level.  *Id.*   The officer yelled "stop," the suspect's arms continued to move, and the officer

20  fatally   shot   the   suspect.   *Id.*   As   distinguishable   from   the   present   case

21  – *Thompson* involved a suspect whom the responding officer reasonably believed had just

22  committed a crime of violence, was armed, and was about to attack the officer.

23       In addition, defendants point to the case of *Reese v. Anderson,* 926 F.2d 494 (5th

24  Cir. 1991).   Notably, in *Reese,* the court based its decision on the officer's version of the

25  facts which were technically left undisputed because the plaintiff failed to submit any

26  affidavits or other evidence to support her side of the story.   *Id.* at n.1 & 498.   And which

27  fact is notable because not only have plaintiffs produced ample evidence to defeat summary

28  judgment, but they have also demonstrated defendants' acts unreasonable as a matter of

1   law.   In this instance, it is the defendants who have failed to even address the opinion of

2   their own expert witness that Dominguez' arm was raised when he was shot.   Moreover,

3   in *Reese,* the officer repeatedly yelled at the deceased to raise his hands -- which he initially

4   complied with, showing he understood -- before shooting him.   *Id.* at 500.   Further, the

5   officer in *Reese* mistakenly believed that the deceased was a man who had been arrested

6   previously for armed robbery.   *Id.* at 496. Here, defendants only possessed the flimsy

7   evidence that Dominguez may be armed, despite having previously recovered weapons

8   from the residence in Morgan Hill before Dominguez was shot. (*Crowley Supp. Decl.*, Exh.

9   15, Lopez Depo., pg. 51, l. 2-17). Defendants' evidence, that Dominguez may have been

10  armed, was of no greater indicia of reliability than the fact that any other person in defendant

11  Pina's vicinity may also have possessed a weapon.

12      Defendants next look to the Third Circuit in support of authority to justify the shooting

13  of an unarmed man, however the legal authority from that Circuit overwhelmingly supports

14  plaintiffs' position in this case.   As such, defendants' position is equally indefensible under

15  Third Circuit precedent, which holds: "Even where an officer is initially justified in using force,

16  he may not continue to use such force after it has become evident that the threat justifying

17  the force has vanished."   *Lamont v. New Jersey*, 637 F.3d 177, 184 (3d Cir. 2011).

18      In *Lamont*, a suspected car thief, fleeing from officers until trapped in a thicket,

19  ignored officer commands to show his hands and surrender.   *Id.* at 180. "Suddenly, the

20  suspect pulled his right hand out of his waistband, not as if he were surrendering, but quickly

21  and as if he were drawing a pistol. As the suspect made the sudden movement, [officers]

22  opened fire."   *Id.*   They continued to fire for a total of 10 seconds, even after the suspect

23  withdrew his hands, revealing only a crack pipe.   *Id.*   The district court granted summary

24  judgment in favor of the officer defendants, holding, "[w]hen [the suspect] made a sudden

25  movement and ripped his right hand from his left waistband, the troopers, believing [he] had

26  a gun, all fired at the same time and stopped once [the suspect] was no longer a

27  threat."   *Id.* at 181.   In this case, the officers at the scene other than defendant Pina did not

28

1   shoot, they were otherwise occupied with flash-bang grenades or had an obstructed view of

2   Decedent. (*Crowley Supp. Decl.*, Exh. 15, Lopez Depo., pg. 78, l. 13-17; pg. 89, l. 9-13).

3     In *Lamont*, the Third Circuit reversed and concluded the officers were not entitled to

4   qualified immunity because "there is a triable issue on whether the [officers'] continued use

5   of force, *even if initially justified, became excessive as the events*

6   *unfolded*." *Id*. at 184 (emphasis added). "Here, the troopers opened fire as [the suspect]

7   yanked his right hand out of his waistband. At that point, the troopers reasonably believed

8   that [the suspect] was pulling a gun on them. But after [the suspect] made this sudden

9   movement, his [weaponless] right hand was visible to troopers. . . . On these facts a

10   reasonable jury could conclude that the troopers should have recognized that [the suspect]

11   was unarmed and stopped firing sooner." *Id*.

