NORA FRIMANN, City Attorney (93249)
ARDELL JOHNSON, Assistant City Attorney (95340)
MAREN CLOUSE, Chief Deputy City Attorney (228726)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California 95113-1905
Telephone Number: (408) 535-1900
Facsimile Number: (408) 998-3131
E-Mail Address: cao.main@sanjoseca.gov

Attorneys for CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JESSICA DOMINGUEZ, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR JACOB DOMINGUEZ, JORDAN DOMINGUEZ AND J,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT and DOE POLICE OFFICERS 1, 2 AND 3, and DOES, inclusive,<br><br>Defendants. | Case Number: 5:18-cv-04826-BLF<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: April 21, 2022<br>Time: 9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge: Hon. Beth Labson Freeman<br><br>Trial Date: August 22, 2022 |

## TABLE OF CONTENTS

**I. INTRODUCTION** .......... 1

**II. ARGUMENT** .......... 2

**A. UNDISPUTED FACTS** .......... 2

**B. PLAINTIFFS' FACTS** .......... 2

**1. Unsupported Assertions** .......... 2

**a. Whether Dominguez committed a crime** .......... 2

**b. Whether officers reasonably believed Dominguez was armed** .......... 3

**c. Whether Dominguez threatened officers** .......... 4

**d. The position of Dominguez's hands and arms when Officer Pina fired** .......... 5

**e. When Officer Pina fired** .......... 6

**2. Immaterial Facts** .......... 6

**a. Whether Officer Pina could have seen Dominguez's arm as he fired** .......... 6

**b. Whether Dominguez was in fact armed** .......... 7

**c. Dominguez's travel plans** .......... 8

**C. USE OF DEADLY FORCE WAS REASONABLE** .......... 8

**D. QUALIFIED IMMUNITY** .......... 11

**E. NO FACTS SUPPORT THE CITY'S LIABILITY** .......... 14

***1. Monell* Liability** .......... 14

***2. Respondeat Superior* Liability** .......... 16

**III. CONCLUSION** .......... 16

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.K.H. v. City of Tustin*,
837 F.3d 1005 (9th Cir. 2016) ....................10

*Booke v. Cty. of Fresno*,
98 F. Supp. 3d 1103 (E.D. Cal. 2015) ....................14

*Burrell v. McIlroy*,
464 F.3d 853 (9th Cir. 2006) ....................4

*Camreta v. Greene*,
563 U.S. 692 (2011) ....................12

*City of Tahlequah, Okla. v. Bond*,
142 S. Ct. 9 (2021) ....................11

*Cruz v. City of Anaheim*,
765 F.3d 1076 (9th Cir. 2014) ....................11

*Curnow v. Ridgecrest Police*,
952 F.2d 321 (9th Cir. 1991) ....................10

*Deorle v. Rutherford*,
272 F.3d 1272 (9th Cir. 2001) ....................10

*Drummond v. City of Anaheim*,
343 F.3d 1052 (9th Cir. 2003) ....................13

*Evans v. Skolnik*,
997 F.3d 1060 (9th Cir. 2021) ....................12

*Glenn v. Washington Cty.*,
673 F.3d 864 (9th Cir. 2011) ....................13

*Graham v. Connor*,
490 U.S. 386 (1989) ....................9, 10, 11

*Hammer v. Gross*,
932 F.2d 842 (9th Cir. 1991) ....................10

*Harris v. Roderick*,
126 F.3d 1189 (9th Cir. 1997) ....................10

*Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972 (D. Ariz. 2012) .......... 12, 13

*Hunter v. Cty. of Sacramento*, 652 F.3d 1225 (9th Cir. 2011) .......... 15

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) .......... 9

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) .......... 11

*LaLonde v. Cty. of Riverside*, 204 F.3d 947 (9th Cir. 2000) .......... 15

*Luchtel v. Hagemann*, 623 F.3d 975 (9th Cir. 2010) .......... 13

*Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2010) .......... 13

*Perrin v. Gentner*, 177 F. Supp. 2d 1115 (D. Nev. 2001) .......... 12

*Reese v. Cty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) .......... 16