12     Applying the holding in *Lamont* to the instant case, the defendants' contention that

13   Dominguez previously fled from officers and their disputed contention that he <u>may have</u>

14   previously had a firearm are immaterial to their use of force after Dominguez was

15   immobilized by the VCT, raised his arms, and was unarmed.   When defendant Pina

16   deployed his assault rifle, Dominguez was "boxed in" and the situation was contained,

17   meaning Dominguez would be unable to escape from that point.   As in *Lamont*, defendant

18   Pina should have, but failed to, recognized that Decedent was immobilized and <u>had his arms</u>

19   <u>raised</u> before he resorted to a deadly degree of force and adjusted his conduct accordingly;

20   similarly with Dominguez' passive resistance to Officer Pina's commands via Decedent's

21   statements.

22     Finally, *Neal v. City of Fresno*, 2015 WL 1137077 *5 (E.D. Cal. 2015) is likewise

23   distinguishable and inapplicable to the case at bar.   In *Neal*, the facts demonstrated that an

24   officer came upon the suspect as he was attempting to flee the scene of the felony where a

25   gun had been used to threaten the life of a civilian.   *Neal*, 2015 WL 1137077 *5. The

26   suspect did not follow the officer's instructions to freeze, but rather continued to try and

27   evade arrest by jumping a fence and then motioned as though he were reaching for a

28   weapon in his waistband. *Id.*   The officer's shooting of the suspect was found to be

1  reasonable.   *Id.*   It is undisputed in this case that Dominguez had not continued to flee from

2  the defendant officers at the time he was shot.

3  **D.  Both The City And Police Department's Endorsement And Promulgation Of**
   **Pina's False Justification For Dominguez' Killing Demonstrates Defendants'**

4  **Liability**

5     Defendants City of San Jose and San Jose Police Department are liable pursuant to

6  *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which holds municipalities

7  accountable for injuries that arise from an official policy or custom.   *Id.* at 694.   Plaintiffs

8  are required to demonstrate that Decedent: "(1) possessed a constitutional right of which he

9  was deprived; (2) that the County had a policy; (3) that the policy 'amounts to deliberate

10 indifference' to the constitutional right; and (4) that the policy is the 'moving force behind the

11 constitutional violation.'" *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir.2006) (quoting

12 *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (in turn quoting *City of Canton v.*

13 *Harris*, 489 U.S. 378, 389-91 (1989)).   "There also must be a 'direct causal link' between

14 the policy or custom and the injury," and plaintiffs "must be able to demonstrate that the

15 injury resulted from a 'permanent and well settled practice.'" (*Ibid.* (quoting *McDade v. West*,

16 223 F.3d 1135, 1141 (9th Cir. 2000) (internal quotations omitted)). A municipality may not

17 be held liable under Section 1983 where no injury or constitutional violation has occurred.

18 *Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001); *City of Canton*, 489 U.S.

19 at 389-90 (the failure to train or supervise may give rise to a "policy or custom" sufficient to

20 impose liability on municipality).

21    A plaintiff may prove the existence of a custom or informal policy with evidence of

22 repeated constitutional violations for which the errant municipal officials were not discharged

23 or reprimanded.   *See Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992); *Nadell v.*

24 *Las Vegas Metro Police Dept.*, 979 F.3d 924, 930 (9th Cir. 2001) (finding no municipal

25 liability because there was no evidence at trial establishing that the use of excessive force

26 was a formal policy, that there was a widespread practice of the police department or that

27 previous violations had occurred for which there was no reprimand or discharge); *Gomez v.*