*S.B. v. Cty. of San Diego*, 864 F.3d 1010 (9th Cir. 2017) .......... 12

*Tennessee v. Garner*, 471 U.S. 1 (1985) .......... 9

*Venegas v. Cty. of Los Angeles*, 32 Cal. 4th 820 (2004) .......... 16

Statutes

Cal. Civ. Code § 52.1 .......... 16

## I. INTRODUCTION

Plaintiffs attempt to secure summary judgment based on a rendition of facts that fails to demonstrate any genuine or material dispute. The undisputed, material facts show that Officer Pina reacted to an imminent deadly threat. Officer Pina sought to apprehend a suspect he was told was armed with a revolver; the suspect reluctantly complied with Officer Pina's commands to put his hands up; Officer Pina told the suspect to keep his hands up or he would be shot; the suspect responded, "f**k you" and "shoot me"; the suspect then dropped his hands and leaned forward; Officer Pina believed the suspect was retrieving a gun and was about to shoot him; Officer Pina aimed at the suspect while he was leaning down and shot him while he was coming back up, before the suspect could shoot him. Those are the circumstances Officer Pina was confronted with and some of the information known to him at the time about the suspect. Those are the facts that govern the reasonableness analysis. On those facts, it was reasonable for Officer Pina to use deadly force to protect himself and other officers.

The facts on which Plaintiffs rely do not affect the reasonableness of Officer Pina's reaction to suspect Jacob Dominguez. That it was later determined that Dominguez did not actually have a gun available to him does not change the calculus. He did not know at the time that, contrary to the information he had, there was no gun in the vehicle. Nor does it affect the reasonableness of Officer Pina's reaction that one of Dominguez's arms was raised above the car door's window frame when one of the two bullets entered the car. Officer Pina had already made the reasonable decision to shoot to protect himself, and there is no evidence that he should have been able to perceive, assess, and react to the position of Dominguez's arm. And there is no evidence that the position of Dominguez's arm, even if Officer Pina had been able to perceive it, would have done anything to dispel the danger that Officer Pina perceived.

The Court should reject Plaintiffs' effort to apply hindsight to the rapidly unfolding circumstances that Officer Pina reacted to. His use of force was reasonable under the

circumstances. Summary judgment is therefore warranted in Defendants' favor, not Plaintiffs'.

## II. ARGUMENT

### A. UNDISPUTED FACTS

Plaintiffs do not dispute the following key facts, for which Defendants provided evidence in their Motion for Summary Judgment:

Officer Pina and other Covert Response Unit ("CRU") officers had a valid warrant for Dominguez's arrest based on his involvement in an armed robbery on September 12, 2017.

When CRU officers arrested Dominguez's accomplices on September 13, 2017, Dominguez drove by the scene.

The gun used in the September 12 armed robbery was not recovered during the September 13 arrests and was still outstanding on September 15, 2017.

On September 15, 2017, Officer Pina and other CRU officers were briefed that Dominguez was believed to be armed with a revolver.

CRU officers followed Dominguez as he drove through San Jose on September 15, 2017; his driving indicated he believed he was being followed.

When CRU officers implemented the Vehicle Containment Technique to take Dominguez into custody, they activated their lights and sirens.

When Dominguez eventually raised his hands in response to police commands to do so, Officer Pina warned him not to move or he would be shot.

Dominguez told Officer Pina "f**k you" and "shoot me," then quickly dropped his hands and leaned down and forward in the driver's seat where he sat.

### B. PLAINTIFFS' FACTS

#### 1. Unsupported Assertions

##### a. Whether Dominguez committed a crime

Plaintiffs state that "there is a dispute as to whether or not Decedent had committed any crime." (Pls.' Mot. at 20.) But officers had a warrant for Dominguez's arrest for felony

robbery. (Neumer Decl. Ex. 5.) And officers tailed Dominguez from the scene of that robbery and saw him drive by the scene where his accomplices were arrested the following day. (Clouse Decl. Ex. 6 Pina Depo. at 29:15-21; 30:5-10; Clouse Decl. Ex. 7 Lopez Decl. at 59:15-60:11.) Plaintiffs offer no basis to question whether Dominguez was in fact involved with the robbery for which CRU officers sought to arrest him.

**b. Whether officers reasonably believed Dominguez was armed**

Plaintiffs repeatedly misstate the evidence about officers' information that Dominguez was armed on September 15, 2017. For instance, Plaintiff writes that "Defendants lacked credible information that Dominguez could have been armed at the time he was killed." (Pls.' Mot. at 25.) But the undisputed evidence is that officers were advised by the briefing officer that he had information from a source that Dominguez was armed with a revolver. (Clouse Decl. Ex. 6 Pina Depo. at 55:16-56:6; Clouse Decl. Ex. 8 Ferguson Depo. at 74:2-23.) Plaintiffs do not address that evidence or offer any reason why the officers should have disbelieved the source of that information.