28 *Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that correctional department

administrators may not take "blind-eye" approach and that condoning unconstitutional acts by the failure to investigate or correct the repeated violations constitutes a policy or custom under *Monell*).   In *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 328 (2nd Cir. 1986), the Second Circuit Court stated:

> We have no doubt that, in the context of a theory that the City negligently supervised its officers in their use of force, the evidence that a large number of claims of police brutality had been made by other persons against the City, together with evidence as to the City's treatment of these claims, was relevant. Whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force. The City's knowledge of these allegations, and the nature and extent of its efforts to investigate and record the claims were pertinent to Fiacco's contention that the City had a policy of nonsupervision of its policemen that reflected a deliberate indifference to their use of excessive force. The fact that none of the claims had yet been adjudicated in favor of the claimant was not material; if the City's efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims.... Proof that other claims were met with indifference for their truth may be one way of satisfying the plaintiffs' burden.

*Fiacco,* 783 F.2d at 328.

The Ninth Circuit, in *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir. 1997), stated that when a municipality "turn[s] a blind eye to severe violations of inmates' constitutional rights--despite having received notice of such violations--a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference." Here, plaintiffs' *Monell* claim is based in part on the allegations relating to the brutal and deadly manner in which the defendants seized Decedent and the unreasonable force against him.   In addition, the *Monell* claim is based on the failures of the defendant's decision making which ultimately caused Dominguez' death.   The critically unfortunate decision to shoot an unarmed suspect who had his armed raised is evidence of the failure of training and preparation by defendants City of San Jose and San Jose Police Department of its officers. In the events that followed, defendants affirmed, and thereafter repeated, defendant Pina's proffered falsehood that Dominguez dropped his hands out of sight, leaned forward and was reaching for a non-existent weapon when he was shot.   (*Crowley Dec.,*

Exh. 9, DA Rpt., pgs. 6-7).   This method of decision-making is actively and/or tacitly endorsed by defendants.   A reasonable trier of fact could determine that these defendants' endorsement of defendant Pina's falsehood, their failure to adequately train its officers on how to properly detain suspects and not subject them to death and/or admonish its officers when they fail to follow departmental policies regarding the sloppy police tactics and brutal use of force that ultimately resulted in death, effectively rubber-stamps and leaves the citizenry vulnerable to the defendant officer's behavior.   *Monell,* 436 U.S. at 690-91.

Evidentiary support for the City and Police Department's liability is demonstrated by the following facts:

- Subsequent to the shooting, Officer Pina was elevated to Sgt. Pina.   So, if there is any question of the support of his action by the SJPD, the City Attorney and the District Attorney, it leaves no doubt that he has been elevated by his conduct in this case and SJPD is complicit in supporting the falsehood promulgated by defendant Pina knowing that, or they should know, he is lying based on the physical evidence. The physics of ballistics do not lie – Dominguez could not have raised his arms after he was shot;

- Further, the District Attorney report is also complicit in the lie when they find that Dominguez dropped his hands justifying Pina to shoot – *Crowley Dec.,* Exh. 9, DA Rpt., Pg. 8, ¶2;

- The District Attorney found the second bullet was a complete miss – *Crowley Dec.,* Exh. 9, DA Rpt., pg. 14, ¶3 – and yet, the defendants' own expert witness contradicts this and concludes that two bullets entered the cabin of the vehicle – one that entered the B-pillar was a complete bullet, not wobbling or keyholing but in its perfect trajectory.   Still, the District Attorney claims the same single bullet went through the driver's side window, went through and through the sweatshirt (there was no blood found on the inside portion of the left upper sleave and no textile material or fibers found in the jaw wound), went through the jaw and lodged in the spinal cord killing Dominguez; while at the same time, the other portion of

the same bullet impacted the B-pillar of the passenger side of the vehicle - *Crowley Dec.,* Exh. 9, DA Rpt., pg. 14, ¶¶ 5, 6, 7;

- How could this magic bullet be an accurate depiction of the events if Pina is telling the truth that Dominguez put his hands down and arms between his legs as though retrieving a gun - See *Crowley Dec.,* Exh. 10, Video of Pina; and,

- The District Attorney's report is a distortion of the truth, a toxic torturing of the facts and an active participation by the District Attorney in the lie that is perpetrated across their departments.