Elsewhere, Plaintiffs erroneously suggest that "officers were advised that the suspect *may be armed* with a revolver." (Pls.' Mot. at 7 (emphasis added).) As stated above, officers had specific information that Dominguez was armed, with a specific weapon. Moreover, in support of their erroneous assertion, Plaintiffs cite the Santa Clara County District Attorney's Report (Crowley Decl. Ex. 9 ("DA Report")), without citation to any page. In fact, the DA Report identifies that officers were told in briefing that Dominguez was "believed to be armed with a revolver." (*Id.* at 4.)

In addition, Dominguez was involved in an armed robbery on September 12, 2017, for which officers sought to arrest him. (*See* Neumer Decl. Ex. 5.) In that robbery, Dominguez's accomplice used a gun to rob a gas station. (Clouse Decl. Ex. 8 Ferguson Depo. at 20:8-14.) It is undisputed that the gun used in that armed robbery had not been recovered at the time officers tried to arrest Dominguez on September 15, 2017, despite the fact that officers arrested Dominguez's accomplices on September 13. (Clouse Decl. Ex. 6 Pina Depo. at 37:25-38:1, 40:2-17.) Officer Pina and other CRU officers participated

in that arrest and were aware the gun was outstanding. (*Id.*) Added to that was officers' awareness that Dominguez was a gang member, which provided another reason to believe the reports that he possessed a gun. (Clouse Decl. Ex. 7 Lopez Depo. at 36:14-20.)

The information they had led officers to believe Dominguez was armed on the day they tried to apprehend him. Where a subject is suspected of a gun crime and sources tell officers the suspect is indeed in possession of a gun, officers "may be permitted to act on the assumption that he may be armed and dangerous." *Burrell v. McIlroy*, 464 F.3d 853, 858 (9th Cir. 2006). Plaintiffs offer no reason why it was unreasonable for officers to approach Dominguez with the belief he was armed.

**c. Whether Dominguez threatened officers**

Plaintiffs repeatedly argue that Dominguez did not threaten officers. They even claim that "[a]t the time Dominguez was shot, he was complying with the command of Officer Pina for about ten (10) seconds with both his hands above his shoulders, at about ear level." (Pls.' Mot. at 15.) The testimony of Officer Ferguson that Plaintiffs cite does not support that claim. (Crowley Decl. Ex. 2 Ferguson Depo. at 71:23-72:12, 73:16-21, 78:7-11.) Officer Ferguson's testimony is that Dominguez had his hands up just far enough that officers could see them in the window, and that was the case for maybe ten seconds. (*Id.*) Officer Ferguson did not testify that Dominguez's hands were up when Officer Pina fired. To the contrary, Officer Ferguson testified that Dominguez had been complying by putting his hands up, but then Dominguez dropped his hands and leaned forward, as if reaching for something, then he heard Officer Pina's rifle fired. (Clouse Decl. Ex. 8 Ferguson Depo. at 79:16-80:2; 81:12-13.) In other words, Dominguez stopped complying with officers' commands to keep his hands up, then was shot. (*See* Ferguson Decl. ¶ 6; Lopez Decl. ¶ 6; Clouse Decl. Ex. 6 Pina Depo. at 95:20-97:10.)

Dominguez threatened officers when he dropped his hands and leaned forward, appearing to reach for something. Plaintiffs do not dispute that Dominguez made that movement. Nor do they dispute that Dominguez made that movement after the following

sequence of events: officers ordered him to put his hands up; he reluctantly put his hands at shoulder level; Officer Pina told him not to move or he would be shot; Dominguez replied, "F**k you, bitch, shoot me." (Clouse Decl. Ex. 6 Pina Depo. at 68:11-15; 79:9-80:16; 83:16-25; 91:13-92:13.) When Dominguez then dropped his hands out of sight and leaned forward, Dominguez was an imminent deadly threat to officers.