### E. **Plaintiffs Demonstrate Sufficient Evidence in Support Of Their State Law Claims**

Defendants argue that plaintiffs' state law causes of action fail because defendants' actions were not motivated by race, and no greater force than the situation called for was used by defendant Pina.  As discussed at length in plaintiffs' moving papers, defendants' actions and display of force were objectively unreasonable, excessive and were the cause of Decedent Dominguez' death. *Martinez v. County of Los Angeles*, 47 Cal.App.4th 334, 349 (1996).   The defendants needlessly precipitated Dominguez' death when they shot him while he was seated and unarmed in the vehicle.   Here, defendant Pina escalated an otherwise manageable seizure by placing himself into a potentially deadly situation that resulted in an otherwise avoidable death.

California Civil Code section 51.7 protects against the use of "violence, or intimidation by threat of violence, committed against their persons or property. . . on account of" a protected characteristic. Cal. Civ. Code §51.7(a). The characteristics protected by Civil Code section 51.7 include those characteristics identified under Civil Code section 51(b), which states:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, *race, color*, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code §51(b).   Here, Decedent is readily identified as a Hispanic male. The

1  defendants' actions are so outrageous and inconsistent to the situation they encountered
2  such that plaintiffs allege it must have been motivated by racial animus.   Here, the evidence
3  supports plaintiffs' claim of violation of California Civil Code section 51.7 based on racial
4  discrimination.

5  California Civil Code section 52.1 provides for the institution of a civil action against
6  a person who "interferes by threats, intimidation, or coercion, or attempt to interfere by
7  threats, intimidation, or coercion, with the exercise or enjoyment by any individual . . . of
8  rights secured by the Constitution or laws of the United States, or . . . of this state." To
9  establish a claim under Section 52.1, plaintiffs need to prove that the defendants "interfered
10 with the plaintiff['s] constitutional rights by the requisite threats, intimidation, or coercion."
11 *Austin v. Escondido Union School Dist.*, 149 Cal.App.4th 869, 882 (2007).   The word
12 "interferes" under this statute means "violates."   *Id*. at p. 883. "The essence of [this] claim
13 is that the defendant, by the specified improper means (i.e., "threats, intimidation or
14 coercion'), tried to or did prevent the plaintiff from doing something that he or she had the
15 right to do under the law or force the plaintiff to do something that he or she was not required
16 to do under the law." *Ibid*.   Law enforcement authority utilized to effectuate a seizure can
17 constitute interference by "threats, interference, or coercion" if the police officer lacked a
18 justification to seize and search a person. *Cole v. Doe 1 thru 2 Officers of City of Emeryville*
19 *Police Dept.*, 387 F.Supp.2d 1084, 1102-1103 (N.D. Cal. 2005).

20 A police officer who uses unreasonable force upon another under Fourth Amendment
21 standards has also *per se* violated California Civil Code section 52.1. *See Chaudhry v. City*
22 *of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014).   Civil Code section 52.1 does not require a
23 showing of 'threats, intimidation, or coercion' separate and distinct from an underlying
24 constitutional violation, independent of the use of excessive force itself. *Rodriguez v. County*
25 *of Los Angeles*, 96 F.Supp. 3d 990,999 (C.D. Cal. 2014) (citing *Chaudhry*, 751 F.3d 1096.)
26 Defendants argue that pursuant to *Reese v. County of Sacramento*, 888 F.3d 1030 Cir.
27 (2018), plaintiffs' Section 52.1 claim is barred because there is no evidence of "a specific
28 intent to violate the arrestee's right to freedom from unreasonable seizure." (citing *Reese*,