**d. The position of Dominguez's hands and arms when Officer Pina fired**

Plaintiffs make numerous statements about the position of Dominguez's hands and arms when shots were fired. They repeatedly claim his arm was "raised" and make claims that his hands were "up." (*See, e.g.*, Pls.' Mot. at 11, 13.) To be clear, the only evidence is that the left sleeve of Dominguez's sweatshirt would have been above the bottom window frame by the time the second shot was fired. (For the reasons explained in Defendants' Motion and below, whether it was the first or second shot that went through the sweatshirt sleeve is immaterial.) There is no further evidence about the position of Dominguez's left arm at the time the bullet impacted the sweatshirt, for instance whether his arm was parallel or perpendicular to the window frame, or how high above the window frame it was. And there is no evidence about the position of Dominguez's hand at the time the bullet passed through the sweatshirt, for instance whether his hand was raised or instead dropped down below the level of the window. Plaintiffs' expert testified only that, in his opinion, Dominguez's left arm had to be above the level of the window frame. He offered no further opinion about the position of Dominguez's left arm or his hand. (Clouse Decl. Ex. 9 Balash Depo. at 21:11-21.) There is no evidence at all about the position of Dominguez's right arm or hand.

Plaintiffs assert: "A fact agreed to by both Plaintiffs' and Defendants' expert witnesses is that Dominguez had his hands raised above the steering wheel and his left upper arm above the driver's side windowsill door when Officer Pina put one .225 caliber bullet through the driver's side window into the left side jaw area of Dominguez, resulting in his fatal injuries." (Pls.' Mot. at 11.) Plaintiffs cite no evidence in support of that claim, and it is inaccurate in multiple respects. Most significantly, neither party's expert expressed any

opinion or referred to any evidence about the position of Dominguez's hands at the time shots were fired. Neither expert identified any evidence or offered any opinion about the position of Dominguez's right arm so as to support any statement about where his right hand was at the time.

Each expert stated that Dominguez's left arm would have been above the level of the window frame at the time the shot that went through the sweatshirt was fired. But the experts do not agree whether the shot that went through the sweatshirt is the same that impacted Dominguez's jaw. Plaintiffs' expert believes the first shot struck the window glass and then Dominguez's jaw, and that the second shot passed through the sweatshirt. (Clouse Decl. Ex. 9 Balash Depo. at 19:10-14, 19:24-20:14.) Accordingly, contrary to Plaintiffs' claim, Plaintiffs' expert has no opinion about the position of Dominguez's arm at the time Officer Pina fired the shot that struck Dominguez and caused his death. (*Id.* at 21:6-10.)

**e. When Officer Pina fired**

Officer Pina testified that he fired as Dominguez was coming back up after dropping his hands and leaning forward. (Clouse Decl. Ex. 6 Pina Depo. at 97:3-10.) Officer Pina aimed while Dominguez was leaning forward, then fired as he was coming back up. (*Id.*) Plaintiffs argue that "[i]f Dominguez had been shot as he was leaning forward with both his arms and hands out of sight as though going for a gun, as Officer Pina asserts, Dominguez's body would have fallen forward." (Pls.' Mot. at 14.) But that is not what Officer Pina asserts. Plaintiffs identify nowhere in the record where he did. Dominguez's position following the shooting—leaning back in the driver's seat—is consistent with Officer Pina's testimony that Dominguez was shot as he was moving back to an upright position.

**2. Immaterial Facts**

**a. Whether Officer Pina could have seen Dominguez's arm as he fired**

Plaintiffs rely on their claims about the position of Dominguez's left arm at the time he was shot to argue that Officer Pina did not reasonably perceive an imminent threat. But because Dominguez's movement signaled an imminent threat, the precise location of his

arm at the time Officer Pina fired is not material to the reasonableness of his decision to use deadly force. As Officer Pina explained, he was looking through his rifle sights when he fired. And he had been looking through the rifle sights leading up to when he fired because, when Dominguez dropped his hands and leaned forward, Officer Pina perceived an imminent deadly threat and took steps to protect himself. (Clouse Decl. Ex. 6 Pina Depo. at 95:23-96:7; 97:3-10.) Officer Pina was then looking at Dominguez from the shoulders up. (*Id.* at 96:25-97:2.) As Defendants' expert explained, once Officer Pina was looking through his sights, it would not be expected that he could see Dominguez's arm. (Clouse Decl. Ex. 11 Black Report at 24.)

Moreover, if he was to protect himself, Officer Pina did not have time to determine the position of Dominguez's arm and whether Dominguez had indeed armed himself. (*Id.* at 21, 23.) If Dominguez sat up pointing a gun at Officer Pina, Dominguez could have fired at Officer Pina before Officer Pina could react to protect himself and his fellow officers. (*Id.* at 23-24.) As explained in Defendants' Motion for Summary Judgment, if an officer perceives an imminent deadly threat, the law does not require him to wait for the threat to materialize before using deadly force.