888 F.3d at 1043). They are incorrect because a jury could conclude that the defendants' conduct constituted "reckless disregard" for Decedent's Fourth Amendment right, which would be "evidence of a specific intent to deprive" him of that right.   *Reese*, 888 F.3d at 1045.   Moreover, once defendants' VCT maneuver put Decedent in a place of relative safety with respect to him and the public, they shot him dead within scant seconds, and thereby violated his state constitutional rights. This use of gratuitous violence satisfies the elements required by California Civil Code section 52.1.   This Court should reject defendants' argument and evidence and affirm judgment on plaintiffs' state law claims.

### F. <u>Contrary To Defendants' Depiction, Dominguez Had Begun The Path To Recovery Prior To His Death</u>

While decedent Dominguez had prior gang affiliations, he had, in the years prior to his death, sought sobriety and a path away from the gang lifestyle.   Decedent was gainfully employed as a window installer, with Window Installation Specialists, from March 2014 to June 2016, at which time he was laid off. (*Crowley Supp. Dec.*, Exh. 14, Jessica Dominguez Depo., pg. 21, l. 12-14; pg. 22, l. 10-14.)   Decedent loved his job with Window Installation Specialists; he started as a glazer and became the foreman of his own installation team of 5 to 6 installers. (*Crowley Supp. Dec.*, Exh. 14, Jessica Dominguez Depo., pg. 22, l. 18-22.)   After Dominguez was laid off, he looked for work or watched the children as his wife, Jessica, attended school full-time at DeAnza College to become a nurse; Jessica attended DeAnza from 2015 to 2019. (*Crowley Supp. Dec.*, Exh. 14, Jessica Dominguez Depo., pg. 29, l. 14-25; pg. 30, l. 4-5.)

In an effort to reclaim sobriety, and just prior to his death, Dominguez voluntarily enrolled in Homes for Loving Fathers, an all-male, live-in rehabilitation program. (*Crowley Supp. Dec.*, Exh. 14, Jessica Dominguez Depo., pg. 48, l. 21-22.)   Homes for Loving Fathers was a Christian home for men's sober living and Dominguez entered the program because he had relapsed in his drinking and wanted help to get sober. (*Crowley Supp. Dec.*, Exh. 14, Jessica Dominguez Depo., pg. 50, l. 4-10; pg. 51, l. 9-11; pg. 53, l. 2-4.) While Dominguez resided at Homes for Loving Fathers, he would receive "passes" to visit

his family, and Jessica and the children also visited Dominguez at Homes more than once a week.   (*Crowley Supp. Dec.*, Exh. 14, Jessica Dominguez Depo., pg. 55, l. 14-18; pg. 55, l. 25 through pg. 56, l. 1-12.)   At some point, Dominguez left Homes for Loving Fathers, and unfortunately, Jessica did not know of this fact until after the shooting.   (*Crowley Supp. Dec.*, Exh. 14, Jessica Dominguez Depo., pg. 57, l. 8-16.)

## <u>CONCLUSION</u>

Plaintiffs respectfully request the Court grant their Motion and find as a matter of law that (1) the seizure of Dominguez and the lethal force used against decedent violated the Fourth and Fourteenth Amendments to the United States Constitution, and California Civil Code sections 51.7 and 52.1; (2) the City of San Jose, San Jose Police Department and Officer Pina are liable; and (3) plaintiffs may recover damages proximately caused by defendants' violation of Dominguez' well-recognized constitutional rights.

Dated:   April 1, 2022

JOHN KEVIN CROWLEY
Attorney for Plaintiffs,
**JESSICA DOMINGUEZ INDIVIDUALLY AND JESSICA DOMINGUEZ AS GUARDIAN AD LITEM FOR JAD (1), JAD (2) and JAD (3)**

PLAINTIFFS' COMBINED BRIEF RE SUMMARY JUDGMENT MOTIONS-5:18-CV-04826 BLM