**b. Whether Dominguez was in fact armed**

There is no dispute that Dominguez was not in possession of a gun when officers initiated the Vehicle Containment Technique to apprehend him. But officers had information that Dominguez was armed with a revolver, as well as other information that made it reasonable for them to believe he was armed. Therefore, whether Dominguez was in fact unarmed is not material because there is no evidence officers knew Dominguez did not have a gun within reach when they reacted with deadly force. That they had not seen the gun while following Dominguez that day does not undermine officers' belief that Dominguez was armed. If anything, it supports officers' perception that Dominguez was reaching for a concealed gun to shoot them.

/ / /

/ / /

**c. Dominguez's travel plans**

Without any citation to the record, Plaintiffs state that Dominguez booked a one-way flight from the Bay Area to Ohio. (Pls.' Mot. at 7.) Plaintiffs also state, again without citation, that Dominguez was driving a car rented from the San Jose Airport. (*Id.*) Plaintiffs give no indication that Officer Pina or other officers tasked with apprehending Dominguez knew any of those facts. Nor do they give any indication why those facts matter to the reasonableness of officer's actions in attempting to apprehend Dominguez and reacting to the threat he posed.

**C. USE OF DEADLY FORCE WAS REASONABLE**

Plaintiffs do not dispute that an imminent deadly threat justifies the use of deadly force. (Similarly, Defendants do not dispute that deadly force should only be used in defense of life and under the direst of circumstances. (*See* Pls.' Mot. at 15.))[1] Instead, they rely on unsupported facts and hindsight to argue that Officer Pina's perception of an imminent deadly threat was unreasonable.

First, Plaintiffs argue that Officer Pina did not reasonably perceive a deadly threat because Dominguez "had his arm up" when he was shot. (Pls.' Mot. at 16.) As explained above, the evidence is not that Dominguez's arm was "up." Rather, the evidence is only that Dominguez's sweatshirt sleeve was above the bottom of the car door window frame. There is no evidence that Dominguez's arm was up in any position that would have indicated to Officer Pina he was not a threat. That is particularly so in light of the undisputed evidence that Dominguez had just told officers "f**k you" and "shoot me," then

---

[1] Defendants note, however, that Officer Ferguson did not testify that this situation did not call for the use of lethal force, as Plaintiffs' citations seem to indicate. (*See* Pls.' Mot. at 15:10-11 (citing Crowley Decl. Ex. 2 Ferguson Depo. at 89:10-13).) To the contrary, Officer Ferguson testified that he believed deadly force was the only option in response to Dominguez's movement to drop his hands and lean forward. (Clouse Decl. Ex. 8 Ferguson Depo at 83:7-10.)

dropped his hands and leaned forward, in defiance of officers' commands to keep his hands up. Defendants' Motion provides authority holding that officers faced with those circumstances are not required to wait to see whether a suspect in fact pulls a gun on them.

Next, Plaintiffs argue the shooting was unjustified because it was based on an erroneous believe that Dominguez was armed. But Officer Pina did not shoot Dominguez merely because he believed he was armed. (Pls.' Mot. at 18.) Officer Pina did not shoot Dominguez when Dominguez initially did not comply with commands, though he believed Dominguez was armed at the time. He did not shoot Dominguez when Dominguez said, "f**k you, shoot me," though he believed Dominguez was armed then too. Officer Pina shot Dominguez when he moved in a way that indicated he was retrieving the weapon Officer Pina believed he possessed. Officer Pina acted in response to what he perceived, based on the totality of the circumstances known to him, was an imminent deadly threat.

As explained above, the fact that it was ultimately determined that Dominguez was unarmed is not dispositive. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.' A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). What Officer Pina knew at the time was that Dominguez had a revolver with him.

Plaintiffs also suggest that the use of force was unreasonable because the vehicle Dominguez was driving was pinned in. (*See, e.g.*, Pls.' Mot. at 21.) But Plaintiffs offer no evidence or reason why that would matter in the face of an apparent effort to retrieve a gun and shoot officers. If an officer reasonably believes he is about to be shot, it would not matter that the suspect is otherwise contained.

*Tennessee v. Garner*, 471 U.S. 1 (1985), does not advance the analysis. *Garner* addressed the circumstances in which officers could justifiably use deadly force to prevent

the escape of a suspect who was not believed to be armed or dangerous to the officer. *Id.* at 3. Dominguez was believed to be both.

Nor does *Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997), help Plaintiffs. *Harris* reiterated the principle applicable here: "Law enforcement officers may not shoot to kill unless, at a minimum, the suspect presents an immediate threat to the officer …." *Id.* at 1201. In *Harris*, the Ninth Circuit reasoned that, "*Graham* 's totality of the circumstances test does not permit the use of deadly force to kill a suspect who is running back to a cabin where he is temporarily staying and who makes no threatening movement of any kind." *Id.* as 1203. Here, in contrast, it is undisputed that officers had specific information that Dominguez was armed and that Dominguez made a threatening move that prompted officers to fire.

For the same reason, this case is distinguishable from the others Plaintiffs cite. In *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991), plaintiffs introduced a sworn statement that, though the decedent had a weapon, he did not point it at officers and was not facing officers when they shot him. And in *A.K.H. v. City of Tustin*, 837 F.3d 1005, 1012-13 (9th Cir. 2016), an officer shot a suspect when he took his hand out of his pocket in response to the officer's command. The officer did not warn the suspect he would shoot. *Id.* More significantly, for purposes of analysis in this case, the officer had no information the suspect was armed, or that he had a history of gun possession. *Id.*

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), has even less to do with the facts at issue here. In *Deorle*, officers used a non-lethal beanbag in an attempt to subdue a subject who was suicidal and behaving erratically. *Id.* The Ninth Circuit reasoned, however, that the use of force was unreasonable because the subject was known to be unarmed at the time, had not committed any serious crime, and had generally been obeying officers' instructions. *Id.* at 1275. Dominguez, who was wanted for armed robbery, disobeyed officers' instructions and appeared to reach for a weapon officers were told he had. Those are objective factors supporting Officer Pina's belief that Dominguez was retrieving a gun and was about to shoot him.

Finally, Plaintiffs' citation to *Hammer v. Gross*, 932 F.2d 842 (9th Cir. 1991), is wholly inapposite. (Pls.' Mot. at 24.) *Hammer* addressed whether police could forcibly extract a blood sample from a suspected drunk driver. *Id.* Judge Kozinski's considerations about the need to employ consensual methods to gather evidence, where available, have no bearing on the use of lethal force in reaction to a perceived deadly threat.

Plaintiffs assert that "[n]o governmental interest supports the use of unnecessary force." (Pls.' Mot. at 24.) That tautology does not address whether it was reasonable for Officer Pina to believe, based on the circumstances, that Dominguez was about to shoot him or another officer. Under the circumstances, and based on the information Officer Pina had and what he had witnessed of Dominguez's behavior, the use of deadly force was the necessary and only reasonable reaction to the threat Dominguez posed.

**D. QUALIFIED IMMUNITY**

To defeat qualified immunity, Plaintiffs would have to identify a case in which an officer faced with similar circumstances as those that confronted Officer Pina was found to have violated the Constitution. They do not.

Plaintiffs begin by arguing that "Officer Pina is not entitled to qualified immunity because a suspect has the established right not to be seized with deadly force, when he is not … a reasonable threat …." (Pls.' Mot. at 25.) But that merely states the Constitutional standard. The Supreme Court "ha[s] repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021). "[T]he general rules set forth in *Garner* and *Graham* do not by themselves create clearly established law." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (internal quotations omitted). It is insufficient to say that Officer Pina violated Dominguez's right to be free from unreasonable force.

Plaintiffs proceed to identify several cases, but none of them helps Plaintiffs. In *Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014), the Ninth Circuit considered the shooting of a suspect who officers were told was carrying a gun in his waistband and had vowed not to go back to prison. According to officers, the suspect ignored police

commands to get on the ground and instead reached for his waistband. *Id.* It was ultimately determined the suspect was unarmed when he was shot. *Id.* The Ninth Circuit explained that "[i]t would be unquestionably reasonable for police to shoot a suspect in [decedent]'s position if he reaches for a gun in his waistband, *or even if he reaches there for some other reason*. Given [decedent]'s dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire." *Id.* at 1079 (emphasis added). Applying that reasoning to this case, *Cruz* makes clear that it was reasonable for Officer Pina to react to Dominguez's threatening movement by shooting him, regardless whether Dominguez sat back up with a gun in his hand. *Cruz* defeats Plaintiffs' argument that this was an "obvious" case of illegality. The difference between this case and *Cruz* is that other evidence undermined officers' statement that the suspect reached for his waistband. *Id.* at 1080. No such evidence exists here, and Plaintiffs do not dispute that Dominguez dropped his hands and leaned forward, as officers recounted.

*Perrin v. Gentner*, 177 F. Supp. 2d 1115, 1117 (D. Nev. 2001), addressed an officer who followed a suspicious person, who responded to the officer's commands by reaching toward his waistline. The officer fired multiple volleys without warning the suspect he would shoot. *Id.* The officer had no information the suspect was armed or had been involved in any crime. *Id.* at 1117-18. Under those circumstances, there was a question of fact whether the officer's use of deadly force was reasonable. *Id.* at 1120-21. The opposite circumstances applied to Dominguez's apprehension. Even if the facts were more similar, *Perrin* is a district court case and therefore does not clearly establish the law. *See*, *e.g.*, *Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021) ("district court decisions … do not necessarily settle constitutional standards") (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011)); *S.B. v. County of San Diego*, 864 F.3d 1010, 1016 (9th Cir. 2017) (rejecting argument that two district court decisions provided clearly established law).

Plaintiffs' citation to *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972 (D. Ariz. 2012), is difficult to understand. Officers in that case shot a mentally ill suspect who had

earlier threatened to throw his young child out a window. *Id.* During a stand-off with police, the suspect lifted the child over his head, prompting officers to fire without warning. *Id.* The facts are too different from those in this case for *Hulstedt* to provide any meaningful comparison. The same is true of *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2010), which considered whether it was reasonable for officers to deploy tasers on two women who got in heated arguments with police.

Plaintiffs point to *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011), for its observation that a subject does not necessarily pose an immediate deadly threat because he possesses a weapon. (Pls.' Mot. at 26.) But, as explained repeatedly, officers did not view Dominguez as a deadly threat merely because they believed he had a gun. In any case, *Glenn* is also too dissimilar from this case to clearly establish whether Officer Pina could use force in response to Dominguez's movement. The subject in *Glenn* was holding a knife to his own throat, threatening suicide, when officers shot him with a beanbag. *Glenn*, 673 F.3d at 869. The subject then staggered toward his home, with his parents inside; officers shot and killed him. *Id.* That case does not inform an officer whether he is justified in using deadly force when a suspect believed to be armed stops complying with commands, tells the officer to "shoot him," and drops his hands and leans forward.

Finally, Plaintiffs argue that a suspect's apparent emotional or mental instability should factor into the reasonableness inquiry. (Pls.' Mot. at 26.) But Plaintiffs offer no explanation how that principle applies to this case. Nor is it clear how any of the cases Plaintiffs cite for this point advance their position. In *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010), the Ninth Circuit concluded it was reasonable for officers to use force to subdue a woman whose cocaine use rendered her psychotic because she grabbed a bystander and knocked her down, then fought officers who tried to restrain her. *Id.* at 978, 980. In *Drummond v. City of Anaheim*, 343 F.3d 1052, 1061 (9th Cir. 2003), officers were not entitled to qualified immunity where they "allegedly crushed [the subject] against the ground by pressing their weight on his neck and torso, and continu[ed] to do so despite his

repeated cries for air, and despite the fact that his hands were cuffed behind his back and he was offering no resistance." Officers were summoned by a neighbor who worried the subject would hurt himself. *Id.* And officers had encountered the subject just the night before, when they were asked to help get him to the hospital for treatment because he was mentally ill and hallucinating. *Id.* Those facts bear no resemblance to this case. The same is true of *Booke v. County of Fresno*, 98 F. Supp. 3d 1103 (E.D. Cal. 2015), where officers responded to a call about a suicidal subject and talked to him for several minutes while pointing less lethal projectiles at him before he appeared to charge at officers, prompting several to shoot him with rifles.

Plaintiffs' effort to skew the qualified immunity analysis with hindsight and avoidance of the facts should be rejected. (*See* Pls.' Mot. at 25.) Plaintiffs emphasize repeatedly that Dominguez was unarmed. (*Id.*) As explained, Officer Pina did not know that to be the case, and the information he had was to the contrary. Plaintiffs therefore cannot rely on the fact that Dominguez did not possess a weapon, no weapon was found in the car, officers did not observe him with a weapon, and that he was unarmed. (*Id.*) And Plaintiffs' assertion that officers "lacked credible information that Dominguez could have been armed at the time he was killed" ignores the facts. (*Id.*) Finally, Plaintiffs' assertion that officers were not in danger because Dominguez's car was pinned in (*id.*) entirely ignores Dominguez's undisputed action indicating he was retrieving a weapon and about to fire at officers, as well as his conduct leading up to it that led officers to believe Dominguez posed an imminent deadly threat. In short, Plaintiffs identify no case where an officer was held to have violated the Fourth Amendment in circumstances like those Officer Pina faced.

## E. NO FACTS SUPPORT THE CITY'S LIABILITY

### 1. *Monell* Liability

Plaintiffs acknowledge that, for the City to be liable for a violation of Section 1983, they must prove that the alleged Constitutional violation was caused by a custom, practice, or policy of the City or the San Jose Police Department. (Pls.' Mot. at 27.) However, Plaintiffs identify no custom, practice, or policy at issue. It is not enough to say that the

officers testified their actions were within Police Department policy. (Pls.' Mot. at 27-28.) The officers' testimony does not help Plaintiffs on this point because they did not testify about any policy that caused their conduct. (*See* Pls.' Mot. at 28 (citing excerpts of Pina Depo., Ferguson Depo., Lopez Depo.) Rather, the officers testified about training on points that are not in dispute here, including that the use of deadly force requires an imminent threat based on the totality of the circumstances and that deadly force is the most serious level of force an officer can employ. (Crowley Decl. Ex. 1 Pina Depo. at 18:13-19:24; Crowley Decl. Ex. 2 Ferguson Depo. at 90:1-25.)

Plaintiffs cite *LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000), to support their argument that it is enough that the officers testify their conduct was in compliance with department policies. (Pls.' Mot. at 28.) But the officer in *LaLonde* testified about a specific policy for handcuffing and that he applied that policy when handcuffing the plaintiff, which was the alleged cause of the Constitutional violation. *LaLonde*, 204 F.3d at 961. Plaintiffs have not identified any such nexus between any policy of the City or Police Department and officers' actions here. The only applicable policy would seem to be the Police Department's use of force policy, but no evidence has been adduced that its policy is unconstitutional. Nor has any evidence been developed that the use of force policy, or any other policy, of the Police Department was the "moving force" behind the actions Plaintiffs challenge.

Plaintiffs also argue that "the actions of Defendant Pina were accepted practice at the SJPD." (Pls.' Mot. at 28.) But for Plaintiffs to show that the City is liable for an unconstitutional custom or practice, they would have to show a pattern of similar incidents. *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) ("[L]iability for improper custom may not be predicated on isolated or sporadic incidents.") (quotation omitted). There is no such evidence.

Nor is there any evidence that supposed ratification by the Santa Clara County District Attorney, even if ratification occurred, could be attributed to the City of San Jose. (*See* Pls.' Mot. at 28.) Plaintiffs refer to the DA Report, but there is no indication in the

report that the City of San Jose or the Police Department prepared the report or signed off on it. (*See* Crowley Decl. Ex. 9.) In addition, the DA Report is hearsay, and Plaintiffs offer no basis for considering it in support of their Motion for Summary Judgment.

**2. *Respondeat Superior* Liability**

For the City to be liable on a theory of respondeat superior, Plaintiffs would have to be able to prove one of their state law claims. For the reasons explained in Defendants' Motion, they have no evidence to support either one. Plaintiffs claim that "[t]he use of excessive force that killed Dominguez entitles Plaintiffs to relief under California Civil Code section 52.1." (Pls.' Mot. at 28.) Plaintiffs cite *Venegas v. County of Los Angeles*, 32 Cal. 4th 820 (2004), for that proposition. But *Venegas* does not hold that, or even address whether, an excessive use of force necessarily constitutes a violation of Civil Code section 52.1. As explained in Defendants' Motion, a Bane Act violation requires more than use of excessive force; it requires evidence that the officer intended to use more force than he needed. *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018). The only evidence here is that Officer Pina believed Dominguez was about to shoot him.

## III. CONCLUSION

For the foregoing reasons, neither Officer Pina nor the City of San Jose is liable based on the shooting of Jacob Dominguez on September 15, 2017. Officer Pina's use of deadly force in reaction to the immediate deadly threat Dominguez presented was reasonable. Defendants therefore respectfully request that the Court deny Plaintiffs' Motion for Summary Judgment and grant Defendants' Motion for Summary Judgment and render judgment in Defendants' favor on all Plaintiffs' claims.

Respectfully submitted,

Dated: April 1, 2022

NORA FRIMANN, City Attorney

By: *__/s/ Maren J. Clouse__*
MAREN CLOUSE
Chief Deputy City Attorney

Attorneys for DEFENDANTS