JOHN KEVIN CROWLEY (SBN: 88189)
**ATTORNEY AT LAW**
125 S. Market Street, Suite 1200
San Jose, California 95113-2288
Telephone: (408) 288-8100
Facsimile:   (408) 288-9409
E-mail: jkclaw@pacbell.net

Attorney for Plaintiffs
**JESSICA DOMINGUEZ INDIVIDUALLY
AND JESSICA DOMINGUEZ AS GUARDIAN
AD LITEM FOR JAD (1), JAD (2)
AND JAD (3)**

NORA FRIMANN, City Attorney (93249)
ARDELL JOHNSON, Chief Deputy City Attorney (95340)
MAREN J. CLOUSE, Chief Deputy City Attorney (228726)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San Jose, California 95113-1905
Telephone Number: (408) 535-1900
Facsimile Number: (408) 998-3131
E-Mail Address: cao.main@sanjoseca.gov

**Attorneys for CITY OF SAN JOSE
and OFFICER MICHAEL PINA**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JESSICA DOMINGUEZ INDIVIDUALLY AND JESSICA DOMINGUEZ AS GUARDIAN AD LITEM FOR JAD (1), JAD (2) AND JAD (3), <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT, MICHAEL PINA, AND DOE POLICE OFFICERS 2 through 5, <br><br> Defendants. | Case No.: 5:18-cv-04826 BLF <br><br> **JOINT PRETRIAL CONFERENCE STATEMENT AND ORDER** <br><br> DATE:  July 28, 2022 <br> TIME:  1:30 p.m. <br> DEPT.:  3, Fifth Floor <br> JUDGE:  Hon. Beth Labson Freeman <br><br> Trial Date: August 22, 2022 |

Pursuant to the United States District Court, Northern District of California, Standing Order re Civil Jury Trials, Section II, the parties to this action jointly submit the following as and for their Joint Pretrial Statement and Order.

**A.      The Action:**

**1. The Parties:**        Plaintiff, JESSICA DOMINGUEZ, is the wife of JACOB ARTURO DOMINGUEZ and the mother of Jacob's minor children, and is the legal guardian for them, and brings this action both on her own behalf and as guardian on behalf of JAD (1), JAD (2) and JAD (3).   JESSICA DOMINGUEZ INDIVIDUALLY AND JESSICA DOMINGUEZ AS GUARDIAN AD LITEM FOR JAD (1), JAD (2) and JAD (3) are the surviving heirs of JACOB ARTURO DOMINGUEZ. Defendants dispute that Jacob Dominguez's children are proper parties.

Defendant, CITY OF SAN JOSE ("City"), is a municipal corporation located in the County of Santa Clara, State of California. The City maintains a police department, which acts as its agent in the area of law enforcement. Defendant, MICHAEL PINA, is an individual and is employed as a police officer by the City, and at all times relevant to the incident was acting in the course and scope of that employment and was acting under color of law.

**2. Substance of the Action:**        The operative pleadings are the Amended Complaint for Damages and Request for Jury Trial (Docket 37), and Defendants' Answers to the Amended Complaint for Damages (Docket 38 & 39).

**a. Plaintiffs Statement:** This case concerns the shooting death of JACOB ARTURO DOMINGUEZ (hereinafter "Dominguez"), a 33-year-old Mexican-American man who was shot one time and killed by San Jose Police Officer, Michael Pina. Dominguez's wife and their three children bring claims for violations of Dominguez's civil

rights and his wrongful death pursuant to 42 U.S.C. section 1983 and California Civil Code sections 51.7 and 52.1.

In light of the Court's recent Order Denying Plaintiffs' Motion for Summary Judgment and Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (Docket 70), the remaining issues for trial are:

| Claim | Incident Date | Claimant | Defendant(s) |
|-------|--------------|----------|--------------|
| Excessive Force (§1983) - First Cause of Action) | 9/15/17 | Plaintiffs | Michael Pina |
| Bane Act (Civil Code §52.1) - Second Cause of Action) | 9/15/17 | Plaintiffs | Michael Pina |
| Bane Act (Civil Code §52.1) - Second Cause of Action | 9/15/17 | Plaintiffs | City of San Jose Police Dept. |

### b. Defendants Statement:

On September 15, 2017, at approximately 7:00pm, San Jose police officers were in the area of Penitencia Creek and North White Roads attempting to conduct a vehicle stop on Jacob Dominguez, a known gang member who was the subject of a felony warrant for his involvement in an armed robbery committed earlier that week. Dominguez was known to be armed and was aware police were looking for him. Dominguez's criminal record and involvement in gang activity, including involvement with weapons and drug crimes, was known to officers. Dominguez had eluded officers earlier in the day by driving erratically and dangerously on city streets and the highway. Officers from the San Jose Police Department's Covert Response Unit conducted a high-risk vehicle stop on Dominguez. At first, Dominguez complied with officers' commands, but then he abruptly leaned forward while lowering his hands, reaching toward the car's floor. Officers

believed he was reaching for a weapon. As Dominguez sat back up, Officer Pina fired twice at Dominguez, who was struck by one bullet and died at the scene.

Remaining defenses are as follows:

1. Whether Officer Pina is entitled to qualified immunity for his use of force.

    Whether it would have been clear to a reasonable officer that the use of deadly force was unlawful in the situation Officer Pina confronted. *See, e.g.*, *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 10 (2021) (per curiam).

2. Whether Officer Pina acted in defense of himself or others.

    Whether Dominguez posed an immediate threat of death or serious bodily injury to the officers.

3. Whether Dominguez's actions were the proximate cause of his injuries. *See* Ninth Cir. Manual of Model Civil Jury Instructions, Comment re 9.2 Causation; *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, … the plaintiff must establish both causation-in-fact and proximate causation.");

    Whether Dominguez's actions were a factor that a reasonable person would consider to have contributed to the harm. His actions must be more than a remote or trivial factor but do not have to be the only cause of the harm. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1206 (9th Cir. 2003) ("California courts apply a 'substantial factor' test to determine proximate cause."); Judicial Council of Calif. Civil Jury Instruction 430.

    **3.** **Relief Requested:** Plaintiffs request compensatory and punitive damages, as well as attorneys' fees and costs.

    **4.** **Federal Jurisdiction and Venue:** This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because the action arises under 42

U.S.C. §1983.   Venue is proper in this judicial district because the events giving rise to the claims occurred within the district.

**B.**   **Factual Basis of the Action:**

**1.**   **Undisputed Facts:** The parties do not dispute the following facts, which are appropriate for stipulation. The parties expect that there will be other facts established at trial by undisputed evidence but do not believe that stipulation as to those facts is appropriate at this time.

a.   Defendant Michael Pina acted under color of state law at all relevant times, and/or was acting within the course and scope of his employment with the City of San Jose at the time of the incident involving Jacob Dominguez.

b.   At the time of the incident Officer Pina and other San Jose Police Officers were attempting to apprehend Jacob Dominguez pursuant to a warrant for his arrest for suspicion of participating in an armed robbery.

c.   That Officer Pina intentionally discharged his firearm.

d.   The death of Jacob Dominguez was caused by a single bullet discharged from Michael Pina's departmental issued AR-15 semi-automatic rifle.

e.   At the time of death, Jacob Dominguez was survived by his wife, Plaintiff Jessica Dominguez and their three (3) minor children.

**2.**   **Disputed Factual Issues:**

**a.**   **Plaintiffs Facts in Dispute:** Dominguez gave no physical or verbal signs he had a gun or threatened to use force or violence. Dominguez complied with the officer's command to put his hands up. From the time Officer Pina exited his vehicle until he pulled the trigger, 25 seconds elapsed. Officer Pina fired two shots at Mr. Dominquez

because he believed he was reaching for a firearm. No firearm was located in the vehicle or on Mr. Dominquez. No firearm allegedly related to Dominguez was ever found.

According to Officer Pina, when Dominguez had his hands up, he could see that there was nothing in his hands, no weapons and when he fired his weapon, he could not see what Dominguez's hands were doing, he could not see Dominguez's hands at all and Dominguez made no verbal threats whatsoever.

Dominguez had his hands raised above the steering wheel and his left upper arm was above the windowsill of the driver's side door when Officer Pina put one .225 caliber bullet through the driver's side window into the left side jaw area of Dominguez, lodging in his cervical spine resulting in his death.

The fatal wound to Mr. Dominquez (one bullet wound) struck the partially lowered driver's side window prior to striking the victim in the lower left mouth area with no exit wounds associated with this fatal bullet strike.

The bullet hole in the "B" pillar of the passenger side of the vehicle was the result of an independent bullet strike.    Any examination of the subject vehicle by Plaintiffs' ballistic expert David Balash, was made impossible because the Defendants disposed of the vehicle without giving notice to Plaintiffs' counsel of the intent to dispose of said vehicle.

Mr. Dominquez's left arm and hand were above the level of the driver's side door window opening in his vehicle when the bullet penetrated his sweatshirt.

That lethal force is the highest level of force a police officer can use. Only in an immediate, Defense of Life situation should lethal force be used.

Lethal force is a tool of last resort. It must be the direst of circumstances to justify the use of lethal force. Deadly force is likely to cause great bodily injury or death. In

general, officers must show a reverence for human life.

All other reasonable measures must be exhausted before resorting to the use of lethal force.

An officer's subjective fear is insufficient justification to employ lethal force. Further, an officer's over-reaction is excessive force. No governmental interest supports the use of unnecessary force.

Both expert witnesses agree Dominguez was shot with his arm(s) in a raised position.

All officers performing the vehicle containment technique agree that the conduct of Officer Pina was consistent with their training, education and policies put forth by the San Jose Police Department.

The San Jose Police Department is liable for the acts of their employees under the doctrine of *respondeat superior*.

The victims of a constitutional violation are entitled to compensation for economic harm, pain and suffering, and mental and emotional distress that results from the violations, including attorney fees and costs.

Whether Officer Pina after exiting his vehicle and taking a position near the left front wheel of Officer Ferguson's vehicle with his AR-15 rifle pointed at the suspect in the driver's seat of the Kia, in open air, issuing commands at the suspect such as "hands up, show me your hands and if you move, I will shoot you" and other commands, "Don't move or you're going to get shot," was proper police conduct under the circumstances.

Whether the use of deadly force was the only option for Officer Pina at the time Dominguez *allegedly* put his hands down and leaned forward.

The Defendants' ballistic expert, Rocky Edwards, testified that at the time

Dominguez was shot, Dominguez's left arm was in alignment with the trajectory of the bullet path as the bullet went through his sweatshirt and impacted in his face, so that his arm was raised above the driver's side windowsill and in alignment with the trajectory of the bullet that entered the left side of his face.

Whether the second bullet discharged less than ½ a second later, went through and through the upper left arm sweatshirt sleeve of Dominguez's raised left arm, touched no human tissue, with no blood residue on the sweatshirt and lodged in the "B" pillar of the passenger side of the vehicle.

Whether the bullet strike in the "B" pillar was a direct bullet strike and the holes in the lower left sleeve of the sweatshirt were caused by the through and through passage of the second fired bullet.

Whether the outer (entrance) bullet strike in the sweatshirt reportedly had powdered glass imbedded in the fabric (County of Santa Clara Crime Laboratory) and whether that indicates that the second bullet impacted glass prior to striking the sweatshirt, or whether the shattered glass from the first bullet passing would have imbedded in the fabric of the sweatshirt.

Whether Mr. Dominquez had his arms and hands raised up above the level of the driver's side door metal body windowsill for the bullet to have impacted the left sweatshirt sleeve and then lodge in the "B" pillar panel. The sweatshirt and arm had to be above the door frame area of the window to allow the bullet to pass through it.

Whether Officer Pina's video statement to SJPD internal affairs investigators the evening of the shooting, that Dominquez leaned forward as though reaching for a gun with both his hands down and out of sight when he fired his weapon, is true.

Whether Defendants' ballistic expert, Rocky Edwards' opinion that the first bullet

went through Dominguez's raised sweatshirt was based on textile material allegedly found on the bullet casing.   As demonstrated by Exhibit A to his deposition, Santa Clara County Crimes Lab *found no textile fibers* on either bullet. Mr. Edwards could not find the textile fiber evidentiary justification for his opinion.

Whether the only discrepancy between Plaintiffs' ballistic expert, David Balash, and the Defendants' ballistic expert, Rocky Edwards, is that Mr. Edwards believes the first bullet went through the driver's door window, the left upper sleeve of the sweatshirt and into the jaw, killing Dominguez. It was the second shot that went through and through the left sleeve triceps of the sweatshirt and lodged in the passenger side B-pillar of the vehicle and nothing else. Mr. Balash opines the second bullet went through and through the raised left sweat shirted arm which caused tiny glass fragments to be lodged in the sweatshirt then ended up in the "B" pillar of the passenger side of the vehicle after the first bullet shattered the glass window, entered the jaw and lodged into the cervical spine of Dominguez.

Whether at the time Dominguez was shot, he was complying with the command of Officer Pina for about ten (10) seconds with both his hands above his shoulders, at about ear level.

Whether in this case, there were other reasonable non-lethal measures available for Officer Pina to use during his stop of Dominguez.

Whether the only crimes Dominguez presently committed were Vehicle Code-related moving violations.

Whether Dominguez was unarmed at the time he was shot twice and killed by Defendant Pina evidencing a clear violation of decedent's constitutional rights as guaranteed by the Fourth Amendment.

Whether a reasonable officer could have believed the facts and circumstances necessitated the use of deadly force.

Whether given the fact that Dominguez did not possess a weapon of any kind, and Defendants had observed no weapon, and Dominguez was physically contained making no threat at the time he was shot, this supports a violation of the Fourth Amendment.

Whether Dominguez was a lethal threat, to the officers when he had not threatened them, had not harmed them or anyone, he was seated in a vehicle's driver's seat, physically contained, with his arms raised when he was killed.

Whether the SJPD Officers, protected by vehicles which provided cover and armed with high-powered, military-style assault rifles with Dominguez physically contained and not attempting to escape, were in danger, to the degree that they possessed an "imminent" objective fear for their lives.

Whether the mere statement by an officer that he feared for his own safety or that of others is enough to evidence objective factors to justify the use of deadly force.

Whether the other officers are mistaken that Mr. Dominguez's hands went down not before he was shot but after he was shot as they mistakenly understood the "flash-bang" grenade to be the gun shot.

**b. Defendants identify the following facts in dispute:**

1. Whether Dominguez dropped his hands and leaned forward, as if reaching for a weapon.

2. The position of Dominguez's arms and hands when Officer Pina fired.

3. Whether, under the circumstances, Officer Pina could reasonably have perceived the position of Dominguez's arms and hands at the time he fired.

**C.**     **Disputed Legal Issues:**

**Plaintiffs' Statement of Disputed Legal Issues**

1.     Whether Officer Pina's use of deadly force was reasonable under the circumstances, pursuant to *Graham v. Connor,* 490 U.S. 386, 395 (1989); i.e., was it reasonable for the Defendant Officer to use deadly force when, the suspect was contained, complied with the officer's commands by putting his hands up and then allegedly dropped his hands and leaned forward as though reaching for a gun when the ballistics evidence contradicts Officer Pina's version of the facts.

2.     When Defendant Officer Pina discharged his AR-15 assault rifle two times, was the Decedent complying with the officer's commands with his hands up; is that a *reasonable use of force* pursuant to *Graham v. Connor,* 490 U.S. 386, 395 (1989)?

3.     Whether Defendant Officer Pina deliberately fabricated evidence to cover up his unreasonable use of deadly force in the killing of Jacob Dominguez.

4.      Did Defendant Officer Pina deprive the Decedent of a clearly established right to be free from excessive force by police officers, as guaranteed by the Fourth Amendment to the United States Constitution and did employ unreasonable and excessive force in the encounter, assessment, investigation, apprehension, assault, shooting and death of the Decedent in violation of California Civil Code §52.1?

5.     Whether Officer Pina acted with intent to violate Decedent's constitutional rights under California law in violation of the Bane Act, Cal. Civ. Code § 52.1, by using force that he intended to be more than necessary under the circumstances. See *Reese v. City of Sacramento*, 888 F.3d 1030, 1043 (9th Cir.

2018. Bane Act violation "does not require proof of discriminatory intent" and "that a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Chaudhry v. City of Los Angeles*, 751 F.3d 10961 at 751 F.3d at 1105.   The jury must find that the defendants "intended not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances.' " It is not necessary for the defendants to have been "thinking in constitutional or legal terms at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights."   *Cornell* (supra) 225 Cal.Rptr. at 386–87.

6.      Is the City of San Jose Police Department liable for the conduct of Defendant Officer Pina under the doctrine of *respondeat superior*?

7.      Are Defendant Officer Pina and Defendant City of San Jose Police Department liable for wrongful death, statutory and compensatory damages?

8.      Whether Officer Pina's conduct was malicious, oppressive or in reckless disregard for the constitutional rights of the Decedent, such that he may be responsible for punitive damages?

9.      Are the Defendants liable for Plaintiffs' attorney fees and costs?

10.     What damages are to be awarded to Jessica Dominguez?

11.     What damages are to be awarded to the three minor children?

**Defendants' Statement of Disputed Legal Issues**

1.      Whether Officer Pina's use of deadly force was reasonable under the circumstances, pursuant to *Graham v. Connor*, 490 U.S. 386, 395 (1989).

2.      Whether Officer Pina is entitled to qualified immunity because it was not clearly established that the use of deadly force was unreasonable in the

circumstances facing him.

       3.     Whether Officer Pina acted with the specific intent to violate Decedent's constitutional rights in violation of the Bane Act, Cal. Civ. Code § 52.1, by using force that he intended to be more than necessary under the circumstances. *See Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).

       4.     Whether Officer Pina's conduct was malicious, oppressive, or in reckless disregard of Dominguez's constitutional rights, such that he may be liable for punitive damages.

       5.     What damages are available to Plaintiffs.

       6.     Whether Mr. Dominguez's minor children are proper plaintiffs.

**D.**    **Estimate of Trial Time:**   It is estimated this jury trial will take more than two (2) weeks based on a four-day trial week but should not exceed three (3) full weeks.

**E.**    **Trial Alternatives and Options:**   The parties conducted a settlement conference with Magistrate Judge Cousins on June 23, 2022, which did not result in a settlement. The parties do not believe that further settlement discussions are likely to be productive.

**F.**    **Stipulations:**

    **1.**     The parties stipulate that the Defendant Officers acted under color of state law at all relevant times, and/or were acting within the course and scope of their employment with the City of San Jose.

    **2.**     The parties do not propose any amendments to the pleadings or dismissals of further parties, claims, or defenses beyond the result of the Court's Order on the parties' Motions for Summary Judgment.

    **3.**     Defendants request that the Court bifurcate 1) the issue of compensatory damages and 2) the amount of punitive damages, reserving those

determinations for a second phase of trial if necessary. The first phase of the trial would therefore comprise evidence as to whether Defendants are liable for a violation of § 1983 and/or the Bane Act and whether Officer Pina's conduct was malicious, oppressive, or in reckless disregard of Dominguez's constitutional rights. If the jury determines that Defendants are liable, then a second phase would involve presentation of evidence as to Plaintiffs' damages and, if necessary, the amount of punitive damages warranted. Plaintiffs will oppose any request by the Defendants to bifurcate police liability from damages in this wrongful death civil rights claim.

**G.**     **Witnesses to be Called:**

    1.    See Appendix "A" - Plaintiffs' Witnesses

    2.    See Appendix "B" - Defendants' Witnesses

**H.**     **Exhibits:**

    1.    See Appendix "C" – Plaintiffs' Exhibits

    2.    See Appendix "D" – Defendants' Exhibits

**J.**     **Miscellaneous:**

There are no other issues to report at this time. Plaintiffs reserve the right to ask for a jury instruction on spoliation regarding the destruction of the vehicle seized by Defendants.

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this case, unless modified by the Court to prevent manifest injustice.

Dated:   July 14, 2022

By: _____
JOHN KEVIN CROWLEY
Attorney for Plaintiffs,
**JESSICA DOMINGUEZ INDIVIDUALLY
AND JESSICA DOMINGUEZ AS
GUARDIAN AD LITEM FOR JAD (1),
JAD (2) and JAD (3)**

Dated:   July 14 , 2022

NORA FRIMANN, City Attorney

By: _____
MAREN J. CLOUSE
Chief Deputy City Attorney
Attorneys for Defendants
**CITY OF SAN JOSE
and OFFICER MICHAEL PINA**

IT IS SO ORDERED.

Dated:   _____, 2022

_____
HON. BETH LABSON FREEMAN
United States District Judge

**APPENDIX "A" - Plaintiffs' Witnesses**

| Witness | Substance of Testimony | Time Estimate |
|---|---|---|
| Michael Pina | Facts and circumstances of 9/15/17 incident; use of excessive force, shot man with his hands up complying with commands. | Direct: 6<br>Defendants' Direct: 3 hrs. |
| Kristoffer Ferguson | Facts and circumstances of 9/15/17 incident, including stop, search, arrest and conversations, and non-retained expert opinions | Direct: 4<br>Defendants' Direct: 1.25 hrs. |
| Alvaro Lopez | Facts and circumstances of 9/15/17 incident, including stop, search, arrest and conversations; all officers followed SJPD proper policy, standards and procedures | Direct: 3<br>Defendants' Direct: 1.25 hrs. |
| Jessica Dominguez | History of relationship with decedent, harms and losses suffered by his loss to all Plaintiffs. | Direct: 5<br>Cross: .5 hrs |
| David Balash | Ballistics expert, facts and circumstances of 9/15/17 shooting, bullets trajectory, effect on physical evidence and opinions based on physics of ballistics. | Direct: 3<br>Cross: 1 hr |
| Scott Defoe | Police standards expert, express opinions on conduct below the standard of care for proper police conduct and conduct consistent with proper police conduct and how Defendants violated the proper standard of care. | Direct: 4<br>Cross: 1.5 hrs<br><br>Defendants object: FRE 402, 702 |
| Alan Barbour | Toxicology Expert | Direct: 2<br>Cross: .5 hrs |
| Phil Allman, CPA | Economic losses suffered by Plaintiffs as a result of the facts and circumstances of 9/15/17. | Direct: 2<br>Cross:<br>Defendants object: FRE 402 |
| Video "day in the life" | Children of Jacob and Jessica: Loss of love, care, affection, etc., wrongful death damages | Direct:   2<br>Defendants object: FRE 402, 403, no opportunity to cross-examine |
| Cindy Chavez | Jacob's mother. Challenges growing up – no father, gang community, drugs, etc., his challenges with addiction. | Direct: 2<br>Cross: .5<br><br>Defendants object: FRE 402, 403 |

| | | |
|---|---|---|
| Albert Chavez | Jacob's uncle who lives in Ohio, character witness | Direct: 2<br>Cross: .25<br>Defendants object: FRE 402, undisclosed |
| John Beltron | Runs the Home for Men where Jacob was staying; can tell the history of Jacob and his personal challenges | Direct: 2<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed |
| Raymond Acender | Friend – knows about Jacob's challenges and knew him from the Home for Men. | Direct: 1.5<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed |
| Mrs. Albert Chavez | Jacob's aunt, character witness | Direct: 1<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed |
| Phyllis Rodriguez | Jessica's mother, history of Jacob and Jessica, character of Jacob | Direct: 2<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed |
| Albert Chavez (Grandfather) | Jacob's Grandfather, character witness | Direct: 1<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed |
| Adam Ybarra | Producer of gang video with Jacob Dominguez | Direct: 2<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed |
| Albert Chavez, Jr. | Character Witness | Direct: 1<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed |
| Benjamin Regaldo | Character Witness | Direct: 2<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed |
| Cisco Regaldo | Character Witness | Direct: 2<br>Cross: .25 |

| | | | |
|---|---|---|---|
| | | Defendants object: FRE 402, undisclosed | |
| Rosalinda Chavez | Character Witness | Direct: 2<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed | |
| Ruben Rivera | Character Witness – co worker | Direct: 1<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed | |
| Juan Haro | Character Witness | Direct: 1<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed | |
| Fred Romero | Character Witness | Direct:1<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed | |
| Randy DelGato | Character Witness | Direct: 1<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed | |
| John DeRose | Character Witness | Direct: 1<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed | |
| Sunny Lara | Character Witness | Direct: 2<br>Cross: .25<br><br>Defendants object: FRE 402, undisclosed | |

**APPENDIX "B" - Defense Witnesses**

| Witness | Substance of Testimony | Time Estimate |
|---|---|---|
| Defendant Officer Michael Pina | Officer Pina will testify about his training and experience, the information he had about decedent Jacob Dominguez, surveillance of decedent, attempted apprehension of decedent, and the use of force | Direct   3 hrs<br><br>Cross 1.5 |
| Officer Kristopher Ferguson | Officer Ferguson will testify about his training and experience, the information he had about decedent Jacob Dominguez, surveillance of decedent, and attempted apprehension of decedent | Direct   1.25 hrs<br><br>Cross .45 |
| Officer Alvaro Lopez | Officer Lopez will testify about his training and experience, the information he had about decedent Jacob Dominguez, surveillance of decedent, and attempted apprehension of decedent | Direct   1.25 hrs<br><br>Cross .45 |
| Officer Peter Szemeredi | Officer Szemeredi will testify about information known about Jacob Dominguez and provided to members of the Covert Response Unit and surveillance of decedent | Direct   1.25 hrs<br><br>Cross 1.0<br>object: FRE 402, 403 |
| Sgt. Mauricio Jimenez | Sgt. Jimenez will testify about Covert Response Unit training and procedures and surveillance of decedent and may offer expert opinion testimony on how the surveillance, tactics, and force used by SJPD officers in the apprehension of Jacob Dominguez conformed to the policies and practices of the San Jose Police Department and the Critical Response Unit. | Direct   .75 hrs<br><br>Cross .5<br><br>Object: not disclosed as expert<br>FRE 401, 402, 403, 802 |
| Sgt. Gustavo Perez | Sgt. Perez will testify about Covert Response Unit training and procedures and procedures following the use of force | Direct   .75 hrs<br>Cross   .5<br>object: FRE 402, 403 |
| Sgt. Alan Lee | Sgt. Lee will testify about crime scene evidence gathered | Direct   .5 hrs<br>Cross .5<br>object: FRE 402, 403 |
| Officer Veronica Martinez | Officer Martinez will testify about crime scene evidence gathered | Direct   .5 hrs<br>Cross .5 |

JOINT PRETRIAL STATEMENT AND ORDER
5:18-CV-04826 BLM

| | | object: FRE 402, 403 |
|---|---|---|
| John Black | Mr. Black will testify as an expert about standards for officer training, police practices, and perception, reaction, and attention during critical events; a copy of his report and CV are attached | Direct   2 hrs Cross   3 hrs |
| Rocky Edwards | Mr. Edwards will testify as an expert about the ballistics evidence and scene mapping; a copy of his report and CV are attached | Direct   1.5 hrs Cross   3 hrs |
| Daniel Sudakin | Dr. Sudakin will testify as to evidence decedent Jacob Dominguez was under the influence of illicit drugs at the time of the incident and the effect of such drug use; a copy of his report and CV are attached | Direct   .5 hrs Cross   3 hrs object: FRE 402, 403 MIL |
| Custodians of record | If needed, custodians of record may be called to testify as to authenticity of documents of the Santa Clara County Crime Lab, Coroner, or San Jose Police Department | |
| Plaintiff Jessica Dominguez | Mrs. Dominguez will testify about her impression that decedent Jacob Dominguez was on drugs in the weeks and days before the incident and the reasons for that belief | Direct   Cross (in Defs' case) .5 hrs |

**APPENDIX "C" – Plaintiffs' Exhibits**

| Number | Exhibit | Evidentiary Purpose | Objection |
|---|---|---|---|
| 1 | Government Claim (CA Gov. Code §910) | | 402 |
| 2 | DA Report on Fatal Shooting of Dominguez | | 802 |
| 3 | Amended Complaint, Docket #37 | | 402 |
| 4 | City of San Jose's Answer to Amended Complaint, Docket #38 | | 402 |
| 5 | Pina's Answer to Amended Complaint, Docket #39 | | 402 |
| 6 | Stipulated Protective Order, Docket #41 | | 402 |
| 7 | Plaintiff's Response to Interrogatories | | Compound |
| 8 | Pl. GAL's Response to Request for Documents | | Compound |
| 9 | Plaintiff's Response to Request for Documents | | Compound |
| 10 | Plaintiff's Amended Response to ROGS | | Compound |
| 11 | Pl's Amended Response to Request for Documents | | Compound |
| 12 | Pl. GAL's Amended Response to Request for Documents | | Compound |
| 13 | GAL's Document Production, Bates 1-197 | | Compound |
| 14 | Plaintiff's Document Production, Bates 1-376 | | Compound |
| 15 | City of SJ's Response to Special Interrogatories | | Compound |
| 16 | City of SJ's Response to Request for Documents (PO) | | Compound |
| 17 | City of SJ's Production of Documents | | Compound |
| 18 | City of SJ's Supplemental Response to Special Rogs | | Compound |
| 19 | City of SJ's Amended Response to Request for Documents | | Compound |
| 20 | City of SJ's Response to Request for Documents, Set #2 | | Compound |
| 21 | City of SJ's Supplemental Response to Request for Documents, Set 2 | | Compound |
| 22 | City of SJ's Document Production, Bates SJ0001-1966 | | Compound |
| 23 | Pina's Response to Special Interrogatories (PO) | | Compound |

| 24 | Pina's Response to Request for Documents | | Compound |
| 25 | Pina's Production of Documents | | Compound |
| 26 | Pina's Amended Response to Special Interrogatories | | Compound |
| 27 | Pina's Amended Response to Request for Documents | | Compound |
| 28 | Deposition Transcript of Jessica Dominguez | | Compound |
| 29 | Deposition Transcript of Officer Alvaro Lopez | | Compound, 802 |
| 30 | Deposition Transcript of Officer Michael Pina | | Compound |
| 31 | Deposition Transcript of Officer Kristoffer Ferguson | | Compound, 802 |
| 32 | Deposition Transcript of Daniel Sudakin, M.D. | | Compound, 802 |
| 33 | Deposition Transcript of John R. Black | | Compound, 802 |
| 34 | Deposition Transcript of Phil Allman | Plaintiffs' expert, CPA | Compound, 802 |
| 35 | Deposition Transcript of Alan Barbour | Plaintiffs' toxicology expert | Compound, 802 |
| 36 | Deposition Transcript of Scott DeFoe | Plaintiff's police standards expert | Compound, 802 |
| 37 | Deposition Transcript of Rocky Edwards | Defendant's expert | Compound, 802 |
| 38 | Deposition Transcript of David Balash | Plaintiffs' ballistics expert | Compound, 802 |
| 39 | AXON_Body_2_Video_2017-09-15_1847 | Body worn camera of _____ | Stip. |
| 40 | AXON_Body_2_Video_2017-09-15_1902 | Body worn camera of _____ | Stip. |
| 41 | AXON_Body_2_Video_2017-09-15_1903 | Body worn camera of Pina | Stip. |
| 42 | AXON_Body_2_Video_2017-09-15_1904 | Body worn camera of _____ | Stip. |
| 43 | Item SJ182278-27/#28-1 black hooded sweatshirt | Decedent's black sweatshirt with bullet hole | 403 |

| | | | |
|---|---|---|---|
| 44 | Defendants' Production 03-08-21-all items in folders: 6+7 Video2 + reports 110718-035028PM; bloodstains110818-054349PM; Car interior+exterior110818-055505PM; comm log 0; comm log 1; Dominguez POS dated 03-09-21; DOMINGUEZ031518-0383941 ; evidence return receipt 0; evidence return receipt 1; exam request 0; exam request 1a; Item 5 video 1110718-11O931AM; LCV Mapping110718-035612PM; notes 0; notes 1; officer photos1106818-044919PM; position + bullet + sweatshirt 110818-085338PM; report 0; report 1; scene photos 2 + 110618-053908PM; scene photos 1110618-052524PM; sweatshirt110718-052032PM | | Compound |
| 45 | Defendants' Supplemental Document Production circa 9/30/19-all items in files: BWC AEO; BWC Confidential; AXON_Body_2_video_2017-09-15_1942(1); FOR PRODUCTION Number 2 Channel Ch. 4 Room Homicide Room 2 02-14-35 SD; Number 01 Channel Ch3 Room Homicide Room 2 23-33-40 SD; Number 02 Channel CH4 Room Homicide Room 2 01-15-23 SD; Number 02 Channel Ch 4 Room Homicide Room 2 23-33-40 SD; photosBS2HDR1 | | Compound |
| 46 | Defendants' Communication Recordings #1551623-1551626 | | Compound |
| 47 | Jail call DelaTorre | | Stip. |
| 48 | Plaintiffs' family photos | | Obj. 402, 403 |

# APPENDIX "D" – Defendants' Exhibits

## DEFENDANTS' EXHIBITS

| Trial Ex. No. | Description | Bates or Depo. Ex. Number | Purpose & Sponsoring Witness | Objection | Response |
|---|---|---|---|---|---|
| 500. | Ramey warrant | SJ1885-1888 | Basis for arrest, officer witnesses | | |
| 501. | CRU Ops Plan 1 | SJ1944-1953 | Info known to officers, officer witnesses | | |
| 502. | CRU Ops Plan 2 | SJ1954-1959 | Info known to officers, officer witnesses | | |
| 503. | CRU Ops Plan with notes | SJ1960-1966 | Info known to officers, M. Pina | | |
| 504. | SJPD Report 17-255-0757 | SJ1795-1943 | Info known to officers, P. Szemeredi | | |
| 505. | SJPD report 17-258-0283 | SJ0001-0164 | Account of event, refresh recollection, officer witnesses | | |
| 506. | Event Details Report | SJ0164-0186 | Account of event, refresh recollection, officer witnesses | | |
| 507. | Bodyworn camera video – Pina | SJ1642/ SJ1764 | Depict event and subsequent actions, M. Pina | | |
| 508. | Bodyworn camera video – Ferguson | SJ1640/ SJ1766 | Depict event and subsequent actions, K. Ferguson | | |
| 509. | Bodyworn camera video – Lopez | SJ1657/ SJ1749 | Depict actions following event, A. Lopez | | |
| 510. | Bodyworn camera video – Lopez | SJ1655/ SJ1751 | Depict actions following event, | | |

| Trial Ex. No. | Description | Bates or Depo. Ex. Number | Purpose & Sponsoring Witness | Objection | Response |
|---|---|---|---|---|---|
| | | | A. Lopez | | |
| 511. | Bodyworn camera video – Lopez | SJ1643/ SJ1763 | Depict actions following event, A. Lopez | | |
| 512. | Bodyworn camera video – Szemeredi | SJ1644/ SJ1762 | Depict actions following event, P. Szemeredi | | |
| 513. | Bodyworn camera video – Jimenez | SJ1641/ SJ1765 | Depict actions following event, M. Jimenez | | |
| 514. | Bodyworn camera video – Jimenez | SJ1651/ SJ1755 | Depict actions following event, M. Jimenez | | |
| 515. | Bodyworn camera video – Perez | SJ1659/ SJ1747 | Depict actions following event, G. Perez | | |
| 516. | Bodyworn camera video – Perez | SJ1648/ SJ1759 | Depict actions following event, G. Perez | | |
| 517. | Scene photos | SJ0253-0254, 0259-0262, 0267-0273, 0305, 0317, 0344, 0366-367, 0423-0424, 0473, 0509 | Depict scene, officer witnesses | | |
| 518. | Medical examiner investigation | SJ1690-1694 | Basis of opinions, D. Sudakin | | |
| 519. | Autopsy report | SJ1695-1703 | Basis of opinions, D. Sudakin | | |
| 520. | Crime lab reports | SJ1704-1772 | Basis of opinions, R. Edwards | | |
| 521. | Photos of sweatshirt | SJ0644-0652, 0683-0687 | Basis of opinions, R. Edwards | | |

JOINT PRETRIAL STATEMENT AND ORDER
5:18-CV-04826 BLM

| Trial Ex. No. | Description | Bates or Depo. Ex. Number | Purpose & Sponsoring Witness | Objection | Response |
|---|---|---|---|---|---|
| 522. | Photos of car | SJ0688-0745 | Depict scene, officer witnesses<br><br>Basis of opinions, R. Edwards | | |
| 523. | Rock Forensics Graphic 5 | | Demonstrative, R. Edwards | | |
| 524. | Rock Forensics Graphic 7 | | Demonstrative, R. Edwards | | |
| 525. | 3D rendering of scene | | Demonstrative, R. Edwards | | |
| 526. | Photographs of Evidence & Scene by Rock Forensics | | Basis of opinions, R. Edwards | | |
| 527. | DA Report | SJ1776-1794 | Refresh recollection | | |
| 528. | SJPD Duty Manual | SJ0767-1604 | SJPD policies, officer witnesses | | |

# EXHIBIT 1

JOHN KEVIN CROWLEY (SBN 88189)
**ATTORNEY AT LAW**
125 S. Market Street, Suite 1200
San Jose, California 95113-2288
Tel: (408) 288-8100
Fax: (408) 288-9409
Email: jkclaw@pacbell.net

Attorney for Plaintiffs
**JESSICA DOMINGUEZ INDIVIDUALLY
AND JESSICA DOMINGUEZ AS GUARDIAN
AD LITEM FOR JAD (1), JAD (2)
AND JAD (3)**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| JESSICA DOMINGUEZ INDIVIDUALLY AND JESSICA DOMINGUEZ AS GUARDIAN AD LITEM FOR JAD (1), JAD (2) AND JAD (3), <br><br> PLAINTIFFS, <br><br> VS. <br><br> CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT, MICHAEL PINA, AND DOE POLICE OFFICERS 2 THROUGH 5, <br><br> DEFENDANTS. | CASE NO: 5:18-cv-04826-BLF <br><br> **PLAINTIFFS EXPERT WITNESS DISCLOSURE** |

## TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

Pursuant to FRE § 702, et seq., and FRCP § 26, et seq., Plaintiffs hereby intend to offer expert witness opinion testimony at the trial of this above-captioned action as follows:

**Retained Experts:**

1.  Scott DeFoe, P.O. Box 4456, Huntington Beach, CA 92605-4456; 714-655-

4280, email: sdefoe313@msn.com.   Mr. Defoe's Rule 26(a)(2)(B) report is attached hereto as **Exhibit A** which includes his Curriculum Vitae and his record of being deposed and testifying in various courts including Federal Courts.

2.   Phil Allman, Ph.D.: ALLMAN & PETERSEN ECONOMICS, LLC, Phillip H. Allman, Ph.D.; Jeffrey S. Petersen, Ph.D.; Max Allman, M.A., C.F.A.; 7677 Oakport Street, Suite 610, Oakland, CA 94621;   Phone: (510) 382-1550; Fax: (510) 382-1472. Mr. Allman's Rule 26(a)(2)(B) report is attached hereto as **Exhibit B.**

**Non-Retained Experts:**

1.   Police Officer Kristoffer Ferguson is hereby disclosed as a non-retained expert witness in this present action. As to this witness, I am informed and believe the following is true:

(a)   Officer Ferguson is a police officer with the City of San Jose and is trained, educated, certified and experienced in the covert surveillance, detection and arrest of suspects. He is trained in the use of force including deadly or lethal force in the containment and apprehension of such suspects. He is certified with the P.O.S.T. (Peace Officer Standards and Training), basic and numerous P.O.S.T. advanced certificates. He has been employed with the San Jose Police Department since 2007, and has worked the patrol division for approximately six (6) years, he worked with the "METRO UNIT" and street crimes for about three and one-half years (3.5). In 2017 he was transferred to the Covert Response Unit ("CRU") and is currently in that unit. He is trained in gangs, narcotics and street crimes. He has received numerous letters of accommodation and has been qualified as an expert and rendered expert opinions in courts in the State of California as an expert witness in his field of law enforcement over forty (40) times.

(b)     I am informed and believe that Officer Ferguson will testify that based on his training, knowledge, education and experience, the use of deadly force or lethal forces is the highest level of force a Police Officer can use; that the use of such force must be an immediate defense of life situation; it must be a last resort; it must be used only in the direst of circumstances. He will affirm that deadly force is likely to cause great bodily injury or death. He will testify that Police Officers are trusted with the use of force and must show reverence for human life when using any force especially deadly force. He will testify that if there are other reasonable measures available, the police officer must utilize those measures before resorting to the use of deadly force. Before the use of deadly force, he will testify that all other reasonable measures must be exhausted. He will testify that each officer is responsible for every shot discharged from his weapon. He will affirm that the subjective fear of a police officer is not sufficient cause to use deadly force, that there must be objective articulable facts that would lead a reasonable police officer to believe there is an imminent threat of grave bodily harm or death to another. He will testify that the overreaction of the officer is excessive force.   Officer Ferguson will agree that the use of deadly force is the most serious decision a peace officer will ever have to make.   He agrees that such a decision should be guided by the reverence for human life and used only when other means of control are unreasonable or have been exhausted. He will testify that the reverence for life is the foundation on which deadly force rests and that deadly force is always the last resort.   He will affirm that the authority to use deadly force is a heavy responsibility bestowed on a police officers by the people of the state and that the citizenry expects all police officers to exercise that authority judiciously and only when the use of deadly force meets an objectively reasonable standard. That the citizenry puts their trust in each police officer to use any type of force

1  including deadly or lethal force reasonably. He would testify if the force used is excessive,

2  it is a breach of the trust bestowed by the people on the police officer.

3      Additionally, Officer Ferguson will testify, in the present case before this court,

4  when shots were fired by Officer Pena from his Carbine Rifle, the suspect sat back in his

5  seat. After the shots, the officers retreated from the contained vehicle and did not further

6  engage the suspect. He will testify, although the officers "retreated", the same imminent

7  threat of grave bodily harm or death existed after the shots were fired as existed before

8  the shots were fired. The shots were fired to "deter the threat." As far as the officers knew

9  at the time, the threat was not deterred. The suspect may be "playing possum" or lying-in

10  wait. The officers believed they were still subjected to the same perceived lethal threat.

11  Officer Ferguson did not shoot the suspect at that time, even though there still remained

12  an "imminent threat of grave bodily harm or even death" to the officers. Instead, all three

13  officers immediately retreated from the contained vehicle as their training demanded. No

14  other shots were fired.

15      (c)    Officer Ferguson is sufficiently familiar with the pending action and has

16  submitted to a meaningful oral deposition concerning any opinion and its basis.

17  Dated:  May 21, 2021

18

19

20

21

22  _____

23  JOHN KEVIN CROWLEY, Esq.
   Attorney for Plaintiffs

# EXHIBIT A

## On-Scene Consulting

May 21, 2021

Mr. John Kevin Crowley, Esq.
Law Offices of John Kevin Crowley
125 S. Market Street, Suite 1200
San Jose, California 95113

<u>**Federal Rules of Civil Procedure 26 (a) (2) (B) Report**</u>

**JESSICA DOMINGUEZ, INDIVIDUALLY AND JESSICA DOMINGUEZ AS GUARDIAN AD LITEM FOR JAD (1), JAD (2), AND JAD (3), Plaintiffs,**
**vs.**
**CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT, MICHAEL PINA, AND DOE POLICE OFFICERS 2 through 5, Defendants.**
**Case No. 5:18-CV-04826.**

Dear Mr. Crowley,

Thank you for retaining me to analyze and render opinions regarding the September 15, 2017, shooting death of Mr. Jacob Arturo Dominguez at Penitencia Creek Road at White Road, San Jose, California 95127, by San Jose Police Department Police Officer Michael Pina.  Pursuant to the requirements of Rule 26, I have studied reports, Santa Jose Police Department documents, Body Worn Camera videos, Transcriptions of Depositions, and other material (<u>as listed under Materials Reviewed</u>) provided to me thus far regarding this case.  Please be advised that if additional documents related to this matter are provided, it may be necessary to write a supplemental report to refine or express additional opinions.

Scott A. DeFoe
Principal
On-Scene Consulting, LLC

## On-Scene Consulting

**Materials Reviewed:**

1. Proposed Stipulated Protective Order, Case No. 5:18-cv-04826-BLF.

2. Defendants' Interrogatories to Plaintiff Jessica Dominguez, Individually and as Guardian Ad Litem for Jacob Dominguez, Jordan Dominguez and Jaliyah Dominguez, Case No. 5:18-cv-04826-BLF.

3. Defendants' Request for Production of Documents to Plaintiff Jessica Dominguez, Individually, Case No. 5:18-cv-04826-BLF.

4. Defendants' Request for Production of Documents to Plaintiff Jessica Dominguez, as Guardian Ad Litem for Jacob Dominguez, Jordan Dominguez, and Jaliyah Dominguez, Case No. 5:18-cv-04826-BLF.

5. Report on the Fatal Shooting of Jacob Dominguez on 9/15/17, The County of Santa Clara, Jeffrey F. Rosen, District Attorney.

6. Amended Complaint, Case No. 5:18-cv-04826-BLF.

7. Commission on Peace Officer Standards and Training, Pina, Michael Efren, Post ID No. B96-P92, (SJ 1605-1608).

8. San Jose Police Department, GO# SJ 2017-172550757, 211 PC Armed Robbery, (SJ 1795-1943).

9. County of Santa Clara, Office of the Medical Examiner, Report of Autopsy, Dominguez, Jacob, Arturo, Case No. 17-03014.

10. Defendant City of San Jose's First Supplemental Response to Plaintiff's Request for Production of Documents, Set Two (2), Case No. 5:18-cv-04826-BLF.

11. Defendant City of San Jose's Response to Plaintiff's Request for Production of Documents, Set Two (2), Case No. 5:18-cv-04826-BLF.

12. Plaintiff's Request for Production of Documents, Set One, Case No. 5:18-cv-04826-BLF.

## On-Scene Consulting

13. Plaintiff's Request for Production of Documents, Set Two, Case No. 5:18-cv-04826-BLF.

14. Defendant City of San Jose's Response to Plaintiff's Request for Production of Documents, Set One, Case No. 5:18-cv-04826-BLF.

15. Defendant City of San Jose's Amended Response to Plaintiff's Request for Production of Documents, Set One (1), Case No. 5:18-cv-04826-BLF.

16. Defendant City of San Jose's Response to Plaintiff's Request for Specially Drafted Interrogatories, Set One (1), Case No. 5:18-cv-04826-BLF.

17. City of San Jose's Supplemental Response to Plaintiff's Request for Specially Drafted Interrogatories, Set One (1), Case No. 5:18-cv-04826-BLF.

18. Plaintiff Request for Specially Drafted Interrogatories, Set One (1), Case No. 5:18-cv-04826-BLF.

19. San Jose Police Department, Covert Response Unit, Operational Plan, Case No. 17-255-0757, (SJ 1944-1953).

20. San Jose Police Department, Covert Response Unit, Operational Plan No. 2, Case No. 17-255-0757, (SJ 1954-1959).

21. Dispatch Audio Recording, No. 1551628, (15:11:33).

22. 911 Dispatch Audio Recording, No. 1551623, (5:07).

23. 911 Dispatch Audio Recording, No. 1551624, (3:18).

24. 911 Dispatch Audio Recording, No. 1551625, (0:36).

25. CAD Event Chronology, P172580283, Code-5.

26. Dispatch Audio Recording, No. 1551627, (0:35).

27. Photographs, (SJ 0189-763).

## On-Scene Consulting ─────────────

28. San Jose Police Department, Policies, Rules, Procedures.

29. Axon Body 2, X81032660, (17:00), (SJ 1640).

30. Axon Body 2, X81050171, (14:23), (SJ 1641).

31. Axon Body 2, X81077398, (12:29), (SJ 1642).

32. Axon Body 2, X81033659, (13:33), (SJ 1643).

33. Axon Body 2, X81078201, (13:33), (SJ 1644).

34. Axon Body 2, X81078225, (11:49), (SJ 1645).

35. Axon Body 2, X81079156, (5:58), (SJ 1646).

36. Axon Body 2, X81076983, (42:42), (SJ 1647).

37. Deposition Transcript of Officer Alvaro Lopez taken on 3/1/2021.

38. Deposition Transcript of Officer Kristoffer Ferguson taken on 3/4/2021.

39. Axon Body 2, X81077576, (12:42), (SJ 1610).

40. Axon Body 2, X81031694, (13:34), (SJ 1611).

41. Axon Body 2, X81093633, (2:23), (SJ 1612).

42. Axon Body 2, X81051024, (5:42), (SJ 1613).

43. Axon Body 2, X81049085, (6:15), (SJ 1614).

44. Axon Body 2, X81077576, (3:37), (SJ 1615).

45. Axon Body 2, X81050544, (8:24), (SJ 1616).

46. Axon Body 2, X81093633, (8:13), (SJ 1617).

## On-Scene Consulting

47. Axon Body 2, X81049210, (6:49), (SJ 1618).

48. Axon Body 2, X81031794, (0:47), (SJ 1619).

49. Axon Body 2, X81167004, (0:49), (SJ 1620).

50. Axon Body 2, X81076539, (0:51), (SJ 1621).

51. Axon Body 2, X81051024, (0:27), (SJ 1622).

52. Axon Body 2, X81049085, (0:33), (SJ 1623).

53. Axon Body 2, X81051024, (8:27), (SJ 1624).

54. Axon Body 2, X81049085, (9:31), (SJ 1625).

55. Axon Body 2, X81050355, (54:37), (SJ 1626).

56. Axon Body 2, X81063743, (5:20), (SJ 1627).

57. Axon Body 2, X81055934, (13:06), (SJ 1628).

58. Axon Body 2, X81049085, (1:13), (SJ 1629).

59. Axon Body 2, X81049085, (1:29), (SJ 1630).

60. Axon Body 2, X81051392, (3:13), (SJ 1631).

61. Axon Body 2, X81053106, (0:27), (SJ 1632).

62. Axon Body 2, X81093635, (3:58), (SJ 1633).

63. Axon Body 2, X81076539, (0:09), (SJ 1634).

64. Axon Body 2, X81050544, (3:31), (SJ 1635).

65. Axon Body 2, X81050544, (1:30), (SJ 1636).

## On-Scene Consulting ———————————

66. Axon Body 2, X81055934, (0:16), (SJ 1637).

67. Axon Body 2, X81055934, (2:06), (SJ 1638).

68. Axon Body 2, X81055934, (0:22), (SJ 1639).

69. NVR, Sherlock, CH03, 3158 Penitencia, (4:59), (SJ 1664).

70. NVR, Sherlock, CH03, 3158 Penitencia, (5:00), (SJ 1664).

71. NVR, Sherlock, CH03, 3158 Penitencia, (5:00), (SJ 1664).

72. NVR, 3164 Penitencia Creek Road, (0:21), (SJ 1665).

73. NVR, 3164 Penitencia Creek Road, (2:26), (SJ 1665).

74. NVR, 3164 Penitencia Creek Road, (3:09), (SJ 1665).

75. NVR, 3164 Penitencia Creek Road, (0:39), (SJ 1665).

76. NVR, 3164 Penitencia Creek Road, (0:23), (SJ 1665).

77. NVR, 3164 Penitencia Creek Road, (1:13), (SJ 1665).

78. NVR, 3164 Penitencia Creek Road, (0:48), (SJ 1665).

79. NVR, 3164 Penitencia Creek Road, (0:02), (SJ 1665).

80. NVR, 3164 Penitencia Creek Road, (0:15), (SJ 1665).

81. NVR, 3164 Penitencia Creek Road, (1:39), (SJ 1665).

82. NVR, 3164 Penitencia Creek Road, (0:52), (SJ 1665).

83. NVR, 3164 Penitencia Creek Road, (1:45), (SJ 1665).

84. NVR, 3164 Penitencia Creek Road, (1:18), (SJ 1665).

## On-Scene Consulting

85. NVR, 3164 Penitencia Creek Road, (0:59), (SJ 1665).

86. NVR, 3164 Penitencia Creek Road, (1:26), (SJ 1665).

87. NVR, 3164 Penitencia Creek Road, (0:17), (SJ 1665).

88. NVR, 3164 Penitencia Creek Road, (0:48), (SJ 1665).

89. DA/Homicide Video-Audio Interview of Officer Michael Pina, 9-16-17, (1:07:19).

90. DA/Homicide Video-Audio Interview of Officer Alvaro Lopez, 9-16-17, (1:11:58).

91. DA/Homicide Video-Audio Interview of Officer Kristoffer Ferguson, 9-16-17, (45:07).

92. Telephonic Audio-Recorded Interview of Rhiannon Borunda, (23:59), (SJ 1666).

93. Telephonic Audio-Recorded Interview of Leslie Bradley, (15:14), (SJ 1667).

94. Telephonic Audio-Recorded Interview of Carlos Lovato, (27:26), (SJ 1668).

95. Supplemental Case File, Documents & Medical Reports, (SJ 1672-1794).

96. San Jose Police Department, Covert Response Unit, Operational Plan, Case No. 17-255-0757, (SJ 1960-1966).

97. Defendant City of San Jose's Response to Plaintiff's Request for Production of Documents, Set Two (2), Case No. 5:18-cv-04826-BLF.

98. Supplemental Photographs of Blood Stains, Interior/Exterior of Car, and Scene.

99. Miscellaneous Email Correspondence.

100. Communication Log.

101. Answer to Amended Complaint, Demand for Jury Trial, Case No. 5:18-cv-04826-BLF.

## On-Scene Consulting

102.  Defendant City of San Jose's Answer to Second Amended Complaint; Demand for Jury Trial, Case No. 5:18-cv-04826-BLF.

103.  Defendant Michael Pina's Answer to Second Amended Complaint, Demand for Jury Trial, Case No. 5:18-cv-04826-BLF.

104.  Deposition Transcript of Sergeant Michael Pina taken on March 3, 2021.

**California POST Basic Learning Domains as Follows:**
  1.  #1: "Leadership, Professionalism and Ethics."
  2.  #2: "Criminal Justice System."
  3.  #3: "Policing in the Community."
  4.  #19: "Vehicle Operations."
  5.  #20: "Use of Force."
  6.  #21: "Patrol Techniques."
  7.  #22: "Vehicle Pullovers."
  8.  #23: "Crimes in Progress."
  9.  #33: "Arrest and Control."
  10.  #35: "Firearms/Chemical Agents."

**Summary**

The following statement summaries represent documents/statements that were used in part during my review but are in no way meant to be exhaustive. The documents listed in the Materials Reviewed Section of this report represent the full library of documents reviewed thus far and used as a basis for my opinions.

**The below information is derived from "Report on the Fatal Shooting of Jacob Dominguez on 9/15/17, The County of Santa Clara, Jeffrey F. Rosen, District Attorney:"**

*"When Dominguez reached North White Road, he came to a complete stop at the red light on eastbound Penitencia Creek as CRU approached from behind. The front driver's door window was rolled partially down. Officer Pina announced that three cars were going to initiate the VCT maneuver to apprehend Dominguez. Officer Pina's SUV passed Dominguez on the left side, then cut in front of the stopped car, making Officer Pina's car perpendicular to Dominguez and his Kia. Officer Ferguson stopped his sedan to the left*

## On-Scene Consulting ─────────────────────

*of the Kia, and Officer Lopez pulled his SUV in behind it.  The Kia started to back up, and Officer Lopez pulled forward, contacting Dominguez's car."*

*"After stopping, Officer Pina immediately exited his vehicle and took cover behind the hood of Officer Ferguson's vehicle, **(See Opinions 1-3)**.  Officer Ferguson exited his vehicle and took cover behind the driver's seat, aiming his rifle at Dominguez over the roof of his car.  Officer Lopez exited his vehicle and took cover behind the driver's door of his car."*

*"When the VCT occurred, it was cleared this was a law enforcement operation.  All three officers were pointing AR-15 rifles at Dominguez and wearing tactical vests with SJPD patches.  The red/blue emergency lights on Officer Lopez's car, immediately behind the Kia, were flashing throughout the encounter and were visible in Officer Ferguson's body camera, as well as to civilian witness Carlos Lovato, who was stopped six cars back from the intersection. Sirens can be heard clearly on the bodycam video when the officers exited their vehicles, as well as five seconds before shots were fired."*

*"As Dominguez remained seated in the Kia, and Officers Ferguson and Pina pointed their rifles at the Kia, Officer Ferguson commanded, "Let me see your hands, motherfucker."  During the next 15 seconds, the officers gave Dominguez repeated warnings that if he didn't put his hands up, "Your gonna get shot."  Then, Dominguez suddenly lowered his hands and leaned forward.  Two of the officers began frantically yelling, "Hands up!" with distinctly more urgency for an additional three seconds, after which time Officer Pina fired two shots at Dominguez, striking him once and killing him. In total, police ordered Dominguez to keep his hands up for a total of 18 seconds before the two shots were fired." **(See Opinions 4-7)**.*

*"Immediately after shots were fired, Officers Ferguson and Pina continued to aim their rifle at Dominguez in the Kia, and CRU Sergeant Mauricio Jimenez arrived on the scene in his vehicle.  Officer Lopez deployed a flashbang 12 seconds after the shooting, (if activated, releasing smoke one second after that, or 13 seconds after the shooting). Sergeant Jimenez then observed Officers Pina and Ferguson away from the shooting scene once he was able to establish cover for them, aiming his rifle at Dominguez from between Officer Ferguson and Officer Lopez's cars.  Officer Pina, Officer Ferguson and Officer Lopez were separated immediately thereafter pending interviews at the San Jose Police Department."*

## On-Scene Consulting ────────────────

*"Because Dominguez was still in the vehicle and not responsive to police instructions after the shooting, a police canine unit was commanded to enter the vehicle to determine if he was alive or dead. Once it was determined that Dominguez was deceased, the scene was left untouched until the Medical Examiner and Crime Scene Unit arrived and processed the scene and critical evidence. During processing of the scene, no firearm was located in the vehicle or on Dominguez's person. On the passenger seat of the Kia was a folding-style knife."*

**Opinions:**

Note: None of my opinions are intended to usurp the province of the jury and are not stated as ultimate issues. Rather, my opinions involve the consistency of the officers' actions with standard police practices.

### Opinion Number 1

It is my opinion a reasonable law enforcement officer acting consistent with standard police practices would have immediately moved to a position of cover after he exited his vehicle following the initiation of the Vehicle Control Tactic, (VCT).

It is my opinion, San Jose Police Department Police Officer Michael Pina, made a poor tactical decision when he moved to the front driver's side quarter panel that did not provide him any form of cover from the waist up after he exited his vehicle following the initiation of the Vehicle Control Tactic.

In addition, it is my opinion based on my review of the facts and Body Worn Camera (BWC) videos, Police Officer Michael Pina should have moved to a position of cover to the rear of Officer Alvaro Lopez's vehicle to create distance from Mr. Jacob Dominguez whose vehicle was properly contained due to the successful Vehicle Control Tactic that was executed by Police Officer Michael Pina, Police Officer Kristoffer Ferguson and Police Officer Alvaro Lopez. In addition, based on my review of the facts in this matter, there were approximately 7-9 additional San Jose Police Department Covert Response Units that were responding and San Jose Police Department Uniformed Police Officers that could have responded to assist in establishing a perimeter in the event that Mr. Jacob Dominguez fled on foot from the vehicle. In addition, San Jose Police Department Air Support (Fixed Wing Airplane) was providing overwatch of the incident and they could have requested a Police Helicopter in the event Mr. Jacob Dominguez fled from the vehicle and the Officers on the ground would need assistance with the establishment of a perimeter.

## On-Scene Consulting ————————————————

In addition, by safely moving back to a position of cover it would have allowed Police Officer Michael Pina, Police Officer Kristoffer Ferguson and Police Officer Alvaro Lopez to establish a Contact and Cover Officers.  The Contact Officer could have been the <u>only</u> Officer to issue commands to Mr. Jacob Dominguez while the Cover Officers provided Lethal and Less Lethal Cover.  By having a designated Cover Officer negates any issue of multiple Police Officers issuing possible conflicting verbal commands simultaneously.

I base my opinion on <u>California Police Officer Standards and Training (POST), Learning Domain No. 23-Crimes in Progress, Chapter 3: Responding to Specific Crimes in Progress, 3-5:</u>

**<u>Establish a Contact Officer and Cover Officers:</u>**

**<u>Contact Officer:</u>**
The roles and responsibilities of each officer involved in a high-risk vehicle pullover must be clear.  The **<u>Contact Officer:</u>**
- Conducts the business of the pullover,
- Directs the driver and occupants(s) of the target vehicle,
- Takes necessary actions related to the investigation (<u>e.g., obtaining identification, searching suspects, etc.</u>).

**<u>Cover Officers:</u>**
It is general responsibility of any cover officers called to assist the primary officer at the scene of a high-risk vehicle pullover to:
- Protect the primary officer who is conducting the business of the pullover,
- Take and maintain proper positions of cover and concealment,
- Maintain their firearms at the ready, and
- Maintain visual contact with the vehicle occupant(s) at all times,
- Avoid a crossfire situation.

**<u>Communications Between Officers:</u>**
In order to ensure officer safety and help ensure an appropriate outcome, the primary officers and cover officers must effectively communicate with one another.  Appropriate communication involves:
- Advising the primary officer of any critical occurrences or safety issues,
- Avoid inappropriate interruptions and,
- Avoid giving directions which conflict with those given by the primary officer.

## On-Scene Consulting ────────────────

In addition, I base my opinion on <u>California Police Officer Standards and Training (POST), Learning Domain No. 23-Crimes in Progress, Chapter 2: Basic Tactical Considerations, Tactical Approach</u>: Peace officers should always be aware of surrounding objects or areas that may be utilized for cover or concealment.

<u>**Cover**</u>:
- Anything that may stop or deflect an opponent's bullets.
- Should be used when involved in an armed encounter if possible.
- The type of cover will depend on the type of firearm received, (<u>firearm, shotgun, rifle</u>).

In addition, by moving to a position of cover, it would have allowed Police Officer Michael Pina, Police Officer Kristoffer Ferguson and Police Officer Alvaro Lopez to slow down and de-escalate the situation by utilizing effective verbal strategies and de-escalation techniques.

Defusing is a process of reducing the potential for violence and bringing emotional level to a manageable level to restore order. The primary objective is to calm the person so that a conversation can take place and the use of force can be avoided.

In addition, I base my opinion on my twenty eight years of law enforcement experience where I have been involved in vehicle pursuits and vehicle pullovers as Primary Officer, Secondary Officer, and a Supervisor.  In addition, I have received and provided training on Pursuit Policy, Pursuit Tactics, Post-Pursuit Tactics and Containment.  In addition, I have conducted over (<u>50</u>) Vehicle Pursuit Investigations during my last 14 years as a Supervisor with the Los Angeles Police Department.  In addition, as a Los Angeles Police Department Sergeant II+1 at Metropolitan Division K9 Platoon, I responded to hundreds of Vehicle Pursuits throughout all geographical patrol divisions to assist with containment, perimeter tactics and ultimately K9 searches.

In addition, I base my opinion on my twenty-eight years of law enforcement experience where I responded to thousands of calls for service and have effectively utilized defusing techniques, de-escalation techniques, verbal strategies, and active listening skills to reduce the potential for violence and bring the emotional level of the incident to a manageable level.

## On-Scene Consulting

In addition, I base my opinion on <u>San Jose Police Department, Policies, Rules,</u>
<u>Procedures., L 2602.5 Tactical Conduct, 8/15/16, (SJ 1046-1047)</u>: Department members
are expected to use tactics that are consistent with San Jose Police Department and
California P.O.S.T. Commission training standards. <u>Department members shall consider</u>
<u>the following relevant tactical considerations in any situation where an officer reasonably</u>
<u>believes the use of physical force may become necessary</u>:

<u>COVER, CONCEALMENT, DISTANCE, AND TIME</u>: Department members shall
consider tactically advantageous objects and/or positions at their disposal prior to and
during a force encounter. The proper use of cover, concealment, distance, and the simple
passage of time through negotiation and de-escalation are all tactics that may help a
Department member avoid and/or minimize the use of physical force. Officers shall
consider tactically repositioning themselves if doing so can be accomplished safely and
may assist in de-escalating the situation.

<u>In addition, I base my opinion on the following facts and testimony in this matter</u>:

- According to Police Officer Alvaro Lopez, they felt that the vehicle was blocked
  in, (<u>Deposition Transcript of Alvaro Lopez, Page 35</u>).
- At <u>1:00</u>, Axon Body 2, (<u>SJ 1641</u>), Police Officer Michael Pina can be observed
  standing at the front quarter panel of Officer Kristoffer Ferguson's vehicle in an
  "open air environment" that does not provide him any cover from the waist up.
- According to Sergeant Michael Pina, he positioned himself by the front tire and
  wheel, (<u>Deposition Transcript of Michael Pina, Page 75</u>).


Lastly, I base my opinion on my twenty eight year law enforcement career where, as a
Supervisor, I have investigated over 100 Use of Force Incidents as well as being
personally involved in the use of lethal and less than lethal force incidents.

### **Opinion Number 2**

It is my opinion that Defendants including San Jose Police Department Police Officer
Michael Pina failed to formulate a tactical plan from a position of cover immediately
following the successful Vehicle Control Tactic that was executed by Police Officer
Michael Pina, Police Officer Kristoffer Ferguson and Police Officer Alvaro Lopez.

Law Enforcement Officers are trained to work together and function as a team. In order
to ensure officer safety and to ensure an appropriate outcome, the primary officers and
cover officers must effectively communicate with one another. Appropriate

## On-Scene Consulting

communication involves advising the primary officer of any critical occurrences or safety issues as well as the following:

**Plan of Action:**
- Officers should discuss safety factors as well as possible plans for taking actions.
- Plans may include coordination of who will transmit radio traffic.
- Appropriate use of escalation of force.

**Poor or No Planning:**
- Rushing into the situation without any plan of action.
- Failure to establish plan of action prior to engaging the suspect.
- Not considering alternative actions.

**Inappropriate Attitude:**
- Careless or complacent.
- Overconfident.
- Too aggressive.

Officers must approach every contact with officer safety in mind. Complacency, overconfidence, poor planning, or inappropriate positioning can leave officers vulnerable to attack.

The tactical plan should have outlined verbal skills (defusing and de-escalation techniques) and Less Lethal Force options such as: empty hands, physical strength and compliance techniques, soft or hard hand techniques, the X-26 Electronic Control Device (ECD) Taser with an effective range of 7-15 feet and maximum range of 21-25 feet, Ballistic Shield, K9, Pepper Ball Launcher with a maximum effective range of 60 feet, Sage 37/40mm with a maximum effective range of approximately 100 feet, ASP/ baton, Oleoresin Capsicum "OC" spray with an effective range of 2-15 feet, Noise Flash Device (NFD), baton or the deployment of the 870 Remington 12-Gauge Shotgun with a Drag Stabilized 12-Gauge Bean Bag Round. The Drag Stabilized 12-Gauge Round is a translucent 12 Gauge shell loaded with a 40-Gram tear shaped bag made from a cotton and ballistic material blend and filled with #9 shot. The design utilizes four stabilizing tails and smokeless powder as the propellant. The round has a velocity of 270 feet per second (FPS) with a maximum effective range of 75 feet.

The Taser is an Electronic Controlled Device (ECD) as defined by the manufacturer, Axon. It is a handheld, battery operated tool which uses controlled electrical current

## On-Scene Consulting ──────────────────

designed to disrupt a person's sensory and motor nervous system by means of deploying electrical energy sufficient to cause temporary uncontrolled muscle contractions, or Neuro Muscular Incapacitation, ("NMI").  As a result, the electrical energy can override the person's voluntary motor responses for a brief duration.  The use of Taser ECD deployment resulting in NMI may provide a brief opportunity during which physical restraint procedures can be initiated whenever practical.

In addition, in the event that Mr. Jacob Dominguez fled on foot from the vehicle, the involved San Jose Police Department Police Officer Michael Pina, Police Officer Kristoffer Ferguson and Police Officer Alvaro Lopez, could establish a perimeter with the assistance of the approximately 7-9 additional San Jose Police Department Covert Response Units to include a K9 Officer that were responding and San Jose Police Department Uniformed Police Officers that could have responded to assist.  In addition, San Jose Police Department Air Support, (Fixed Wing Airplane) was providing overwatch of the incident and they could have requested a Police Helicopter in the event Mr. Jacob Dominguez fled from the vehicle and the Officers on the ground would need assistance with the establishment of a perimeter.

One helicopter in the air can cover as much territory (more quickly) as 12 officers in patrol cars on the ground.  The primary function continues to be that of support for ground units.

In addition, I base my opinion on California POST Learning Domain No. 22-Chapter 3: High-Risk Vehicle Pullovers, 3-3:

Officer Reactions:

Because of the elevated level of potential danger along with the unpredictable responses of vehicles occupants associated with high-risk vehicle pullovers, patrol officers can encounter a multitude of different personal emotions or reactions.

In order to prepare for such responses and prevent them from compromising officer safety, officers can:

- Discuss hypothetical situations with their partners, ahead of time.
- Have a plan of action prior to initiating the vehicle pullover.
- Obtain appropriate ongoing training in advance to maintain skill levels.
- Work as a team.
- Maintain communication with dispatch and other involved officers.

## On-Scene Consulting

- Rely on known tactics and procedures while also remaining flexible enough to adapt or improvise if necessary.
- Exercise emotional restraint and self-control.

In addition, I base my opinion on <u>California Police Officer Standards and Training (POST), Learning Domain No. 23, Chapter 2: Basic Tactical Considerations Approach, Establishing a Perimeter, (2-9)</u>: It is the responsibility of the primary officer to initiate the coordination of security and containment of the crime scene. This can be done by establishing a perimeter completely surrounding the area involved.

The establishment of a secure perimeter may be essential to safely resolve the crime in progress or to contain a suspect. <u>Establishing a perimeter</u>:

- Contains and isolates the crime scene.
- Prevents the suspect from escaping the area.
- Prevents unauthorized entry onto the area.
- Can aid in apprehending the suspect.

<u>There are two types of perimeters at a crime scene</u>: **inner perimeter** and **outer perimeter:**

**Inner Perimeter:**

- Immediate area around the incident (<u>e.g., private residence, commercial establishment, vehicle, etc.</u>).

**Outer Perimeter**:

- Area surrounding the inner perimeter.
- Established to further contain and isolate the crime scene.

The outer perimeter may aid in apprehension if the suspect manages to breach the inner perimeter, providing protection and cover for inner perimeter officers, providing traffic control, assisting in public safety.

In addition, I base my opinion on <u>California Police Officer Standards and Training (POST), Learning Domain No. 21-Chapter 2: Patrol Methodologies and Tactics, 2-45:</u>

**Plan of Action:**

- Officers should discuss safety factors as well as possible plans for taking actions in situations involving fleeing subjects.
- Plans may include coordination of who will transmit radio traffic.

## On-Scene Consulting

- Appropriate use of escalation of force.

**Working with Partner:**
- If partner officers stay together during a foot pursuit, there is a greater likelihood that a safe and successful outcome will occur.
- If officers become separated, officers should reevaluate the level of risk before continuing the pursuit.

In addition, I base my opinion on <u>California Police Officer Standards and Training (POST), Learning Domain No. 21-Chapter 1: Basic Concepts of Law Enforcement Patrol, 1-21:</u>

**Inappropriate Attitude:**
- Careless or complacent.
- Overconfident.
- Too aggressive.

**Poor or No Planning:**
- Rushing into the situation without any plan of action.
- Failure to establish plan of action prior to engaging the suspect.
- Not considering alternative actions.

As set forth in <u>POST Learning Domain 22</u>, "Officers are trained to work together and function as a team.  In order to ensure officer safety and to ensure an appropriate outcome, the primary officers and cover officers must effectively communicate with one another.  Appropriate communication involves advising the primary officer of any critical occurrences or safety issues."

In addition, I base my opinion on <u>California Commission on Peace Officers Standards and Training, Student Materials, Learning Domain, No. 21-Chapter 1: Basic Concepts of Law Enforcement Patrol,1-22:</u>  The element of officer safety refers to the practical application of tactically sound procedures to perform law enforcement activities in a safe and effective manner to include the utilization of available resources.  Some of the available resources in this situation can include calling for backup officers, waiting for and deploying backup officers; remaining in a position of advantage, cover, and concealment; calling for K-9 and Police Helicopter, issuing commands and verbalization from a position of cover; using less-than-lethal and other tactics that officers are trained to use in these situations.

## On-Scene Consulting ─────────────────────────

In addition, I base my opinion on my twenty eight years of law enforcement experience as a Los Angeles Police Department Sergeant II+1 at Metropolitan Division K9 Platoon, I responded to hundreds of perimeters throughout all geographical patrol divisions to assist with containment, perimeter tactics and ultimately K9 searches. In addition, most of the K9 searches involved the assistance of an Air Unit(s).

In addition, I base my opinion on the following facts and testimony:

- At 1:00, Axon Body 2, (SJ 1641), Police Officer Michael Pina can be observed standing at the front quarter panel of Officer Kristoffer Ferguson's vehicle in an "open air environment" that does not provide him any cover from the waist up.
- According to Police Officer Alvaro Lopez, he believes that there were (10) surveillance Officers there, (Deposition Transcript of Alvaro Lopez, Page 98).
- According to Police Officer Kristoffer Ferguson, if an occupant of a vehicle does not agree to exit a vehicle, they will bring K9 up, (Deposition Transcript of Kristoffer Ferguson, Page 48).
- According to Police Officer Kristoffer Ferguson, in the past they have used rubber bullets, (Deposition Transcript of Kristoffer Ferguson, Pages 50-51).
- According to Police Officer Kristoffer Ferguson, rubber bullets can compel compliance from non-compliant subjects, (Deposition Transcript of Kristoffer Ferguson, Page 52).
- According to Police Officer Kristoffer Ferguson, he was going to deploy the Flash Bang based on the way that Mr. Jacob Dominguez was behaving in the vehicle, (Deposition Transcript of Kristoffer Ferguson, Page 80).
- According to Police Officer Kristoffer Ferguson, he was going to deploy the Flash Bang because people do not like it and it scares them and after that, they say, "okay it's pretty serious" and put their hands up, (Deposition Transcript of Kristoffer Ferguson, Page 81).
- According to Sergeant Michael Pina, he believes that there were at least (10) Officers on the surveillance of Mr. Jacob Dominguez, (Deposition Transcript of Michael Pina, Page 33).
- According to Sergeant Michael Pina, if someone will not come out, you can attempt to de-escalate the situation. Start slowly introducing force options, whether it is breaking out a window to introduce gas to get them to come out of the vehicle. You could use an NFD. K9 is the last option, (Deposition Transcript of Michael Pina, Pages 46-48).
- According to Sergeant Michael Pina, he believes that a barking dog could be used to get a person out of a car, (Deposition Transcript of Michael Pina, Page 49).

## On-Scene Consulting ───────────

- According to Sergeant Michael Pina, during the surveillance of Mr. Jacob Dominguez they called in Air Support, (<u>Deposition Transcript of Michael Pina, Page 58</u>).
- According to Sergeant Michael Pina, he recalls someone in his Unit call for a Flash Bang, (<u>Deposition Transcript of Michael Pina, Page 93</u>).

Lastly, In addition, I base my opinion on my twenty eight year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

### <u>Opinion Number 3</u>

It is my opinion that <u>if</u> Police Officer Michael Pina, Police Officer Kristoffer Ferguson and Police Officer Alvaro Lopez used reasonable and proper police tactics as outlined in <u>Opinions 1-2</u> of this report and if Mr. Jacob Dominguez failed to respond to proper de-escalation and defusing techniques and remained in his vehicle and refused to submit to arrest, he should have been treated as a possibly armed barricaded subject and a request should have been made to the San Jose Police Department Special Weapons and Tactics Team (<u>SWAT</u>)/Crisis Negotiation Team to respond.  SWAT are a highly trained and competent tactical team that specifically trains for armed subjects who barricade themselves and possibly pose extreme danger to the community.  The actions of first responders can mean the difference of whether a barricaded subject is taken into custody, without escalation of an already difficult situation.  Handling barricaded subjects requires special tools and expertise, which comes from specialized training.  The Special Weapons and Tactics (<u>SWAT</u>) team is equipped and trained to resolve these barricaded subject situations.  <u>A barricaded subject is defined within the following limited criteria</u>:

A.  The subject is possibly armed; and

B.  The subject is believed to have been involved in a criminal act; or is a potential threat to the lives of citizens and/or police; and

C.  The subject is in a position of advantage, affording him cover and/or concealment. The subject is contained in an open area and the presence or approach of police officers could precipitate an adverse reaction; and

D.  The subject refuses to submit to arrest.

Initial response by officers on scene is extremely important.  That response can be broken down into four areas referred to as the "<u>Tactical Four C's</u>."

A.  <u>Containment</u>

## On-Scene Consulting

B. <u>Control</u>

C. <u>Communicate</u>

D. <u>Call SWAT</u>.

<u>The Crisis Negotiation Team Structure will typically consist of the following:</u>

A. Primary Negotiator

B. Secondary Negotiator

C. Coach or Supervisor

D. Intelligence Coordinator

E. Mental Health Professional

The Primary Negotiator shall typically report to the Incident Commander and receive an appropriate briefing as to what transpired prior to his or her arrival. The Primary Negotiator shall be responsible for the initial contact and ensuing negotiations unless the role is changed during the negotiation process. <u>The Primary Negotiator should attempt to do the following once he or she has established dialogue:</u>

A. Attempt to put the subject at ease.

B. Keep communications open.

C. Elicit useful information.

D. Achieve a safe surrender of the subject with dignity.

<u>The Primary Negotiator should be aware of the following important principles:</u>

A. Listen actively to effectively understand what is being said and the various underlying meanings and messages.

B. Give the subject feedback so as to assure them that you understand their messages.

C. Be empathetic.

D. Understand what is being said and what message is really being given.

E. Find hopes, hooks-expand options.

F. Speak slowly and clearly.

## On-Scene Consulting

G.  Ask about suicide.

H.  Consider basic human needs.

I.  Beware of suicide by cop.

The Secondary Negotiator is responsible for monitoring the negotiations so as to give feedback to the Primary Negotiator regarding the following:

A.  Tempo.

B.  Inflection.

C.  Trigger words.

D.  Interpretation of messages given by the subject.

E. Any additional useful information.

The Coach or CNT Supervisor will monitor the ongoing negotiations and will offer any advice or information that he or she deems important and useful.  The Coach or CNT Supervisor is separate from the tactical supervisor or Incident Commander.

The Coach or CNT Supervisor will perform the following functions:

A.  Meeting with Negotiators.

B.  Give advice to the Primary Negotiator.

C.  Keep track of chronological events to include maintaining a white board, track "trigger" words, and maintain timeline such as identifiers, information, etc.

The Intelligence Coordinator, who is a trained negotiator, is responsible for assigning persons to gather information about the subject to include: description, criminal background, mental health history, medical history, family, financial issues, and other relationships.

In addition, I base my opinion on the following facts and testimony:

## On-Scene Consulting

- According to Sergeant Michael Pina, he agrees that if there is a vehicle barricade and the subject will not come out, there is an option to call SWAT and Crisis Negotiators, (Deposition Transcript of Michael Pina, Page 46).
- According to Sergeant Michael Pina, if it is a vehicle barricade, where the person will not come out. It is going to be a long-drawn-out event. It is going to be hours until there is a plan to take him into custody. Lots of announcements, a lot of talk with the Tactical Negotiators, (Deposition Transcript of Michael Pina, Pages 49-50).

Lastly, I base my opinion on my twenty eight year law enforcement career and specifically during my assignment as a Sergeant II+1 at Los Angeles Police Department Special Weapons and Tactics (SWAT) where I supervised hundreds of SWAT incidents that involved the use of the SWAT's Crisis Negotiation Team.

### Opinion Number 4

It is my opinion that a reasonable law enforcement officer acting consistent with standard police practices and outlined in the California Commission on Peace Officers Standards and Training, Student Materials, Learning Domain, No. 20, Use of Force, Version 3.3, Pages 3-4, would have given a verbal warning to Mr. Jacob Dominguez if he were going to fire their service weapon. The Supreme Court applied the reasonableness test set forth in the Fourth Amendment (Tennessee v. Garner), "some warning be given prior to the use of deadly force where feasible..."

It is my opinion Santa Jose Police Department Police Officer Michael Pina should have given Mr. Jacob Dominguez a warning that he was going to use deadly force and give Mr. Jacob Dominguez a reasonable opportunity to comply.

Lastly, I base my opinion on my twenty eight year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

### Opinion Number 5

It is my opinion that a reasonable officer acting consistent with standard police practices would not have used lethal force in this situation. The basis in determining whether force is "unreasonable" shall be consistent with the Supreme Court decision of Graham v. Connor, 490 U.S. 386 (1989). Officers are trained at the POST Basic academy that the use of force must meet an *"Objectively Reasonable"* standard. The following quote from POST typifies the training (emphasis added): *"A reasonable officer* is defined as an

On-Scene Consulting ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

officer with similar training, experience, and background in a similar set of circumstances, who will react in a similar manner," (Learning Domain #20; "Introduction to the Use of Force," Pages 1-4). When an officer uses deadly force in self-defense, standard police practices and most agencies polices dictate that the officer must be facing what is reasonably believed to be an imminent or immediate threat of death or serious bodily injury. It is my expert opinion that a similarly trained San Jose Police Department Police Officer would not have considered Mr. Jacob Dominguez to be a lethal threat in this set of facts.

Lastly, I base my opinion on my twenty eight year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## **Opinion Number 6**

It is my opinion San Jose Police Department Police Officer Michael Pina's use of lethal force was inappropriate and unreasonable on September 15, 2017, when he fired two rounds from his AR-15, .223, semi-automatic rifle ultimately killing Mr. Jacob Dominguez.

In addition, I base my opinion on the following facts and testimony:

- According to Police Officer Alvaro Lopez, he did not have any information that led him to believe that Mr. Jacob Dominguez had possessed the gun at the time of the robbery of the Arco Gas Station, (Deposition Transcript of Alvaro Lopez, Page 35).
- According to Police Officer Alvaro Lopez, he did not see Mr. Jacob Dominguez with anything in his hands, (Deposition Transcript of Alvaro Lopez, Page 35).
- According to Police Officer Alvaro Lopez, he did not see Mr. Jacob Dominguez display any type of weapon before the shot was fired, (Deposition Transcript of Alvaro Lopez, Page 35).
- According to Police Officer Kristoffer Ferguson, he could see from Mr. Dominguez's mid-arm/shoulder up, (Deposition Transcript of Kristoffer Ferguson, Page 68).
- According to Police Officer Kristoffer Ferguson, he could not see anything in Mr. Jacob Dominguez's hands and if there was something in his hands, he would be able to see it, (Deposition Transcript of Kristoffer Ferguson, Pages 71-72).
- According to Police Officer Kristoffer Ferguson, he did not hear Mr. Jacob Dominguez say anything, (Deposition Transcript of Kristoffer Ferguson, Page 74).

## On-Scene Consulting ──────────────

- According to Police Officer Kristoffer Ferguson, he could not see any weapons in the vehicle, (Deposition Transcript of Kristoffer Ferguson, Page 74).
- According to Police Officer Kristoffer Ferguson, he was 100% focused as to what was going on in the car, (Deposition Transcript of Kristoffer Ferguson, Page 77).
- According to Police Officer Kristoffer Ferguson, he never heard Mr. Jacob Dominguez say, "I got a gun and I'm going to shoot you," (Deposition Transcript of Kristoffer Ferguson, Page 83).
- According to Sergeant Michael Pina, when Mr. Jacob Dominguez had his hands up, he could see that there was nothing in his hands, no weapon, (Deposition Transcript of Michael Pina, Page 89).
- According to Sergeant Michael Pina, when he fired, he could not see what Mr. Jacob Dominguez' hands were doing, (Deposition Transcript of Michael Pina, Page 97).
- According to Sergeant Michael Pina, he could not see Mr. Jacob Dominguez' hands at all, (Deposition Transcript of Michael Pina, Page 98).
- According to Sergeant Michael Pina, Mr. Jacob Dominguez did not verbally threaten him, (Deposition Transcript of Michael Pina, Page 102).
- According to Sergeant Michael Pina, he encountered people who did not initially have their hands up or put them down and then back up, (Deposition Transcript of Michael Pina, Pages 106-107).

Lastly, I base my opinion on my twenty eight year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

### **Opinion Number 7**

It is my opinion San Jose Police Department Police Officer Michael Pina's use of lethal force violated his training and caused the death of Mr. Jacob Dominguez, including but not limited to the following reasons:

- Highest level of force a Police Officer can use.
- This was not an immediate Defense of Life situation.
- Must be a last resort before using lethal force.
- Must be the direst of circumstances.
- Deadly force is likely to cause great bodily injury or death.
- Must show a reverence for human life.
- There were other reasonable measures available.

On-Scene Consulting —————————————————————

- All other reasonable measures were not exhausted.
- Warnings when feasible that deadly force will be used.
- Officers are responsible for every shot.
- Subjective Fear is insufficient.
- Over reaction is excessive force.

Lastly, I base my opinion on my twenty eight year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## **Opinion Number 8**

It is my opinion San Jose Police Department Police Officer Michael Pina's tactical conduct and decisions preceding the use of deadly force in this matter was inappropriate based on the totality of the circumstances. It is my opinion that there was a departure from POST Standards by Police Officer Michael Pina in this incident.  In addition, I base my opinion on the <u>California Supreme Court opinion in Hayes v. County of San Diego, 2013 Cal LEXIS 6652</u>. In Hayes, the California Supreme Court found that, under California negligence law, an officer's pre- shooting conduct leading up to a deadly use of force may affect whether a use of force is ultimately reasonable and therefore may be considered in the analysis of any use of deadly force.  It is my opinion that there was a gross lack of situational awareness and fundamental tactical errors by San Jose Police Department Police Officer Michael Pina in this incident.

Lastly, I base my opinion on my twenty eight year law enforcement career whereas a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## <u>My Qualifications for Reviewing this Case:</u>

My opinions are based on my education, training, and experience.  Upon my graduation in June 1988 from Northeastern University in Boston with a Bachelor's Degree in Criminal Justice, I was hired as Criminal Investigator/Special Agent GS-1811.  Upon completion of Criminal Investigator/Basic Agent School at the Federal Law Enforcement Training Center (FLETC)-6-month academy, I was employed by the United States Customs Service and assigned to the Organized Crime Drug Task Force where I functioned as an agent and undercover operative. The investigations focused on targeting criminal organizations that were involved in large scale narcotic smuggling and money laundering operations.

## On-Scene Consulting

I was assigned to the United States Customs Service Office of the Special Agent In-Charge, in San Francisco from August 1988 until I joined the Los Angeles Police Department in November of 1989. While in the Los Angeles Police Department Academy, I was selected by the staff to be my Recruit Class Leader. Upon my graduation from the LAPD Academy, I was assigned to 77th Division. In addition to being assigned to 77th Division, I was assigned to Northeast Division (Patrol), Northeast Division (Special Projects Unit-SPU), and Northeast Division C.R.A.S.H (Gang Detail). I was selected to Operations Central Bureau C.R.A.S.H., where I worked a plain clothes detail targeting specific gangs throughout Operations Central Bureau which included Rampart Division, Hollenbeck Division, Central Division, and Northeast Division.

I applied and was selected to be a Police Officer III at Wilshire Area Vice where I functioned as an undercover operative targeting prostitution, gambling, bookmaking, and other Vice related offenses. While working Wilshire Vice, I was ambushed and received two gunshot wounds. I received the Purple Heart in 2010 for the injures associated with being ambushed. Upon return from my injuries, I attended mandated Field Training Officer (FTO) School and was assigned as a Field Training Officer at Wilshire Division. I trained recruits upon their graduation from the Los Angeles Police Academy in tactics, use of force, report writing, vehicle stops, calls for service, court testimony, emergency procedures, pursuit policy, accident investigations, perimeters, Department policies and procedures, and effective communication skills. While assigned as a Field Training Officer, I was involved in an In-Policy Lethal Use of Force incident, while working with a Probationary Police Officer who had recently graduated from the Los Angeles Police Academy.

I was promoted to the rank of Detective and attended Basic Detective School. Upon completion of Basic Detective School, I was assigned to Wilshire Area Narcotics, Field Enforcement Section (FES), where I functioned as an investigator in an undercover capacity. As a Detective I wrote and served search and arrest warrants to include large-scale multiple search warrant services. I addition, I managed and utilized Confidential Reliable Informants (CRI's) during hundreds of street-level narcotic transactions and search warrant services.

I was promoted to the rank of Sergeant I and assigned to Hollenbeck Division. Prior to my assignment, I attended mandated Basic Supervisor School. In conjunction with Supervisor School, I was selected to attend the West Point Leadership Academy Supervisor Training. The training focused on team building, leadership, and decision making. While assigned to Hollenbeck Division, I conducted roll call training daily on

## On-Scene Consulting

numerous subject matters to include: Use of Force Options (Non-Lethal and Lethal), Tactics, Calls for Service, Calls for Service involving the Mentally Ill, Vehicle Pursuit Policy, LAPD Policies and Procedures, Use of Force Policy, Updated Legal Bulletins, Training Directives, and other Standardized Roll Call Training. I directly supervised a Watch of Officers and provided supervisory oversight during calls for service, tactical situations, perimeter tactics, containment and control issues and use of force incidents. I conducted audits, personnel investigations, Standard Based Assessments (Ratings), Use of Force Investigations, administrative projects, and prepared commendations for officer's field performance. While assigned to Hollenbeck Division, I was selected as the Officer-In-Charge of Hollenbeck Division's Special Enforcement Group. I directly supervised (14) Police Officers and Detectives assigned to the Unit. Our unit worked in conjunction with Hollenbeck Detectives and specifically targeted career criminals in the Division. In addition, I provided and supervised uniformed assistance with Operations Central Bureau Narcotics during street level narcotic transactions as well as during narcotic related search warrants. I provided ongoing mandated Department Training as well tactical, firearms, less than lethal and search warrant tactics training to the Officers and Detectives. As a Unit, we prepared and served numerous search warrants. I provided search warrant tactical briefing and de-briefing of each warrant at the conclusion of the of the service. I completed audits, administrative projects, Use of Force Investigations, personnel complaints, and other administrative duties as deemed necessary by the Area Commanding Officer.

During this time, I was selected to be loaned to Internal Affairs, Headquarters Section. I investigated personnel complaints that were too large in scope for a geographical Division. At the conclusion of my loan, I was selected to Management Services Division, Special Projects, and Office of the Chief of Police. I completed numerous in-depth staff projects for review by the Chief of Police. In addition, I was assigned with conducting research and editing the 2000 LAPD Department Manual.

Also, during this time, I earned my Master's Degree in Public Administration from California State University, Long Beach.

I applied and was selected as a Sergeant II at 77th Division Vice. I directly supervised ten undercover officers and four uniformed officers. I provided all facets of training to the officers assigned to Vice at that time to include: Use of Force Policy, Legal Updates, Department Directives, Training Bulletins, Standardized Roll Call Training, Tactics Training, Undercover Operations training, Surveillance training, and any other training

## On-Scene Consulting

deemed necessary by my Area Commanding Officer. I conducted audits, personnel investigations, administrative projects, Use of Force Investigations, and special projects.

During this time, I was selected by the Chief of Police to be loaned to the Rampart Corruption Task Force. I conducted Use of Force audits on Specialized Units in Central and South Bureaus. I reported directly to the Office of the Chief of Police. I assisted with the completion of final document presented to the Board of Inquiry overseeing the Rampart Corruption Task Force.

In 2000, I applied and was selected to Metropolitan Division K9 Platoon as a Sergeant II+1. I directly supervised (18) K9 Handlers. Metro K9 conducted K9 Operations for the entire Department covering all Patrol Divisions and Specialized Units. I provided all facets of training to the K9 Officers to include: K9 Operations, tactics, search warrant services, Mobile Field Force Options, Less than Lethal Force Options, Lethal Force Options, Department Directives, Training Bulletins, and other training dictated by the Officer-in-Charge and Commanding Officer. In addition, I taught K9 Operations at in-service training, Watch Commander School, Field Training Officer (FTO) School, and Basic Detective School. While at K9, I investigated and completed K9 contacts (bite investigations), personnel complaints, Use of Force Investigations. In addition, I directed and was directly involved in Use of Force incidents. I received the LAPD Medal of Valor and LAPD Police Star for two lethal use of force incidents while assigned to K9.

In 2005, I was selected as a Sergeant II+1 in Special Weapons and Tactics (SWAT). I directly supervised sixty SWAT Officers with (6) other SWAT Sergeants and (2) Lieutenants. I conducted and facilitated all facets of SWAT training to include: Weapons Training (.45 caliber, MP-5, M-4, Benelli Shotgun, Remington 870 Bean Bag Shotgun, .40mm, SAGE, MX-26 Taser) on a monthly basis. In addition, I facilitated and conducted training in the following training Cadres: Breacher (Explosive), Crisis Negotiation-Mental Health, MEU, SMART, Suicide Prevention, Counter-Terrorism Cadre, Climbing, Hostage Rescue, Sniper Training, Air Support Training (Fast rope, Aerial Platform Shooting). I directly supervised SWAT missions and High-Risk Search Warrant Services to include all facets (preparation, briefing, deployment, de-briefing). I was the Supervisor-in-Charge of the Crisis Negotiation Team. I provided on-going crisis negotiation training, mental health training, de-briefs, 40-hour POST Certified Crisis Negotiation Team (CNT) School, and suicide prevention training. I worked in conjunctional with the mental health community to provide and facilitate training with LAPD SMART, LAPD Mental Evaluation Unit (MEU), Behavioral Science Services Section (BSS), and the Didi Hirsch Suicide Prevention Center. In addition, I assisted the

## On-Scene Consulting ────────────────

West Point Military Academy with the development of their crisis negotiation curriculum.

During this time, I was selected as the sole LAPD SWAT representative to respond to Mumbai India with Counterterrorism following the terrorist attack in November 2008. I taught use of force, tactics, and SWAT deployment to 250 Mumbai Special Tactical Police Officers. Upon my return, I assisted with the development of multiple venue/multiple attacker tactics.

In June 2010, I retired from the Los Angeles Police Department with 20 years in service to pursue an opportunity in the private sector. I held supervisory positions for the last 14 years of my career. During my tenure with the LAPD, I received over 100 Commendations to include: The Medal of Valor, Purple Heart, and the Police Star.

From June 2010 through April 2013, I was the Vice President of Security Operations at Caruso Affiliated in Los Angeles, CA. My responsibilities included: Identified and conducted Risk and Vulnerability Assessments for all Caruso Affiliated Developments, projected developments/investments, and residences. Utilized strategic-level analysis from the intelligence community, law enforcement and the private sector. Ensured a coordinated ability to identify and monitor potential or actual incidents among critical infrastructure domains and all personal and professional interests of Caruso Affiliated. Mitigated expected threats. Utilized preplanned, coordinated actions in response to infrastructure warnings or incidents. Responded to hostilities. Identified and eliminated the cause, or source, of an infrastructure event by the utilization of emergency response measures to include on-site security personnel, local law enforcement, medical and fire rescue, and relevant investigative agencies. Conducted all facets of security training for the company and employees. Formulated Business Continuity and CEO Succession Plans for the company and all affiliated business interests. Conducted ongoing audits and internal investigations.

From June 2013 to June 2014, I was hired as a Deputy Sheriff at the Riverside Sheriff's Department where I conducted all facets of patrol service to include calls for service, self-initiated field activity, arrests, citations, and court testimony. In addition, during my tenure with the Riverside County Sheriff's Department, I was assigned to Robert Presley Detention Center (RPDC). Processed and monitored inmate population from initial intake, housing, court, transportation, and release. Conducted searches of inmate population as well as the facility on an ongoing basis. Utilized experience as a gang officer, Detective and Sergeant with LAPD to conduct interviews and interrogations of prisoners regarding a myriad of

## On-Scene Consulting ─────────────────

investigations. Provided information to gang detail. Functioned as a mentor to newly appointed Deputy Sheriffs as well as Supervisors. Attended and certified in RSO Supplemental Jail Operations Core Course prior to deployment at RPDC. Attended on-going training to include: Use of Force (Lethal and Non-Lethal), Crisis Negotiation Training, Active Listening Skills Training, Report Writing, Response and Deployment to Critical Incidents, and Proper Protocols and Procedures when responding to a medical incident or suicide.


From June 2014 to March 2016, I was the Director of Security at Universal Protection Service where I supervised 84 Security Professionals at the City National Plaza. Conducted and or facilitated all Bureau of Security and Investigative Services (BSIS) training to Security Professionals.  Ensured all Security Professionals were compliant with BSIS security training and licensing.  Conducted the following training to Security Professionals and Tenants on an ongoing basis: Fire Life Safety, Evacuation Drills, Active Shooter, Workplace Violence, Security Procedures and Protocols, Responding to Incidents Involving the Mentally Ill, Hazardous Materials and Internal Theft.  Conducted ongoing Risk and Vulnerability Assessments of the City National Plaza to include security staffing and deployment, Closed Circuit Television (CCTV), Crime Prevention through Environmental Design (CPTED), and protocols to respond and mitigate threats. Developed Security and Fire Life Safety Manuals for Security Professionals and Tenants. Coordinated all security efforts to ensure safety at Special Events.  Conducted internal investigations and worked in conjunction with the Los Angeles Police Department (LAPD) and the Los Angeles Fire Department (LAFD) on an ongoing basis.


From March 2016 to September 5, 2017, I was the Director of Security at L&R Group of Companies.  Identified and conducted Risk and Vulnerability Assessments for all L&R Group of Companies developments and projected developments throughout the United States. Conducted and/or facilitated all Bureau of Security and Investigative Services (BSIS) training to Security Professionals.  Ensured all Security Professionals were compliant with BSIS security training and licensing.  Conducted the following training to Security Professionals and Tenants on an ongoing basis: Fire Life Safety, Evacuation Drills, Active Shooter, Workplace Violence, Security Procedures and Protocols, Responding to Incidents Involving the Mentally Ill, Hazardous Materials and Internal Theft.  Conducted ongoing Risk and Vulnerability Assessments to include security staffing and deployment, Closed Circuit Television (CCTV), Crime Prevention through Environmental Design (CPTED), and protocols to respond and mitigate threats. Developed Security and Fire Life Safety Manuals for Security Professionals and Tenants.

## On-Scene Consulting

Coordinated all security efforts to ensure safety at Special Events.  Conducted internal investigations and worked in conjunction with the Los Angeles Police Department (LAPD) and the Los Angeles Fire Department (LAFD) on an ongoing basis as well as respective law enforcement agencies throughout the United States on security matters.

Attached are my curriculum vitae, listing of testimony and fee schedule.

Scott A. DeFoe

**Curriculum Vitae**

# Scott A. DeFoe

P.O. Box 4456, Huntington Beach, CA 92605-4456
Cell: 714-655-4280
sdefoe313@msn.com

**Executive Profile**

**Expert Witness / Consultant Specialties Include:**

| | |
|---|---|
| Police Procedures / Tactics | Use of Force (Lethal and Less Lethal) |
| SWAT | K9 |
| Narcotics | Jail Operations |
| Informants | Police Corruption / Internal Investigation |
| Vehicle Pursuits | Vice |
| Surveillance | Evidence Analysis & Preservation |
| Security | Premise Liability / Forseeability |

**Awards and Commendations**

**Purple Heart** (LAPD),
**Medal of Valor** (LAPD)
**Police Star** (LAPD) and over 100 Los Angeles Police Department and citizen commendations.

**Professional Experience**

**Consultant / Expert Witness**
April 2013 to Present
**On-Scene Consulting Group, LLC.** - Los Angeles, CA
> Provide comprehensive service which includes in-depth analysis and investigations with detailed reporting of all findings. Testified as an Expert Witness in pre-trial depositions and in various courts throughout the United States.

**Director of Security**
March 2016 to September 2017
**L&R Group of Companies** - Los Angeles, CA
> Identified and conducted Risk and Vulnerability Assessments for all L&R Group of Companies developments, and projected developments throughout the United States. Conducted all facets of security training to ensure compliance with the Bureau of Security and Investigative Services (BSIS). Ensured compliance with appropriate safety and sustainability regulations for all of the developments in coordination with Human Resources, Legal, and law enforcement to ensure the safety and security of protection of our staff, executives, tenants, and guests.

- Utilized strategic-level analysis from the intelligence community, law enforcement and the private sector. Ensured a coordinated ability to identify and monitor potential or actual incidents among critical infrastructure domains.
- Mitigated expected threats. Utilized preplanned coordinated actions in response to infrastructure warnings or incidents.
- Conducted internal investigations and audits.
- Directed the day-to-day management of site security operations for major sites through subordinates to ensure timely delivery of required services and appropriate response to incidents.
- Designed and implemented appropriate security, measures for existing and projected developments.
- Coordinated all security efforts with current practices and procedures.
- Researched and deployed appropriate technology solutions, innovative security management techniques, and other procedures to ensure physical safety of employees, tenants and guests.

**Scott A. DeFoe**                                                                    Page 2

**Director of Security**
June 2014 to March 2016
**Universal Protection Service** - Los Angeles, CA
> Directed supervision of 84 Security Professionals at the City National Plaza.  Conducted and or facilitated all Bureau of Security Investigative Services (BSIS) training to Security Professionals. Ensured all Security Professionals were compliant with BSIS security training and licensing. Conducted the following training to Security Professionals and Tenants on an ongoing basis.

- Trained others on Fire Life Safety, Evacuation Drills, Active Shooter, Workplace Violence, Security Procedures and Protocols, Responding to Incidents Involving the Mentally Ill, Hazardous Materials and Internal Theft.
- Conducted ongoing risk and vulnerability assessments of the City National Plaza to include security staffing and deployment, closed circuit television (CCTV), Crime Prevention through Environmental Design (CPTED), and protocols to respond and mitigate threats.
- Developed Security and Fire Life Safety Manuals for Security Professionals and Tenants.
- Coordinated all security efforts to ensure safety at special events. Conducted internal investigations and worked in conjunction with the Los Angeles Police Department (LAPD), Los Angeles Fire Department (LAFD) on an ongoing basis.

**Riverside County Sheriff's Department - Deputy Sheriff (Lateral)** - June 2013 to June 2014
April 2014 to June 2014
> Assigned to Jurupa Valley Station Field Deputy Training Program. Conducted all facets of patrol service to include: calls for service, self-initiated field activity, arrests, citations, booking of evidence, and court testimony.

June 2013 to April 2014
> Assigned to Robert Presley Detention Center (RPDC). Processed and monitored inmate population from initial intake, housing, court, transportation and release.  Conducted searches of inmate population as well as the facility on an ongoing basis.  Utilized experience as a Gang Officer, Detective and Sergeant with LAPD to conduct interviews and interrogations of prisoners regarding a myriad of investigations.

- Provided information to gang detail.
- Functioned as a mentor to newly appointed Deputy Sheriffs as well as Supervisors.
- Attended and certified in RSO Supplemental Jail Operations Core Course and Title XV training prior to deployment at RPDC. Received on-going training to include: Use of Force (Lethal and Non-Lethal), Crisis Negotiation Training, Active Listening Skills Training, Report Writing, Response and Deployment to Critical Incidents, and Proper Protocols and Procedures when responding to a medical incident or suicide.

**Vice President of Security Operations**
June 2010 to April 2013
**Caruso Affiliated** - Los Angeles, CA
> Identified and conducted risk and vulnerability assessments for all Caruso Affiliated Developments, projected developments/investments, and residences.  Utilized strategic-level analysis from the intelligence community, law enforcement and the private sector.  Ensured a coordinated ability to identify and monitor potential or actual incidents among critical infrastructure domains and all personal and professional interests of Caruso Affiliated.  Mitigated expected threats.  Utilized preplanned, coordinated actions in response to infrastructure warnings or incidents.

- Responded to hostilities and identified and eliminated the cause, or source, of an infrastructure event by the utilization of emergency response measures to include: on-site security personnel, local law enforcement, medical and fire rescue and relevant investigative agencies.
- Conducted all facets of security training for the company and employees.
- Formulated Business Continuity and CEO Succession Plans for the company and all affiliated business interests.  Conducted ongoing audits and internal investigations.

**Scott A. DeFoe** Page 3

**Level I Reserve Police Officer**
June 2010 to March 2016
**Los Angeles Police Department** - Los Angeles, California

Initially assigned to Counter Terrorism from June 2010 through April 2012. Completed staff projects for the Deputy Chief.

Assigned to the Wilshire Division from April 2012 through March 2016. Assisted with tactical and shooting training days as an Adjunct Instructor. Assigned to patrol functions including: responding to calls for service, conducting follow-up investigations, conducting self-initiated law enforcement activities including arrests, booking of arrestees, completing reports and booking of evidence.

- Worked in conjunction with citizens and local businesses in developing crime fighting strategies.
- Provided active shooter training to local businesses.
- Worked in conjunction with Wilshire Detectives and Wilshire Crime Analysis Detail (CAD) to reduce crime.

**Sergeant II+1 Special Weapons and Tactics (SWAT) Supervisor**
August 2005 to June 2010
**Los Angeles Police Department** - Los Angeles, California

Supervised the response and tactical intervention during barricaded subject incidents. Supervised the coordination and facilitation of high risk warrant services. Supervised the Crisis Negotiation Team (CNT) during barricaded and suicidal subject incidents. Developed SWAT's Counter-Terrorism and Training Cadre to include the preparation and submission of federal and state grants for the acquisition of equipment.

- Performed and facilitated all aspects of tactical and crisis negotiation training to federal, state and local law enforcement agencies.
- Responded and trained Mumbai local and state police officers following the 2008 terrorist attack in Mumbai, India.
- Assisted with the development of multi-assault counter-terrorism action capabilities training.
- Completed audits, employee performance reviews, investigative reports and internal investigations.
- Conducted use of force investigations on SWAT incidents and submitted reports to the Officer-in-Charge for his review and approval.
- Testified in court and at administrative hearings.

**Sergeant II+1 Metropolitan Division K9 Platoon**
April 2000 to September 2005
**Los Angeles Police Department** - Los Angeles, California

Supervised and facilitated all facets of K9 training. Ensured that all K9 deployments conformed to the K9 deployment criteria, through training of personnel and supervision of K9 searches. Functioned as a member on a K9 Search Team when necessary. Provided on-scene command during critical incidents at Command Posts.

- Completed use of force investigations and K9 contacts. Submitted all reports to Officer-in-Charge for his review and approval.
- Completed all requisite administrative reports to include audits.
- Testified in court, and at administrative hearings. Wrote 2002 LAPD Metropolitan Division K9 Platoon Manual.

**Scott A. DeFoe** Page 4

**Sergeant II-77th Division Vice, Officer-in-Charge**
February 1999 to March 2000
**Los Angeles Police Department** - Los Angeles, California
Supervised investigations involving pimping, pandering, prostitution, bookmaking, gaming, gambling and other vice related activities. Conducted audits and administrative reports. Prepared and served search warrants for the above-mentioned crimes. Supervised twelve undercover officers and six uniformed officers on a daily basis. Worked in conjunction with other Department entities on sensitive investigations.

- Completed rating reports for subordinates assigned to the Unit.
- Conducted use of force investigations, audits, personnel complaints and other administrative tasks.
- Submitted all reports to the Officer-in-Charge for his review and approval.
- Testified in court and at administrative hearings.

**Management Services Division Supervisor-Sergeant**
November 1997 to March 1999
**Los Angeles Police Department** - Los Angeles, California
Conducted research projects, directives and correspondence at the direction of the Chief of Police. Reviewed staff work by subordinates. Conducted follow-up investigations as required to ensure that policies and procedures were adhered to by all organizational units within the Department. Conducted large scale audits and investigations.

- Served a six-month loan on the Rampart Corruption Task Force investigating and auditing use of force reports.
- Served a six-month loan at Internal Affairs Division, Headquarters Section. Investigated personnel complaints beyond the scope of geographical patrol divisions.
- Staff writer for the 2000 Los Angeles Police Department Manual.

**Hollenbeck Division Special Enforcement Group Officer-in-Charge**
November 1996 to November 1997
**Los Angeles Police Department** - Los Angeles, California
Provided supervisory oversight of eighteen police officers and detectives during gang investigations, crime suppression and the service of search warrants. Provided all aspects of tactical training to the group. Completed audits, employee ratings and administrative duties.

- Monitored and reviewed gang and narcotic investigations to ensure compliance with Department policy. Conducted use of force investigations.
- Submitted all investigative and administrative reports to the Commanding Officer for his review and approval. Testified in court and at administrative hearings.

**Detective, Wilshire Division**
March 1995 to November 1996
**Los Angeles Police Department** - Los Angeles, California
Assigned to various areas including: Robbery, Burglary, Auto Theft, Major Assault Crimes (Assaults with Domestic Violence), Homicide and the West Bureau Narcotics Group Field Enforcement Section. Conducted preliminary investigations and follow-up investigations. Interviewed victims and witnesses of crimes and interrogated individuals suspected of committing crimes. Conducted surveillances.

- Filed criminal investigations with the Los Angeles City Attorney's Office and the Los Angeles District Attorney's Office.
- Worked in conjunction with other law enforcement agencies and entities within the Los Angeles Police Department.
- Wrote and served search warrants. Booked evidence related to investigations.
- Trained local businesses and community groups in the areas of safety and security.

**Scott A. DeFoe**                                                                                                    Page 5

**Police Officer**
November 1989 to March 1995
**Los Angeles Police Department** - Los Angeles, California
Functioned in numerous roles as a Police Officer I, II, and III to include: Patrol, Field Training Officer (FTO), Detective Trainee, Vice, Special Enforcement Group, Divisional CRASH (gangs) and Operation Central Bureau CRASH (gangs).

- Selected to Specialized Units based on high performance and ability to work well in small cohesive units throughout the Department.
- Testified in court on a multitude of matters. Certified in court as a narcotic, gang, and vice expert.

**Special Agent-Organized Crime Drug Task Force (OCDETF)**
June 1988 to October 1989
**Department of Treasury, United States Customs Service** - San Francisco, California. Special Agent assigned to a multi-agency narcotics task force. Investigated major suppliers of narcotics and dangerous drugs who were engaged in illegal activities on an organized and commercial basis in an undercover capacity.

- Prepared and served search warrants. Worked in conjunction with the Assistant United States Attorney in San Francisco. Testified in Federal Court and at Asset Forfeiture Hearings.

**United States Army Reserve**
June 1983 to June 1989
Honorable Discharge as E-4. Military Occupational Skill (MOS)-72E-Combat Infantry Communications

**Training (Received and Provided Training):**
Weapons Training/Qualification on Monthly Basis-M-4, MP-5, Benelli Shotgun, Kimber/.45/1911, Remington 870 Shotgun, Glock, Force Option Simulator (Quarterly). Quarterly mandatory weapons certification from November 1989 to June 2010.

**Additional Training/Certification(s):** (11/1989-06/2010)

**Supervisor Training:**
Incident Command System 100-800
Sexual Harassment Training for Supervisors
Career Development for Supervisors
Standards Based Assessments for Supervisors
Supervisors Consent Decree Training
Vehicle Pursuit Policy Supervisor Training
Watch Commander School Retaliation Training
RMIS TEAMS II (Non-Categorical Use of Force Supervisor Training)
Ethics in Law Enforcement
Career Survival Workshops
Problem Oriented Policing and the SARA Model
Cultural Diversity Tools for Tolerance
Instructor Development Course (IDC)
Officer Involved Shootings Administrative Investigations Training
Prop 115-Hearsay Evidence Training
Managing Workplace Conflict CLETS-NCIC
Racial Profiling
West Point Leadership School for Supervisors
Basic Supervisor School

**HAZMAT Training:**
Advanced Chemical and Biological Integrated Response, LAFD Hazardous Materials Technical Specialist (A-D)-Certified HAZMAT Technician, Technical Emergency Response Training, Law Enforcement Protective Measures.

**Scott A. DeFoe** Page 6

**Crisis Negotiations/Mental Health Training:**
Hostage Negotiations - Advanced, Behavioral Sciences Services Section
Officer-Involved Shooting/Barricaded Subject Services Debriefs
Crisis Negotiation Training and Curriculum Development for West Point Military Academy
Didi Hirsch Suicide Prevention Training (Volunteered and Supervised on an ongoing basis)
Mood Disorders/Post Traumatic Stress Disorder Training, Communicating with People with Disabilities
Mental Health Introduction MEU-SMART Orientation
Mental Illness Update
Drug Recognition Expert Training and Certification
Under the Influence-11550 Health and Safety Code Training
Institute for the Prevention of In-Custody Deaths Training on Recognizing Agonal & Other Breathing Problems
(2015). Attended and facilitated LAPD CNT 40-Hour Course
Attended FBI Basic Crisis Negotiation Course

**Tactical Training:**
Crowd Management Control, Search and Arrest Warrant Tactics
Less than Lethal Use of Force Training and Certification TASER MX-26, X-26 Train the Trainer
(Trainer/Instructor Certification)
Excited Delirium & Agitated Chaotic Events, Train the Trainer.
End of Pursuit Tactics Overview
Communication-Keeping Your Edge
Crowd Management and Control
Immediate Action Rapid Deployment
Arrest and Control Trainer Certification
Los Angeles County Sheriff's Department Explosive Breaching Course
Mobile Field Force Supervisor Train the Trainer
Officer Survival-Shooting
Personal Protective Equipment (PPE)
Pursuit Intervention Techniques for Supervisors
Baton/Impact Weapon
Advanced Canine Supervisor Course
Basic Metro School
Collapsible Baton
Officer Safety Field Tactics
Mobile Field Force Training
Narcotics/Tactical Entry Update
Field Training Officer Update
Standard Emergency Management System (SEMS)
CPR-First Aid Recertification
Basic Arrest and Control Techniques
Driver Awareness Training
Range Safety Officer and Supervisor Training
Interrogation Techniques
VICE School
37mm Baton Round Training
Civil Unrest Response Training
Hobble Training
Advanced Field Officer Course, Oleoresin Capsicum (OC) Gas Training
Search Warrant Counter Measures
Riverside Sheriff's Department Jail Operations Course to include Title XV

**Scott A. DeFoe**                                                                 Page 7

**Detective Training:**

Basic Detective School
Juvenile Procedures School
Association of Threat Assessments Professionals (ATAP) Training
Workplace Investigative Training
LAPD Narcotics School
POST Investigative and Interrogation Course
POST Cognitive & Statement Analysis Training Course
Special Investigative Section Surveillance Training

**California Peace Officer Standards and Training (P.O.S.T.) Commission: Basic, Intermediate, Advanced and Supervisory Certificates.**

**Outside Training**:

Dale Carnegie 12-week Public Speaking School
Americans for Effective Law Enforcement (AELE) Certified Litigation Expert Courses
Use of Force By The Numbers: 4, 8, 14 (Institute for the Prevention of In-Custody Deaths-IPICD)
California Specialized Training Unit Hazardous Materials First Responder Operations Weapons of Mass Destruction Law Enforcement Field Support Course
Louisiana State University Screening of Persons by Observational Techniques (SPOT)
Subconscious Communication for Detecting Danger by International Academy for Linguistics and Kinesics
Department of Homeland Security WMD Radiological/Nuclear Course of Hazardous Materials Technicians
UNLV WMD Radiological/Nuclear Awareness Train The Trainer Course, FEMA Advanced Chemical and Biological Integrated Response Course Mobile Training Event
FEMA WMD Law Enforcement Threat
Hazard Recognition, and Emergency Actions Training
CSTI Technician/Specialist 1A-D, DHS WMD Tactical Commander Management and Planning
Licensed California Private Investigator (License No. 29151)
Certified California Criminal Defense Investigator.

**Associations**

California Association of Licensed Investigators
Peace Officers Association of Los Angeles County (POALAC)
Americans for Effective Law Enforcement (AELE)
California Crime Prevention Officers Association
International Association in Crime Prevention Partners
California Peace Officers Association

**Education**

**Master of Legal Studies**, 2020
**Pepperdine Law School** - Malibu, California, United States

**Master of Arts**: **Public Administration**, 1998
**California State University** - Long Beach, California, United States

**Bachelor of Science**: **Criminal Justice**, 1988
**Northeastern University** - Boston, Massachusetts, United States

# Scott A. DeFoe
# On-Scene Consulting Group, LLC

**P.O. Box 4456**
**Huntington Beach, California 92605-4456**
**(714) 655-4280 (Cell)**
**Email: sdefoe313@msn.com**

## RECORD OF TRIAL TESTIMONY & DEPOSITIONS

1.  **Deposition:** April 15, 2010, Dorman, et al. vs. State of California (CHP) Cause No. INC058224, Superior Court of California, County of San Bernadino.

2.  **Deposition:** August 28, 2014, L.H. (Henning) vs. County of Los Angeles, et al., Cause No. CV13-1156-GW (JCGx), Superior Court of California, County of Los Angeles.

3.  **Deposition:** September 15, 2014, A.D., et al. vs. City of Los Angeles, et al., Cause No. CV13-6510-JFW (Asx), United States District Court for the Central District of California.

4.  **Deposition:** October 28, 2014, Goodlow vs. City of El Cajon, Cause No. 3:13-cv-01542, United States District Court for the Southern District of California.

5.  **Deposition**: February 3, 2015, Castro vs. County of Los Angeles, et al., Cause No. 2:13-cv-06631, United States District Court for the Central District of California.

6.  **Deposition:** April 10, 2015, James Gallegos vs. Havana House, Gilardo Lopez, Donald Bernard, Joseph Escandon and DOES 1-100, Cause No. BC508561, Superior Court of California, County of Los Angeles.

7.  **Trial Federal Court:** April 29, 2015, Goodlow vs. City of El Cajon, Cause No. 3:13-cv-01542, United States District Court for the Southern District of California.

8.  **Deposition**: May 14, 2015, Eloy Jacobo vs. City of Palm Springs, a Government Agency, DOES 1 through 50, inclusive, Cause No. INC 1302171, Superior Court of California, County of Riverside.

**9**. **Deposition**: August 14, 2015, Valine Gonzalez (Santibanez Matter) vs. City of Visalia; Tim Haener; and DOES 2-10, inclusive, Cause No1:13-cv-01697, United States District Court for the Eastern District of California.

**10**. **Trial State Court:** August 18, 2015, James Gallegos, Plaintiff vs. Havana House; Gilardo Lopez; Donald Bernard; Jose Escandon and DOES 1-100, inclusive, Defendants. Cause No. BC 508561, Superior Court of California, County of Los Angeles.

**11**. **Deposition**: September 1, 2015 (Part 1) and September 4, 2015 (Part 2), Frederick Ronald Thomas; JR., individually and as successor-in-interest of Kelly James Thomas, deceased, Plaintiff, vs. City of Fullerton, et al. Cause No. 30-2012-00581299, Superior Court of California, Court of Orange.

**12**. **Deposition:**   September 15, 2015, Anthony Del Real, individually and as successor-in-interest to John Del Real, Jr; Brittany Del Real Davis, individually and as successor-in-interest to John Del Real Jr.; and Shirley Lowery, Plaintiff vs. City of Long Beach; et al., Defendants, Cause No. CV-14-02831-PLA, United States District Court for the Central District of California.

**13**. **Deposition**:   September 23, 2015, R.A., a minor, by and Through his guardian ad Litem Adrianne Penrose, Individually and as successor in interest of John Armes, deceased, and Adrianne Penrose, individually, Plaintiffs vs. County of Riverside, Et al., Defendants, Cause No. ED CV14-00077, United States District Court for the Central District of California.

**14**. **Deposition**:   October 19, 2015. Tara Garlick, individually; M.L.S., C.J.S., C.R.S., and E.Z.S., minors, by and through their guardian ad litem, Judy Silva, in each cause individually and as successors in interest to David Silva, deceased; J.S., individually and as successor in interest to David Silva, by and through her guardian ad litem Adriane Dominguez; Merri Silva, individually; and Salvador Silva, individually, vs. County of Kern, Et al., Defendants, Lead Cause No. 1:13-CV-01051, United States District Court for the Eastern District of California.

**15**. **Deposition**:   November 20, 2015, Gonzalo Martinez, Plaintiff vs. County of Los Angeles; Cuauhtemoc Gonzalez and Does 1 through 10, inclusive. Defendants, Cause No. 2:2014-cv-05456, United States District Court for the Central District of California.

**16**. **Deposition**: December 1, 2015, Mindy Losee, individually and as successor in interest to Breanne Sharpe, deceased, Plaintiff vs. City of Chico, Scott Zuschin, Damon Selland, Nick Vega, Jared Cumber, David Quigley; and DOES 1-10, inclusive. Defendants, Cause No. 2:14-CV-02199, United States District Court for the Eastern District of California.

**17**. **Deposition:** December 17, 2015, Stanley Jordan, an individual, Plaintiff vs. City of Hawthorne, Officer Matthew Manley, and DOES 1-10, inclusive, Cause no. 2:2014-CV-07554; United States District Court for the Central District of California.

**18**. **Deposition:**   February 10, 2016, Bridget Wiseman, individually and as successor-in-interest of Dean Gochenour, deceased, Plaintiff vs. City of Fullerton, Vincent Mater, Carlos Medina and DOES 1 to 50, inclusive; Cause No. 8:2013-CV-01278, United States District Court for the Central District of California.

**19**. **Deposition:**   April 1, 2016, N.W., a minor by through his guardian ad litem Tkeyah Boyd, individually and as successor-in-interest to Tyler Damon Woods, Plaintiffs vs. City of Long Beach, Officer John B. Fagan; Officer Daniel A. Martinez, and DOES 1-10, inclusive, Defendants. Cause No. 5:14-CV-01569, United States District Court for the Central District of California.

**20**. **Deposition:**   April 7, 2016, R.D.C., a Minor, by and through his Guardian ad Litem, Maria Teresa Penaloza, Plaintiffs vs. County of Los Angeles, a public entity; Jerry Powers, Booker Waugh, Les Smith, and DOES 1 through 10, individually and in their official capacity as Probation Officers for the County of Los Angeles, Defendants, Cause No. 2:14-CV-06014, United States District Court for the Central District of California.

**21**. **Trial State Court:**   April 20, 2016, Eloy Jacobo vs. City of Palm Springs, A Government Agency and DOES 1-50, inclusive, Cause No. INC 1302171, Superior Court of California, County of Riverside.

**22**. **Deposition:**   April 28, 2016, Ledesma vs. Kern County, Cause No. 1:14-CV-01634, United States District Court for the Central District of California.

**23**. **Deposition:** May 16, 2016, Dennis Dean Sr., Susannah Hardesty, and Amy Dean, Plaintiff's vs. Sacramento County, Salvador Robles; Daryl Meadows; Randy Moya and DOES 4-25, Cause No. 2:13-cv-00730, United States District Court for the Eastern District of California.

**24.** **Trial Federal Court:** June 16, 2016, N.W., a minor by through his guardian ad litem Tkeyah Boyd, individually and as successor-in-interest to Tyler Damon Woods, Plaintiffs vs. City of Long Beach, Officer John B. Fagan; Officer Daniel A. Martinez, and DOES 1-10, inclusive, Defendants. Cause No. 5:14-CV-01569, United States District Court for the Central District of California.

**25.** **Deposition:** June 22, 2016, May 11, 2017, Marian Amaya, individually and as successor -in-interest of Emiliano Amaya, deceased; G.A., a Minor by and through his Guardian ad Litem Belinda Krawiec, individually and as successor-in-interest of Emiliano Amaya, deceased; Gloria Amaya, individually, Plaintiffs, vs. County of Los Angeles; Sheriff Lee Baca, and Does 1 to 50, Inclusive, Defendants.  Cause No. VC062384, Superior Court of California, County of Norwalk.

**26.** **Deposition:** June 27, 2016, Robert J. Zambrano JR., Kathleen Zambrano, and Jillian Zambrano, a Minor and through her Guardian ad Litem, Robert J. Zambrano JR., Plaintiffs vs. Andrew Drobot, Redondo Beach Police Department, City of Redondo Beach, and DOES 1 to 50, Inclusive, Defendants. Cause No. BC566142, Superior Court of California, County of Los Angeles.

**27.** **Deposition:** July 5, 2016, NONA OPSITNICK AND LINDA STERETT, Plaintiffs vs. CITY OF LONG BEACH; ERIC BARICH, SALVADOR ALATORRE, ABRAM YAP, and DOES 4-10, inclusive Defendants. Cause No. 2:14-CV-09370, United States District Court for the Central District of California.

**28.** **Deposition:**   July 7, 2016, Leslie Laray Crawford, individually and as Successor in Interest to Michael Laray Dozer, deceased, Plaintiff, vs. City of Bakersfield, a municipal entity, Officer Aaron Stringer, an individual, Michael Eugene Dozer (as a nominal defendant) and DOES 1 through 10, inclusive, Defendants, Cause No. 1:14-CV-01735, United States District Court for the Eastern District of California.

**29.** **Trial Federal Court:** August 19, 2016, Anthony Del Real, individually and as successor-in-interest to John Del Real, Jr; Brittany Del Real Davis, individually and as successor-in-interest to John Del Real Jr.; and Shirley Lowery, Plaintiff vs. City of Long Beach; et al., Defendants. Cause No. 2:14-CV-02831, United States District Court for the Central District of California.

**30.** **Deposition:** September 19, 2016, D.G., a minor, by and through his guardian ad litem, Denise Bonilla, individually and as successor-in-interest to David Garcia, deceased; D.E.G., a minor, by and through her guardian ad litem, Denise Bonilla, individually and as successor-interest to David Garcia, deceased; G.D., a minor, by and through her guardian ad litem, Denise Bonilla, individually and as successor-in-interest to David Garcia, deceased; RAMONA RAMIREZ NUNEZ, individually; Plaintiffs, vs. COUNTY OF KERN; ROBERT REED; DOES 2 THROUGH 10; Defendants. Cause No. 1:15-CV-00760, United States District Court for the Eastern District of California.

**31.** **Deposition**: October 4, 2016, J.M., a minor by and through his guardian ad litem Celine Lopez, individually and as successor-in-interest to Hans Kevin Arellano, Plaintiff vs. CITY OF SANTA ANA, OFFICER JESSICA GUIDRY; OFFICER STEPHEN CHAVEZ; and Does 1-10, inclusive, Defendants. Cause No. 8:15-cv-00432, United States District Court for the Central District of California.

**32.** **Trial Federal Court**: October 20, 2016, Leslie Laray Crawford, individually and as Successor in Interest to Michael Laray Dozer, deceased, Plaintiff, vs. City of Bakersfield, a municipal entity, Officer Aaron Stringer, an individual, Michael Eugene Dozer (as a nominal defendant) and DOES 1 through 10, inclusive, Defendants, Cause No. 1:14-CV-01735, United States District Court for the Eastern District of California.

**33.** **Deposition**: November 30, 2016, Brian Bunnak, Plaintiff, vs. KION JAMES MOSBAT, an individual, and DOES 1 through 10, inclusive, Defendants. Cause No. BC571975, Superior Court of California, County of Los Angeles.

**34.** **Deposition:** February 13, 2017, Abraham Valentin, Alejandro Francisco Peralta, Michael Dominguez, Frank Margarito Escobedo, Plaintiffs vs. ROBERT JACKSON, and DOES 1-50, Inclusive, Defendants. Cause No. 2:15-CV-09011, United States District Court for the Central District of California.

**35.** **Deposition:** March 3, 2017, ARTURO GONZALEZ, Plaintiff, vs. CITY OF BAKERSFIELD, GARY CARRUESCO, DOUG BARRIER, KASEY KNOTT, JUAN OROZCO, and DOES 5-10, Defendants. Cause No. 1:16-CV-00107, United States District Court for the Eastern District of California.

Page **6** of **32**

**36.  Trial Federal Court:** March 9, 2017, LUIS ARIAS, an individual, Plaintiff, vs. COUNTY OF LOS ANGELES, a municipal entity; DEPUTY KENNETH FITCH, an individual and DOES 1 through 10, inclusive, Defendants. Cause No. 2:15-CV-02170, United States District Court for the Central District of California.

**37.  Deposition:** March 10, 2017, FREDRICK THOMAS and ANNALESA THOMAS, as Co-Administrators of the Estate Leonard Thomas, and its statutory beneficiaries, Plaintiffs, vs. BRIAN MARKERT; MICHAEL WILEY; NATHAN VANCE; MICHAEL ZARO; SCOTT GREEN; JEFF RACKLEY; CITY OF FIFE; CITY OF LAKEWOOD; PIERCE COUNTY METRO SWAT TEAM; and JOHN DOES 1 through 10, Defendants. Cause No. 3:16-cv-05392, United States District Court for the Western District of Washington.

**38.  Deposition:** March 16, 2017, DENNIS BLOCH, an individual and JENNIFER BLOCH, an individual, Plaintiff vs. STANFORD HOTELS CORPORATION, HARBOR VIEW HOLDINGS, Inc., A CALIFORNIA CORPORATION, MARRIOT INTERNATIONAL INC; A DELAWARE CORPORATION, SAN DIEGO HOTEL COMPANY, LLC; PORTER GREER, and DOES 1 through 25, Defendants. Cause No. 37-2015-000028814-CV-PO-CTL, Superior Court of California, County of San Diego.

**39.  Deposition:**  March 22, 2017, CINDY MICHELLE HAHN; AND BRANDON HAHN, Plaintiffs vs. CITY OF CARLSBAD; OFFICER J. KNISLEY; OFFICER KENYATTE VALENTINE; OFFICER KARCHES; CORPORAL GALANOS; OFFICER SEAPKER; AND DOES 1 THROUGH 50, Defendants. Cause No. 3:15-cv-02007, United States District Court for the Southern District of California.

**40.  Deposition:**  April 26, 2017, DEMETRICE SIGHTLER, Plaintiff, vs. CITY OF SAN DIEGO, SAN DIEGO POLICE DEPARTMENT ASSISTANT CHIEF DAVID NISLEIT AND DOES 1-30, Defendants, Cause No. 3:15-CV-02235, United States District Court for the Southern District of California.

**41.  Trial State Court:**  May 11, 2017, Marian Amaya, individually and as successor -in-interest of Emiliano Amaya, deceased; G.A., a Minor by and through his Guardian ad Litem Belinda Krawiec, individually and as successor-in-interest of Emiliano Amaya, deceased; Gloria Amaya, individually, Plaintiffs, vs. County of Los Angeles; Sheriff Lee Baca, and Does 1 to 50, Inclusive, Defendants   Cause No. VC062384, Superior Court of California, County of Norwalk.

**42.**   **Deposition:** June 6, 2017, HECTOR MEJIA, an individual, NORA SANTILLAN, an individual, Plaintiffs, vs. ADIEB TIESSAN, an individual, LEWIS ANTHONY GEORGE, an individual; and LEWIS JOBY ANTHONY, an individual; FAHMY MUSHMEL, an individual; SALAM MUSHMEL, an individual; THE FAHMY MUSHMEL AND SALAM MUSHMEL LIVING TRUST; and DOES 1 through 20, Inclusive, Defendants. Cause No. BC594095, Superior Court of California, County of Los Angeles.

**43.**   **Deposition:** June 8, 2017, Nathaniel Smith vs. City of Stockton, et al. Cause No. 5:15-CV-01603-JGB-(DTBx), Superior Court of California, County of Sacramento.

**44.**   **Trial Federal Court:** June 21, 2017, Abraham Valentin, Alejandro Francisco Peralta, Michael Dominguez, Frank Margarito Escobedo, Plaintiffs vs. ROBERT JACKSON, and DOES 1-50, Inclusive, Defendants. Cause No. CV 2:15-CV-09011, United States District Court for the Central District of California.

**45.**   **Trial Federal Court:**   June 26-27, 2017, FREDRICK THOMAS and ANNALESA THOMAS, as Co-Administrators of the Estate Leonard Thomas, and its statutory beneficiaries, Plaintiffs, vs. BRIAN MARKERT; MICHAEL WILEY; NATHAN VANCE; MICHAEL ZARO; SCOTT GREEN; JEFF RACKLEY; CITY OF FIFE; CITY OF LAKEWOOD; PIERCE COUNTY METRO SWAT TEAM; and JOHN DOES 1 through 10, Defendants. Cause No. 3:16-cv-05392, United States District Court for the Western District of Washington.

**46.**   **Deposition:** June 30, 2017, K.J.P., a minor, and K.P.P., a minor, individually, by and through their mother, LOAN THI MINH NGUYEN, who also sues individually and as successor in interest to her now deceased husband, Lucky Phounsy, and KIMBERLY NANG CHANTHAPHANH, individually, Plaintiffs vs. COUNTY OF SAN DIEGO; et al., Defendants. Cause No. 15-cv-02692, United States District Court for the Southern District of California.

**47.**   **Deposition:** July 10, 2017, REBECKA JACKSON-MOESER, Plaintiffs, vs. DAVILA and DOES 1 through 10, inclusive, individually and in their official capacity as CALIFORNIA HIGHWAY PATROL OFFICERS, Defendants. Cause No. 2:16-CV-08733, United States District Court for the Central District of California.

**48.** **Deposition:** July 12, 2017, A.E.R., a Minor, by and through his Guardian ad Litem, STEPHANIE YANEZ, both Individually and as Successor in Interest on behalf of Plaintiff's Decedent EDUARDO EDWIN RODRIGUEZ, ESTELA RODRIGUEZ, and ABEL RODRIGUEZ, for themselves as parents of the Decedent, Plaintiffs, vs. COUNTY OF LOS ANGELES, a Public Entity, ANDREW ALATORRE, SANDY GALDAMEZ, and DOES 1 through 10, inclusive, individually and in their official capacity as Los Angeles County Sheriff's Department Deputies, Defendants. Cause No. 2:16-CV-04895, United States District Court for the Central District of California.

**49.** **Deposition:** July 14, 2017, JONATHAN A. GARCIA, an individual, Plaintiff, vs. UNITED STATES OF AMERICA, DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENT CHARLES VALENTINE, AND DOES 1-10, inclusive, Defendants. Cause No. 2:16-CV-01664, United States District Court for the Central District of California.

**50.** **Trial Federal Court:** August 2, 2017, CINDY MICHELLE HAHN; AND BRANDON HAHN, Plaintiffs vs. CITY OF CARLSBAD; OFFICER J. KNISLEY; OFFICER KENYATTE VALENTINE; OFFICER KARCHES; CORPORAL GALANOS; OFFICER SEAPKER; AND DOES 1 THROUGH 50, Defendants. Cause No. 3:15-cv-02007, United States District Court for the Southern District of California.

**51.** **Deposition:** August 4, 2017, Arnulfo Hernandez vs. United States of America, Cause No. 5:16-CV-00727, United States District Court for the Central District of California.

**52.** **Deposition:** August 9, 2017, PAMELA MOTLEY, ESTATE OF CINDY RAYGOZA, through its legal representative and administrator, YVETTE CALDERA; VALERIE CALDERA; DANNY RICE, Plaintiffs, vs. JOSEPH SMITH; BRIAN LITTLE; DERRICK JOHNSON; MICHAEL COUTO; BERNARD FINLEY; BYRON URTON; RYAN ENGUM; UNKNOWN POLICE OFFICERS; THE CITY OF FRESNO CALIFORNIA, Defendants. Cause No. 1:15-CV-00905, United States District Court for the Eastern District of California.

**53.** **Deposition:**   August 14, 2017, Desiree Martinez, Plaintiff vs. KYLE PENNINGTON; KIM PENNINGTON; CONNIE PENNINGTON; KRISTINA HERSHBERGER; JESUS SANTILLAN; CHANNON HIGH; THE CITY OF CLOVIS; ANGELA YAMBUPAH; RALPH SALAZAR; FRED SANDERS; THE CITY OF SANGER; DOES 1-20, Defendants. Cause No. 1:15-cv-00683, United States District Court for the Eastern District of California.

**54.** **Trial Federal Court:**   August 23, 2017, TREVOR WYMAN, Plaintiff vs. COUNTY OF ORANGE, ZACHARY VARELA and DOES 1 through 10, inclusive Defendants. Cause No. 8:15-CV-01523, United States District Court for the Central District of California.

**55.** **Deposition:**   September 6, 2017, JUSTIN KAUFMAN, ESQ., as Personal Representative of the Estate of HANNAH E. BRUCH, Plaintiff, vs. EXPO NEW MEXICO, et al. Defendants. Cause No. D-101-CV-2015-01792, First Judicial District of the County of Santa Fe, State of New Mexico.

**56.** **Deposition:**   September 8, 2017, KHANLY SAYCON, JR., and ANNA LUZ SAYCON, individually and as surviving heirs and successors in interest of MHARLOUN SAYCON (deceased), Plaintiffs vs. CITY OF LONG BEACH, ROBERT LUNA, VUONG NGUYEN, and DOES 1-20, Inclusive, Defendants. Cause No. 2:16-CV-05614, United States District Court for the Central District of California.

**57.** **Deposition:** October 17, 2017, JOSE PATINO, an individual, Plaintiff, vs. LIVE NATION ENTERTAINMENT INC., a Delaware Corporation; 4FINI, Inc., a California Corporation; ROCKSTAR BEVERAGE CORPORATION, a Nevada Corporation; and DOES 1 through 100, inclusive Defendants., Cause No. CIVDS1515083, Superior Court of California, County of San Bernardino.

**58.** **Deposition:** October 24, 2017, NICHOLAS MONTGOMERY, Plaintiff, vs. The WHISKEY BARREL, Hesperia, LLC, and DOES 1 through 20, inclusive, Defendants. Cause No. CIVDS1518148, Superior Court of California, County of San Bernardino.

**59.** **Deposition:** October 30, 2017, ESTATE OF FERAS MORAD, AMAL ALKABRA, and AMR MORAD Plaintiffs vs. CITY OF LONG BEACH, MATTHEW HERNANDEZ, ROBERT LUNA, Defendants, Cause No. 2:16-CV-06785, United States District Court for the Central District of California.

**60.** **Deposition:** November 3, 2017, ARMANDO AYALA, Plaintiff, vs. STATER BROS. MARKETS, and DOES 1 TO 50, INCLUSIVE, Defendants, Cause No. BC546436, Superior Court of California, County of Los Angeles.

**61.** **Deposition:** November 7, 2017, PRESTON vs. BOYER, et al., Cause No. 2:16-CV-01106, United States District Court for the Western District of Washington.

**62.** **Deposition:** November 8, 2017, TRINA KOISTRA; and LARRY FORD, Plaintiffs, vs. COUNTY OF SAN DIEGO; PLUTARCO VAIL; and DOES 1 through 50, inclusive, Defendants, Cause No. 3:16-CV-02539, United States District Court for the Southern District of California.

**63.** **Deposition:** December 5, 2017, JAMES GOOD, an individual, Plaintiff, vs. COUNTY OF LOS ANGELES; LEROY DAVID "LEE" BACA, as Former Sheriff in his individual and official capacity; JIM MCDONNELL, as Sheriff in his individual and official capacity; DEPUTY PETER NICHOLAS; DEPUTY JASON WILL, Defendants. Cause No. 2:15-CV-04290, United States District Court for the Central District of California.

**64.** **Deposition:** January 8, 2018, BRYAN JOSEPH FISHER, Plaintiff, vs. COUNTY OF ORANGE; TODD CARPENTER; ROXANA ENRIQUEZ, JAVIER MARQUEZ, et al., Defendants. Cause No. 8:16-CV-01866, United States District Court for the Central District of California.

**65.** **Deposition:** January 10, 2018, MICHAEL GEGENY, Plaintiff, vs. CITY OF LONG BEACH, CHIEF JIM MCDONNELL, OFFICER JOSE MANUEL RODRIGUEZ, #10153; OFFICER JUSTIN S. KRUEGER, #6152 and DOES 1 to 50, Inclusive, Defendants, Cause No. BC 553047, Superior Court of California, County of Los Angeles.

**66.** **Trial Federal Court:** January 23, 2018, JONATHAN A. GARCIA, an individual, Plaintiff, vs. UNITED STATES OF AMERICA, DRUG ENFORCEMENT ADMINISTRATION SPECIAL AGENT CHARLES VALENTINE, AND DOES 1-10, inclusive, Defendants. Cause No. 2:16-cv-01664, United States District Court for the Central District of California.

**67.** **Deposition:** February 8, 2018, DOMINIC ARCHIBALD, and NATHANAEL PICKETT I, AS SUCCESSORS IN INTEREST TO NATHANAEL PICKETT II, DECEASED, Plaintiff, vs. COUNTY OF SAN BERNARDINO, KYLE WOODS, WILLIAM KELSEY and DOES 2-10, INCLUSIVE, Defendants, Cause No. 5:16-cv-01128, United States District Court for the Central District of California.

**68.** **Deposition:**  February 13, 2018, THE ESTATE OF JOHNNY MARTINEZ; PLAINTIFF, VS. COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, SHERIFF JIM MCDONNELL, AND DOES 1 THROUGH 50, DEFENDANTS. CAUSE NO. BC 579140, Superior Court of California, County of Los Angeles.

**69.** **Deposition:** February 21, 2018, TIMOTHY McKIBBEN, an individual, Plaintiff, vs. OFFICER WILLIAM KNUTH, an individual; RAYMOND COTA, in his official capacity, CITY OF SEDONA, an Arizona municipal corporation; JOHN and JANE DOES I-X, Defendants, Cause No. 3:17-CV-08009, United States District Court for the District of Arizona.

**70.** **Deposition:** February 23, 2018, TIFFANIE HUPP and RILEY HUPP, a minor, by and through his next friend, Tiffanie Hupp, and CLIFFORD MYERS, Plaintiffs, vs. STATE TROOPER SETH COOK and COLONEL C.R. "JAY" SMITHERS, Defendants, Cause No. 2:17-CV-00926, United States District Court for the Southern District of West Virginia.

**71.** **Trial Federal Court:** March 7-8, 2018, DOMINIC ARCHIBALD, and NATHANAEL PICKETT I, AS SUCCESSORS IN INTEREST TO NATHANAEL PICKETT II, DECEASED, Plaintiff, vs. COUNTY OF SAN BERNARDINO, KYLE WOODS, WILLIAM KELSEY and DOES 2-10, INCLUSIVE, Defendants, Cause No. 5:16-cv-01128, United States District Court for the Central District of California.

**72.** **Deposition:** April 9, 2018, ROBERT PALMER, Plaintiff, vs. CALIFORNIA HIGHWAY PATROL OFFICER IOSEFA, et al., Defendants. Cause No. 1:16-CV-00787, United States District Court for the Eastern District of California.

**73.** **Deposition:** April 13, 2018, JEFFREY SIHTO, Plaintiff, vs. HYATT CORPORATION; JOSE CEBALLOS; and DOES 1 through 50, Inclusive, DEFENDANTS. Cause No. BC 594206, Superior Court of California, County of Ventura.

**74.** <u>**Deposition:**</u> April 18, 2018, ROSWITHA M. SAENZ, Individually and on behalf of THE ESTATE OF DANIEL SAENZ, Deceased, Plaintiff, vs. G4S SECURE SOLUTIONS (USA) INC., OFFICER JOSE FLORES AND ALEJANDRO ROMERO, Defendants. Cause No. 3:14-CV-00244, United States District Court for the Western District of Texas.

**75.** <u>**Deposition:**</u> April 19, 2018, MILDRED MAE MENDOZA as successor-in-interest of FRANK MENDOZA, SR., et al, Plaintiffs, vs. COUNTY OF LOS ANGELES, et al, Defendants. Cause No. BC 594206, Superior Court of California, Los Angeles County.

**76.** <u>**Trial Federal Court:**</u> April 25, 2018, LOUIS SANCHEZ, an individual, Plaintiff, vs. DEPUTY JOSHUA RICARD, an individual, and DOES 1 through 10, inclusive, Defendants. Cause No. 5:17-CV-00339, United States District Court for the Central District of California.

**77.** <u>**Deposition:**</u> May 1, 2018, DOUGLAS KEVIN VEALE, individually, and as the Personal Representative for the Estate of KATHRYN JEANETTE NEW, deceased, and on behalf of the beneficiaries of the Estate including AARON JAMES NEW, KENT ROBERT MCMAHON, HEATHER JANDICE BRIGETTE NEW, PATRICK JORDAN WILLIAM NEW, and DUSTY CODY SCOGGINS, Plaintiffs, vs. WASHINGTON FUGITIVE INVESTIGATIONS, a foreign limited liability company; TWO JINN, INC., d/b/a ALADDIN BAIL BONDS, a for-profit corporation, and MARIO D. CAREY, a Washington resident, Defendants. Cause No. 17-2-08870-1, Pierce County (Washington) Superior Court.

**78.** <u>**Deposition:**</u> May 7, 2018, ESTATE OF JAVIER GARCIA GAONA, JR., et al., Plaintiffs, vs. CITY OF SANTA MARIA, et al., Defendants, Cause No. 2:17-CV-01983, United States District Court for the Central District of California.

**79.** <u>**Trial State Court**</u>: June 4, 2018, NICHOLAS MONTGOMERY, Plaintiff, vs. The WHISKEY BARREL, Hesperia, LLC, and DOES 1 through 20, inclusive, Defendants. Cause No. CIVDS1518148, Superior Court of California, County of San Bernardino.

**80.** <u>**Deposition:**</u>  June 14, 2018, C. V.; R. V., a minor, by and through his Guardian Ad Litem MIGUEL VILLEGAS; D. V., a minor, by and through his Guardian Ad Litem MIGUEL VILLEGAS; JOCELYN CASTILLO VILLEGAS and ESTATE OF BERNIE CERVANTES VILLEGAS, Plaintiffs. VS. CITY OF ANAHEIM, a California municipal entity; JOHN WELTER; NICHOLAS BENNALLACK; BRETT HEITMANN; KEVIN VOORHIS; MATTHEW ELLIS; and Does 1-10, inclusive. Cause No: 30-2017-00897184-CU-PO-CJC, Superior Court of California, County of Orange.

**81.** <u>**Trial Federal Court:**</u> July 6. 2018, ESTATE OF FERAS MORAD, AMAL ALKABRA, and AMR MORAD Plaintiffs vs. CITY OF LONG BEACH, MATTHEW HERNANDEZ, ROBERT LUNA, Defendants, Cause No. 2:16-CV-06785, United States District Court for the Central District of California.

**82.** <u>**Deposition:**</u>  July 16, 2018, SHAWN EDWARD RUMENAPP, an individual; and ERICA RUMENAPP, an individual, Plaintiffs, vs. PANERA BREAD COMPANY, a Delaware corporation; PANERA, LLC, a Delaware limited liability company; SARA JAMAL ZEITOUN, an individual; JAMAL ZEITOUN, an individual; and DOES 1 through 50, inclusive, Defendants, Cause No: CIVDS 1700576, Superior Court of California, County of San Bernardino.

**83.** <u>**Deposition:**</u>  July 17, 2018, Fralisa McFall, on behalf of the ESTATE OF JESSICA ANN MARIE ORTEGA, a deceased person, and her statutory beneficiaries I.S. and D.S., two minor children, Plaintiff, vs. PIERCE COUNTY, a subdivision of the State of Washington, Defendant, Cause No. 17-2-11836-8, Pierce County (Washington) Superior Court.

**84.** <u>**Trial State Court**</u>: July 20, 2018, ARMANDO AYALA, Plaintiff, vs. STATER BROS. MARKETS, and DOES 1 TO 50, INCLUSIVE, Defendants, Cause No. BC546436, Superior Court of California, County of Los Angeles.

**85.** <u>**Deposition:**</u>  July 31, 2018, TOMMIE HARRIS, Individually; DERRICK EUGENE COKER, Individually; SHYWINA DIANE COLE, Individually; STEPHANIE LORRAINE WILLIAMS, Individually; JEMICA SHANDRA SPEARS, Individually, Plaintiffs, vs. GNL, CORP. d/b/a GOLD DIGGERS, a Domestic Corporation; Individually; DOE EMPLOYEES; DOES I through X; and ROE CORPORATIONS I through X, inclusive, Defendants.  Cause No. A-16-741693-C, District Court, Clark County, Nevada.

**86.** **Deposition:** August 14, 2018, DAVID JESSEN and GRETCHEN JESSEN, Plaintiffs vs. COUNTY OF FRESNO, CITY OF CLOVIS, and DOES 1 to 100, inclusive, Defendants, Cause No. 1:17-CV-00524, United States District Court for the Eastern District of California.

**87.** **Deposition:** August 15, 2018, ARMANDO VILLANUEVA and HORTENCIA SAINZ, INDIVIDUALLY and as successor in interest to Pedro Villanueva, deceased, and FRANCISCO OROZCO, individually, Plaintiffs vs. STATE OF CALIFORNIA; JOHN CLEVELAND; RICH HENDERSON; and DOES 1-10, inclusive, Defendants. Cause No. 8:17-CV-01302, United States District Court for the Central District of California.

**88.** **Deposition:** August 17, 2018, BRIAN O'NEAL PICKETT III, A MINOR, AND MICAH OMARI PICKETT, A MINOR, BY AND THROUGH THEIR GUARDIAN AD LITEM TAMIA GILBERT, Plaintiffs, vs. COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 50, INCLUSIVE, Defendants. CAUSE NO. TC028173 (Consolidated with TC028210), Superior Court of California, County of Los Angeles.

**89.** **Deposition:** August 21, 2018, ESTATE OF TASHI S. FARMER a/k/a TASHII BROWN, by and through its Special Administrator, Elia Del Carmen Solano-Patricio; TAMARA BAYLEE KUUMEALI' FARMER DUARTE, a minor, individually and as Successor-in-Interest, by and through her legal guardian, Stevandra Lk Kuanoni; ELIAS BAY KAIMIPONO DUARTE, a minor, individually and as Successor-in-Interest, by and through his legal guardian, Stevandra Kuanoni, Plaintiffs, vs. LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; OFFICER KENNETH LOPERA, INDIVIDUALLY and in his Official Capacity; and Does 1 through 50, inclusive, Defendants, Cause No. 2:17-CV-01946, United States District Court for the District of Nevada.

**90.** **Deposition:** August 24, 2018, TEAIRA SMALLWOOD, et al, Plaintiffs, vs. OFFICER JOSEPH KAMBERGER, JR., et al, Defendants, Civil Cause No. 24-C-16-005543, Circuit Court for Batimore City, Maryland.

**91.** **Deposition:** August 27, 2018, DANIEL MANRIQUEZ, Plaintiff, vs. J. VANGILDER, et al., Cause No. 16-cv-01320, United States District Court for the Northern District of California.

**92.** <u>**Deposition:**</u>  September 14, 2018, ERIKA SEPULVEDA, FOR HERSELF AND ON BEHALF OF HER MINOR CHILDREN MELODY PATRICIO AND ERNESTO PATRICIO, AND MARIA CARMEN SARATE ANGELES, Plaintiffs vs. CITY OF WHITTIER, OFFICER HAUSE, OFFICER CABRAL, OFFICER MEDINA, MONETARY MANAGEMENT OF CALIFORNIA, INC. dba MONEY MART, DOLLAR FINANCIAL GROUP, INC., DFC GLOBAL CORP. fdba DOLLAR FINANCIAL U.S. INC., JOSE LOPEZ, DON MORTON, and DOES 2-10, inclusive, Defendants, Cause No. 2:17-CV-04457, United States District Court for the Central District of California.

**93.** <u>**Deposition:**</u>  September 20, 2018, DAPHNE SMITH, an individual, Plaintiff, vs. GGP, INC., a California Corporation Dba EASTRIDGE; EASTRIDGE, a business organization, form unknown; GENERAL GROWTH PROPERTIES, INC, a Delaware Corporation dba EASTRIDGE; and DOES 1-50, inclusive, Defendants. Cause No. 2015-1-CV-283003. ABM ONSITE SERVICES-WEST, INC., Cross-Complainants, vs. ALLIED BARTON SECURITY SERVICES, LP; AND DOES 1-20, Cross-Defendants, Superior Court of California, County of Santa Clara.

**94.** <u>**Deposition:**</u>  September 24, 2018, TIMOTHY GRISMORE, an individual; XAVIER HINES, an individual, Plaintiffs, vs. CITY OF BAKERSFIELD, a municipality; OFFICER MELENDEZ, an individual; OFFICER LUEVANO, an individual; OFFICER POTEETE, an individual; OFFICER CLARK, an individual; OFFICER McINTYRE, an individual; OFFICER VASQUEZ, an individual; OFFICER BARAJAS, an individual; SERGEANT McAFEE, an individual; and DOES 1-10, inclusive, Defendants. Cause No. 1:17-CV-00413, United States District Court for the Eastern District of California.

**95.** <u>**Deposition:**</u>  September 25, 2018, CAROLYN GIUMMO and ANTHONY S. HILL, SR., Individually and as Surviving Parents and as Personal Representatives of the Estate of ANTHONY H. HILL, Plaintiffs, vs. ROBERT OLSEN, individually and in his official capacity as a law enforcement officer for DeKalb County Police Department; and the COUNTY OF DEKALB, GEORGIA, a municipal corporation, Defendants. Cause No. 1:15-CV-03928, United States District Court for the Northern District of Georgia.

**96.**   **Deposition:**      September 26, 2018, MARIA ADAME, in her individual capacity; CLARISA ABARCA, as a parent of minor child; C.A., in her individual capacity, and the ESTATE OF DEREK ADAME, as statutory beneficiaries of the claim for wrongful death of Derek Adame, deceased, Plaintiffs, vs. CITY OF SURPRISE, SURPRISE POLICE DEPARTMENT, OFFICER JOSEPH GRUVER and OFFICER SHAUN MCGONIGLE, Defendants. Cause No. 2:17-CV-03200, United States District Court for the District of Arizona.

**97.**   **Deposition:** October 17, 2018, BRIAN A. RAMIREZ, Plaintiff, vs. COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, OFFICER RYAN N. VICE, and DOES 1 through 10, Inclusive, Defendants. Cause No. 2:17-CV-01868, United States District Court for the Eastern District of California.

**98.**   **Deposition:**   October 18, 2018, RONEY COFFMAN, Plaintiff, vs. LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; COUNTY OF LOS ANGELES; FRAY MARTIN LUPIAN, DOES 1 TO 20, Defendants, Cause No. BC653479, Superior Court of California, County of Los Angeles.

**99.**   **Deposition:** October 23, 2018, ROBERT PROVOST, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ERIC PROVOST, PLAINTIFF,   vs.   CITY   OF   ORLANDO,   A   FLORIDA   MUNICIPAL CORPORATION, POLICE OFFICER SONJA SAUNDERS AND POLICE OFFICER TINO CRUZ IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES, DEFENDANTS. Cause No. 6:17-CV-02133, United States District Court for the Middle District of Florida.

**100.**   **Deposition:**   October 24, 2018, ANGELA AINLEY, individually and as successor-in-interest for KRIS JACKSON, deceased; PATRICK JACKSON, individually and as successor-in-interest for KRIS JACKSON, Deceased, Plaintiff, vs. CITY OF SOUTH LAKE TAHOE, a public entity; JOSHUA KLINGE, individually and as a police officer for the City of South Lake Tahoe; City of South Lake Tahoe Chief of Police BRIAN UHLER, individually; and DOES 2 through 10, Jointly and Severally, Defendants. Cause No. 2:16-CV-00049, United States District Court for the Eastern District of California.

**101.**   **Trial Federal Court**:   October 29, 2018, ROBERT PALMER, Plaintiff, vs. CALIFORNIA HIGHWAY PATROL OFFICER IOSEFA, et al., Defendants. Cause No. 1:16-CV-00787, United States District Court for the Eastern District of California.

**102.** **Deposition:**   November 9, 2018, KIMBERLY J. ZION, individually and as successor in interest to CONNOR ZION, Plaintiff, vs. COUNTY OF ORANGE, MICHAEL HIGGINS and DOES 1 through 10, inclusive, Defendants. Cause No. 8:14-cv-01134, United States District Court for the Central District of California.

**103.** **Deposition**:   November 11, 2018, DONNA HUFF, Plaintiff, vs. THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; THE COUNTY OF LOS ANGELES; DEPUTY GREG WHALEN (EMPLOYEE NO. 476475), OFFICER MICHAEL REYNOLDS (EMPLOYEE NO. 519952) and DOES 1 through 10, Inclusive, Defendants. Cause No. 2:16-CV-01733, United States District Court for the Central District of California.

**104.** **Deposition:** November 15, 2018, MERLIN OFFSHORE INTERNATIONAL, a California Corporation, et al., Plaintiffs, vs. ADVANCED RESERVATIONS SYSTEMS, INC., a California corporation, et al., Defendants.   Cause No. SC12580, Superior Court of California, County of Los Angeles.

**105.** **Trial State Court:**   December 5, 2018, C. V.; R. V., a minor, by and through his Guardian Ad Litem MIGUEL VILLEGAS; D. V., a minor, by and through his Guardian Ad Litem MIGUEL VILLEGAS; JOCELYN CASTILLO VILLEGAS and; ESTATE OF BERNIE CERVANTES VILLEGAS, Plaintiffs. VS. CITY OF ANAHEIM, a California municipal entity; JOHN WELTER; NICHOLAS BENNALLACK; BRETT HEITMANN; KEVIN VOORHIS; MATTHEW ELLIS; and Does 1-10, inclusive. CAUSE No: 30-2017-00897184-CU-PO-CJC, Superior Court of California, County of Orange.

**106.** **Deposition:**   December 19, 2018, VICTOR GARCIA, Plaintiff vs. REAL HOSPITALITY, INC., dba MARTINI'S FEEL GOOD LOUNGE; DYLAN OXFORD, and DOES 1-100, Inclusive, Defendants. Cause No. BCV-16-102039, Superior Court of California, County of Kern.

**107.** **Trial Federal Court**:   January 15, 2019, KIMBERLY J. ZION, individually and as successor in interest to CONNOR ZION, Plaintiff, vs. COUNTY OF ORANGE, MICHAEL HIGGINS and DOES 1 through 10, inclusive, Defendants. Cause No. 8:14-cv-01134, United States District Court for the Central District of California.

**108.** <u>**Deposition:**</u>   January 18, 2019, DYLAN KINNEY, individually and on behalf of the ESTATE OF REGINA ANNAS, a deceased person; RACHEL HOLLAND, individually, Plaintiffs, vs. PIERCE COUNTY, a subdivision of the State of Washington, Defendant, Cause No. 18-2-07321-4, Pierce County (Washington) Superior Court.

**109.** <u>**Deposition:**</u>   January 22, 2019, GWENDOLYN WOODS, individually and as Successor in Interest to Decedent MARIO WOODS, PLAINTIFF, vs. CITY AND COUNTY OF SAN FRANCISCO; a municipal corporation, et al, DEFENDANTS. Cause No. 3:15-CV-05666, United States District Court for the Northern District of California.

**110.** <u>**Deposition:**</u>   January 24, 2019, JANICE SLY, individually and as Successor in Interest to ISAAC JERMAINE KELLY, deceased, and CHARLES ROY, individually and as Successor in Interest to ISAAC JERMAINE KELLY, deceased, Plaintiffs, vs. LMV II AFFORDABLE, L.P., a California Limited Partnership doing business as MEADOWVIEW II APARTMENTS; FWC REALTY SERVICES CORPORATION, a Delaware Corporation; CBR PROPERTY MANAGEMENT LLC, a California Corporation; STEVEN RAY DILLICK JR., an individual; and DOES 1 through 50, inclusive, Defendants. Cause No. RIC1601732, Superior Court of California, County of Riverside.

**111.** <u>**Trial Federal Court:**</u>   January 29, 2019, TRINA KOISTRA; and LARRY FORD, Plaintiffs, vs. COUNTY OF SAN DIEGO; PLUTARCO VAIL; and DOES 1 through 50, inclusive, Defendants, Cause No. 3:16-CV-02539, United States District Court for the Southern District of California.

**112.** <u>**Deposition:**</u>   February 7, 2019, ANTHONY ECONOMUS, Plaintiff, vs. CITY AND COUNTY OF SAN FRANCISCO; a municipal corporation, et al, City of San Francisco Police Officer; DOES 1-50 INCLUSIVE, Defendants, Cause No. 4:18-CV-01071, United States District Court for the Northern District of California.

**113.** <u>**Deposition:**</u>   February 11, 2019, GABRIEL LAKATOSH, on behalf of himself and all others similarly situated, Plaintiff, vs. TECHTRONIC INDUSTRIES COMPANY, LTD; MILWAUKEE ELECTRIC TOOL CORPORATION; THE HOME DEPOT, INC.; and DOES 1-10, inclusive, Defendants, Cause No. BC712875, Superior Court of California, County of Los Angeles.

**114.** **Deposition:**   February 13, 2019. JOSE VILLEGAS, an individual; MARIA VILLEGAS, an individual; ALDO VILLEGAS, a minor, by and through his guardian ad litem, Plaintiffs, vs. COUNTY OF SAN BERNARDINO, a governmental entity; SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT, a governmental entity; RYAN CONNER, an individual; PAUL KOWALSKI, an individual; and DOES 1-100, inclusive, Defendants. Cause No. CIVDS1606504, Superior Court of California, County of San Bernardino.

**115.** **Deposition:**   February 14, 2019, S.A.C A MINOR, BY AND THROUGH HER GUARDIAN AD LITEM, KAREN NUNEZ VELASQUEZ, INDIVIDUALLY AND AS SUCCESSOR INTEREST TO JONATHON CORONEL, AND MARIA B. CORONEL, AN INDIVIDUAL, PLAINTIFFS, vs. COUNTY OF SAN DIEGO, AN ENTITY; CHRISTOPHER VILLANUEVA AN INDIVIDUAL; AND DOES 1 THROUGH 10, INCLUSIVE, DEFENDANTS. Cause No. 17CV1459-WQH-AGS, United States District Court for the Southern District of California.

**116.** **Deposition:**   February 28, 2018, FERMIN VINCENT VALENZUELA, Plaintiff, vs. CITY OF ANAHEIM, et al., Defendants, Cause No. 8:17-CV-00278, United States District Court for the Central District of California.

**117.** **Deposition:**   March 7, 2019, K.C., a minor, by and through her guardian ad litem Carolina Navarro; A.S., a minor, by and through her guardian ad litem Araceli Saenz; K.C., by and through her guardian ad litem Amber Neubert; JACQUELINE LAWRENCE; KEITH CHILDRESS, SR., in each cause individually and as successor in interest to Keith Childress, Jr., deceased; and JACQUELINE LAWRENCE as administrator of the ESTATE OF KEITH CHILDRESS, JR., Plaintiffs, vs. LAS VEGAS METROPOLITAN POLICE DEPARTMENT, UNITED STATES OF AMERICA DEPARTMENT OF JUSTICE; ROBERT BOHANON; BLAKE WALFORD; JAMES LEDOGAR; BRIAN MONTANA; and DOES 2-10, inclusive, Defendants. Cause No. 2:16-CV-03039, United States District Court for the District of Nevada.

**118.** <u>**Deposition:**</u>   March 13, 2019, BAO XUYEN LE, INDIVIDUALLY, and as the Court appointed PERSONAL REPRESENTATIVE OF THE ESTATE OF TOMMY LE, HOAI "SUNNY" LE, Tommy Le's Father, DIEU HO, Tommy Le's Mother, UYEN LE and BAO XUYEN, Tommy Le's Aunts, KIM TUYET LE, Tommy Le's Grandmother, and QUOC NGUYEN, TAM NGUYEN, DUNG NGUYEN, JULIA NGUYEN AND JEFFERSON NGUYEN, Tommy Le's Siblings, Plaintiffs, vs. MARTIN LUTHER KING JR. COUNTY as sub-division of the STATE OF WASHINGTON, and KING COUNTY DEPUTY SHERIFF CESAR MOLINA. Defendants. Cause No. 2:18-CV-00055, United States District Court for the Western District of Washington.

**119.** <u>**Deposition:**</u>   March 19, 2019, MICHAEL WILLIAM FONG, M.D., an individual, Plaintiffs, vs. COUNTY OF LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; VIRIDIANA PEREZ; AND DOES 1 THROUGH 20, Inclusive, Defendants. Cause No. BC630745, Superior Court of California, County of Los Angeles.

**120.** <u>**Deposition:**</u>   March 27, 2019, KATHY CRAIG and GARY WITT, individually and as successor-in-interest to BRANDON LEE WITT, deceased, Plaintiffs, vs. COUNTY OF ORANGE, and NICHOLAS PETROPULOS, an individual, and DOES 1-10, inclusive, Defendants. Cause No. 8: 17-CV-00491, United States District Court for the Central District of California.

**121.** <u>**Deposition:**</u>   April 4, 2019, PATRICK J. CAVANAUGH, Plaintiff, vs. DONNY YOUNGBLOOD, Kern County Sheriff; BRIAN HULL, Classifications/Gang Unit Sergeant; JOSH JENNINGS, Lerdo Pre-Trial Facility Classification/Gang Unit Deputy; OSCAR FUENTEZ, Lerdo Pre-Trial Facility Classification/Gang Unit Deputy; DAVID K. FENNELL, M.D., Medical Director, Atascadero State Hospital; DAVID LANDRUM, Chief, Office of protective Services, Atascadero State Hospital; CHRISTOPHER GUZMAN; Classification/Gang Unit Officer, Atascadero State Hospital; DILLON MORGAN, Classification/Gang Unit Officer, Atascadero State Hospital, Defendants. Cause No. 1:17-CV-00832, United States District Court for the Eastern District of California.

**122.** <u>**Deposition:**</u>   April 12, 2019, TATYANA HARGROVE, Plaintiff, vs. CITY OF BAKERSFIELD, BAKERSFIELD POLICE DEPARTMENT OFFICER CHRISTOPHER MOORE, BAKERSFIELD POLICE DEPARTMENT SENIOR OFFICER GEORGE VASQUEZ, and DOES 1-10, inclusive, Defendants. Cause No. 1:17-CV-01743, United States District Court for the Eastern District of California.

**123.**   **Trial Federal Court:**   April 25, 2019, KATHY CRAIG and GARY WITT, individually and as successor-in-interest to BRANDON LEE WITT, deceased, Plaintiffs, vs. COUNTY OF ORANGE, and NICHOLAS PETROPULOS, an individual, and DOES 1-10, inclusive, Defendants. Cause No. 8:17-CV-00491, United States District Court for the Central District of California.

**124.**   **Deposition:**   May 21, 2019, DEMETRIC FAVORS, Plaintiff, vs. CITY OF ATLANTA, a municipal corporation of the State of Georgia, Defendant. Cause No. 1:17-CV-03996, United States District Court for the Northern District of Georgia.

**125.**   **Deposition:**   May 28, 2019, JESSE MONTELONGO, an individual; VICTORIA MONTELONGO, an individual; THERESA LOZANO an individual; J.M., a minor, by and through his Guardian Ad Litem, RUBY MORALES; E.M., a Minor, by and through his Guardian Ad Litem RUBY MORALES; ALE. M., a minor by and through her Guardian Ad Litem, ADOLFO GONZALEZ; ALI. M., a minor by and through her Guardian Ad Litem, ADOLFO GONZALEZ; ALA. M., a minor by and through her Guardian Ad Litem, ADOLFO GONZALEZ, Plaintiffs, vs. THE CITY OF MODESTO, a municipal corporation; DAVE WALLACE, individually and in his capacity as an officer for the CITY OF MODESTO Police Department; and DOES 1-25, DEFENDANTS. Cause No. 1:15-CV-01605, United States District Court for the Eastern District of California.

**126.**   **Deposition:**   May 30, 2019, STAN SEVERI and MYRANDA SEVERI, Plaintiffs, vs. COUNTY OF KERN; KERN COUNTY SHERIFF DONNY YOUNGBLOOD, in his individual capacity; DEPUTY GABRIEL ROMO, in his individual capacity; AND DOES 1 to 10, inclusive, in their individual capacities, Defendants. Cause No. 1:17-CV-00931, United States District Court for the Eastern District of California.

**127.**   **Deposition:**   June 12, 2019, ANDRE THOMPSON, a single man; and BRYSON CHAPLIN, a single man, Plaintiffs, vs. CITY OF OLYMPIA, a municipal corporation and local government entity; and RYAN DONALD AND "JANE DOE" DONALD, individually and the marital community comprised thereof, Defendants. Cause No. 3:18-cv-05267, United States District Court for the Western District of Washington.

**128.**   **Deposition:**   June 14, 2019, PRESTON vs. BOYER, et al., Cause No. 2:16-CV-01106, United States District Court for the Western District of Washington.

**129.** <u>**Trial Federal Court:**</u>   June 20, 2019, DANIEL MANRIQUEZ, Plaintiff, vs. J. VANGILDER, et al., Cause No. 16-cv-01320 HSG (PR), United States District Court for the Northern District of California.

**130.** <u>**Deposition:**</u>   June 25, 2019, LISA G. FINCH, Individually, as Co-Administrator of the Estate of Andrew Thomas Finch, deceased, and as Next Friend of her minor granddaughter, AF; DOMINICA C. FINCH, as Co-Administrator of the Estate of Andrew Thomas Finch, deceased; and ALI ABDELHADI, Plaintiffs, vs. CITY OF WICHITA, KANSAS; JOHN DOE POLICE OFFICERS 1-10, Defendants. Cause No. 18-CV-01018, United States District Court for the District of Kansas.

**131.** <u>**Deposition:**</u>   June 28, 2019, PAMELA ANDERSON, Individually and as Independent Administrator of the Estate of JAMES ANDERSON, deceased, Plaintiff, vs. CITY OF CHICAGO, a Municipal Corporation, and OFFICER CHRISTOPHER RAMEY, individually and as agent, servant and employee of the CITY OF CHICAGO, Defendants, (Cause No. 16 L 003346), Circuit Court of Cook County, Illinois.

**132.** <u>**Deposition:**</u>   July 2, 2019, BRIDGET BRYDEN, Plaintiff, vs. CITY OF SANTA BARBARA; and DOES 1 to 50, Cause No. 17CV01529, Superior Court of California, County of Santa Barbara.

**133.** <u>**Trial State Court:**</u>   July 3, 2019, JANICE SLY, individually and as Successor in Interest to ISAAC JERMAINE KELLY, deceased, and CHARLES ROY, individually and as Successor in Interest to ISAAC JERMAINE KELLY, deceased, Plaintiffs, vs. LMV II AFFORDABLE, L.P., a California Limited Partnership doing business as MEADOWVIEW II APARTMENTS; FWC REALTY SERVICES CORPORATION, a Delaware Corporation; CBR PROPERTY MANAGEMENT LLC, a California Corporation; STEVEN RAY DILLICK JR., an individual; and DOES 1 through 50, inclusive, Defendants. Cause No. RIC1601732, Superior Court of California, County of Riverside.

**134.** <u>**Deposition:**</u>   July 8, 2019, WENDY LAGUNA, individually and as The Successor in Interest of the ROBERT CAMACHO Estate, Deceased, Plaintiff, vs. COMMUNITY PROTECTIVE SERVICES, Aa California Corporation; AUSTIN HOUSIGN PATROL, a California Business entity of unknown form; WHEELER STEFFEN PROPERTY MANAGEMENT, a California business entity of unknown form; and DOES 1 through 100, inclusive, Defendants.   Cause No. CIVDS1516654, Superior Court of California, County of San Bernadino.

**135.** <u>**Deposition:**</u>   July 17, 2019, DAVID STEININGER, an individual, Plaintiff, vs. MARIPOSA GRILL AND CANTINA, INC., an FTB Suspended California Corporation; and DOES 1-50, Defendants. Cause No. BC 689374, Superior Court of California, County of Los Angeles.

**136.** <u>**Trial State Court:**</u>   July 29, 2019, WENDY LAGUNA, individually and as The Successor in Interest of the ROBERT CAMACHO Estate, Deceased, Plaintiff, vs. COMMUNITY PROTECTIVE SERVICES, Aa California Corporation; AUSTIN HOUSIGN PATROL, a California Business entity of unknown form; WHEELER STEFFEN PROPERTY MANAGEMENT, a California business entity of unknown form; and DOES 1 through 100, inclusive, Defendants. Cause No. CIVDS1516654, Superior Court of California, County of San Bernadino.

**137.** <u>**Deposition:**</u>   August 13, 2019, LISA G. FINCH, Individually, as Co-Administrator of the Estate of Andrew Thomas Finch, deceased, and as Next Friend of her minor granddaughter, AF; DOMINICA C. FINCH, as Co-Administrator of the Estate of Andrew Thomas Finch, deceased; and ALI ABDELHADI, Plaintiffs, vs. CITY OF WICHITA, KANSAS; JOHN DOE POLICE OFFICERS 1-10, Defendants. Cause No. 18-CV-01018, United States District Court for the District of Kansas.

**138.** <u>**Trial State Court:**</u>   September 6, 2019, PAMELA ANDERSON, Individually and as Independent Administrator of the Estate of JAMES ANDERSON, deceased, Plaintiff, vs. CITY OF CHICAGO, a Municipal Corporation, and OFFICER CHRISTOPHER RAMEY, individually and as agent, servant and employee of the CITY OF CHICAGO, Defendants, Cause No. 16 L 003346, Circuit Court of Cook County, Illinois.

**139.** <u>**Trial Federal Court:**</u> September 25, 2019, ANDRE THOMPSON, a single man; and BRYSON CHAPLIN, a single man, Plaintiffs, vs. CITY OF OLYMPIA, a municipal corporation and local government entity; and RYAN DONALD AND "JANE DOE" DONALD, individually and the marital community comprised thereof, Defendants. Cause No. 3:18-cv-05267, United States District Court for the Western District of Washington.

**140.** <u>**Deposition:**</u>   October 1, 2019, RUSSELL MANNING, Plaintiff, vs. CITY OF PALM SPRINGS, PALM SPRINGS POLICE DEPARTMENT, COUNTY OF RIVERSIDE, OFFICER MATT OLSON, DOES 1 to 100, inclusive, Defendants. Cause No. PSC 1704634, Superior Court of California, County of Riverside.

**141.** <u>Deposition:</u>   October 10, 2019, ESTATE OF TYLER S. RUSHING, et al., Plaintiffs, vs.AG PRIVATE PROTECTION, INC., et al., Defendants. Cause No. 2:18-CV-01692, United States District Court for the Eastern District of California.

**142.** <u>Trial Federal Court:</u> October 17, 2019, TATYANA HARGROVE, Plaintiff, vs. CITY OF BAKERSFIELD, BAKERSFIELD POLICE DEPARTMENT OFFICER CHRISTOPHER MOORE, BAKERSFIELD POLICE DEPARTMENT SENIOR OFFICER GEORGE VASQUEZ, and DOES 1-10, inclusive, Defendants. Cause No. 1:17-CV-01743, United States District Court for the Eastern District of California.

**143.** <u>Trial State Court:</u>   October 22, 2019, RUSSELL MANNING, Plaintiff, vs. CITY OF PALM SPRINGS, PALM SPRINGS POLICE DEPARTMENT, COUNTY OF RIVERSIDE, OFFICER MATT OLSON, DOES 1 to 100, inclusive, Defendants. Cause No. PSC 1704634. Superior Court of California, County of Riverside.

**144.** <u>Trial State Court:</u>   October 29, 2019, BRIDGET BRYDEN, Plaintiff, vs. CITY OF SANTA BARBARA; and DOES 1 to 50, Cause No. 17CV01529, Superior Court of California, County of Santa Barbara.

**145.** <u>Deposition:</u> November 1, 2019, ROGER KIRSCHENBAUM, as Administrator of the Estate of GUADALUPE OSORNIO HURTADO, deceased, and ROGER KIRSCHENBAUM, as Next Friend and Conservator for ALEXANDER OSORNIO RESENDEZ, a minor, Plaintiffs, vs. COBB COUNTY, a political Subdivision of the State of Georgia, Defendant. CIVIL ACTION FILE NO.: 18-A-963, State Court of Cobb County, Georgia.

**146.** <u>Trial Federal Court:</u>   November 13, 2019, FERMIN VINCENT VALENZUELA, Plaintiff, vs. CITY OF ANAHEIM, et al., Defendants, Cause No. 8:17-CV-00278, United States District Court for the Central District of California.

**147.** <u>Deposition:</u> November 14, 2019, ABRAM AND COURTNEY CLAY, Plaintiffs, vs. SUNFLOWER DEVELOPMENT, LLC, ET AL., Defendants. Cause No. 1716-CV-22823, Circuit Court of Jackson County, Missouri.

**148.** **Deposition:** December 5, 2019, FRANK GALLARDO, PLAINTIFF, vs. BEVERLY HOSPITAL, MICHAEL JOSEPH GAXIOLA; and DOES 1 through 20, inclusive, Defendants., Cause No. BC678192, Superior Court of California, County of Los Angeles.

**149.** **Deposition:** December 18, 2019, GEORGE FAULKNER, APRIL FAULKNER, Plaintiffs, vs. BRIAN LINDERMAN, STEVEN JOYCE, JEREMY MYERS, DOES 1 TO 20, Defendants, Cause No. 37-2019-00000497-CU-PO-CTL, Superior Court of California, County of San Diego.

**150.** **Deposition:** January 6, 2020, DAVID COLEMAN, an individual, Plaintiff, vs. ESTATE OF JEROME TENHUNDFELD, DECEASED; AND DOES 1 TO 10, Defendants. Cause No. MCC 1800683, Superior Court of California, County of Riverside.

**151.** **Trial State Court:** January 16, 2020, GEORGE FAULKNER, APRIL FAULKNER, Plaintiffs, vs. BRIAN LINDERMAN, STEVEN JOYCE, JEREMY MYERS, DOES 1 TO 20, Defendants, Cause No. 37-2019-00000497-CU-PO-CTL, Superior Court of California, County of San Diego.

**152.** **Deposition:** February 13, 2020, MITCHELL LOWREY; GREGORY PERRY; NICHOLE PERRY; CYNTHIA RILEY; and LORENA RASCON, Plaintiffs, vs. NATIVIDAD MEDICAL CENTER; GARLAND GILL, R.N., MICHAEL MOELLER, M.D.; EUGENE RODRIGUEZ as a nominal defendant; DAVID WILLIAMS as a nominal defendant; COUNTY OF MONTEREY; STATE OF CALIFORNIA; FIRST ALARM SECURITY AND PATROL INC., and DOES 1-50, Inclusive, Defendants. Cause No. M129305, Superior Court of California, County of Monterey.

**153.** **Deposition:** February 19, 2020, RUDY GONZALEZ, Plaintiff, vs. STATE OF CALIFORNIA, CALIFORNIA HIGHWAY PATROL, RAYMOND CHAVEZ, BRADLEY KEMP, Does 1 to 20, Defendant(s). Cause No. RIC1804244, Superior Court of California, County of Riverside.

**154.** **Deposition:** February 24, 2020, BRIAN O'NEAL PICKETT III, A MINOR, AND MICAH OMARI PICKETT, A MINOR, BY AND THROUGH THEIR GUARDIAN AD LITEM TAMIA GILBERT, Plaintiffs, vs. COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, AND DOES 1 THROUGH 50, INCLUSIVE, Defendants. CAUSE NO. TC028173, Consolidated with TC028210, Superior Court of California, County of Los Angeles.

**155.** **Deposition:** February 28, 2020, ODILA PENALOZA, INDIVIDUALLY AND AS SUCESSOR IN INTEREST TO ERICK AGUIRRE; AND SAMANTHA GOODE, AN INDIVIDUAL, PLAINTIFFS, vs. CITY OF RIALTO; JARROD ZIRKLE; MATTHEW LOPEZ AND DOES 1-10, INCLUSIVE, DEFENDANTS. Cause No. 5:19-CV-01642, United States District Court for the Central District of California.

**156.** **Trial Federal Court:** March 5, 2020, ODILA PENALOZA, INDIVIDUALLY AND AS SUCESSOR IN INTEREST TO ERICK AGUIRRE; AND SAMANTHA GOODE, AN INDIVIDUAL, PLAINTIFFS, vs. CITY OF RIALTO; JARROD ZIRKLE; MATTHEW LOPEZ AND DOES 1-10, INCLUSIVE, DEFENDANTS. Cause No. 5:19-CV-01642, United States District Court for the Central District of California.

**157.** **Deposition:** March 12, 2020, MARLON JOHNSON, an individual, Plaintiff, vs. COUNTY OF SAN BERNARDINO; SAN BERNARDINO SHERIFF'S DEPARTMENT; SHERIFF JOHN MCMAHON; DEPUTY ALEJANDRO RAMOS; DEPUTY MATTHEW BALTIERRA; DEPUTIES Does 1 through 5; and DOES 6 through 10, Inclusive, Defendants. Cause No. 5:18-CV-02523, United States District Court for the Central District of California.

**158.** **Deposition:** April 27, 2020, EDWARD BRIAN BOOKER, Plaintiff, vs. POLICE OFFICER ANTHONY WONG SHUE, POLICE OFFICER LUIS MATEO and POLICE SERGEANT WILLIAM C., in their individual capacities, Defendants. Cause No. 6:19-CV-00773, United States District Court for the Middle District of Florida.

**159.** **Deposition:** May 1, 2020, RACHEL FEAR; SARAH FEAR; STEVEN FEAR; BETTY LONG; AND LORI CHEVOYA, DEFENDANTS, vs. ALEX GEIGER; CITY OF EXETER POLICE DEPARTMENT, CITY OF GROVER BEACH; CITY OF GROVER BEACH POLICE DEPARTMENT; CHRISTOPHER BELAVIC; MONICA BELAVIC; AND DOES 1 THROUGH 100, INCLUSIVE, DEFENDANTS. Cause No. 17CV-0529, Superior Court of California, County of San Luis Obispo.

**160.** **Deposition:** May 21, JOHN BOWLES, individually, Plaintiff, vs. CITY OF SAN JOSE; TODD AH YO; WILLIAM WOLFE; ERICK ENDERLE, and DOES 1-10, inclusive, Defendants. Cause No. 5:19-CV-01027, United States District Court for the Northern District of California.

**161.** **Deposition:** July 6, 2020, JEAN HENDERSON, as next friend and guardian of and for CHRISTOPHER DEVONTE HENDERSON, Plaintiff, vs. HARRIS COUNTY, TEXAS; and ARTHUR SIMON GARDUNO, Defendants. Cause No. 4:18-CV-02052, United States District Court for the Southern District of Texas.

**162.** **Deposition:** July 10, 2020, ANGEL JOSE VELASCO, Plaintiff, vs. CITY OF EL MONTE, CITY OF BALDWIN PARK; CORPORAL DANNY TATE; OFFICER ERNEST BARRIOS; and DOES 1 to 10, Inclusive, Defendants. Cause No. 2:19-CV-07956, United States District Court for the Central District of California.

**163.** **Deposition**: August 25, 2020, RHONDA HAGOOD, Plaintiff, vs. KERN COUNTY, a California municipal entity; NICK EVANS, an individual; TODD NEWELL, an individual; and DOES 1 THROUGH 10, Inclusive, Defendants. Cause No. 1:18-CV-01092, United States District Court for the Eastern District of California.

**164.** **Deposition:** August 31, 2020, S.S.L., A MINOR, by and through his Guardian Ad Litem MARISSA J. LOPEZ AVILA as an individual and heir-at-law; S.S.L., A Minor, by and through his Guardian Ad Litem MARISSA J. LOPEZ AVILA as Successor in Interest to SERGIO SILVA-CARVAJAL, aka SERGIO SILVA, Plaintiffs, vs. COUNTY OF LOS ANGELES; JOHN APOSOTOL, an individual; and DOES 1 through 10, Inclusive, Defendants.  Case No. 2-17-CV-05544-TJH-AGR, United States District Court for the Central District of California.

**165.** **Deposition:** October 09, 2020, M.H. C., a minor, by and through his guardian ad litem, ANNA CANO, Plaintiffs, vs. COUNTY OF LOS ANGELES; LOS ANGELES COUNTY PROBATION CHIEF TERRI MCDONALD, in her individual and official capacity; and DOES 1 through 20, inclusive, Defendants. Case No. 2:18-cv-08305-MWF-AFM, United States District Court for the Central District of California.

**166.** **Deposition:** October 20, 2020, ANTHONY THOMAS, Plaintiff, vs. CITY OF CONCORD; OFFICER DAVID SAVAGE (Badge No. 360); OFFICER DANIEL WALKER; CORPORAL CHRISTOPHER BLAKELY (Badge No. 491); SERGEANT TODD STROUD; and DOES 1-50, Defendants.  Case No. 3:18-cv-07484-EDL, United States District Court for the Northern District of California.

**167.** <u>Deposition:</u>  October 23, 2020, Mussalina Muhaymin, as Personal Representative of the Estate of Muhammad Abdul Muhaymin Jr., Plaintiff. vs. City of Phoenix, an Arizona Municipal Corporation; Antonio Tarango; Officer Oswald Grenier; Officer Kevin McGowan; Officer Jason Hobel; Officer Ronaldo Canilao; Officer David Head; Officer Susan Heimbigner; Officer James Clark; Officer Dennis Leroux; Officer Ryan Nielsen; Officer Steven Wong; and Does Supervisors 1-5, Defendants, Case No. 17-cv-04565-PHX-SMB, United States District Court for the District of Arizona.

**168.** <u>Deposition</u>:  November 18, 2020, JOSEPH FOSHEE, Plaintiff, vs. CITY OF GILROY; ROBERT ZUNIGA; and DOES 1-10, inclusive, Defendants. Case No. 5:20-cv-00132, United States District Court for the Northern District of California.

**169.** <u>Deposition:</u>  November 30, 2020, DEBRA BRAVO and FRED BRAVO, Plaintiffs, vs. DEFENSE LOGISTICS SPECIALIST CORPORATION, a California corporation, NICK CARTER, an individual, and Does One through Twenty, inclusive, Defendants. Case No. CIV MSC16-00194, Superior Court of California, Contra Costa County.

**170.** <u>Deposition:</u>  December 16, 2020, LISA VARGAS, Plaintiff, vs. COUNTY OF LOS ANGELES, NIKOLIS PEREZ, JONATHAN ROJAS, and DOES 1 through 10, inclusive, Defendants. Case No. 2:19-cv-03279-PSG-AS, Unites States District Court, Central District of California.

**171.** <u>Deposition:</u> January 6, 2021, ESTATE OF ALEJANDRO SANCHEZ and BERTHA SANCHEZ, Plaintiffs. vs. COUNTY OF STANISLAUS, STANISLAUS COUNTY SHERIFF'S DEPARTMENT, ADAM CHRISTENSEN, SHANE ROHN, BRETT BABBITT, EUGENE DAY, JUSTIN CAMARA, JOSEPH KNITTEL, ZEBEDEE POUST, HECTOR LONGORIA, and DOES 8 to 50, Defendants, (Case No. 1:18-cv-00977-DAD-BAM), United States District Court for the Eastern District of California.

**172.** <u>Deposition:</u> January 8, 2021 KATRINA EISINGER, an individual; GREGORY J. EISINGER, an individual, Plaintiffs, vs. CITY OF ANAHEIM, Police Chief JORGE CISNEROS, in his Individual and OFFICIAL capacity, DOES 1-100, Inclusive, Defendants, (Case No. 30-02018-01035259-CU-PA-CJC), superior Court of California, Orange County.

**173.** <u>**Deposition:**</u> January 13, 2021, ANGELA JANELL BURROWS, individually and as independent administrator of, and on behalf of, the ESTATE OF STEPHANIE GONZALES and STEPHANIE GONZALES' heirs-at-law, Plaintiff, vs. MIDLAND COUNTY, TEXAS; GEORGE DARRELL RHEA; MATTHEW FRANCIS GROESSEL; MONICA MARIE ALLEN; CITY OF MIDLAND, TEXAS; and BLAKE ALLEN BLANSCETT, Defendants. CIVIL ACTION NO. 7:20-CV-00062-DC, United States District Court for the Western District of Texas.

**174.** <u>**Deposition:**</u> January 18, 2021, REYNA ANGELITA AMEZCUA, an individual, Plaintiff, vs. MCDONALD'S CORPORATION; MCDONALD'S STORE #640; MCRU INCORPORATED; TOP WATCH SECURITY; HASHEM MOHAMMAD; and DOES 1through 30, inclusive, Defendants.  Case Number BC724108, Superior Court of the State of California for the County of Los Angeles-Long Beach.

**175.** <u>**Deposition:**</u> February 3, 2021, ISMAEL RAMIREZ, an individual, Plaintiff, vs. NELSON RESTAURANT GROUP, INC., A California corporation; JULIAN NELSON, an individual; and DOES 1 through 20, Defendants.
Case No. MCC18800814, Superior Court of the State of California, for the County of Riverside-Southwest District.

**176.** <u>**Deposition:**</u> February 11, 2021, ESTATE OF EDWARD LOWELL HILLS; JOSHUA HILLS, individually and as the Personal Representative of the ESTATE OF EDWARD LOWELL HILLS, Plaintiff, vs. MICHAEL J. GENTRY, et al., Defendants, Case No. 3:19-cv-05634-RBL, Western District of Washington at Tacoma.

**177.** <u>**Deposition:**</u> February 22, 2021, OMAR GOMEZ, individually, Plaintiff, vs. CITY OF SANTA CLARA; JORDAN FACHKO; and DOES 1-10, inclusive, Defendants, Case No. 5:19-cv-05266-LHK, Northern District of California.

**178.** <u>**Deposition:**</u> February 25, 2021, Noel Hall and Christina Hall, Plaintiffs, vs. City of Atlanta, a municipal corporation of the State of Georgia; GEORGE N. TURNER, in his individual capacity as former Chief of Police of the City of Atlanta Police Department and MATHIEU CADEAU, in his individual capacity as former Police Officer of the City of Atlanta Police Department, Defendants. Civil Action File No. 1:18-cv-4710, Northern District of Georgia, Atlanta Division.

**179.** **Deposition:**   March 5, 2021, STEVEN RICHARD ALLGOEWER, Plaintiff, vs. CITY OR TRACY; TRACY POLICE DEPARTMENT; TRACY POLICE CHIEF DAVID KRAUSS; TRACY POLICE DEPARTMENT OFFICER N. MEJIA, ID NO. 1233; TRACY POLICE DEPARTMENT OFFICER T. FREITAS, ID NO. 1250; and DOES 1 THROUGH 20, INCLUSIVE, Defendants. Case No. STK-CV-UCE-2008-0011184, Superior Court of California, County of San Joaquin.

**180.** **Deposition:**   March 9, 2021, AMANDA SOMMERS; and RICHARD SOMMERS, Plaintiffs, vs. CITY OF SANTA CLARA; COLIN STEWART; and DOES 1-25, Defendants, Case No. 5:17-cv-04469 BLF, United States District Court, Northern District of California.

**181.** **Deposition**: March 12, 2021, KYRA BERNHARDT, in her individual capacity as a Personal Representative of THE ESTATE OF GENE BERNHARDT aka MERVYN GENE BERNHARDT, Plaintiff, vs. COUNTY OF HAWAI, STANLEY KAINA, in his individual capacity and as a Police Officer of the Hawaii Police Department, JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, DOE UNINCORPORATED ORGANIZATIONS 1-10. Case No. CV19-00209 DKW-KJM, Unites States District Court, District of Hawaii.

**182.** **Deposition:** March 17, 2021, CINDY M. ALEJANDRE; and DAVID GONZALEZ II as Co-Successors-in-Interest to Decedent David Gonzalez III, Plaintiffs, vs. COUNTY OF SAN JOAQUIN, a municipal corporation, et. al., Defendants. Case Number: 2:19-cv-00233-WBS-KJN, United States District Court, Eastern District of California.

**183.** **Deposition:** March 26, 2021, TYLER GRIFFIN, Plaintiff, vs. CITY OF ATLANTA, DONALD VICKERS, MATTHEW ABAD, and JOHN DOE's #1-5, Defendants. Civil Action File No. 1:20-cv-02514-TWT, Northern District of Georgia, Atlanta Division.

**184.** <u>**Deposition:**</u>   March 29, 2021, CLIFTON PLEASANT, JR., an individual and successor-in-interest of CLIFTON PLEASANT, SR., deceased, Plaintiff, vs. HUMBERTO MIRANDA, an individual; TARRON BROADWAY, an individual; UNIDENTIFIED DEPUTIES, individuals; CITY OF VICTORVILLE, a public entity; COUNTY OF SAN BERNARDINO, a public entity; MILES KOWALSKI, an individual, Defendants, Case No. 5:20-cv-00675-JGB-SHK, United States District Court, Central District of California.

**185.** <u>**Trial State Court:**</u> April 6-7, 2021, KATRINA EISINGER, an individual; GREGORY J. EISINGER, an individual, Plaintiffs, vs.
CITY OF ANAHEIM, Police Chief JORGE CISNEROS, in his Individual and OFFICIAL capacity, DOES 1-100, Inclusive, Defendants.
(Case No. 30-2018-0101-35259-CU-PA-CJC), Superior Court of California, County of Orange.

**186.** <u>**Deposition:**</u> April 22, 2021, Darrell Allen, Sr. and Mary V. Jennings, Plaintiffs, vs. County of San Bernardino, San Bernardino County Sheriff-Coroner John McMahon, Kyle Schuler, Jared Rodgers, inclusive, Defendants.
Case Number: 5:20-cv-00283-JFW (SHKx), United States District Court, Central District of California.

**187.** <u>**Deposition:**</u> May 10, 2021, FRANCES EARLINE SIMS, INDIVIDUALLY AND AS DEPENDENT ADMINISTRATOR OF THE ESTATE OF STEVEN MITCHELL QUALLS; Plaintiff, vs. CITY OF JASPER TEXAS, TODERICK D. GRIFFIN, STERLING RAMON LINEBAUGH, HEATHER RENEE O'DELL, JOSHUA HADNOT, DEFENDANTS, CIVIL ACTION NO. 1:20-CV-00124, United States District Court for the Eastern District of Texas.

**188.** <u>**Deposition:**</u> May 11, 2021, MICHAEL DAVIS, Plaintiff, vs. CITY OF RICHMOND; POLICE CHIEF BISA FRENCH; SERGEANT KRISTOPHER TONG; OFFICER SAVANNAH STEWART; and DOES 1-50; Defendants.
Case No. 4:20-cv-02774-SBA.   United States District Court, Northern District of California.

**189.** <u>**Deposition:**</u> May 18, 2021, MELANIE GILLILAND, an individual, Plaintiff, vs. CITY OF PLEASANTON, a governmental entity; ELIJAH NATHANIEL HENRY, an individual; and DOES 1-50, inclusive, Defendants. Case No. RG18924833.   Superior Court of the State of California, County of Alameda.

Page **32** of **32**

**Depositions**: 153
**Trial Testimony**: 35

## On-Scene Consulting Group, LLC

### Scott A. DeFoe

### 2021 Fee Schedule

**Retainer Fee:**                                                    **$4000.00**

Consulting time, including but not limited to, case reviews, report reviews, deposition reviews, analysis of criminal investigations, research, interviews, consultation time, meetings, site inspections, deposition preparation, deposition support, interpretation of police documents, interpretation of investigative files, report preparation, preparation for negotiation or any miscellaneous tasks as assigned by the client attorney or opposing attorney (client approved). **$375.00 per hour.**

Consulting time for the following professional services: deposition testimony, trial testimony and any other legal testimony. **$475.00 per hour.**

Fees for all depositions shall be paid prior to the start of the deposition based upon the anticipated length of the deposition with a 3-hour minimum fee of **$1425.00**

All out of state travel time:                                    **$100.00 per hour.**

Fees for consulting time remain the same as in-state assignments. Travel and actual expenses reasonably and necessarily incurred (meals, lodging, ground transportation, rental car, etc.) will be billed to the client at cost and copies of expenses will be provided when available. On-Scene Consulting Group LLC, may request a travel retainer of $1000.00 specific to this travel prior to the travel date. Actual out of pocket expenses will be charged against the travel retainer until such time as it is exhausted. Any balance remaining will be applied to professional services outstanding balances.

# EXHIBIT B

# Allman & Petersen Economics, LLC

7677 Oakport Street, Suite 610
Oakland, CA 94621
(510) 382-1550
(510) 382-1472 (FAX)

Phillip H. Allman, Ph.D.
Jeffrey S. Petersen, Ph.D.
Max D. Allman, M.A., CFA
www.allmaneconomics.com

Federal Rule 26(a)(2)(B)
Dominguez v. City of San Jose
Report of Plaintiff's Economic Expert
April 6, 2021

1. My name is Phillip H. Allman.

2. My resume is attached to this report. I received a Ph.D. in economics from Michigan State University in 1982. My primary fields of expertise are econometrics, financial economics, and labor economics. I have published articles in economics on topics such as forecasting interest rates, wage growth, valuing pensions and conducting surveys in class action wage and hour cases. I have testified in over 700 trials involving the valuation of economic damages. My fee schedule for report preparation and testimony is attached. The list of trials and depositions in which I have testified over the last four years is attached.

3. I have been retained by plaintiff's counsel to conduct an analysis of the economic loss sustained by the Dominguez family as a result of the death of Jacob Dominguez on September 15, 2017. The present discounted value the Dominguez family's economic loss is **$1,242,623**.

4. To perform the economic loss analysis I have:

- reviewed Mr. Dominguez's W-2's with Windows Installation Specialists for 2014 to 2016
- reviewed Mrs. Dominguez's discovery responses
- reviewed data on work life expectancy and retirement ages
- projected the average value household services performed by males based on data from the Dollar Value of a Day and the California Employment Development Department
- projected future inflation and wage growth utilizing data from the U.S. Bureau of Labor Statistics and the Federal Reserve Bank
- projected future interest rates utilizing data from the Federal Reserve Bank, the U.S. Treasury Department, and the U.S. Bureau of Labor Statistics.

5. Mr. Dominguez died on September 15, 2017 at the age 33.9 years. He was married to Jessica Dominguez and had three children – Jacob (11), Jordan (age 8) and Jaliyah (age 7). As a result of Mr. Dominguez's death, the Dominguez family has sustained, and will continue to sustain in the future, a loss of his wages and household services.

6.  Mr. Dominguez was last employed with Window Installation Specialist from March 10, 2014 to June 10, 2016[1].  His annualized income during that period was $35,159 in 2017 dollars.[2]

7.  The Dominguez family's loss of income is measured from Mr. Dominguez's date of death until his projected retirement age.  Based on his age and level of education at the date of death, Mr. Dominguez's work life expectancy was 21.7 years; his statistical years to retirement was 27.9 years – a retirement age of 61.8.[3]  Furthermore, his employment ratio (worklife years divided by years to retirement) was 0.78.

8.  The annual loss of Mr. Dominguez's income to the Dominguez family is projected at $27,424 (2017 $'s).[4]  Table 1 shows the past loss (loss through the date of this report) of Mr. Dominguez's wages.  This amount is **$87,481**.

9.  No income growth was projected from 2021 thru one year past the report date.  Future wage growth from one year past the report date is projected at 2.60 percent per year.  This projection is based on the rate of growth for all workers in the United States.  According to the Employment Cost Index, wages have grown 0.60 percent faster than the rate of inflation since 1982.[5]  Inflation is projected to grow at 2.0 percent per year.  This projection is based on the Federal Reserve Board of Governors target inflation rate.

10.  Future values for one year from the report date are discounted to present value using the one-year Treasury bill rate of 0.04 percent.  All values from one year past the report date forward are discounted to present value using an interest rate of 3.5 percent.  This rate is based on the historic yield of a balanced portfolio of three-month and ten-year Treasury securities.  Since 1955, the average yield on this portfolio of Treasury securities has been 1.5 percent higher than the rate of inflation.  The rate of inflation is projected at the Federal Reserve Bank's targeted rate of 2.0 percent.

11.  The present discounted value of the loss of Mr. Dominguez's future wages is **$534,050**.[6]

12.  The Dominguez family's projected loss of household services is based on the average amount of services performed by a person with employment characteristics and family demographics resembling Mr. Dominguez's family.[7]  For example, the average male with the youngest child in the household between age 2 and 5 years performs 21.2 hours of household services per week.[8]  The hourly value of each household service is based on data from the California Employment Development Department and totals to $16.03 per hour in 2020 dollars.  Thus, the annual value of Mr. Dominguez's household services at the time of his death was

---

[1] Source: letter dated July 12, 2019 from Julie Lukas (Controller of Window Installation Specialists).
[2] See Table A.
[3] Source for worklife expectancy and statistical years to retirement: Richards, Hugh and Michael Donaldson, 2009, *Life and Worklife Expectancies*, (Lawyers and Judges Publishing Company, Inc.: Tucson, AZ).
[4] $35,159 (annualized income with last employer) x 0.78 (employment ratio).
[5] Source: Bureau of Labor Statistics.
[6] See Table 3.
[7] Source: Expectancy Data, *The Dollar Value of Day: 2019 Dollar Valuation*. Shawnee Mission, Kansas, 2020.
[8] See Table C.

2

$17,649 (2020 $'s).[9]  The bundle of household services performed is projected to change as the employment situation and the demographics of the household (age of children) change.

13.  The Dominguez family's loss of household services is measured from Mr. Dominguez's date of death until his normal life expectancy.  Mr. Dominguez's life expectancy at his date of death was 44.3 (78.2 years of age).[10]  The past loss of household services is **$52,767.**[11]  The present discounted value of the future loss of Mr. Dominguez's household services is **$569,324.**[12]

14.  As shown in the Economic Loss Summary Table, the past loss sustained by the Dominguez family is **$140,248;** the present discounted value of the projected future loss for the Dominguez family is **$1,102,374.**  The total economic loss is the sum of the past and future losses -- **$1,242,623.**

15.  I am prepared to testify to these projections in deposition or at trial if called upon to do so.

16.  The projections are based on the cited references and sources.  Thus, these figures are subject to change if the parameters on which they were based change.

*Phillip Allman*

_____

Phillip H. Allman, Ph.D.

---

[9] $16.03 per hour x 21.2 hours per week x 52 weeks per year.
[10] Source for life expectancy: National Vital Statistics Reports Volume 69, Number 12 November 17, 2020 United States Life Tables, 2018 (published November 17, 2020).
[11] See Table 2.
[12] See Table 4.

## ECONOMIC LOSS SUMMARY FOR THE DOMINGUEZ FAMILY
### (LOSS OF MR. DOMINGUEZ'S WAGES AND HOUSEHOLD SERVICES)

| | Full Value | Present Discounted Value |
|---|---|---|
| **PAST LOSS** | | |
| Wages | $ 87,481 [1] | $ 87,481 [1] |
| Household Services | $ 52,767 [2] | $ 52,767 [2] |
| | -------------- | -------------- |
| **TOTAL PAST LOSS** | $ 140,248 | $ 140,248 |
| | | |
| **FUTURE LOSS** | | |
| Wages | $ 784,698 [3] | $ 534,050 [3] |
| Household Services | $ 1,305,018 [4] | $ 568,324 [4] |
| | -------------- | -------------- |
| **TOTAL FUTURE LOSS** | $ 2,089,716 | $ 1,102,374 |
| | | |
| **TOTAL ECONOMIC LOSS** | $ 2,229,965 | $ 1,242,623 |

Note: all numbered footnotes refer to table numbers.

**Allman Petersen Economics, LLC**
7677 Oakport Street, Suite 610
Oakland, CA 94621
(510) 382-1550
www.allmaneconomics.com

Table 1

## PAST INCOME LOSS FOR THE DOMINGUEZ FAMILY
### (LOSS OF JACOB DOMINGUEZ'S WAGES)

| Period | Percent of Year | Mr. Dominguez's Annual Wages | Mr. Dominguez's Annual Personal Consumption | Period Loss |
|---|---|---|---|---|
| 09/15/17 - 12/31/17 | 29.59% | $27,424 [1A] | $4,295 [2] | $6,844 [3] |
| 01/01/18 - 12/31/18 | 100.00% | $28,260 [1B] | $4,426 | $23,834 |
| 01/01/19 - 12/31/19 | 100.00% | $29,122 | $4,560 | $24,561 |
| 01/01/20 - 12/31/20 | 100.00% | $30,010 | $4,700 | $25,310 |
| 01/01/21 - 04/07/21 | 26.58% | **$30,925** [1C] | $4,843 | $6,931 |
| | | | | **$87,481** |

1A. $35,159 (2017 $'s, see Table A) x 0.78 (employment ratio: 21.7 years (worklife expectancy) / 27.9 years (statistical years to retirement)).

1B. 2017-20 projected annual increases: 3.05% (source: U.S. Bureau of Labor Statistics, Employment Cost Index).

1C. 2021 projected increase: 2.60% (2.0% projected inflation (Federal Reserve Board of Governors current inflationary target) + 0.60% projected real wage growth (average for 1982-2020)).

2. 15.7% of Wages (2 adults & 3 children; see Table B).

3. Percent of Year x (Annual Wages - Annual Personal Consumption).

Table 2

## PAST LOSS OF HOUSEHOLD SERVICES FOR THE DOMINGUEZ FAMILY
### (LOSS OF JACOB DOMINGUEZ'S SERVICES)

| Period | | Percent of Year | Projected Annual Value of Mr. Dominguez's Services | Mr. Dominguez's Annual Personal Consumption | Period Loss |
|---|---|---|---|---|---|
| 09/15/17 - | 12/31/17 | 29.59% | $15,773 [1A] | $1,483 | $4,228 [3] |
| 01/01/18 - | 12/31/18 | 100.00% | $16,312 | $1,533 | $14,779 |
| 01/01/19 - | 12/31/19 | 100.00% | $16,962 | $1,594 | $15,368 |
| 01/01/20 - | 12/31/20 | 100.00% | $15,915 [1B] | $1,464 | $14,451 |
| 01/01/21 - | 04/07/21 | 26.58% | $16,329 [1C] | $1,502 | $3,940 |
| | | | | | $52,767 |

1A.  $17,649 per year (2020 $'s, youngest child age 2 to 5; see Table C) indexed to corresponding year with Employment Cost Index for Service Occupations (source: U.S. Bureau of Labor Statistics).

1B.  $15,915 per year (2020 $'s, youngest child age 6 to 13; see Table C) indexed to corresponding year with Employment Cost Index for Service Occupations (source: U.S. Bureau of Labor Statistics).

1C.  2021 projected increase: 2.60% (2.0% projected inflation (Federal Reserve Board of Governors current inflationary target) + 0.60% projected real wage growth (average for 1982-2020)).

2A.  9.4% of Annual Household Services.  Source: Expectancy Data, Dollar Value of a Day.

2B.  9.2% of Annual Household Services.  Source: Expectancy Data, Dollar Value of a Day.

3.  Percent of Year x (Projected Annual Value of Mr. Dominguez's Services - Mr. Dominguez's Annual Personal Consumption).

Table 3

## PRESENT DISCOUNTED VALUE OF FUTURE INCOME LOSS FOR THE DOMINGUEZ FAMILY (LOSS OF JACOB DOMINGUEZ'S WAGES)

| Period | Years to Beginning of Period | Years to End of Period | Projected Percent Increase | Projected Annual Value of Mr. Dominguez's Wages | Mr. Dominguez's Annual Personal Consumption | Projected Loss for the Period | Discount Rate | Present Discounted Value |
|---|---|---|---|---|---|---|---|---|
| 04/08/21 - 04/07/22 | 0.00 | 1.00 | | $30,925 [1] | $4,843 [2A] | $26,082 [3] | 0.04% [4A] | $26,077 |
| 04/08/22 - 04/07/23 | 1.00 | 2.00 | 2.60% [5] | $31,729 | $4,969 | $26,760 | 3.50% [4B] | $26,294 |
| 04/08/23 - 04/07/24 | 2.00 | 3.00 | 2.60% | $32,554 | $5,098 | $27,456 | 3.50% | $26,065 |
| 04/08/24 - 04/07/25 | 3.00 | 4.00 | 2.60% | $33,401 | $5,231 | $28,170 | 3.50% | $25,838 |
| 04/08/25 - 04/07/26 | 4.00 | 5.00 | 2.60% | $34,269 | $5,367 | $28,903 | 3.50% | $25,614 |
| 04/08/26 - 04/07/27 | 5.00 | 6.00 | 2.60% | $35,160 | $5,506 | $29,654 | 3.50% | $25,391 |
| 04/08/27 - 04/07/28 | 6.00 | 7.00 | 2.60% | $36,074 | $5,649 | $30,425 | 3.50% | $25,170 |
| 04/08/28 - 04/07/29 | 7.00 | 8.00 | 2.60% | $37,012 | $6,855 [2B] | $30,157 | 3.50% | $24,105 |
| 04/08/29 - 04/07/30 | 8.00 | 9.00 | 2.60% | $37,974 | $7,033 | $30,942 | 3.50% | $23,895 |
| 04/08/30 - 04/07/31 | 9.00 | 10.00 | 2.60% | $38,962 | $8,478 [2C] | $30,484 | 3.50% | $22,746 |
| 04/08/31 - 04/07/32 | 10.00 | 11.00 | 2.60% | $39,975 | $10,921 [2D] | $29,054 | 3.50% | $20,946 |
| 04/08/32 - 04/07/33 | 11.00 | 12.00 | 2.60% | $41,014 | $11,205 | $29,809 | 3.50% | $20,764 |
| 04/08/33 - 04/07/34 | 12.00 | 13.00 | 2.60% | $42,080 | $11,496 | $30,584 | 3.50% | $20,583 |
| 04/08/34 - 04/07/35 | 13.00 | 14.00 | 2.60% | $43,175 | $11,795 | $31,379 | 3.50% | $20,404 |
| 04/08/35 - 04/07/36 | 14.00 | 15.00 | 2.60% | $44,297 | $12,102 | $32,195 | 3.50% | $20,227 |
| 04/08/36 - 04/07/37 | 15.00 | 16.00 | 2.60% | $45,449 | $12,417 | $33,032 | 3.50% | $20,051 |
| 04/08/37 - 04/07/38 | 16.00 | 17.00 | 2.60% | $46,631 | $12,739 | $33,891 | 3.50% | $19,876 |
| 04/08/38 - 04/07/39 | 17.00 | 18.00 | 2.60% | $47,843 | $13,071 | $34,772 | 3.50% | $19,703 |
| 04/08/39 - 04/07/40 | 18.00 | 19.00 | 2.60% | $49,087 | $13,411 | $35,676 | 3.50% | $19,532 |
| 04/08/40 - 04/07/41 | 19.00 | 20.00 | 2.60% | $50,363 | $13,759 | $36,604 | 3.50% | $19,362 |
| 04/08/41 - 04/07/42 | 20.00 | 21.00 | 2.60% | $51,673 | $14,117 | $37,556 | 3.50% | $19,194 |
| 04/08/42 - 04/07/43 | 21.00 | 22.00 | 2.60% | $53,016 | $14,484 | $38,532 | 3.50% | $19,027 |
| 04/08/43 - 04/07/44 | 22.00 | 23.00 | 2.60% | $54,394 | $14,861 | $39,534 | 3.50% | $18,862 |
| 04/08/44 - 04/07/45 | 23.00 | 24.00 | 2.60% | $55,809 | $15,247 | $40,562 | 3.50% | $18,698 |
| 04/08/45 - 07/27/45 | 24.00 | 24.30 [6] | 2.60% | $57,260 | $15,643 | $12,485 | 3.50% | $5,628 |
| | | | | | | $784,698 | | $534,050 |

1. See Table 1.
2A. 15.7% of Wages (2 adults, 3 children; see Table B).
2B. Oldest child turns 18. 18.5% of Wages (2 adults, 2 children; see Table B).
2C. Middle child turns 18. 21.8% of Wages (2 adults, 1 child; see Table B).
2D. Youngest child turns 18. 27.3% of Wages (2 adults; see Table B).
3. (Annual Wages - Personal Consumption) x (Years to End of Period - Years to Beginning of Period).
4A. Current 6-month Treasury bill rate.
4B. 3.5% = 2.0% (expected inflation) + 1.5% (real interest rate); for the period 1955-2020 the average real rate of interest on a balanced portfolio of three-month U.S. Treasury securities and ten-year U.S. Treasury securities was 1.5%.
5. 2.60% projected rate of increase (2.0% projected inflation (Federal Reserve Board of Governors current inflationary target) + 0.60% projected real wage growth (average for 1982-2020)).
6. Source for years to retirement: Richards, Hugh and Michael Donaldson, Life and Worklife Expectancies, 2nd Edition, (Lawyers and Judges Publishing Company, Inc.: Tucson, AZ, 2009).

Table 4

**PRESENT DISCOUNTED VALUE OF FUTURE LOSS OF HOUSEHOLD SERVICES FOR THE DOMINGUEZ FAMILY**
**(LOSS OF JACOB DOMINGUEZ'S SERVICES)**

| Period | Years to Beginning of Period | Years to End of Period | Projected Percent Increase | Projected Annual Value of Mr. Dominguez's Services | Annual Personal Consumption | Projected Loss for the Period | Discount Rate | Present Discounted Value |
|---|---|---|---|---|---|---|---|---|
| 04/08/21 - 04/08/22 | 0.00 | 1.00 | | $16,329 [1A] | $1,502 [2A] | $14,827 [3] | 0.04% [4A] | $14,824 |
| 04/08/22 - 04/08/23 | 1.00 | 2.00 | 2.60% [5] | $16,754 | $1,541 | $15,212 | 3.50% [4B] | $14,947 |
| 04/08/23 - 04/08/24 | 2.00 | 3.00 | 2.60% | $17,169 | $1,581 | $15,608 | 3.50% | $14,817 |
| 04/08/24 - 04/08/25 | 3.00 | 4.00 | 2.60% | $17,636 | $1,623 | $16,014 | 3.50% | $14,688 |
| 04/08/25 - 04/08/26 | 4.00 | 5.00 | 2.60% | $16,940 [1B] | $1,609 [2B] | $15,331 | 3.50% | $13,586 |
| 04/09/26 - 04/08/27 | 5.00 | 6.00 | 2.60% | $17,381 | $1,651 | $15,730 | 3.50% | $13,468 |
| 04/09/27 - 04/08/28 | 6.00 | 7.00 | 2.60% | $17,833 | $1,694 | $16,139 | 3.50% | $13,351 |
| 04/09/28 - 04/08/29 | 7.00 | 8.00 | 2.60% | $18,296 | $1,738 | $16,558 | 3.50% | $13,235 |
| 04/09/29 - 04/08/30 | 8.00 | 9.00 | 2.60% | $18,772 | $1,783 | $16,989 | 3.50% | $13,120 |
| 04/09/30 - 04/08/31 | 9.00 | 10.00 | 2.60% | $16,725 [1C] | $2,024 [2C] | $14,701 | 3.50% | $10,970 |
| 04/09/31 - 04/08/32 | 10.00 | 11.00 | 2.60% | $17,160 | $2,076 | $15,084 | 3.50% | $10,874 |
| 04/09/32 - 04/08/33 | 11.00 | 12.00 | 2.60% | $17,606 | $2,130 | $15,476 | 3.50% | $10,780 |
| 04/09/33 - 04/08/34 | 12.00 | 13.00 | 2.60% | $18,064 | $2,186 | $15,878 | 3.50% | $10,686 |
| 04/09/34 - 04/08/35 | 13.00 | 14.00 | 2.60% | $18,534 | $2,243 | $16,291 | 3.50% | $10,593 |
| 04/09/35 - 04/08/36 | 14.00 | 15.00 | 2.60% | $19,015 | $2,301 | $16,715 | 3.50% | $10,501 |
| 04/09/36 - 04/08/37 | 15.00 | 16.00 | 2.60% | $19,510 | $2,361 | $17,149 | 3.50% | $10,410 |
| 04/09/37 - 04/08/38 | 16.00 | 17.00 | 2.60% | $20,017 | $2,422 | $17,595 | 3.50% | $10,319 |
| 04/09/38 - 04/08/39 | 17.00 | 18.00 | 2.60% | $20,538 | $2,485 | $18,053 | 3.50% | $10,229 |
| 04/09/39 - 04/08/40 | 18.00 | 19.00 | 2.60% | $21,072 | $2,550 | $18,522 | 3.50% | $10,140 |
| 04/09/40 - 04/08/41 | 19.00 | 20.00 | 2.60% | $21,619 | $2,616 | $19,003 | 3.50% | $10,052 |
| 04/09/41 - 04/08/42 | 20.00 | 21.00 | 2.60% | $22,182 | $2,684 | $19,498 | 3.50% | $9,965 |
| 04/09/42 - 04/08/43 | 21.00 | 22.00 | 2.60% | $22,758 | $2,754 | $20,004 | 3.50% | $9,878 |
| 04/09/43 - 04/08/44 | 22.00 | 23.00 | 2.60% | $23,350 | $2,825 | $20,525 | 3.50% | $9,792 |
| 04/09/44 - 04/08/45 | 23.00 | 24.00 | 2.60% | $23,957 | $2,899 | $21,058 | 3.50% | $9,707 |
| 04/09/45 - 04/08/46 | 24.00 | 25.00 | 2.60% | $40,335 [1D] | $4,155 [2D] | $36,181 | 3.50% | $16,114 |
| 04/09/46 - 04/08/47 | 25.00 | 26.00 | 2.60% | $41,384 | $4,263 | $37,122 | 3.50% | $15,974 |
| 04/09/47 - 04/08/48 | 26.00 | 27.00 | 2.60% | $42,460 | $4,373 | $38,087 | 3.50% | $15,835 |
| 04/09/48 - 04/08/49 | 27.00 | 28.00 | 2.60% | $43,564 | $4,487 | $39,077 | 3.50% | $15,697 |
| 04/09/49 - 04/08/50 | 28.00 | 29.00 | 2.60% | $44,697 | $4,604 | $40,093 | 3.50% | $15,561 |
| 04/09/50 - 04/08/51 | 29.00 | 30.00 | 2.60% | $45,859 | $4,723 | $41,135 | 3.50% | $15,426 |
| 04/09/51 - 04/08/52 | 30.00 | 31.00 | 2.60% | $47,051 | $4,846 | $42,205 | 3.50% | $15,291 |
| 04/09/52 - 04/08/53 | 31.00 | 32.00 | 2.60% | $48,275 | $4,972 | $43,302 | 3.50% | $15,159 |
| 04/09/53 - 04/08/54 | 32.00 | 33.00 | 2.60% | $49,530 | $5,102 | $44,428 | 3.50% | $15,027 |
| 04/09/54 - 04/08/55 | 33.00 | 34.00 | 2.60% | $50,817 | $5,234 | $45,583 | 3.50% | $14,896 |
| 04/09/55 - 04/08/56 | 34.00 | 35.00 | 2.60% | $52,139 | $5,370 | $46,768 | 3.50% | $14,766 |
| 04/09/56 - 04/08/57 | 35.00 | 36.00 | 2.60% | $53,494 | $5,510 | $47,984 | 3.50% | $14,638 |
| 04/09/57 - 04/08/58 | 36.00 | 37.00 | 2.60% | $54,885 | $5,653 | $49,232 | 3.50% | $14,511 |
| 04/09/58 - 04/08/59 | 37.00 | 38.00 | 2.60% | $56,312 | $5,800 | $50,512 | 3.50% | $14,385 |
| 04/09/59 - 04/08/60 | 38.00 | 39.00 | 2.60% | $49,136 [1E] | $5,405 [2E] | $43,731 | 3.50% | $12,032 |
| 04/09/60 - 04/08/61 | 39.00 | 40.00 | 2.60% | $50,414 | $5,546 | $44,868 | 3.50% | $11,928 |
| 04/09/61 - 04/08/62 | 40.00 | 41.00 | 2.60% | $51,724 | $5,690 | $46,035 | 3.50% | $11,824 |
| 04/09/62 - 04/08/63 | 41.00 | 42.00 | 2.60% | $53,069 | $5,838 | $47,232 | 3.50% | $11,721 |
| 04/09/63 - 04/08/64 | 42.00 | 43.00 | 2.60% | $54,449 | $5,989 | $48,460 | 3.50% | $11,617 |
| 04/09/64 - 04/08/65 | 43.00 | 44.00 | 2.60% | $55,865 | $6,145 | $49,720 | 3.50% | $11,518 |
| 04/09/65 - 07/25/65 | 44.00 | 44.30 [6] | 2.60% | $57,317 | $6,305 | $15,304 | 3.50% | $3,467 |
| | | | | | | $1,305,018 | | $568,324 |

1A.  See Table 2.
1B.  Annual value decreases to $14,900 (2020 $'s, youngest child 13 to 17; see Table C) from $15,915 (2020 $'s).
1C.  Annual value decreases to $12,939 (2020 $'s, no children; see Table C) from $14,900 (2020 $'s).
1D.  Annual value increases to $21,233 (2020 $'s, retired 62 to 74; see Table C) from $12,939 (2020 $'s).
1E.  Annual value decreases to $18,557 (2020 $'s, retired 75+; see Table C) from $21,233 (2020 $'s).
2A.  9.2% of Household Services.  Source: Expectancy Data, Dollar Value of a Day.
2B.  9.5% of Household Services.  Source: Expectancy Data, Dollar Value of a Day.
2C.  12.1% of Household Services.  Source: Expectancy Data, Dollar Value of a Day.
2D.  10.3% of Household Services.  Source: Expectancy Data, Dollar Value of a Day.
2E.  11.0% of Household Services.  Source: Expectancy Data, Dollar Value of a Day.
3.  (Annual Value of Services - Personal Consumption) x (Years to End of Period - Years to Beginning of Period).
4A.  Current 6-month Treasury bill rate.
4B.  3.5% = 2.0% (expected inflation) + 1.5% (real interest rate), for the period 1955-2020 the average real rate of interest on a balanced portfolio of three-month U.S. Treasury securities and ten-year U.S. Treasury securities was 1.5%.
5.  2.60% projected rate of increase (2.0% projected inflation (Federal Reserve Board of Governors current inflationary target) + 0.60% projected real wage growth (average for 1982-2020)).
6.  Source for life expectancy: Department of Health and Human Services.  National Vital Statistics Reports.  Vol. 68, No. 7, United States Life Tables, 2017 (published June 24, 2019).

Table A

## ANALYSIS OF JACOB DOMINGUEZ'S HISTORICAL WAGES

| Year | Wages [1] | Wage [2] Index | Wages [3] (2017 $'s) |
|------|-----------|----------------|----------------------|
| 2014 | $25,014 (Mar-Dec) | 119.3 | $26,901 |
| 2015 | $32,922 | 122.6 | $34,453 |
| 2016 | $17,653 (Jan-Mar) | 125.1 | $18,105 |
| | | | |
| | **Average (2017 $'s; 2.26 Years):** | | **$35,159** |

1. Source: W-2's.
2. Employment Cost Index; source: Bureau of Labor Statistics.
3. Indexed to 2017 Wage Index (128.3).

**Table B**

## ESTIMATED DECEDENT CONSUMPTION

| Studies[1] | 2 Adults 4 Children | 2 Adults 3 Children | 2 Adults 2 Children | 2 Adults 1 Child | 2 Adults |
|---|---|---|---|---|---|
| Cheit | 18.0% | 20.0% | 22.0% | 26.0% | 30.0% |
| Bureau of Labor Statistics | 12.1% | 13.8% | 18.0% | 26.8% | 40.0% |
| Orshansky | N.A. | 15.2% | 20.1% | 16.6% | 20.6% |
| Lazear-Michael | N.A. | 13.2% | 12.5% | 17.3% | 25.7% |
| Burke-Rosen | 17.7% | 18.9% | 20.7% | 23.7% | 29.8% |
| King-Smith | 13.7% | 16.5% | 17.6% | 21.8% | 23.4% |
| Harju-Adams | N.A. | 13.9% | 16.2% | 20.0% | 27.7% |
| Average | 15.4% | 15.9% | 18.2% | 21.7% | 28.2% |
| Average (Less High & Low)[2] | 15.6% | 15.7% | 18.5% | 21.8% | 27.3% |

1. Studies cited in: Lewis, Chris. "The Rationale and Quantitative Evidence for the Personal Consumption Offset in Wrongful Death Actions," *Journal of Legal Economics*, July 1992 (Vol. 2, no. 2), p. 1-17.
2. Eliminates the average high and low values.

Table C

## VALUE OF HOUSEHOLD SERVICES
### (MARRIED MEN EMPLOYED FULL TIME)
### (VALUES IN 2020 $'S)

| Activity | Market Value [1] per Hour (2020 $'s) | Hours Per Week | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | Youngest [2] Child Ages 0-1 | Youngest [2] Child Age 2-5 | Youngest [2] Child Age 6-12 | Youngest [2] Child Age 13-17 | No Children [2] | Retired, [2] Under Age 62 | Retired, [2] Age 62-74 | Retired, [2] Age 75+ |
| Inside Housework | $14.94 | 1.8 | 1.7 | 1.7 | 1.5 | 1.4 | 2.8 | 1.8 | 1.7 |
| Food Cooking & Clean-up | $13.64 | 2.5 | 2.3 | 2.4 | 2.2 | 2.0 | 3.0 | 2.8 | 2.9 |
| Landscaping, Home Repair, & Automotive Maintenance | $19.39 | 3.1 | 3.6 | 4.1 | 5.2 | 5.4 | 10.5 | 10.3 | 8.0 |
| Household Management | $23.24 | 0.9 | 0.8 | 0.8 | 1.0 | 1.0 | 1.9 | 1.8 | 2.0 |
| Shopping | $16.21 | 2.1 | 2.2 | 2.0 | 2.0 | 2.0 | 3.4 | 2.9 | 2.3 |
| Obtaining Services | $16.21 | 0.1 | 0.1 | 0.1 | 0.1 | 0.1 | 0.5 | 0.3 | 0.4 |
| Travel for Household Activity | $17.90 | 1.9 | 1.9 | 2.0 | 2.1 | 2.1 | 2.9 | 2.5 | 2.0 |
| Child Care | $13.83 | 10.2 | 7.5 | 4.3 | 1.6 | 0.0 | 0.0 | 0.0 | 0.0 |
| Travel for Household Members | $17.90 | 0.9 | 1.1 | 1.1 | 0.9 | 0.2 | 0.2 | 0.2 | 0.2 |
| | | 23.4 | 21.2 | 18.5 | 16.6 | 14.1 | 25.0 | 22.7 | 19.4 |
| Weekly Value [3] | | $367.51 | $339.41 | $306.07 | $286.54 | $248.82 | $445.37 | $408.32 | $347.26 |
| Average Hourly Value [4] | | $15.69 | $16.03 | $16.51 | $17.26 | $17.71 | $17.83 | $18.00 | $17.93 |
| Average Annual Value [5] | | $19,110 | $17,649 | $15,915 | $14,900 | $12,939 | $23,159 | $21,233 | $18,057 |
| Percentage of Production Benefiting from Respondent [2] | | 10.4% | 9.4% | 9.2% | 9.5% | 12.1% | 10.8% | 10.3% | 11.0% |

1. Source: 2020 Occupational Employment Statistics (OES) survey, California Employment Development Department website.
2. Source: Expectancy Data, Dollar Value of a Day, 2019 Valuation.
3. Sum of Market Value per Hour x Hours Per Week.
4. Weekly Value / Hours Per Week.
5. Weekly Value x 52 weeks per year.

## RELEVANT DATA

| | |
|---|---|
| NAME OF DECEDENT | Jacob Dominguez |
| DATE OF BIRTH | 10/30/83 |
| PRESENT VALUE (PV) START DATE | 04/07/21 |
| AGE AT PV START DATE | 37.4 |
| DATE OF DEATH | 09/15/17 |
| AGE ON DATE OF DEATH | 33.9 |
| LEVEL OF EDUCATION | 11th grade |
| WORKLIFE EXPECTANCY FROM DATE OF DEATH | 21.7 [1] |
| STATISTICAL YEARS TO RETIREMENT FROM DATE OF DEATH | 27.9 [1] |
| STATISTICAL YEARS TO RETIREMENT FROM PV START DATE | 24.3 |
| EMPLOYMENT RATIO | 0.78 [2] |
| LIFE EXPECTANCY FROM DATE OF DEATH | 44.3 [3] |
| LIFE EXPECTANCY FROM PV START DATE | 40.7 |
| | |
| NAME | Jessica Dominguez |
| RELATION | Wife |
| DATE OF BIRTH | 05/15/85 |
| AGE AT PV START DATE | 35.9 |
| | |
| NAME | Jacob Jr |
| RELATION | Son |
| DATE OF BIRTH | 01/19/10 |
| AGE AT PV START DATE | 11.2 |
| YEARS TO AGE 18 FROM PV START DATE | 6.8 |
| YEARS TO AGE 22 FROM PV START DATE | 10.8 |
| | |
| NAME | Jordan |
| RELATION | Son |
| DATE OF BIRTH | 09/07/12 |
| AGE AT PV START DATE | 8.6 |
| YEARS TO AGE 18 FROM PV START DATE | 9.4 |
| YEARS TO AGE 22 FROM PV START DATE | 13.4 |
| | |
| NAME | Jaliyah |
| RELATION | Daughter |
| DATE OF BIRTH | 08/07/13 |
| AGE AT PV START DATE | 7.7 |
| YEARS TO AGE 18 FROM PV START DATE | 10.3 |
| YEARS TO AGE 22 FROM PV START DATE | 14.3 |

1. Richards, Hugh and Michael Donaldson. *Life and Worklife Expectancies, 2nd Edition*. (Lawyers and Judges Publishing Company, Inc.: Tucson, AZ, 2009).

2. Worklife Expectancy / Statistical Years to Retirement.

3. Source for life expectancy: National Vital Statistics Reports Volume 69, Number 12 November 17, 2020 United States Life Tables, 2018 (published November 17, 2020).

# PHILLIP H. ALLMAN III

Allman & Petersen Economics, LLC
7677 Oakport Street, Suite 610
Oakland, CA 94621

Phone: (510) 382-1550
FAX: (510) 382-1472
E-mail: phil@allmaneconomics.com

## EDUCATION

Doctor of Philosophy, Economics - December, 1982
Michigan State University, East Lansing, MI
Specialization in Microeconomic Theory, Macroeconomic Theory, Monetary Theory, Public Finance, Statistics, and Demography.

Master of Science, Economics - June, 1974
Arizona State University, Tempe, AZ
Specialization in Labor Economics, Econometrics, and Public Finance.

Bachelor of Arts, Economics - June, 1968
Lake Forest College, Lake Forest, IL

Omicron Delta Epsilon - Michigan State University
International Economics Honor Society (upper 20% of graduate class.)

Beta Gamma Sigma - Arizona State University
Business Honor Society (upper 10% of graduate class.)

Athletic and Scholastic Honors - Lake Forest College

## EMPLOYMENT HISTORY

Owner/Principal - 1984 to Present
Allman & Petersen Economics, LLC, San Francisco, CA
* Prepared economic reports and testified as an expert witness in trials involving economic valuations.
* Provided securities analysis for Westerly Partners of Newport Beach, Silver Assets, Inc. of Sonoma, and Coastal Capital Partners of Sonoma.
* Conducted economic analysis for the San Joaquin County Land Utilization Trust.
* Provided economic analysis to the Stockton East Water District.
* Provided economic expertise to Financial Risk Management of Modesto.
* Evaluated business loss claims for State Farm Insurance Co.
* Edited economics texts for Harper - Row Publishing Co.

Adjunct Lecturer in Economics - January, 1995 to 1998
Golden Gate University, San Francisco, CA
Classes taught include Macroeconomic Analysis and Financial Markets and Institutions in the Master's Degree Pro-gram & Introductory Microeconomic Analysis.

Economics Professor -1979 to 1986
University of the Pacific, Stockton, CA
Courses taught were Introductory Micro- and Macro-economics, Intermediate Macroeconomics, Money and Bank-ing, Public Finance, and Managerial Economics.

Economics Instructor - 1978 to 1979
Michigan State University, East Lansing, MI
Taught Intermediate Macroeconomics.

EMPLOYMENT HISTORY (Continued)

Economics Analyst - 1977
State of Michigan Health Maintenance Department, Constructed the Medicaid cost index for the State of Michigan.

Graduate Assistant - 1974 to 1978
Michigan State University, East Lansing, MI
Tutelage of economics students.

Economic Research Associate - 1973 to 1974
Arizona State Department of Business and Economic Research
Conducted statistical study of the Hotel-Motel industry.

Community Development Assistant - 1972 to 1973
Department of Economic Planning and Development, State of Arizona
Researched and wrote an economic analysis for three rural communities in Arizona.

Athletic Director - 1971 to 1972
Arizona Boys Ranch, Boys Ranch, AZ

Public School Teacher - 1968 to 1971
Kaneohe, HI, and Deerfield, IL

PUBLICATIONS

* "The Margin of Error on Damages Calculations Based on Sample Survey Data in Class Action Wage and Hour Cases," Journal of Legal Economics, Volume 25, No.1-2, September 2019, (co-authored with Jeffrey Petersen).
* "The Effect of the Intent to Retire at Age 70 or Older on Worklife Expectancy," Journal of Legal Economics, Volume 23, No. 2, April 2017, (co-authored with Jeffrey Petersen).
* "Surveys in Class Action Wage and Hour Cases and the Use of Anonymous Respondents," Journal of Legal Economics, Volume 22, No. 1, October 2015 (coauthored with Jeffrey Petersen and William Lee).
* "An Econometric Model of the Fiscal Impact of Urbanization on Stockton and San Joaquin County," Land Utiliza-tion Trust of San Joaquin County, Stockton, CA, July, 1994.
* "Choosing a Discount Rate in a Pension Valuation," Family Advocate, American Bar Association, Summer, 1994, Vol. 17, No. 1, p. 11.
* "Four Economic Issues in Pension Valuations," Journal of Legal Economics, July, 1993, Volume 3, No. 2.
* "Agriculture Provides a Stable Economic Base for San Joaquin County," Central Valley Harvester, Stockton, CA, Fall 1993, p. 7.
* "Three Economic Issues in Pension Valuation," Family Advocate, American Bar Association, Summer, 1993, Vol. 16, No. 1, p. 12.
* "Gross Value of Farmland is Critical to County Welfare," Central Valley Harvester, Stockton, CA, Summer 1993, p. 6.
* "The Value of Agriculture to San Joaquin County," Central Valley Harvester, Stockton, CA, Spring 1993, p. 2.
* "Wage Growth and Interest Rates Again: A Regression Model," Journal of Forensic Economics, Volume 6, No. 2 Spring/Summer, 1993, p. 175.
* "The Economic Structure of San Joaquin County and the Impact of Agricultural Land Displacement on County Income," Land Utilization Trust of San Joaquin County, Stockton, CA, February, 1993.
* A Neoclassical Model of the Tax-Exempt Bond Market, Doctoral Dissertation, Michigan State University, East Lansing, MI, 1982.

PRESENTATIONS:

* "Using Surveys to Assess Damages in Class Action Wage and Hour Cases," 30th Annual Meeting of the American Academy of Economic and Financial Experts, Las Vegas, NV, April 2018.
* "Computing the Present Value of a Life Care Plan," San Francisco Trial Lawyers Association, June 2015.
* "The Subprime Lending Crisis and the U.S. Economy," CNBC Asia, July, 2007.

*Phillip H. Allman, Page 2 of 3*

PRESENTATIONS (Continued)

* "The Outlook for the U.S. Economy," CNBC Asia, September, 2004.
* "Fiscal Impact of Urbanization in San Joaquin County," San Joaquin County Board of Supervisors, August, 1994.
* "Direct and Cross-Examination of an Economic Expert," Economic Damages Seminar - Maintaining Recovery under Proposition 51, Alameda/Contra Costa Trial Lawyers Association, April, 1995
* "Economics, Not a Dismal Science," The 50th Annual Belli Seminar, July 31, 1993.
* "Impact of Farmland Displacement in San Joaquin County," San Joaquin County Board of Supervisors, March, 1993.
* "Dissecting Pension Valuations in Marital Dissolutions"
Course taught for the State Bar of California toward credit for Minimum Continuing Legal Education (MCLE), January, 1993 - 1996.
* "Capitalizing on the Deposition of the Opposing Economist"
Course taught for the State Bar of California toward credit for Minimum Continuing Legal Education (MCLE), January, 1993 - 1996.
* "Evaluation of Federal Reserve Monetary Policy Objectives"
Delivered to Center for Integrated Studies, UOP, 1983.
* "The Economy: Influence on Investment Decisions"
Keynote address of San Joaquin County 1982 Financial Fair.
* "Reaganomics: Its Pitfalls"
Delivered to UOP Economics Department, 1982.

REFEREE: Journal of Macroeconomics, Journal of Forensic Economics

CONFERENCES:

Western Economic Association Meeting - 1996
* Chair to Session, "Macroeconomic Analysis."
* Chair to Session, "Asset Pricing."
* Discussant to Paper, "Institutional Investors and Developing Country Stock Pricing."
* Discussant to Paper, "Impact of Macroeconomic Variables on Stock Prices."
* Discussant to Paper, "Aggregate Shocks, Real Activity, Inflation, and Stock Returns."

Western Economic Association Meeting - 1995
* Chair to Session, "Taxes, Benefits, and Retirement."
* Discussant to Paper, "A Couple's Decision to Elect Survivor's Benefits."
* Discussant to Paper, "Tax Rates, Employee Benefits, and Health Care Costs."

Western Economic Association Meeting - 1993
* Chair to Session, "Issues in the Economics of Publicly-Provided Goods."
* Presented the Paper, "Three Economic Issues in Pension Valuations."
* Presented the Paper, "Valuation of Displaced Agricultural Land to Residential Use."
* Discussant to Paper, "Who Should Go To College and What Should They Pay."
* Discussant to Paper, "Discount Rate for Public Sector Investments."

Western Economic Association Meeting - 1992
* Discussant to Session "Macroeconomic Policy I."
* Presented the Paper "Wage Growth and Interest Rates Again: A Regression Model."

American Economic Association Meeting - 1982
* Discussant to Paper "The Effect of the Reserve Clause on Parity in Professional Baseball."

MEMBER ORGANIZATIONS

American Economic Association
National Association of Forensic Economics
American Academy of Economic and Financial Experts

# ALLMAN & PETERSEN ECONOMICS, LLC

Phillip H. Allman, Ph.D.
Jeffrey S. Petersen, Ph.D.
Max Allman, MA, CFA

7677 Oakport Street, Suite 610 • Oakland, CA 94621
TEL (510) 382-1550  FAX (510) 382-1472

## FEE SCHEDULE (1/25/19)

(1)  Economic research and analysis, report preparation, document review, office and client consultations, deposition preparation and trial preparation.[1]

| | |
|---|---|
| -- Ph.D. Economist | $550 / hour |
| -- Senior Economist | $375 / hour |
| -- Economist or CPA | $250 / hour |
| -- Survey Administration | $125 / hour |

(2)  Deposition testimony[2]                                        $650 / hour

(3)  Arbitration and trial testimony[3]                             $650 / hour

(4)  Travel time                                                    $250 / hour

---

[1] Bills will be submitted periodically and are due upon presentation, not at the conclusion of the case.

[2] Payment for deposition testimony shall be paid in accordance with C.C.P. '2034 (i) (3)
--i.e. payment of an expert's fees for the anticipated length of a deposition shall be paid at the commencement of his/her deposition, and any outstanding balance shall be paid within five days of receiving an itemized statement of the expert's services.

[3] All invoices to date must be paid prior to trial testimony.  In addition, an additional retainer must be paid prior to the trial testimony based upon the estimated invoice for the testimony.

## Trial & Arbitration Testimony of Phillip H. Allman, PhD

| Case | | | Jurisdiction | Case Number | Date |
|------|---|---|--------------|-------------|------|
| Lenox Ave | | | | | 30-Nov |
| Black & Meggs | v. | Sally Beauty | AAA | 01-18-0000-7738 | 11/17/2020 |
| Hough | | | San Francisco | CGC-17-563125 | 10/26/2020 |
| Green | v. | CCHA | Contra Costa | MSC 19-00890 | 10/2/2020 |
| Izuel | v. | USC | ADR Arbitration | 19-4738-MMJ | 9/16/2020 |
| Lemley | v. | San Francisco Municipal Transportation | San Francisco | CGC-19-574619 | 9/28/2020 |
| Ogu | v. | Rizzo | | | 8/4/2020 |
| Hadley | v. | Robert Half International | JAMS | | 6/11/2020 |
| Samson | v. | Wells Fargo | Western District of CA | 2:16-cv-04839GW(AGRx) | 3/11/2020 |
| Perry | v. | Chang | Siskiyou | SC CV CV PM 18-739 | 2/28/2020 |
| Viera | v. | Zalec | San Diego | 3:18-CV-05431VC | 2/26/2020 |
| Phillips | v. | Kaiser | JAMS - John Flaherty | Kaiser Arbitration | 2/7/2020 |
| Renkvist | v. | Singh | Sacramento | 34-2017-00221966 | 12/2/2019 |
| Yeghiazarian | v. | Kaiser | Contra Costa | 15353 | 11/19/2019 |
| Pandolf | v. | American Automobile | San Francisco | JAMS 1100090828 | 11/5/2019 |
| Diaz | v. | Gau | Santa Clara | 17CV312555 | 11/4/2019 |
| Tindall | v. | Williams | Marin | CIV1700452 | 10/28/2019 |
| Avery | | | Santa Clara | 17CV309914 | 9/16/2019 |
| Hodge | v. | Fox | Marin | CIV1801644 | 8/29/2019 |
| Wyeth | v. | Hosler | Eastern District of CA | 1:18-cv-00007(DAD)(JLT) | 8/28/2019 |
| Cook | | | Contra Costa | VIM ARB | 6/17/2019 |
| Awadalla | v. | Farmers | Contra Costa | N/A | 5/21/2019 |
| Angulo | v. | O'Hearn | Santa Clara | 17CV307133 | 5/10/2019 |
| Ziskovsky | | | Marin | CV 1502898 | 5/2/2019 |
| Vines | v. | O'Reilly | Los Angeles | PC058046 | 4/26/2019 |
| Barrett | v. | Keigwens | San Francisco | CGC-16-551980 | 4/25/2019 |
| Zuniga | | | | 16-CV-299448 | 4/22/2019 |
| Kozel(?) | v. | Airline Coach Services | San Francisco | CGC-14-542253 | 4/9/2019 |
| Tran | | | San Francisco | CGC-18-569356 | 3/21/2019 |
| Vanderheyden | v. | Jayram | Alameda | RG16841708 | 3/20/2019 |
| Mendes | | | Fresno | 17CECG01590 | 2/25/2019 |
| Mendes | | | Fresno | 17CECG01590 | 2/21/2019 |
| Doe | | | JAMS | 1100089941 | 1/30/2019 |
| Phillips | v. | CalTrans | Madera | MCV 075805 | 1/29/2019 |
| Stevens | | | San Francisco | CGC-17-557767 | 1/28/2019 |
| Tamanha | v. | Savage Services | Los Angeles | BC605062 | 12/7/2018 |
| Carter | v. | Alameda County | Alameda | RG17867234 | 11/27/2018 |
| Guzman | v. | Costco | Sonoma | SCV261675 | 11/9/2018 |
| Frausto | | | San Francisco | 3:16-CV-00311-RS | 11/1/2018 |
| Gudino | | | Alameda | RG-16-828260 | 10/25/2018 |
| Zuniga | | | | 16-CV-299448 | 10/16/2018 |
| Anthony | v. | Li | San Francisco | CGC-16-551957 | 10/2/2018 |
| Keating | | | SF Superior | CGC-14-539336 | 8/22/2018 |
| White | | | San Francisco | CGC-14-541404 | 7/19/2018 |
| Wise | v. | Louis Voss Trust | Contra Costa | CIVMSC15-00788 | 7/2/2018 |
| Asher | v. | E! | Los Angeles | 17-7266-MRR | 6/12/2018 |
| Marin | | | San Joaquin | STR-CV-UPI-2016-10265 | 5/23/2018 |
| Chevreaux | | | Los Angeles | BC654679 | 5/1/2018 |
| Hudson | v. | Beverly Fabrics Inc. | Santa Cruz | CV182035 | 2/20/2018 |
| Wang | | | Santa Clara | 1-09-CV-152551 | 2/14/2018 |
| Aghmane | | | Northern District, CA | C 13-03698 DMR | 2/8/2018 |
| Ortiz | v. | Mercy High School | San Francisco | CGC-16-549915 | 12/5/2017 |
| Selck | | | Santa Clara | 113CV246033 | 11/17/2017 |
| Loberg | v. | County of Lake | Lake | CV-415513 | Oct-17 |
| Glassman | v. | Hint Peripherais | San Francisco | CGC-14-539801 | Oct-17 |
| Brown | v. | AMC Entertainment | Santa Clara | 113CV250228 | Sep-17 |
| Torres | v. | Safeway | Alameda | RG14737777 | Sep-17 |
| Fisher | v. | Hartford | Santa Clara | 2014-1-CV-258924 | Sep-17 |
| Alonzo | v. | Mid Pen Housing | ADR Arbitration | 16-6941 | Aug-17 |
| Owens | v. | Ryder Truck | Monterey | M126276 | Jul-17 |
| Kapila | v. | Dr. Bhandaui | Alameda | HG15772896 | Apr-17 |
| Frausto | v. | CHP | Northern District, CA | 16-CV-00311-RS | Mar-17 |
| Hoeper | v. | CCSF | San Francisco | CGC-15-543553 | Mar-17 |
| Burleson | v. | Bakersfield Memorial Hospital | Kern county | BCV-15-100420 LHB | Feb-17 |
| Church | v. | Sarkis | Contra Costa | C15-01238 | Jan-17 |
| Ellis | v. | Ramsey | San Joaquin | 39-2013-00298043-CU-PA-STK | Dec-16 |
| Bracy | v. | City of LA | Central District, CA | CV 13-09350 | Nov-16 |
| Gambino | v. | Cypress Point | Santa Cruz | CV180979 | Oct-16 |
| Williams | v. | Wyndham | San Francisco | CGC-12-526187 | Nov-16 |
| Carpio | v. | Aubin | Santa Clara | 114 CV 267 867 | Oct-16 |
| Giorvas | v. | Grow | Santa Clara | 115CV285323 | Sep-16 |
| Corcoran | v. | Caltrans | Santa Barbara | 1470102 | Sep-16 |
| Chen | v. | Xie | San Francisco | CGC-15-545989 | Sep-16 |

| | | | | |
|---|---|---|---|---|
| King | v. | De Guzman | Alameda | RG15785207 | Sep-16 |
| Payton | v. | Hollywood Café | San Joaquin | 39-2014-00308576-CU-PO-STK | Sep-16 |
| Gupta | v. | SF State University | San Francisco | CGC-15-544050 | Sep-16 |
| Hansen | | | Alameda | RG15765238 | Aug-16 |
| Mahendran | v. | Nguyen | San Francisco | | Jul-16 |
| Affonso | v. | MR Enterprise | Solano | FCS040957 | Jul-16 |
| Duong | v. | ITT Educational Services | Alameda | RG14724442 | Jun-16 |
| Schreiber | v. | Lee | | | Jun-16 |
| Phillips | v. | Godaddy | San Francisco | 1110018102 | Jun-16 |
| Davila | | | Alameda | HG13708711 | Jun-16 |
| Portillo | v. | Gossman | San Francisco | CGC-10-123456 | May-16 |
| Brown | v. | Monument Security | Alameda | G14737974 | Apr-16 |
| Wilson | v. | Bolter | San Francisco | CGC 14-543248 | Apr-16 |
| Burkowski | v. | Cal Trans | San Mateo | CIV481154 | Apr-16 |
| People | v. | Hunt | Santa Clara | C1489978 | Feb-16 |
| Grewal | v. | Melo | Stanislaus | 684320 | Jan-16 |
| Mackey | v. | Helinet Aviation | Los Angeles | BC528671 | Jan-16 |
| Nakamura | v. | Kaiser | Alameda | 12976 | Jan-16 |
| Xian | v. | eBay Inc. | San Francisco | 01-14-0002-2936 | Dec-15 |
| Carlson | v. | Mason | Plumas | GN-CV15-00033 | Dec-15 |
| Stepp | v. | Fidelity Law | Los Angeles | BC517311 | Nov-15 |
| Rivera | v. | Manheim Investments | Alameda | | Nov-15 |
| Kwei | v. | Liberty Mutual | Santa Clara | 114CV270447 | Nov-15 |
| Leierer | v. | Salinas | Alameda | HG13679708 | Oct-15 |
| Rodriguez | v. | Parada | San Francisco | CGC-14-537543 | Oct-15 |
| Gardner | v. | Federal Express | Northern District, CA | 3:14-CV-01082-THE | Oct-15 |
| Mallen | v. | McAndrews | San Francisco | CGC-13-534704 | Sep-15 |
| Huynh | v. | State of California | Alameda | RG 10510409 | Aug-15 |
| De La Rosa | v. | Currie | Butte | 159883 | Jul-15 |
| Fua | v. | Yellow Cab | San Francisco | CGC-11-515542 | Jun-15 |
| Copher | v. | Ross Stores, Inc. | Alameda | R8 14712065 | Jun-15 |
| Rempell | | | Marin | CIV 1302527 | May-15 |
| Staedler | v. | Galu | San Francisco | CGC13529064 | May-15 |
| Steshenko | v. | Cabrillo College | Northern District, CA | C-09-05543-RS | Mar-15 |
| Kossick | v. | Kaiser and Rhyder | Placer | 8CV0033354 | Feb-15 |
| Anderson | v. | Felahy | Long Beach | 72 516 E 00028 13 | Feb-15 |
| Smith | v. | Sun Valley Rice Co. | San Francisco | 74 160 00667-13 JOG3 | Jan-15 |
| Mantanguihan | v. | Kaiser | Contra Costa | 12607 | Jan-15 |
| Azzolino | v. | Fazio | San Francisco | 01-14-0000-0990 | Jan-15 |

## Deposition Testimony of Phillip H. Allman, PhD

| Case | Jurisdiction | Case Number | Date |
|---|---|---|---|
| Vincent | San Francisco | CGC-19-580200 | Dec-20 |
| Bamrah v. James River Insurance | UIM | | Nov-20 |
| Salas v. C Overaa | | | Nov-20 |
| Clima v. Yu | San Francisco | CGC-19-576863 | Nov-20 |
| Volken v. Trader Joes | | | Oct-20 |
| Sargsyan v. Moody | San Francisco | CGC-18-572197 | Oct-20 |
| Coleman & Bou v. Transbay | AAA | 01-18-0003-9221 | Oct-20 |
| Black & Meggs v. | AAA | 01-18-0000-7738 | Oct-20 |
| Green v. CCHA | Contra Costa | MSC 19-00890 | Oct-20 |
| 120 Haight St. | | | Sep-20 |
| Izvel v. USC | ADR Arbitration | 19-4738-MMJ | Sep-20 |
| Castro v. Kaiser | JAMS Arbitration | 15769 | Sep-20 |
| Lemley v. SF Municipal Transportation | San Francisco | CGC-19-574619 | Sep-20 |
| Glenn Oaks v. Loo | Los Angeles | BC721862 | Aug-20 |
| Harris | Butte | 18CV03209 | Aug-20 |
| Pruitt v. Lopez | San Francisco | CGC-18-564740 | Aug-20 |
| O'Connor v. Ogren | Contra Costa | C18-00365 | Aug-20 |
| Cook | San Joaquin | STK-CV-4AT-2017-0005369 | Jul-20 |
| Cory | San Francisco | CGC-17-558377 | Jun-20 |
| Sephora Class Action | San Francisco | 4911 | Jun-20 |
| White v. Cox | Marin | CV1504178 | Jun-20 |
| Hadley v. Robert Half International | JAMS | | Jun-20 |
| Zent v. Hartford | Los Angeles | BC690959 | 5/17/2020 |
| Smith v. Hiromi | Los Angeles | BC623004 | 4/9/2020 |
| Cory | San Francisco | CGC-17-558377 | 8-Apr |
| Verlin v. UOP | San Joaquin | 01-18-0001-0700 | 3/19/2020 |
| Copeland v. DeSoto Cab | San Francisco | CGC-16-550659 | Mar-20 |
| Griego v. Whiting | | | Feb-20 |
| Schindler v. Pythian | Northern District of CA | 3:19-cv-01641-WHA | Feb-20 |
| Haywood v. Henkel | Contra Costa | C17-01641 | Feb-20 |
| Rodman v. Otsoka Pharma | Northern District of CA | 3:18-cv-03732-WHO | Feb-20 |
| Hoang v. Joomak | SF Superior | CGC-18-569173 | Jan-20 |
| Philips v. Kaiser | JAMS - John Flaherty | Kaiser Arbitration | Jan-20 |
| Costco | | | Jan-20 |
| Thompson v. Parnow | Marin | CIV 1703487 | Dec-19 |
| Zavala v. Pyramid Painting | Santa Clara | 16CV292155 | Dec-19 |
| Cabrera v. El Camino Hospital | Santa Clara | 16CV301411 | Dec-19 |
| Samson v. Wells Fargo | Western District of CA | 2:16-cv-04839GW(AGRx) | Dec-19 |
| Schafler v. Wells Fargo Bank | San Francisco | CGC-19-572560 | Dec-19 |
| Santiago v. Living Green Design | San Francisco | CGC-18-565136 | Nov-19 |
| Kennedy v. Iyengar | San Joaquin | STK-CV-UMM-2016-8692 | Nov-19 |
| Yeghlazarian v. Kaiser | Contra Costa | 15353 | Nov-19 |
| Renkvist v. Singh | Sacramento | 34-2017-00221966 | Nov-19 |
| McIntosh v. Dieteren | Nevada | | Nov-19 |
| Raras | Alameda | RG18914548 | Oct-19 |
| Pandolf v. American Automobile | San Francisco | JAMS 1100090828 | Oct-19 |
| Viera v. Zalec | Northern District of CA | 3:18 - CV - 05431 VC | Oct-19 |
| Wellen | Contra Costa | C18-00080 | Oct-19 |
| Tindall v. Williams | Marin | CIV1700452 | Oct-19 |
| Dueker v. CRST Expedited | Eastern District of CA | 2:18-cv-00381-JAM-CKD | Sep-19 |
| Diaz | Santa Cruz | 17CV312555 | Sep-19 |
| Segelke v. Deharo Construction | Alameda | RG17867077 | Aug-19 |
| Avery | Santa Clara | 17CV309914 | Aug-19 |
| Hodge v. Fox | Marin | CIV1801644 | Aug-19 |
| Pacheco v. Fresh Express | Monterey | 17CV004120 | Aug-19 |
| Lo v. City of Santa Clara | Northern District of CA | 5:18-cv-03153 | Aug-19 |
| Maxwell | Santa Clara | 17CV306747 | Aug-19 |
| Rowswell v. Romero | Alameda | RG17883470 | Jul-19 |
| Stone v. Liberty Bell Alarm Co. | Sacramento | 34-20-17-00213802 | Jul-19 |
| Jackson | Marin | CIV 1604626 | Jul-19 |
| Minish | Santa Cruz | CV 158348 | Jul-19 |
| Linley v. Bartlett | San Francisco | 563011 | Jun-19 |
| Mckay v. Coons & Velo | Contra Costa | N/A | Jun-19 |
| Awadalla v. Farmers | Alameda | RG15773122 | Jun-19 |
| Ekpenyong v. Union Pacific | Contra Costa | VIM ARB | Jun-19 |
| Cook | San Francisco | CGC-18-563565 | Jun-19 |
| Cruz v. Loo | San Francisco | CGC-18-566120 | Jun-19 |
| Taylor v. Patterson | Santa Clara | 17CV311118 | May-19 |
| Oomrigar v. Tibco Software | Washington at Seattle | 2:18-cv-00748-JLR | May-19 |
| Clayton | Alameda | RG14738301 | May-19 |
| Comeau | Alameda | RG17880688 | May-19 |
| Duran v. USS Potomac | Alameda | RG17872162 | May-19 |
| Wyeth v. Hosler | Eastern District of CA | 1:18-cv-00007(DAD)(JLT) | May-19 |
| Gordon v. Next Star | San Francisco | CGC-16-555785 | Apr-19 |
| Bailey v. Chinatown Community Development | Marin | CV 1502898 | Apr-19 |
| Ziskovsky | San Francisco | CGC-16-551980 | Apr-19 |
| Barrett v. Keigwens | San Joaquin | STK-CV-UOE-2017-5982 | Mar-19 |

| | | | |
|---|---|---|---|
| Raymond v. CA Department of Corrections | San Francisco | CGC-16-551980 | Mar-19 |
| Barrett v. Keigwens | San Joaquin | STK-CV-UMM-2016-11133 | Mar-19 |
| Tran(Ho) | Alameda | RG16841708 | Mar-19 |
| Vanderheyden v. Jayram | San Francisco | CGC-14-542253 | Mar-19 |
| Kozel v. Airline Coach Services | Alameda | | Feb-19 |
| Jones | | | Feb-19 |
| Bauman v. Santa Rosa Memorial Hospital | Fresno | 17CECG01590 | Feb-19 |
| Mendes | | | Feb-19 |
| Fernandez | San Francisco | CGC-16-553563 | Feb-19 |
| Vargas v. Dignity Health | Marin | CIV1701186 | Feb-19 |
| Navarette v. Ghilotti Bro's | Contra Costa | MSC16-00609 | Feb-19 |
| Hunter | San Francisco | CGC-17-556576 | Feb-19 |
| Butts v. Oksenandler | Contra Costa | MSC16-00609 | Jan-19 |
| Hunter | Los Angeles | BC671285 | Jan-19 |
| Acosta | San Francisco | CGC-16-553-614 | Jan-19 |
| Esborg v. Comcast | Santa Clara | 17CV307133 | Jan-19 |
| Angulo v. O'Hearn | Santa Clara | 17CV311118 | Dec-18 |
| Oomrigar v. Tibco Software | Monterey | 16CV002573 | Dec-18 |
| Russak v. Trader Joes | Contra Costa | C16-01548 | Nov-18 |
| Burke v. Mattos | San Francisco | CGC-17-557360 | Nov-18 |
| Austin-Robinson | Madera | MCV 075805 | Nov-18 |
| Phillips v. Cal Trans | JAMS | 1100089941 | Nov-18 |
| Doe | Alameda | RG17851986 | Nov-18 |
| Chan v. Omni | Los Angeles | BC604952 | Nov-18 |
| Castro v. Edwards | San Mateo | 17CIV03804 | Nov-18 |
| Santoya v. Zega | Los Angeles | PC058046 | Nov-18 |
| Vines v. O'Reilly Auto Enterprises LLC | San Francisco | CGC-17-557767 | Nov-18 |
| Stevens v. Brown | | | Nov-18 |
| Corbelli | Santa Clara | 2015-6-FL-015555 | Nov-18 |
| Zommer v. Mohajer | San Francisco | CGC-17-559931 | Oct-18 |
| Donohue v. Pfleger | Los Angeles | BC605062 | Oct-18 |
| Tamanha v. Savage Services | Sonoma | SCV 261355 | Oct-18 |
| Williams | Sonoma | SCV 256686 | Oct-18 |
| Hufford v. Toyota | San Mateo | 16-CIV-01513 | Oct-18 |
| McGue v. Ritz-Carlton Hotel | Alameda | RG17867234 | Oct-18 |
| Carter | | 16-CV-299448 | Oct-18 |
| Zuniga | Sonoma | SCV261675 | Oct-18 |
| Guzman | Alameda | RG-16-828260 | Sep-18 |
| Gudino | San Francisco | CGC-16-551957 | Sep-18 |
| Anthony v. Li | Alameda | RG 16-842544 | Sep-18 |
| Pifari | San Francisco | CGC-17-561049 | Aug-18 |
| Young | | RG17858807 | Aug-18 |
| Badong | Minnesota | 15-CV-03285-JRT | Jul-18 |
| Kellerman | Alameda | RG17853814 | Jul-18 |
| Haugland | Minnesota | 15-2642 | Jul-18 |
| Morris & Kellerman (FQ) | Northern District, CA | 3:14-cv-52545C | Jun-18 |
| Higley (FQ) | San Francisco | CGC-14-541404 | Jun-18 |
| White | Los Angeles | 17-7266-MRR | Jun-18 |
| Asher v. El | Stanislaus | 2026560 | |
| Herrera | Alameda | R617844466 | May-18 |
| Pichon v. Hertz Corp. | Eastern District of CA | 2:16-cv-01892-JAM-CMK | May-18 |
| Rhodehouse | Alameda - Oakland | RG16841594 | May-18 |
| Korman | Santa Clara | 115CV281402 | Apr-18 |
| Marta v. Applebee's | San Joaquin | STK-CV-Uoe-2013-0000786 | Apr-18 |
| Bailey v. French Camp | Contra Costa | MSC15-00678 | Apr-18 |
| Wise v. Voss Trust | Los Angeles | BC654679 | Apr-18 |
| Chevreaux | Central District, CA | 8:17-CU-00279-JUS | Apr-18 |
| O'Rourke v. Farmers Insurance | Monterey | 16CV001789 | Apr-18 |
| Strand | San Francisco | CGC-15-548786 | Mar-18 |
| Kim v. Munchery | Santa Cruz | 17CV01710 | Mar-18 |
| Madesko v. Villaruel | Santa Clara | 16Cv292629 | Mar-18 |
| Roa v. Nesbitt | San Joaquin | STK-CV-UAT-2016-7813 | Feb-18 |
| Zankiewicz | Sutter | CVCS16-1675 | Feb-18 |
| Alvarez v. Harris | Alameda | RG15792210 | Feb-18 |
| Prator | Marin | CIV1601297 | Jan-18 |
| Hroch v. The Dutra Group | Monterey | M133246 | Jan-18 |
| Thomas v. Mueller | San Francisco | CGC-15-549645 | Jan-18 |
| Crawford | Sonoma | SCU 259909 | Dec-17 |
| Day v. Windmill Circle | San Francisco | C 14-MD-02532-MMC | Nov-17 |
| Harrison | Contra Costa | c16-00016 | Nov-17 |
| Baker | Eastern District of CA | 2:15-cv-01951-MCE-DB | Nov-17 |
| Evans v. | San Mateo | CIV 535902 | Nov-17 |
| **Manantan v. Wells Fargo Bank** | **San Francisco** | **CGC-16-555788** | Nov-17 |
| McKinny v. Big Day | Sonoma | SCU-259238 | 11/7/2017 |
| Selzer v. Donovan | Santa Clara | 1-09-CV-152551 | Oct-17 |
| Wang v. TDS | Northern District, CA | 4:16-cv-00659-SBA (JCS) | Oct-17 |
| Ferry v. Delonghi Spa | Santa Clara | 1-15-CV-286442 | Oct-17 |
| Viramontes v. San Jose Evergreen | Santa Clara | 115-CV287208 | Oct-17 |
| Sampson | Lake | CV 415937 | Oct-17 |
| Marchi v. Cocco & Copas | Santa Clara | 2014-1-CV-258924 | Oct-17 |
| Fisher v. Hartford | Alameda | RG14734357 | Oct-17 |

| | | | |
|---|---|---|---|
| Gutierrez v. Gindlesberger | San Mateo | 4:14-cv-01486 | Sep-17 |
| Rha v. Asiana Airlines | Contra Costa | c15-01312 | Sep-17 |
| Brill v. Tsai | Lake | CV-415513 | Sep-17 |
| Loberg v. County of Lake | San Mateo | CIV 538881 | Sep-17 |
| Sullivan v. Savemart | San Francisco | CGC-16-553808 | Sep-17 |
| Ramos v. Lacastro | ADR Arbitration | 16-6941 | Aug-17 |
| Guastucci v. Beebe | Santa Clara | 115CV287068 | Aug-17 |
| Alonzo v. Mid Pen Housing | Oakland | RG15771272 | Jul-17 |
| Rodriguez v. Hensei | Monterey | M126276 | Jul-17 |
| Hollander v. Oritz | Montgomery | | Jul-17 |
| Owens v. Ryder Truck | Sacramento | 34-2015-00178614 | Jul-17 |
| Bueno v. Lou | Alameda | RG15795347 | Jul-17 |
| Cochran v. Omni Healthcare | Northern District, CA | 15-CV-D4D60 | Jul-17 |
| Zuniga v. Lo | San Mateo | CIV527086 | Jun-17 |
| Mace v. USA, Dept. of Justice | Central District, CA | BC 618618 | Jun-17 |
| Rouchanian v. Madrigal | Alameda | RG15791175 | Jun-17 |
| Horwath v. Horwath | Alameda | RG14737777 | Apr-17 |
| Rodriguez | San Joaquin | STK-CV-UPN-2014-5972 | Apr-17 |
| Torres v. Safeway | San Francisco | CGC-16-549915 | Apr-17 |
| Espana | Alameda | RG13694477 | Apr-17 |
| Ortiz | Marin | | Apr-17 |
| Amezcua | Northern District, CA | 16-CV-00311-RS | Mar-17 |
| Armel | Southern District of IL | 2100 | Mar-17 |
| Frausto v. CHP | Northern District, CA | 15-cv-02307-WHO | Feb-17 |
| Galinis v. Bayer Corp. | Los Angeles | BC600048 | Feb-17 |
| Greer v. City of Hayward | Contra Costa | MSC14-01391 | Feb-17 |
| Sessions v. TOPA | Riverside | PSC1502073 | Feb-17 |
| Rattay & Morris v. State of California | Alameda | RG15781124 | Jan-17 |
| Donnelly | Stanislaus | 2105633 | Jan-17 |
| Jendayi | Alameda | RG15759540 | Jan-17 |
| Quaresma v. Aqua Lung America | Santa Clara | 114CV267329 | Jan-17 |
| Diemandez v. Hilton Garden | Alameda | RG16820986 | Dec-16 |
| Berrelleza v. Cornerstone Realty | Sonoma | 13013 | Dec-16 |
| Chamagne v. Allied Packing & Supply, Inc. | San Francisco | 13463 | Dec-16 |
| Hyde v. Kaiser | Alameda | HG14750141 | Dec-16 |
| Lefler v. Kaiser | Northern District, CA | 14-03532 MMC | Nov-16 |
| Freeman v. Mamo Logistics, Inc. | San Francisco | CGC-15-548830 | Nov-16 |
| Robinson v. USA | Santa Cruz | CV180979 | Nov-16 |
| Su v. Lam | San Francisco | CGC-14-524559 | Oct-16 |
| Gambino v. Cypress Point | Marin | CIV1503595 | Oct-16 |
| Elman v. Bay Club | Santa Clara | 114CV258520 | Oct-16 |
| Sheehan v. Schaub | Los Angeles | BC570257 | Oct-16 |
| Butler v. TASI | Kern County | BCV-15-100420 LHB | Oct-16 |
| McWilliams v. West Hills Hospital | Alameda | HG15781661 | Oct-16 |
| Burleson v. Bakersfield Memorial Hospital | San Francisco | CGC-12-523350 | Oct-16 |
| Gomez v. Huang | Sonoma | SCV-256908 | Sep-16 |
| Chan | San Francisco | CGC-12-526187 | Sep-16 |
| Herrera v. City of Santa Rosa | Napa | 26-66329 | Sep-16 |
| Williams v. Wyndham | Alameda | RG15785207 | Sep-16 |
| Holder v. Greenhaus | Contra Costa | CIVMSC14-00959 | Sep-16 |
| King v. De Guzman | Santa Clara | 115CV285323 | Sep-16 |
| Nguyen v. Roth | San Francisco | CGC-15-545989 | Sep-16 |
| Giorvas v. Grow | Alameda | RG15785207 | Sep-16 |
| Chen v. Xie | Santa Clara | 115CV282052 | Sep-16 |
| King v. Lat | Santa Clara | 114CV269964 | Aug-16 |
| Sugimoto v. Alexander's Steakhouse | San Joaquin | 39-2014-00308576-CU-PO-STK | Aug-16 |
| Crump v. Rich Voss Trucking | San Joaquin | 39-2014-00308576-CU-PO-STK | Aug-16 |
| Payton v. Hollywood Café | Alameda | RG15771894 | Aug-16 |
| Rico v. Cabrall | Santa Clara | 114 CV 267867 | Aug-16 |
| Assad v. Winold | Contra Costa | C15-01238 | Jul-16 |
| Carpio v. Aubin | Northern District, CA | 15-CV-0156-WHA | Jul-16 |
| Church v. Sarkis | Fresno | 13CECG03137 | Jul-16 |
| Hauschild v. City of Richmond | Kern | S-1500-CV-280994 DRL | Jul-16 |
| Peredia | San Francisco | | Jul-16 |
| McDermott v. System Capital | San Francisco | CGC-15-543553 | Jun-16 |
| Mahendran v. Nguyen | San Francisco | 1110018102 | Jun-16 |
| Hoeper v. CCSF | San Francisco | CGC-15-544050 | Jun-16 |
| Phillips v. Godaddy | Alameda | HG15761938 | May-16 |
| Gupta v. SF State University | Santa Clara | 113CV 250990 | May-16 |
| Alvarez | Marin | CV 1501139 | May-16 |
| Banitaba v. Nyquist | Alameda | RG14724442 | May-16 |
| Kenton v. Jacobson | Fresno | 12CECG03213 MWS | May-16 |
| Duong v. ITT Educational Services | Alameda | RG15765238 | May-16 |
| Torres v. AAU | Alameda | HG13708711 | May-16 |
| Hansen v. East Bay Floorcovering | Northern District, CA | 5:14-cv-2650-BLF | Apr-16 |
| Davila | Solano | FCS040957 | Apr-16 |
| Dean Markley USA v. Cenveo | Northern District, CA | 15-1232 JSC | Apr-16 |
| Affonso | San Francisco | CGC-15-545193 | Apr-16 |
| Svendsen v. United States | Santa Clara | 114CV267832 | Apr-16 |
| Pong v. Chen | San Mateo | CIV529263 | Apr-16 |
| Jones v. Fickett | | | |

| | | | |
|---|---|---|---|
| Paez v. Equity One | Sonoma | SCV256642 | Apr-16 |
| Pleinnikul v. Llorence | Alameda | G14737974 | Mar-16 |
| Brown v. Monument Security | San Mateo | CIV481154 | Mar-16 |
| Burkowski v. Cal Trans | San Francisco | CGC-14-542909 | Mar-16 |
| Barnes v. Ngmoco | Stanislaus | 2004391 | Mar-16 |
| Linhares v. Rocha | Santa Clara | 113CV246033 | Mar-16 |
| Selck | San Mateo | CIV521687 | Mar-16 |
| Holeman v. UPS | Eastern District of CA | 1:14-CV-01603-TLN-MJS | Mar-16 |
| Harper v. County of Kern | San Francisco | CGC-15-276452 | Feb-16 |
| Heath v. Asbestos | Northern District, CA | 3:15-cv-00340 | Feb-16 |
| Crowe v. Bountiful Oceans | Santa Barbara | 1470102 | Feb-16 |
| Corcoran v. CalTrans | Santa Clara | 1-13-CV-257903 | Feb-16 |
| Martinez v. Kim | Tulare | VCU256679 | Jan-16 |
| Westmoreland v. County of Tulare | Alameda | 12976 | Jan-16 |
| Nakamura v. Kaiser | Alameda | RG14718031 | Jan-16 |
| Skinner v. Country Builders Construction | Sacramento | 34-2011-00097867 | Dec-15 |
| Smith v. Borrow Dale | San Francisco | 01-14-0002-2936 | Nov-15 |
| Xian v. eBay, Inc. | San Francisco | CGC-14-537745 | Nov-15 |
| Spillane v. Capaccio | San Francisco | CGC 14-541308 | Nov-15 |
| Smith v. Kitaura | San Francisco | | Nov-15 |
| Bruemer v. AAA Business Supplies | San Bernardino | CIVDS 1405180 | Nov-15 |
| Mason v. Victor Valley Global | Siskiyou, California | SC CV 11-1022 | Nov-15 |
| Drew v, Largo | Plumas | GN-CV15-00033 | Nov-15 |
| Carlson v. Mason | Solano | FCS040759 | Nov-15 |
| Baker v. Regents | Sonoma | SCV255613 | Oct-15 |
| Manolakos- Fraley | Alameda | HG14736049 | Oct-15 |
| Li v. Hayward Area Recreation | Kern | S-1500-CV281158 LHB | Oct-15 |
| Truvillion v. Dignity Health | Santa Clara | 114CV270447 | Oct-15 |
| Kwei v. Liberty Mutual | Alameda | HG13679708 | Oct-15 |
| Leierer v. Salinas | San Francisco | CGC-14-539560 | Oct-15 |
| Ramirez v. SF Giants | Santa Cruz | CV 177679 | Oct-15 |
| Marcus v. Blue Lagoon | Santa Clara | 114CV271939 | Sep-15 |
| Timple v. Talledo | San Francisco | | Sep-15 |
| Moran v. Yellow Cab | San Francisco | CGC-14-537297 | Sep-15 |
| Page v. Dawson | San Francisco | CGC-14-540727 | Sep-15 |
| Tan v. Yee | Northern District, CA | 5:14-cv-2650-BLF | Sep-15 |
| Dean Markley USA v. Cenveo | Contra Costa | CIVMSC13-01172 | Sep-15 |
| Duffy v. Peck | Alameda | HG12616909 | Sep-15 |
| Lockerbie v. Kousa | Northern District, CA | C14-01082-THE | Sep-15 |
| Gardner v. Federal Express | Northern District, CA | 14-cv-01619-WHO | Sep-15 |
| English v. Apple | Santa Clara | 113CV245874 | Aug-15 |
| Sinsheimer-Savage v. Home Depot | San Joaquin | 39-2012-00288461-CU-BC-STK | Aug-15 |
| Ferreira v. Jensen | Northern District, CA | 14-cv-00852-PJH | Aug-15 |
| Robinson v. Open Top Sightseeing | San Francisco | 1100077735 | Aug-15 |
| Chi v. Ubiquiti | Central District, CA | CV 13-09350 | Aug-15 |
| Bracy v. City of LA | San Francisco | CGC-13-534109 | Aug-15 |
| Delrue-McGuire v. Dressel | | | Jul-15 |
| Rodriguez v. Parada | San Francisco | CGC-14-538007 | Jun-15 |
| Payandehjoo v. National Library | Santa Clara | 113CV245972 | Jun-15 |
| Trujillo v. Aircraft Covers Inc. | Alameda | RG 10510409 | Jun-15 |
| Huynh v. State of CA | San Francisco | CGC-13-534704 | May-15 |
| Mallen v. McAndrews | San Joaquin | 39-2013-00305497-CU-PO-STK | May-15 |
| Llamas v. McDonalds | Northern District, CA | 3:13-CV-05966WHO | May-15 |
| Hunt v. Continental Casualty | Contra Costa | CIVMSC11-02782 | May-15 |
| Rood v. Gurmeet Mohem | San Francisco | CGC13529064 | May-15 |
| Staedler v. Galu | Los Angeles | BC517311 | Apr-15 |
| Stepp v. Fidelity Law | Los Angeles | BC528671 | Apr-15 |
| MacKey v. Helinet Aviation | San Francisco | CGC-12-523268 | Apr-15 |
| Chin v. SF Unified | Yolo county | P010-1331 | Apr-15 |
| Navarro v. Pacific Basin Milling | Marin | CIV1302527 | Apr-15 |
| Rempell | Northern District, CA | C13-05498 EMC | Apr-15 |
| Nazif v. Computer Sciences | Sonoma | SCV-254487 | Mar-15 |
| Watson v. Pudil | San Francisco | CGC-13-532478 | Mar-15 |
| Stoll v. County of San Francisco | San Francisco | CGC-11-515542 | Mar-15 |
| Fua v. Yellow Cab | Contra Costa | CIVMSC13-01216 | Mar-15 |
| Fain v. Baeseman | Placer | 8CV0033354 | Feb-15 |
| Kossick v. Kaiser and Rhyder | Contra Costa | 12-4733571 | Feb-15 |
| Brown v. Progressive Choice Insurance | San Mateo | CIV519951 | Feb-15 |
| Blair v. Monterey Clement, et al. | Santa Clara | CCSC-C12-02356 | Jan-15 |
| Livingstone v. Bridges Golf Course | Alameda | RG13670123 | Jan-15 |
| Halverson v. Pet Food Express | Santa Clara | 113CV255290 | Jan-15 |
| Shyam v. NuWare Technologies | Los Angeles | 72-516-E-00028-13 | Jan-15 |
| Anderson v. Felahy | Contra Costa | 12607 | Jan-15 |

1  **United States District Court**
   **Northern District of California**
2  **San Jose Division**
   **Case Name:** *Dominguez v. City of San Jose, et al.*
3  **Case No.: 5:18-cv-04826 BLF**

4

5                    **CERTIFICATE OF SERVICE**

6          I, the undersigned, under penalty of perjury, certify and declare:

7          That I am a citizen of the United States, over 18 years of age, a resident of or
   employed in the County where the herein described mailing took place, and not a party
8  to the within action.

9          That my business address is 125 S. Market Street, Suite 1200, San Jose,
   California 95113-2288.

10         That on behalf of John Kevin Crowley, I served the foregoing document(s)
11 described as:

12     **Plaintiffs Expert Witness Disclosure**

13 on the following person(s) in this action, via electronic e-mail transmission, as set forth
   below:

14
       Marin J. Clouse, Sr. Deputy City Attorney         marin.clouse@sanjoseca.gov
15     City of San Jose
       Office of the City Attorney
16     200 E. Santa Clara Street, 16th Floor
       San Jose, CA 95113-1905
17
           I declare that the above service was made at the direction of a member of the bar
18 of this Court.

19         Executed on May 21, 2021, at San Jose, California.

20

21                                              *[signature]*
22                                              Sally M. Wagner

23

24

25

26

27

28

# EXHIBIT 2

JOHN KEVIN CROWLEY (SBN 88189)
**ATTORNEY AT LAW**
125 S. Market Street, Suite 1200
San Jose, California 95113-2288
Tel: (408) 288-8100
Fax: (408) 288-9409
Email: jkclaw@pacbell.net

Attorney for Plaintiffs
**JESSICA DOMINGUEZ INDIVIDUALLY
AND JESSICA DOMINGUEZ AS GUARDIAN
AD LITEM FOR JAD (1), JAD (2) AND JAD (3)**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| JESSICA DOMINGUEZ INDIVIDUALLY AND JESSICA DOMINGUEZ AS GUARDIAN AD LITEM FOR JAD (1), JAD (2) AND JAD (3), | CASE NO: 5:18-cv-04826-BLF |
| Plaintiffs, | **PLAINTIFFS' REBUTTAL EXPERT WITNESS DISCLOSURE** |
| vs. | |
| CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT, MICHAEL PINA, AND DOE POLICE OFFICERS 2 THROUGH 5, | Trial: August 22, 2022 |
| Defendants. | |

**TO DEFENDANTS AND DEFENDANTS' ATTORNEY OF RECORD:**

Pursuant to FRE § 702, et seq., and FRCP §26, et seq., Plaintiffs hereby intend to offer expert witness opinion testimony at the trial of this above-captioned action as follows:

**Retained Rebuttal Experts:**

1.  Alan D Barbour, PhD., CLB, P.O. Box 14084, Fresno, CA 93650; (559) 435-

8259; abarbour@lightspeed.net.    Dr. Barbour's Rule 26(a)(2)(B) report is attached

hereto **Exhibit A** which includes his Curriculum Vitae and his record of being deposed

and testifying in various courts including Federal Courts.

2.    The parties have agreed to extend the time to disclose the rebuttal ballistics

expert witness until after the physical evidence can be examined by the expert consultant

and a report prepared intended to be no later than June 30, 2021.

Dated:  June 19, 2021

_____
JOHN KEVIN CROWLEY, Esq.
Attorney for Plaintiffs

# EXHIBIT A




# ALAN D BARBOUR, PhD, CLB (Ret.)

*Fellow of The Chartered Society
of Forensic Sciences*

Consulting Forensic Toxicologist
Forensic Toxicology • Blood Alcohols • Mass
Spectrometry

**Inspection and evaluation of clinical and toxicology laboratory records**

**Testimony, specializing in drug and alcohol tests and their interpretation**

**Analysis of hypothetical drinking histories**

June 1st, 2021
Page 1 of 2

John Kevin Crowley, Esq.
125 South Market Street, Suite 1200
San Jose, California 95113-2288
BY e-MAIL TO:  *jkclaw@pacbell.net*

IN RE:  *Jessica Dominguez et al., vs. City of San Jose et al.*
     *United States District Court, Northern District of California* No. 5:18-cv-04826-BLF

Dear Mr. Crowley:

I have reviewed the documents related to the above cited case which you forwarded to me,
to wit:

1. [Proposed] Stipulated Protective Order, 15 pp;
2. Opinion of Daniel L. Sudakin dated 05/05/2021, 6 pp;
3. Curriculum vitae of Daniel L. Sudakin, 20 pp;
4. Search warrant and related records, 18 pp;
5. Santa Clara County Medical Examiner records, 14 pp, including investigation report 5 pp, and Autopsy report 9 pp;
6. Santa Clara County Crime Lab Records, 69 pp including ballistics, clothing and inventory;
7. Santa Clara County District Attorney's Office press release, 3 pp; and
8. Santa Clara County District Attorney Report on the Fatal Shooting of Jacob Dominguez on September 15th, 2017, 19 pp.

I hereby declare that the following is my considered professional opinion with respect to the
questions I have been asked to date in the above-cited matter, based on my education, training,
experience and the documents cited above.  If called upon to do so I will unhesitatingly so testify
under oath and subject to the penalties of perjury,  reserving, however, the  right to reconsider
my opinion in the light of further information should such be forthcoming.

## Blood Drug Testing Results

In Item 2 [Opinion of DLS] at pp. 3-4, alleged concentrations of drugs detected in the blood of
Mr. Dominguez are given, with no source document identified.  In Item 5, autopsy report, at
Bates SJ1702, the same alleged concentrations of drugs are reported, with no source document
identified.  In Item 8, at Bates SJ1789, qualitative alleged results of decedent's drug testing are
given, referring to autopsy report.  Nowhere in the discovery I received was there a copy of the
drug testing report that would customarily be included.

*Please  continue to concluding page*

Telephone & Fax: (559) 435-8259 • abarbour@lightspeed.net
P.O. Box 14084 • Fresno, CA 93650

## ALAN D BARBOUR, PhD, CLB (Ret.)
*Fellow of The Chartered Society of Forensic Sciences*

IN RE:  *Dominguez vs. San Jose,*  Page 2 of 2

<u>Discussion</u>

Absent a copy of the drug testing report, there is no way to verify the alleged drug test results are an accurate reflection of same, and no way to question the analyst[s], if any.  The discovery I received does not even identify where the alleged drug testing was performed.  Unless and until a verifiable true copy of the alleged drug testing report is produced and plaintiff's attorney is allowed an opportunity to question at least a competent representative of the laboratory, the alleged test results are in my opinion clearly inadmissible hearsay.

Hoping that this is of some assistance, I remain very

Sincerely yours,

*Alan D Barbour*

Attachments:
       Curriculum vitae Alan D Barbour
       List of appearances

Telephone & Fax: (559) 435-8259 • abarbour@lightspeed.net
P.O. Box 14084 • Fresno, CA 93650




# ALAN D BARBOUR, PhD, CLB (Ret.)

*Fellow of The Chartered Society
of Forensic Sciences*

Consulting Forensic Toxicologist
Forensic Toxicology • Blood Alcohols • Mass Spectrometry

## APPEARANCES

| No. | Date | Venue* | Judge | Subject |
|-----|------|--------|-------|---------|
| 1 | ~1978 | Mendocino Co. Superior Court | | Alcohol |
| 2 | 12/10/1986 | Fresno Municipal Court | Thomas A. Harris | Alcohol |
| 3 | 01/28/1987 | Kings County Superior Court | Tim S. Buckley | Cocaine |
| 4 | 02/03/1987 | Fresno Municipal Court | John J. Gallagher | Methamphetamine |
| 5 | 04/20/1987 | Kings County Superior Court | Peter M. Schultz | Cocaine |
| 6 | 04/22/1987 | Fresno Municipal Court | Edward Sarkisian Jr. | Alcohol & Cocaine |
| 7 | 06/10/1987 | Fresno Municipal Court | Lawrence Jones | Alcohol |
| 8 | 06/23/1987 | Fresno County Superior Court | Robert Z. Mardikian | Alcohol |
| 9 | 08/20/1987 | Fresno County Superior Court | James L. Quashnick | Amphetamines |
| 10 | 08/31/1987 | Fresno County Superior Court | Gene M. Gomes | Alcohol |
| 11 | 09/22/1987 | Fresno County Superior Court | Ralph Nunez | Alcohol |
| 12 | 09/25/1987 | Madera County Superior Court | | Alcohol |
| 13 | 10/05/1987 | Fresno County Superior Court | Gene M. Gomes | Alcohol |
| 14 | 11/04/1987 | CA Board of Vocational Nurses & Psychiatric Technician Examiners | Muriel Evens, ALJ (Tulare County)** | Cocaine |
| 15 | 11/23/1987 | Kings County Superior Court | Tim S. Buckley | Opiates |
| 16 | 05/04/1988 | Hanford Municipal Court | John G. O'Rourke | Alcohol |
| 17 | 05/16/1988 | Fresno County Juvenile Court | Dennis Caeton | PCP |
| 18 | 06/09/1988 | Fresno Municipal Court | Armando O. Rodriguez | Alcohol |
| 19 | 06/15/1988 | Los Angeles Co. Superior Court | John H. Reid | Alcohol |
| 20 | 08/12/1988 | Fresno County Juvenile Court | J. Montgomery Carter | Cocaine |
| 21 | 08/18/1988 | Kings County Superior Court | Peter M. Schultz | Alcohol |
| 22 | 08/31/1988 | Deposition No. 1 | | Alcohol |
| 23 | 10/28/1988 | Fresno Municipal Court | W. Kent Levis Jr. | PCP |
| 24 | 11/03/1988 | Fresno Municipal Court | W. Kent Levis Jr. | Alcohol |
| 25 | 11/04/1988 | Fresno Municipal Court | W. Kent Levis Jr. | Alcohol |
| 26 | 11/29/1988 | Fresno Municipal Court | Herbert I. Levy | Alcohol |
| 27 | 01/05/1989 | Deposition No. 2 | | Alcohol |
| 28 | 01/23/1989 | Fresno Municipal Court | Armando O. Rodriguez | Alcohol |
| 29 | 01/25/1989 | Fresno County Superior Court | Gary Austin | Alcohol & Cocaine |
| 30 | 01/28/1989 | Tulare County Superior Court** | Edward Kim | PCP |
| 31 | 3/16-17/'89 | Fresno Municipal Court | Armando O. Rodriguez | Alcohol |
| 32 | 03/17/1989 | Fresno County Superior Court | Ralph Nunez | Alcohol & Cocaine |
| 33 | 03/21/1989 | Fresno County Superior Court | Stephen R. Henry | Alcohol |
| 34 | 03/29/1989 | Deposition No. 3 | | Alcohol |
| 35 | 06/01/1989 | Madera County Superior Court | Edward Moffatt | Chain of possession |

*California, except as noted   **Visalia, except as noted*

Telephone & Fax: (559) 435-4447
P.O. Box 14084 • Fresno, CA 93650
abarbour@lightspeed.net

| No. | Date | Venue* | Judge | Subject |
|-----|------|--------|-------|---------|
| 36 | 06/05/1989 | Fresno County Superior Court | Gene Gomes | Alcohol |
| 37 | 08/21/1989 | Fresno County Superior Court | John Fitch | Contraband cocaine |
| 38 | 08/30/1989 | Fresno Municipal Court | Herbert J. Levy | Alcohol |
| 39 | 09/20/1989 | Fresno County Superior Court | Thomas A. Harris | Alcohol & PCP |
| 40 | 11/07/1989 | Fresno County Superior Court | James L. Quashnick | Alcohol & PCP |
| 41 | 11/20/1989 | Deposition No. 4 | | Alcohol |
| 42 | 12/14/1989 | Deposition No. 5 | | Alcohol |
| 43 | 01/30/1990 | Deposition No. 6 | | Alcohol & Cocaine |
| 44 | 02/15/1990 | Fresno County Superior Court | Stephen R. Henry | Alcohol |
| 45 | 03/27/1990 | Parlier Justice Court | Anthony W. Ishii | Alcohol |
| 46 | 04/05/1990 | Fresno County Superior Court | Stephen R. Henry | Alcohol |
| 47 | 04/05/1990 | Fresno County Superior Court | Stephen R. Henry | Alcohol |
| 48 | 05/01/1990 | Fresno County Superior Court | Frank J. Creede Jr. | Alcohol, cocaine & PCP |
| 49 | 05/1-2/1990 | Fresno County Superior Court | Stephen R. Henry | Alcohol, cocaine & THC |
| 50 | 09/10/1990 | Fresno County Superior Court | Stephen R. Henry | Cocaine |
| 51 | 02/07/1991 | Tulare Co. Municipal Ct. (Dinuba) | Steven Drew | Alcohol |
| 52 | 02/07/1991 | Fowler Municipal Court | Carlos A. Cabrera | Alcohol |
| 53 | 02/13/1991 | Fresno County Superior Court | Dennis Caeton | Alcohol & drugs |
| 54 | 02/26/1991 | Deposition No. 7 | | Alcohol |
| 55 | 03/19/1991 | Fresno Municipal Court | Annette LaRue | Alcohol |
| 56 | 11/18/1991 | Fresno County Superior Court | James L. Quashnick | Alcohol |
| 57 | 3/11-15/'93 | Fresno County Superior Court | William Silveira | Alcohol |
| 58 | 09/24/1993 | Tulare Co. Superior Court** | William Silveira | Alcohol, cocaine, urine ID |
| 59 | 10/25/1993 | Fresno County Superior Court | John Fitch | Alcohol |
| 60 | 03/16/1994 | U.S. District Court No. 2 (Fresno) | Oliver W. Wanger | Alcohol |
| 61 | 08/05/1994 | Tulare County Superior Court | Howard Broadman | Methamphetamine, opiates & cocaine |
| 62 | 10/03/1994 | Arbitration [Sacramento] | Charles Askin | Marijuana, NIDA |
| 63 | 12/29/1994 | Tulare County Superior Court | Kenneth Conn | Alcohol |
| 64 | 11/05/1995 | San Luis Obispo Co. Superior Ct. | Barry Hammer | Methampheamine |
| 65 | 03/18/1996 | Tulare County Municipal Court | Melinda M. Reed | Methamphetamine GCMS Kelly-Frye hearing |
| 66 | 05/17/1996 | Tulare County Municipal Court | Darryl B. Ferguson | Methamphetamine GCMS Kelly-Frye hearing |
| 67 | 05/31/1996 | Fresno County Superior Court | Lawrence Jones | Heroin |
| 68 | 03/13/1997 | Deposition No. 8 | | Alcohol |
| 69 | 07/07/1997 | Administrative hearing [Merced] | Haven P. Courtney | Marijuana |
| 70 | 10/12/1998 | Deposition No. 9 | | Alcohol |



**ALAN D BARBOUR, PhD, CLB (Ret.)**

*Fellow of The Chartered Society*
*of Forensic Sciences*

Consulting Forensic Toxicologist
Forensic Toxicology • Blood Alcohols • Mass Spectrometry



## APPEARANCES

| No. | Date | Venue* | Judge | Subject |
|-----|------|--------|-------|---------|
| 71 | 10/19/1998 | Tulare Co. Sup. Ct. Juvenile Div. | Elisabeth B. Krant | Alcohol |
| 72 | 12/02/1998 | Doña Ana Co. (NM) Distr. Ct. No. 3 | Jerald A. Valentine | Alcohol |
| 73 | 05/24/1999 | Fresno County Superior Court | Phillip Silva | THC |
| 74 | 08/24/2000 | Deposition No. 10 | | Alcohol |
| 75 | 09/29/2000 | Fresno County Superior Court | Alan M. Simpson | Alcohol |
| 76 | 06/21/2001 | Kings Count Superior Court | Louis F. Bissig | Alcohol |
| 77 | 10/25/2001 | Tulare Co. Sup. Ct. (Porterville) | Valario Sauceda | Alcohol |
| 78 | 01/14/2002 | Fresno County Juvenile Court | Gregory T. Fain | Alcohol |
| 79 | 02/14/2002 | Tulare County Superior Court** | Joseph Kalashian | Alcohol & Methamphetamine |
| 80 | 02/20/2002 | Fresno County Superior Court | Gary Austin | Alcohol |
| 81 | 03/12/2002 | Deposition No. 11 | | Alcohol |
| 82 | 03/20/2002 | Fresno County Superior Court | Ralph Nunez | Alcohol |
| 83 | 04/02/2002 | California Board of Nursing | | Methamphetamine & chain of possession |
| 84 | 04/29/2002 | Fresno County Superior Court | William Stone | Alcohol |
| 85 | 05/13/2002 | Tulare Co. Sup. Ct. Juvenile Div. | Martin Staven | Rat poison |
| 86 | 08/20/2002 | Shasta County Superior Court | James Ruggiero | Alcohol |
| 87 | 08/27/2002 | Deposition No. 12 | | Methamphetamine |
| 88 | 09/12/2002 | Tulare Co. Sup. Court (Tulare) | Walter L. Gorelick | Alcohol, solvents |
| 89 | 09/16/2002 | Tulare County Superior Court | William Silveira | Alcohol & Methamphetamine |
| 90 | 09/24/2002 | Deposition No. 13 | | Alcohol |
| 91 | 10/01/2002 | Fresno County Superior Court | Donald S. Black | Alcohol |
| 92 | 10/04/2002 | Fresno County Superior Court | R. L. Putnam | Alcohol |
| 93 | 10/22/2002 | Monterey County Juvenile Court | Richard M. Curtis | Marijuana screening |
| 94 | 11/08/2002 | Fresno County Superior Court | W. Kent Levis Jr. | Alcohol |
| 95 | 12/04/2002 | Kings County Superior Court | Ronald J. Maciel | Alcohol |
| 96 | 12/05/2002 | Fresno County Superior Court | Edward Sarkisian Jr. | Alcohol |
| 97 | 01/22/2003 | Fresno Co. Sup. Court (Kingsburg) | Gary R. Orozco | Alcohol |
| 98 | 01/28/2003 | Fresno Co. Sup. Court (Kingsburg) | Gary R.Orozco | Alcohol |
| 99 | 01/29/2003 | Fresno County Superior Court | Gary D. Hoff | Alcohol |
| 100 | 02/04/2003 | Fresno County Superior Court | Gary D. Hoff | Alcohol |
| 101 | 02/20/2003 | Tulare Co. Superior Court (Tulare) | Walter L. Gorelick | Alcohol |
| 102 | 03/03/2003 | Fresno County Superior Court | Franklin Jones | Alcohol |
| 103 | 03/10/2003 | Fresno County Superior Court | Gary Austin | Alcohol |
| 104 | 03/24/2003 | Deposition No. 14 | | Alcohol |
| 105 | 05/13/2003 | Kings County Superior Court | Lynn C. Atkinson | Alcohol |

*California, except as noted*    **Visalia, except as noted*

Telephone & Fax: (559) 435-4447
P.O. Box 14084 • Fresno, CA 93650
abarbour@lightspeed.net

| No. | Date | Venue* | Judge | Subject |
|-----|------|--------|-------|---------|
| 106 | 05/14/2003 | Fresno County Superior Court | Gary R.Orozco | Alcohol |
| 107 | 06/27/2003 | Fresno County Superior Court | William Stone | Alcohol |
| 108 | 7/15-16/'03 | Fresno County Juvenile Court | Timothy Kams | Alcohol |
| 109 | 07/30/2003 | Tulare County Superior Court** | Paul Vortmann | Alcohol |
| 110 | 08/18/2003 | Madera County Superior Court | Edward P. Moffatt | Methamphetamine |
| 111 | 09/30/2003 | Deposition No. 15 | | Alcohol |
| 112 | 12/17/2003 | Deposition No. 16 | | Alcohol |
| 113 | 12/18/2003 | Tulare Co. Sup. Court (Dinuba) | Stephen V. Drew | Alcohol |
| 114 | 12/30/2003 | Fresno County Superior Court | John F. Vogt | Alcohol |
| 115 | 01/08/2004 | Fresno County Superior Court | R. L. Putnam | Alcohol |
| 116 | 01/12/2004 | Tulare County Superior Court | Paul Vortmann | Methamphetamine |
| 117 | 01/28/2004 | Fresno County Superior Court | Franklin Jones | Alcohol |
| 118 | 03/01/2004 | Kern County Superior Court | Gary R. Witt | Alcohol |
| 119 | 03/15/2004 | Fresno County Superior Court | R. L. Putnam | Alcohol |
| 120 | 03/22/2004 | 2nd Dist. Court (Washoe Co., NV) | Janet Berry | Marijuana |
| 121 | 04/15/2004 | Fresno County Superior Court | James Opplinger | Alcohol & Cocaine |
| 122 | 05/12/2004 | U.S. District Court (Yosemite) | William M. Wunderlich | Alcohol |
| 123 | 05/12/2004 | U.S. District Court (Yosemite) | William M. Wunderlich | Alcohol |
| 124 | 06/22/2004 | Fresno County Superior Court | Edward Sarkisian Jr. | Alcohol |
| 125 | 07/09/2004 | Fresno County Superior Court | John F. Vogt | Alcohol |
| 126 | 07/15/2004 | Fresno County Superior Court | James Opplinger | Alcohol |
| 127 | 08/12/2004 | Deposition No. 17 | | Marijuana |
| 128 | 08/13/2004 | Tulare County Superior Court | Lloyd Hicks | Alcohol & ABO type |
| 129 | 09/02/2004 | Deposition No. 18 | | Alcohol |
| 130 | 10/22/2004 | San Joaquin Co. Superior Court | Terrence Van Oss | Alcohol |
| 131 | 11/15/2004 | Kodiak (AK) Superior Court | Joel H. Bolger | Alcohol |
| 132 | 11/17/2004 | Tulare County Superior Court | Gerald F. Sevier | Alcohol & Meth |
| 133 | 11/22/2004 | Deposition No. 19 | | MAOI vs SSRI drugs |
| 134 | 12/16/2004 | Tulare County Sup. Ct. (Porterville) | Lloyd Hicks | Alcohol |
| 135 | 12/21/2004 | San Luis Obispo Co. Superior Ct. | Roger Piquet | Alcohol |
| 136 | 01/06/2005 | San Luis Obispo Co. Superior Ct. | Douglas Hilton | $R_x$ drug interactions |
| 137 | 01/13/2005 | Sonoma County Superior Court | Elaine Rushing | Alcohol |
| 138 | 1/31-2/1/'05 | King County (WA) Superior Court | Helen Halpert | Multiple drugs |
| 139 | 02/15/2005 | Deposition No. 20 | | Postmortem drugs, EtOH |
| 140 | 03/01/2005 | Fresno Co. Sup. Ct. Juvenile Div. | Adolfo Corona | Methamphetamine |




# ALAN D BARBOUR, PhD, CLB (Ret.)

*Fellow of The Chartered Society
of Forensic Sciences*

### Consulting Forensic Toxicologist
Forensic Toxicology • Blood Alcohols • Mass Spectrometry

## APPEARANCES

| No. | Date | Venue* | Judge | Subject |
|-----|------|--------|-------|---------|
| 141 | 03/24/2005 | Tulare County Superior Court** | Paul Vortman | Alcohol & ABO type |
| 142 | 04/01/2005 | Deposition No. 21 | | Alcohol, drug screen |
| 143 | 05/17/2005 | Fresno County Superior Court | Jon N. Kapetan | Alcohol |
| 144 | 05/17/2005 | Fresno County Superior Court | Jon N. Kapetan | Alcohol & opiates |
| 145 | 05/18/2005 | Tulare County Superior Court | Lloyd Hicks | Alcohol |
| 146 | 07/14/2005 | Fresno County Superior Court | Arlan L. Harrell | Alcohol |
| 147 | 09/16/2005 | U.S. District Court (Fresno) | Anthony W. Ishii | Meth lab yield |
| 148 | 09/26/2005 | Fresno County Superior Court | Wayne R. Ellison | Alcohol, chloroform |
| 149 | 10/05/2005 | Fresno County Superior Court | Wayne R. Ellison | Alcohol & cocaine |
| 150 | 11/10/2005 | Tulare Co. Superior Ct. (Tulare) | Walter L. Gorelick | Methamphetamine |
| 151 | 11/21/2005 | Fresno County Superior Court | Wayne R. Ellison | Alcohol |
| 152 | 12/07/2005 | Alc. Bev. Control (Santa Rosa) | Arne Greenberg | Alcohol |
| 153 | 01/20/2006 | Fresno County Superior Court | Jeffrey Hamilton Jr. | Alcohol |
| 154 | 01/31/2006 | San Joaquin Co. Superior Court | Lesley D. Holland | Alcohol |
| 155 | 02/10/2006 | Alameda Co. Sup. Ct. (Oakland) | Morris Beatus | Alcohol |
| 156 | 02/15/2006 | Amador County Superior Court | David S. Richmond | ABO, EtOH, NaF |
| 157 | 02/16/2006 | Tulare Co. Superior Ct. (Tulare) | Walter L. Gorelick | Hydrocodone |
| 158 | 02/22/2006 | San Joaquin Co. Superior Court | Elizabeth Humphreys | Alcohol |
| 159 | 03/23/2006 | Deposition No. 22 | | Alcohol |
| 160 | 03/30/2006 | Alameda Co. Sup. Ct. (Oakland) | Jacqueline Taber | Alcohol |
| 161 | 04/14/2006 | Fresno County Superior Court | Gregory T. Fain | Alcohol |
| 162 | 04/28/2006 | Fresno County Superior Court | Kent Hamlin | Alcohol |
| 163 | 05/08/2006 | Fresno County Superior Court | Carlos Cabrera | Alcohol |
| 164 | 05/12/2006 | Fresno County Superior Court | Houry A. Sanderson | Alcohol |
| 165 | 06/09/2006 | Tulare County Sup. Ct. (Tulare) | Walter L. Gorelick | Methamphetamine |
| 166 | 06/14/2006 | Fresno County Superior Court | Gary D. Hoff | EtOH, meth, coc |
| 167 | 06/26/2006 | Fresno County Superior Court | David A. Gottlieb | Alcohol & MDMA |
| 168 | 06/30/2006 | Ferndale (WA) Municipal Court | Terrance Lewis | Ethyl glucuronide |
| 169 | 07/20/2006 | Fresno County Superior Court | Gregory T. Fain | Alcohol |
| 170 | 07/27/2006 | Tulare Co. Sup. Ct. (Dinuba) | Steven Drew | Meth, $R_x$ drugs |
| 171 | 08/10/2006 | Tulare County Sup. Ct. (Visalia) | Gary Paden | Methamphetamine |
| 172 | 08/16/2006 | Fresno County Superior Court | Gregory T. Fain | Alcohol |
| 173 | 08/18/2006 | Fresno County Superior Court | Jonathan B. Conklin | Alcohol |
| 174 | 08/28/2006 | San Luis Obispo Co. Superior Ct. | Barry Hammer | Alcohol |
| 175 | 09/21/2006 | Deposition No. 23 | | Alcohol |

*California, except as noted    **Visalia, except as noted*

Telephone & Fax: (559) 435-4447
P.O. Box 14084 • Fresno, CA 93650
abarbour@lightspeed.net

| No. | Date | Venue* | Judge | Subject |
|---|---|---|---|---|
| 176 | 09/22/2006 | Fresno County Superior Court | Donald R. Franson Jr. | Alcohol |
| 177 | 09/28/2006 | Mohave Co. (AZ) Superior Court | James Chavez | Methadone |
| 178 | 10/10/2006 | Deposition No. 24 | | Alcohol |
| 179 | 10/18/2006 | Fresno County Superior Court | Gary S. Austin | Alcohol |
| 180 | 11/07/2006 | Fresno County Superior Court | Gregory T. Fain | Alcohol |
| 181 | 11/15/2006 | Camp Pendleton | Lt. Colonel T. A. Daly | Cocaine |
| 182 | 12/11/2006 | Tulare Co. Superior Court (Tulare) | Walter L. Gorelick | Zolpidem |
| 183 | 12/12/2006 | Alc. Bev. Control (Santa Rosa) | John P. McCarthy | Alcohol |
| 184 | 12/15/2006 | Fresno County Superior Court | Jeff Bird | Alcohol |
| 185 | 01/12/2007 | Fresno County Superior Court | Jonathan B. Conklin | Alcohol |
| 186 | 01/25/2007 | Fresno County Superior Court | Rosendo Peña | Alcohol |
| 187 | 01/30/2007 | Deposition No. 25 | | Alcohol |
| 188 | 02/08/2007 | Sonoma County Superior Court | René Chouteau | Alcohol & THC |
| 189 | 02/15/2007 | Deposition No. 26 | | Alcohol & meth |
| 190 | 03/14/2007 | Fresno County Superior Court | John F. Vogt | Alcohol |
| 191 | 04/20/2007 | Deposition No. 27 | | Alcohol & meth |
| 192 | 04/26/2007 | Deposition No. 28 | | Methamphetamine |
| 193 | 05/01/2007 | Deposition No. 29 | | Alcohol, abused drugs |
| 194 | 05/21/2007 | Fresno County Superior Court | Houry A. Sanderson | Cocaine & methadone |
| 195 | 05/21/2007 | Deposition No. 30 | | Alcohol |
| 196 | 05/24/2007 | CA State Personnel Board--Fresno | Mary Horst, ALJ | Alcohol |
| 197 | 06/01/2007 | Tulare County Superior Court** | Lloyd L. Hicks | Alcohol |
| 198 | 06/04/2007 | Fresno County Superior Court | Edward Sarkisian Jr. | THC & Dilantin |
| 199 | 07/20/2007 | Fresno County Superior Court | James Opplinger | Alcohol |
| 200 | 07/27/2007 | Fresno Co. Superior Court (Clovis) | Carlos A. Cabrera | Alcohol |
| 201 | 08/27/2007 | Fresno County Superior Court | Donald S. Black | Alcohol |
| 202 | 08/29/2007 | Lake County Superior Court | Arthur H. Mann | Alcohol |
| 203 | 09/12/2007 | Auburn (WA) Municipal Court | Patrick Burns | Ethyl glucuronide |
| 204 | 09/19/2007 | Fresno County Superior Court | Carlos A. Cabrera | Alcohol |
| 205 | 10/15/2007 | Tulare County Superior Court | Patrick J. O'Hara | Rat poison |
| 206 | 10/11/2007 | Madera County Superior Court | Edward Moffatt | Methamphetamine |
| 207 | 11/02/2007 | Fresno County Superior Court | Kristi C. Kapetan | Alcohol |
| 208 | 11/21/2007 | Alameda Co. Sup. Ct. (Hayward) | Robert K. Kurtz | Multi $R_x$ & cocaine |
| 209 | 11/29/2007 | Santa Cruz County Superior Court | Denine J. Guy | $R_x$ drugs |
| 210 | 12/03/2007 | Kings County Superior Court | Peter M. Schultz | Codeine |



**ALAN D BARBOUR, PhD, CLB (Ret.)**

*Fellow of The Chartered Society*
*of Forensic Sciences*

Consulting Forensic Toxicologist
Forensic Toxicology • Blood Alcohols • Mass Spectrometry



APPEARANCES

| No. | Date | Venue* | Judge | Subject |
|-----|------|--------|-------|---------|
| 211 | 12/18/2007 | Sonoma County Superior Court | René A. Chouteau | Alcohol & THC |
| 212 | 01/04/2008 | Fresno County Superior Court | James Opplinger | Alcohol |
| 213 | 02/06/2008 | Tulare County Superior Court** | Gerald R. Sevier | Blood typing |
| 214 | 02/06/2008 | Santa Cruz County Superior Court | Steven S. Siegel | Alcohol |
| 215 | 02/14/2008 | Merced County Superior Court | Hugh Flanagan | Methamphetamine |
| 216 | 02/27/2008 | Alameda Co. Sup. Ct. (Oakland) | C. Don Clay | Alcohol |
| 217 | 02/29/2008 | Fresno County Superior Court | Kristi C. Kapetan | Alcohol |
| 218 | 03/18/2008 | Fresno County Superior Court | Wayne R. Ellison | Alcohol |
| 219 | 03/21/2008 | Deposition No. 31 | | Methamphetamine |
| 220 | 03/25/2008 | Fresno County Superior Court | Edward Sarkisian Jr. | Alcohol |
| 221 | 04/18/2008 | Tulare Co. Sup. Ct. (Porterville) | Juliet Boccone | Alcohol & FST's |
| 222 | 04/22/2008 | Alameda Co. Sup. Ct. (Oakland) | Vernon Nakahara | Alcohol |
| 223 | 05/16/2008 | Contra Costa Co. Superior Court | Bruce C. Mills | Alcohol & zolpidem |
| 224 | 05/27/2008 | San Diego County Superior Court | John M. Thompson | Oxycodone & THC |
| 225 | 05/30/2008 | Fresno County Superior Court | Brian M. Arax | Alcohol |
| 226 | 06/03/2008 | U.S. District Court (Honolulu) | David Alan Ezra | Opioids, multi drugs |
| 227 | 06/27/2008 | Tulare Co. Superior Ct. (Tulare) | Gary M. Johnson | Alcohol |
| 228 | 07/03/2008 | Alameda Co. Sup. Ct. (Fremont) | Keith H. Fudenna | Alcohol |
| 229 | 08/08/2008 | Deposition No. 32 | | Alcohol, THC, driving |
| 230 | 08/18/2008 | U.S. District Court (Fresno) | Lawrence J. O'Neill | Alcohol |
| 231 | 08/20/2008 | San Luis Obispo Co. Superior Ct. | Jac Crawford | Alcohol |
| 232 | 08/22/2008 | Fresno County Superior Court | Edward Sarkisian Jr. | Alcohol |
| 233 | 09/05/2008 | San Luis Obispo Co. Superior Ct. | Jac Crawford | Alcohol |
| 234 | 09/12/2008 | Deposition No. 33 | | Alcohol |
| 235 | 09/16/2008 | Fresno County Superior Court | Mark W. Snauffer | Alcohol |
| 236 | 09/18/2008 | Tulare Co. Superior Ct. (Tulare) | Gary M. Johnson | THC & driving |
| 237 | 09/22/2008 | Alameda Co. Sup. Ct. (Hayward) | Julia Spain | Alcohol |
| 238 | 10/08/2008 | San Diego Co. Sup. Ct. (El Cajon) | Lantz Lewis | $R_x$ drugs & driving |
| 239 | 10/14/2008 | Alameda Co. Sup. Ct. (Hayward) | Winton McKibben | Alcohol |
| 240 | 10/14/2008 | Alameda Co. Sup. Ct. (Hayward) | Robert K. Durtz | Alcohol |
| 241 | 10/20/2008 | San Luis Obispo Co. Superior Ct. | Jac Crawford | Alcohol |
| 242 | 10/27/2008 | Tulare County Superior Court | Darryl B. Ferguson | Alcohol |
| 243 | 11/07/2008 | Fresno County Superior Court | Edward Sarkisian Jr. | Alcohol & cocaine |
| 244 | 11/25/2008 | Alameda Co. Sup. Ct. (Fremont) | Kathleen M. Banke | Alcohol |
| 245 | 12/01/2008 | Alameda Co. Sup. Ct. (Hayward) | Julia Spain | Methamphetamine |

*California, except as noted     **Visalia, except as noted

Telephone & Fax: (559) 435-4447
P.O. Box 14084 • Fresno, CA 93650
abarbour@lightspeed.net

| No. | Date | Venue* | Judge | Subject |
|-----|------|--------|-------|---------|
| 246 | 12/02/2008 | Fresno County Superior Court | Carlos A. Cabrera | Alcohol & Cocaine |
| 247 | 12/16/2008 | Deposition No. 34 | | Alcohol |
| 248 | 01/15/2009 | Tulare County Superior Court** | James Hollman | Contraband weight |
| 249 | 01/23/2009 | Alameda Co. Sup. Ct. (Hayward) | Julia Spain | Alcohol |
| 250 | 02/11/2009 | Alameda Co. Sup. Ct. (Hayward) | Henry Ramsey Jr. | Alcohol |
| 251 | 02/23/2009 | LA Co. Superior Ct. (Pasadena) | C. Edward Simpson | Alcohol |
| 252 | 02/25/2009 | Fresno County Superior Court | Hilary A. Chittick | Alcohol |
| 253 | 03/13/2009 | Tulare Co. Superior Ct. (Tulare) | Walter L. Gorelick | Benzodiazepines |
| 254 | 03/30/2009 | Alameda Co. Sup. Ct. (Oakland) | Stuart Wing | Alcohol |
| 255 | 04/06/2009 | Alameda Co. Sup. Ct. (Hayward) | Kenneth R. Kingsbury | Alcohol |
| 256 | 05/08/2009 | Fresno County Superior Court | Carlos A. Cabrera | Alcohol |
| 257 | 05/20/2009 | Kern County Superior Court | William D. Palmer | Alcohol |
| 258 | 06/04/2009 | Deposition No. 35 | | Alcohol |
| 259 | 06/11/2009 | Deposition No. 36 | | Clinical lab practice |
| 260 | 07/20/2009 | Fresno County Superior Court | James Opplinger | Alcohol |
| 261 | 07/27/2009 | Fresno County Superior Court | Denise L. Whitehead | Alcohol |
| 262 | 07/30/2009 | San Luis Obispo Co. Superior Ct. | Michael L. Duffy | Morphine, THC |
| 263 | 08/10/2009 | Fresno County Superior Court | Wayne Ellison | Methamphetamine |
| 264 | 09/14/2009 | Alameda Co. Sup. Ct. (Hayward) | Michael Gaffey | Alcohol |
| 265 | 09/24/2009 | Alameda Co. Sup. Ct. (Oakland) | Rhonda Burgess | Alcohol |
| 266 | 09/29/2009 | Fresno County Superior Court | Gary R. Orozco | Alcohol |
| 267 | 10/06/2009 | Alameda Co. Sup. Ct. (Hayward) | Roy Hashimoto | Alcohol |
| 268 | 10/07/2009 | Fresno County Superior Court | John F. Vogt | Alcohol |
| 269 | 10/07/2009 | Fresno County Superior Court | Robert H. Oliver | Alcohol |
| 270 | 11/02/2009 | Alameda Co. Sup. Ct. (Oakland) | Carrie Panetta | Alcohol |
| 271 | 11/20/2009 | Deposition No. 37 | | Alcohol |
| 272 | 12/01/2009 | Fresno County Superior Court | Mark W. Snauffer | Alcohol |
| 272 | 12/21/2009 | Alameda Co. Sup. Ct. (Hayward) | Julia Spain | Methamphetamine |
| 274 | 1/12-13/'10 | Tulare County Superior Court | Joseph F. Kalashian | Alcohol & THC |
| 275 | 01/26/2010 | Alameda Co. Sup. Ct. (Hayward) | Carlos G. Ynostrosa | Alcohol |
| 276 | 02/14/2010 | Alameda Co. Sup. Ct. (Hayward) | Dan Grimmer | Alcohol |
| 277 | 02/08/2010 | Deposition No. 38 | | Alcohol |
| 278 | 02/23/2010 | Fresno County Superior Court | Robert H. Oliver | Alcohol |
| 279 | 02/24/2010 | Contra Costa Co. Superior Ct. | Bruce C. Mills | Alcohol |
| 280 | 02/25/2010 | Alameda Co. Sup. Ct. (Oakland) | Yvonne Gonzalez-Rogers | Alcohol |





# ALAN D BARBOUR, PhD, CLB (Ret.)

*Fellow of The Chartered Society
of Forensic Sciences*

Consulting Forensic Toxicologist
Forensic Toxicology • Blood Alcohols • Mass Spectrometry

## APPEARANCES

| No. | Date | Venue* | Judge | Subject |
|-----|------|--------|-------|---------|
| 281 | 03/01/2010 | Kings County Grand Jury | | Alcohol, OTC Drugs |
| 282 | 03/22/2010 | Fresno County Superior Court | Wayne R. Ellison | Alcohol |
| 283 | 03/30/2010 | U.S. District Court (Anchorage) | Ralph R. Beistline | Medical lab practice |
| 284 | 04/07/2010 | Alameda Co. Sup. Ct. (Hayward) | Michael Gaffey | Alcohol, Rx drugs |
| 285 | 04/16/2010 | Arbitration (Oakland) | Charles Askin, Arb. | THC |
| 286 | 05/20/2010 | Merced County Superior Court | Carol Ash | Methamphetamine |
| 287 | 6/4&7/'10 | Fresno County Superior Court | Robert H. Oliver | Alcohol |
| 288 | 06/10/2010 | Alameda Co. Sup. Ct. (Hayward) | Carlos G. Ynostrosa | Alcohol |
| 289 | 06/15/2010 | U.S. District Court (Fresno) | Oliver W. Wanger | THC |
| 290 | 06/25/2010 | Fresno County Superior Court | James Opplinger | Alcohol |
| 291 | 07/14/2010 | Deposition No. 39 | | UDS lab practice |
| 292 | 07/15/2010 | Alameda Co. Sup. Ct. (Hayward) | Dan Grimmer | Alcohol |
| 293 | 07/30/2010 | Sonoma County Superior Court | Gary A. Medvigy | Alcohol & Benedryl |
| 294 | 08/02/2010 | Madera County Superior Court | Roger Wayne | Rx drugs DUI |
| 295 | 08/04/2010 | Fresno County Superior Court | Arlan L. Harrell | Alcohol |
| 296 | 08/04/2010 | Monterey Co. Sup. Ct. (Salinas) | Larry E. Hayes | Drug Screen |
| 297 | 08/27/2010 | Tulare Co. Superior Ct. (Tulare) | Bret D. Hillman | DUI Valium |
| 298 | 09/15/2010 | Kings County Superior Court | James LaPorte | THC |
| 299 | 10/01/2010 | Fresno County Superior Court | Jon N. Kapetan | Alcohol |
| 300 | 10/04/2010 | Fresno County Superior Court | W. Kent Hamlin | Alcohol |
| 301 | 11/02/2010 | Fresno County Superior Court | Edward Sarkisian, Jr. | MDMA |
| 302 | 12/13/2010 | Merced County Superior Court | Carol Ash | Rx drugs DUI |
| 303 | 01/24/2011 | Fresno County Superior Court | Don D. Penner | Alcohol |
| 304 | 02/09/2011 | Alameda Co. Sup. Ct. (Hayward) | Dan Grimmer | Alcohol |
| 305 | 02/14/2011 | Fresno County Superior Court | Edward Sarkisian, Jr. | Alcohol, MDMA |
| 306 | 02/14/2011 | Fresno County Superior Court | James M. Petrucelli | Alcohol |
| 307 | 02/16/2011 | Alameda Co. Sup. Ct. (Hayward) | Dan Grimmer | Alcohol |
| 308 | 02/22/2011 | Tulare Co. Superior Ct. (Tulare) | Walter L. Gorelick | Alcohol |
| 309 | 02/24/2011 | Fresno County Superior Court | Jonathan B. Conklin | Alcohol & THC |
| 310 | 03/10/2011 | Deposition No. 40 | | Alcohol |
| 311 | 03/11/2011 | Tulare Co. Superior Ct. (Visalia) | Joseph A. Kalashian | Alcohol |
| 312 | 03/29/2011 | Stanislaus Co. Sup. Ct. (Modesto) | Roger M. Beauchsne | Alcohol |
| 313 | 05/02/2011 | Alameda Co. Sup. Ct. (Hayward) | Roy Hashimoto | Alcohol |
| 314 | 05/17/2011 | Sacramento Co. Superior Ct. | Greta Curtis Fall | Zolpidem DUI |
| 315 | 06/02/2011 | Fresno County Superior Court | Rosendo Peña | Alcohol, MDMA |

*\*California, except as noted     \*\*Visalia, except as noted*

Telephone & Fax: (559) 435-4447
P.O. Box 14084 • Fresno, CA 93650
abarbour@lightspeed.net

|  | Date | Venue* | Judge | Subject |
|---|---|---|---|---|
| 316 | 06/06/2011 | Tulare County Superior Court** | Joseph A. Kalashian | THC DUI |
| 317 | 06/07/2011 | Deposition No. 41 | | Alcohol & THC |
| 318 | 06/15/2011 | Alameda Co. Sup. Ct.(Pleasanton) | Christine Moruza | Alcohol THC HC DUI |
| 319 | 06/21/2011 | Fresno County Superior Court | Gary R. Orozco | Alcohol |
| 320 | 06/23/2011 | Tulare County Superior Court | Joseph A. Kalashian | THC DUI |
| 321 | 6/27-8/'11 | Alameda Co. Sup. Ct. (Oakland) | Paul Delucchi | Alcohol |
| 322 | 07/15/2011 | Tulare Co. Superior Ct. (Tulare) | Gary Johnson | Alcohol |
| 323 | 07/26/2011 | Deposition No. 42 | | Alcohol |
| 324 | 08/04/2011 | Tulare County Superior Court | Joseph A. Kalashian | THC DUI |
| 325 | 8/25-26/'11 | Tulare County Superior Court | Joseph A. Kalashian | THC DUI |
| 326 | 09/16/2011 | Alameda Co. Sup. Ct. (Hayward) | Julia Spain | Alcohol |
| 327 | 09/23/2011 | Fresno County Superior Court | Timothy Kams | Alcohol |
| 328 | 10/14/2011 | Fresno County Superior Court | Hilary A. Chittick | Alcohol & Benzos |
| 329 | 10/21/2011 | Tulare Co. Superior Ct. (Tulare) | Walter L. Gorelick | ABO Typing |
| 330 | 10/27/2011 | Alameda Co. Sup. Ct. (Hayward) | Kevin Murphy | Alcohol |
| 331 | 11/02/2011 | Alameda Co. Sup. Ct. (Hayward) | Michael Gaffey | Alcohol |
| 332 | 11/07/2011 | Alameda Co. Sup. Ct. (Oakland) | Philip V. Sarkisian | Alcohol |
| 333 | 11/21/2011 | Kings County Superior Court | Thomas DeSantos | Alcohol  & Meth |
| 334 | 11/28/2011 | Kern County Superior Court | David R. Lampe | Methamphetamine |
| 335 | 11-30/12-1 | Fresno County Superior Court | James M. Petrucelli | Alcohol |
| 336 | 12/05/2011 | Fresno County Superior Court | Don D. Penner | Alcohol & Meth |
| 337 | 12/07/2011 | Alameda Co. Sup. Ct. (Oakland) | Carl W. Morris | Alcohol |
| 338 | 12/09/2011 | Kings County Superior Court | Steven Barnes | Alcohol |
| 339 | 12/14/2011 | Deposition No. 43 | | Alcohol |
| 340 | 12/22/2011 | Fresno County Superior Court | Houry A. Sanderson | Alcohol & Cocaine |
| 341 | 01/09/2012 | Alameda Co. Sup. Ct. (Oakland) | Gordon S. Baranco | Alcohol |
| 342 | 01/18/2012 | Fresno County Superior Court | Jane A. Cardoza | Alcohol |
| 343 | 01/27/2012 | Fresno County Superior Court | Jon N. Kapetan | Alcohol |
| 344 | 01/31/2012 | Alameda Co. Sup. Ct. (Hayward) | Julia A. Spain | Alcohol |
| 345 | 01/31/2012 | Alameda Co. Sup. Ct. (Hayward) | Dan Grimmer | Alcohol |
| 346 | 02/08/2012 | San Benito Co. Superior Court | Robert A. O'Farrell | Alcohol |
| 347 | 03/02/2012 | Tulare County Superior Court | Gary L. Paden | Alcohol |
| 348 | 03/16/2012 | Merced County Superior Court | John D. Kirihara | DUI $R_x$ Drugs |
| 349 | 04/16/2012 | Alameda Co. Sup. Ct. (Oakland) | Carl W. Morris | Alcohol |
| 350 | 05/16/2012 | Alameda Co. Sup. Ct.(Pleasanton) | Jacob Blea III | Alcohol |




# ALAN D BARBOUR, PhD, CLB (Ret.)

*Fellow of The Chartered Society
of Forensic Sciences*

Consulting Forensic Toxicologist
Forensic Toxicology • Blood Alcohols • Mass Spectrometry

## APPEARANCES

| No. | Date | Venue | Judge | Subject |
|-----|------|-------|-------|---------|
| 351 | 05/18/2012 | Fresno County Superior Court | W. Kent Hamlin | Alcohol |
| 352 | 06/19/2012 | Alameda Co. Sup. Ct. (Hayward) | Roy Hashimoto | Alcohol |
| 353 | 06/29/2012 | Fresno County Superior Court | M. Bruce Smith | Alcohol |
| 354 | 07/09/2012 | Alameda Co. Sup. Ct. (Oakland) | Armando G. Cuellar Jr. | Alcohol & THC DUI |
| 355 | 07/12/2012 | Alameda Co. Sup. Ct. (Oakland) | Armando G. Cuellar Jr. | Alcohol |
| 356 | 08/01/2012 | Fresno County Superior Court | Donald S. Black | Alcohol & THC DUI |
| 357 | 08/06/2012 | Alameda Co. Sup. Ct. (Oakland) | Carl W. Morris | Alcohol |
| 358 | 08/08/2012 | Alameda Co. Sup. Ct. (Oakland) | Charles A. Smiley | Alcohol |
| 359 | 08/14/2012 | Alameda Co. Sup. Ct. (Hayward) | Julia A. Spain | Alcohol |
| 360 | 08/16/2012 | Fresno County Superior Court | Gary R. Orozco | Alcohol |
| 361 | 08/30/2012 | Madera County Superior Court | Ernest Licalsi | Methamphetamine |
| 362 | 08/30/2012 | U.S. District Court (Fresno) | Anthony W. Ishii | Alcohol |
| 363 | 09/05/2012 | Fresno County Superior Court | Jeffrey Y. Hamilton Jr. | Alcohol |
| 364 | 09/07/2012 | Tulare County Superior Court | Gary L. Paden | Alcohol |
| 365 | 09/13/2012 | Fresno County Superior Court | Edward Sarkisian Jr. | EtOH, $R_x$ & PTSD |
| 366 | 09/26/2012 | Fresno County Superior Court | Denise L. Whitehead | EtOH, $R_x$ & DUI |
| 367 | 09/27/2012 | Fresno County Superior Court | Jeffrey Y. Hamilton Jr. | Alcohol |
| 368 | 10/10/2012 | Fresno County Superior Court | Wayne R. Ellison | Alcohol |
| 369 | 10/17/2012 | Fresno County Superior Court | Gary R. Orozco | Alcohol |
| 370 | 10/23/2012 | Alameda Co. Sup. Ct. (Oakland) | Andria K. Tichey | Alcohol |
| 371 | 10/25/2012 | Fresno County Superior Court | Denise L. Whitehead | Methamphetamine |
| 372 | 10/25/2012 | Tulare County Superior Court | Gary L. Paden | THC DUI |
| 373 | 11/01/2012 | Fresno County Superior Court | Valeriano Saucedo | Methamphetamine |
| 374 | 11/02/2012 | Fresno County Superior Court | David C. Kalemkarian | THC DUI |
| 375 | 11/06/2012 | Madera County Superior Court | Ernest Licalsi | Alcohol |
| 376 | 12/14/2012 | San Joaquin Co. Superior Ct. | Bernard J. Garber | Alcohol & drug screen |
| 377 | 01/09/2013 | San Diego Co. Superior Court | Francis M. Devaney | THC DUI |
| 378 | 1/23-24/13 | U.S. District Court (Fresno) | Anthony W. Ishii | Alcohol & drug screen |
| 379 | 01/30/2013 | Alameda Co. Sup. Ct. (Hayward) | Julia A. Spain | Alcohol |
| 380 | 2/5-6/2013 | Alameda Co. Sup. Ct. (Hayward) | Julia A. Spain | Alcohol |
| 381 | 02/21/2013 | Alameda Co. Sup. Ct.(Pleasanton) | Jacob Blea III | Alcohol |
| 382 | 02/21/2013 | Alameda Co. Sup. Ct. (Oakland) | Kimberly M. Briggs | Alcohol |
| 383 | 02/28/2013 | Fresno County Superior Court | Glenda Allen-Hill | Methamphetamine |
| 384 | 03/01/2013 | Deposition No. 44 | | Alcohol & drugs |
| 385 | 03/07/2013 | Solano Co. Sup. Ct. (Vallejo) | Ramona J. Garrett | Alcohol |

*California, except as noted   **Visalia, except as noted

Telephone & Fax: (559) 435-4447
P.O. Box 14084 • Fresno, CA 93650
abarbour@lightspeed.net

| No. | Date | Venue* | Judge | Subject |
|-----|------|--------|-------|---------|
| 386 | 03/18/2013 | Fresno County Superior Court | Hilary A. Chittick | Alcohol, PCP, THC |
| 387 | 03/19/2013 | San Mateo County Grand Jury | | Alcohol & Drugs |
| 388 | 03/21/2013 | Fresno County Superior Court | Jeffrey J. Hamilton Jr. | Alcohol |
| 389 | 04/10/2013 | Fresno County Superior Court | Donald S. Black | Alcohol |
| 390 | 04/11/2013 | Madera County Superior Court | Nancy C. Staggs | THC DUI |
| 391 | 05/02/2013 | Fresno County Superior Court | Hilary A. Chittick | Alcohol |
| 392 | 05/22/2013 | Fresno County Superior Court | M. Bruce Smith | THC DUI |
| 393 | 06/05/2013 | Fresno County Superior Court | Don D. Penner | Alcohol |
| 394 | 06/04/2013 | Fresno County Superior Court | John F. Vogt | Alcohol |
| 395 | 07/05/2013 | San Joaquin Co. Superior Ct. | Richard Mallett | EtOH & Benadryl |
| 396 | 07/25/2013 | Alameda Co. Sup. Ct. (Hayward) | Roy Hashimoto | Alcohol |
| 397 | 08/06/2013 | Fresno County Superior Court | Jonathan B. Conklin | Alcohol |
| 398 | 08/22/2013 | Alameda Co. Sup. Ct. (Oakland) | Thomas M. Reardon | Alcohol & cocaine |
| 399 | 08/29/2013 | San Diego Co. Superior Court | Edward P. Allard III | THC DUI |
| 400 | 09/05/2013 | Deposition No. 45 | | |
| 401 | 10/23/2013 | Fresno County Superior Court | Jane A. Cardoza | Alcohol |
| 402 | 10/31/2013 | Fresno County Superior Court | M. Bruce Smith | Alcohol |
| 403 | 11/4-5/13 | Alameda Co. Sup. Ct. (Oakland) | Scott Patton | Alcohol |
| 404 | 11/14/2013 | Fresno County Superior Court | Dennis A. Peterson | Alcohol |
| 405 | 11/15/2013 | Tulare County Superior Court | Walter L.Gorelick | $R_x$ DUI |
| 406 | 12/10/2013 | U.S. District Court (Fresno) | Barbara A. McAuliffe | Alcohol & THC |
| 407 | 01/08/2014 | U.S. District Court (Fresno) | Michael J. Sent | Meth DUI |
| 408 | 01/09/2014 | U.S. District Court (Fresno) | Stanley A. Boone | THC |
| 409 | 01/10/2014 | Madera County Superior Court | Nancy C. Staggs | THC & Alcohol DUI |
| 410 | 02/13/2014 | Tulare County Superior Court | Darryl B. Ferguson | Benzodiazepines |
| 411 | 02/18/2014 | U.S. District Court (Fresno) | Anthony W. Ishii | THC |
| 412 | 02/20/2014 | Fresno County Superior Court | Brian Alvarez | Alcohol |
| 413 | 03/19/2014 | Alameda Co. Sup. Ct. (Oakland) | Jon R. Rolefson | Alcohol |
| 414 | 03/25/2014 | Fresno County Superior Court | Mark Snauffer | Alcohol |
| 415 | 03/27/2014 | San Joaquin Co. Grand Jury | | Drug screen/EtOH |
| 416 | 3/28 & 4/1 | Alameda Co. Sup. Ct. (Oakland) | Tara Desaultels | Alcohol |
| 417 | 04/01/2014 | Alameda Co. Sup. Ct. (Oakland) | Ursula Jones Dickson | Alcohol |
| 418 | 04/04/2014 | Fresno County Superior Court | Jeffrey Y. Hamilton Jr. | THC & EtOH DUI |
| 419 | 04/16/2014 | Santa Cruz Co. Superior Court | Paul M. Marigondi | THC DUI |
| 420 | 4/17&4/23-4 | Alameda Co. Sup. Ct. (Oakland) | Kimberly Briggs | Alcohol |





# ALAN D BARBOUR, PhD, CLB (Ret.)

*Fellow of The Chartered Society
of Forensic Sciences*

Consulting Forensic Toxicologist
Forensic Toxicology • Blood Alcohols • Mass Spectrometry

## APPEARANCES

| No. | Date | Venue* | Judge | Subject |
|-----|------|--------|-------|---------|
| 421 | 05/01/2014 | Fresno County Superior Court | Jane A. Cardoza | Alcohol |
| 422 | 05/07/2014 | Fresno County Superior Court | Mark Snauffer | Alcohol |
| 423 | 05/20/2014 | Fresno County Superior Court | Wayne Ellison | Alcohol |
| 424 | 5/28-9/2014 | Kings County Superior Court | Michael J. Reinhart | Alcohol |
| 425 | 06/16/2014 | Kings County Superior Court | Steven D. Barnes | Pruno |
| 426 | 06/17/2014 | U.S. District Court (Fresno) | Barbara A. McAuliffe | THC |
| 427 | 06/20/2014 | Fresno County Superior Court | Hilary A. Chittick | Alcohol |
| 428 | 06/25/2014 | San Diego Co. Superior Ct. (Vista) | Richard R. Monroy | THC DUI |
| 429 | 07/10/2014 | San Diego Co. Sup. Ct. (Chula Vista) | Edward P. Allard III | THC DUI |
| 430 | 07/14/2014 | Kings County Superior Court | Robert Shane Burns | Pruno |
| 431 | 07/17/2014 | Siskiyou County Superior Court | Karen L. Dixon | Alcohol & drug screen |
| 432 | 07/18/2014 | Deposition No. 46 | | Alcohol & Meth |
| 433 | 07/21/2014 | Fresno County Superior Court | James M. Petrucelli | Alcohol |
| 434 | 08/12/2014 | Stanislaus Co. Sup. Ct. (Modesto) | Linda A. McFadden | Opiates |
| 435 | 08/28/2014 | San Diego Co. Sup. Ct. (El Cajon) | Larrie R. Brainard | THC DUI |
| 436 | 09/03/2014 | Alameda Co. Sup. Ct. (Oakland) | Ursula Jones Dickson | THC/Alcohol DUI |
| 437 | 09/16/2014 | Alameda Co. Sup. Ct. (Oakland) | C. Don Clay | Alcohol |
| 438 | 09/17/2014 | Fresno County Superior Court | Alan M. Simpson | Alcohol |
| 439 | 10/02/2014 | Madera County Superior Court | Joseph A. Soldani | THC DUI |
| 440 | 11/12 & 13 | Alameda Co. Sup. Ct. (Fremont) | Keith H. Fudenna | Alcohol |
| 441 | 12/19/2014 | San Luis Obispo Co. Sup. Court | Jacquelyn H. Duffy | Alcohol |
| 442 | 01/22/2015 | Deposition No. 47 | | Rx DUI |
| 443 | 01/23/2015 | Fresno County Superior Court | Edward Sarkisian, Jr. | Alcohol |
| 444 | 04/13/2015 | U.S. District Court (Fresno) | Anthony W. Ishii | THC |
| 445 | 04/20/2015 | Fresno County Superior Court | Jonathan Skiles | Alcohol |
| 446 | 05/07/2015 | San Diego County Superior Court | David M.Gill | Rx DUI vs.medical |
| 447 | 05/21/2015 | San Mateo County Superior Court | Susan Irene Etezadi | Meth, PCP & Alcohol |
| 448 | 06/02/2015 | Napa County Superior Court | Diane M. Price | Postmortem drugs,EtOH |
| 449 | 06/08/2015 | CA Board of Reg. Nursing (Sacto) | Erin Koch-Goodman | Alcohol |
| 450 | 07/24/2015 | Stanislaus Co. Sup. Ct. (Modesto) | Roger M. Beauchesne | Alcohol |
| 451 | 07/30/2015 | San Diego County Sup. Ct. (Vista) | K. Michael Kirkman | Rx DUI |
| 452 | 08/03/2015 | Alameda Co. Sup. Ct. (Oakland) | Kimberly Briggs | Alcohol |
| 453 | 08/19/2015 | Fresno County Superior Court | Arlan L. Harrell | Alcohol |
| 454 | 09/21/2015 | Alameda Co. Sup. Ct. (Hayward) | Jo-Lynne Lee | Alcohol |
| 455 | 10/01/2015 | San Diego County Sup. Ct. (Vista) | Brad A. Weinreb | Ambien DUI |

*\*California, except as noted*                    *\*\*Visalia, except as noted*

Telephone & Fax: (559) 435-4447
P.O. Box 14084 • Fresno, CA 93650
abarbour@lightspeed.net

| No. | Date | Venue* | Judge | Subject |
|-----|------|--------|-------|---------|
| 456 | 10/21/2015 | Alameda Co. Sup. Ct. (Fremont) | Richard O. Keller | Alcohol |
| 457 | 10/27/2015 | Fresno County Superior Court | Timothy Kams | Alcohol |
| 458 | 11/23/2015 | Alameda Co. Sup. Ct. (Oakland) | Mark A. McCannon | Alcohol |
| 459 | 11/24/2015 | Fresno County Superior Court | Timothy Kams | Alcohol |
| 460 | 12/03/2015 | San Diego Co. Sup. Ct. (El Cajon) | Larrie R. Brainerd | THC |
| 461 | 12/11/2015 | Tulare County Superior Court** | Walter L. Gorelick | Alcohol |
| 462 | 12/14/2015 | Stanislaus Co. Sup. Ct. (Modesto) | Linda A. McFadden | Alcohol |
| 463 | 01/12/2016 | San Francisco Superior Court | Anne-Christine Massulo | Meth |
| 464 | 02/04/2016 | Alameda Co. Sup. Ct. (Oakland) | Paul D. Herbert | Alcohol |
| 465 | 02/11/2016 | Alameda Co. Sup. Ct. (Hayward) | Jo-Lynne Lee | Alcohol & THC |
| 466 | 2/22/2016 | Alameda Co. Sup. Ct. (Oakland) | Paul D. Herbert | Alcohol |
| 467 | 02/24/2016 | Deposition No. 48 | | |
| 468 | 02/25/2016 | Alameda Co. Sup. Ct. (Hayward) | Jo-Lynne Lee | Alcohol & drugs |
| 469 | 03/10/2016 | San Diego Sup. Ct. (El Cajon) | Evan P. Kirvin | Drugs & hypokalemia |
| 470 | 03/23/2016 | Alameda Co. Sup. Ct. (Fremont) | Gerald Nadler | Alcohol |
| 471 | 4/12-13/'16 | Alameda Co. Sup. Ct. (Oakland) | Allison M. Tucher | Alcohol |
| 472 | 4/13&15/'16 | Alameda Co. Sup. Ct. (Oakland) | Thomas E. Stevens | Alcohol |
| 473 | 04/14/2016 | San Diego Co. Superior Court | Jefferey F. Fraser | THC |
| 474 | 04/19/2016 | Alameda Co. Sup. Ct. (Oakland) | Allison M. Tucher | Alcohol |
| 475 | 04/20/2016 | San Diego Sup. Ct. (Chula Vista) | Francis M. Devaney | Drug DUI |
| 476 | 04/29/2016 | Alameda Co. Sup. Ct. (Fremont) | Richard Keller | Alcohol & cocaine |
| 477 | 05/19/2016 | Kings Co. Superior Court | Donna Tarter | Meth & heroin |
| 478 | 05/31/2016 | San Mateo Sup. Ct. (Rdwd. City) | Leland Davis III | Rx & Alcohol |
| 479 | 06/07/2016 | Fresno Co. Superior Court | Jonathan B. Conklin | Alcohol & THC |
| 480 | 06/08/2016 | Lake County Superior Court | Andrew S. Blum | Alcohol & drugs |
| 481 | 06/16/2016 | San Diego Co. Superior Court | Laura W. Halgren | Alcohol & THC |
| 482 | 07/07/2016 | Alameda Co. Sup. Ct. (Oakland) | Thomas E. Stevens | Alcohol |
| 483 | 07/14/2016 | Humboldt County Superior Court | Marilyn B. Miles | Alcohol & Meth |
| 484 | 07/26/2016 | Deposition No. 49 | | THC |
| 485 | 08/01/2016 | Alameda Co. Sup. Ct. (Oakland) | C. Don Clay | Drug screen |
| 486 | 8/10-12/16 | Alameda Co. Sup. Ct. (Oakland) | Mark A. McCannon | Alcohol |
| 487 | 08/19/2016 | Alameda Co. Sup. Ct. (Fremont) | Thomas J. Nixon | Alcohol & THC |
| 488 | 08/24/2016 | Fresno County Superior Court | Dennis A. Peterson | Alcohol |
| 489 | 08/25/2016 | San Joaquin Co. Superior Court | Xaipura B. Villapudua | Alcohol |
| 490 | 09/22/2016 | Santa Barbara Co. Superior Court | Thomas P. Anderle | Alcohol & drugs |
| 491 | 10/18/2016 | Kings County Grand Jury | | Pruno |
| 492 | 10/27-28/16 | Alameda Co. Sup. Ct. (Fremont) | Scott Patton | Alcohol |
| 493 | 11/7-8/2016 | Fresno County Superior Court | Houry A. Sanderson | Alcohol & Meth |
| 494 | 11/08/2016 | Fresno County Superior Court | Jonathan B. Conklin | Alcohol |




# ALAN D BARBOUR, PhD, CLB (Ret.)

*Fellow of The Chartered Society*
*of Forensic Sciences*

**Consulting Forensic Toxicologist**
Forensic Toxicology • Blood Alcohols • Mass Spectrometry

## APPEARANCES

| | | | | |
|---|---|---|---|---|
| 495 | 11/18/2016 | Fresno County Superior Court | James M. Petrucelli | Alcohol |
| 496 | 01/20/2017 | Tulare County Superior Court** | Jennifer Shirk | THC & driving |
| 497 | 02/01/2017 | San Diego County Sup. Ct. (Vista) | Harry M. Elias | Alcohol |
| 498 | 02/06/2017 | Fresno County Superior Court | Brian Alvarez | Alcohol |
| 499 | 02/23/2017 | San Diego County Sup. Ct. (Vista) | Blaine K. Bowman | Alcohol |
| 500 | 05/09/2017 | Fresno County Superior Court | Jonathan B. Conklin | Alcohol & Opiates |
| 501 | 05/15/2017 | Fresno County Superior Court | John F. Vogt | Alcohol |
| 502 | 05/24/2017 | Alameda Co. Sup. Ct. (Fremont) | Joseph Hurley | Alcohol |
| 503 | 5/25-26/17 | Fresno County Superior Court | Edward Sarkisian Jr. | Alcohol |
| 504 | 05/31/2016 | Alameda Co. Sup. Ct. (Oakland) | Allison M. Tucher | Alcohol |
| 505 | 06/01/2017 | Alameda Co. Sup. Ct. (Oakland) | Mark A. McCannon | Alcohol |
| 506 | 07/20/2017 | Tehama Co. Sup. Ct. (Red Bluff) | Matthew C. McGlynn | Alcohol & Meth |
| 507 | 08/11/2017 | Fresno County Superior Court | Edward Sarkisian Jr. | Alcohol |
| 508 | 10/3-4/2017 | Fresno County Superior Court | Timothy Kams | Alcohol & THC |
| 509 | 10/25/2017 | Fresno County Superior Court | Timothy Kams | Alcohol |
| 510 | 11/30/2017 | Alameda Co. Sup. Ct. (Fremont) | Margaret J. Fujioka | Alcohol |
| 511 | 12/07/2017 | Fresno County Superior Court | John F. Vogt | Alcohol |
| 512 | 12/15/2017 | Alameda Co. Sup. Ct. (Fremont) | Margaret J. Fujioka | Alcohol |
| 513 | 12/20/2017 | Fresno County Superior Court | James M. Petrucelli | Alcohol |
| 514 | 01/25/2018 | Humboldt County Superior Court | Christopher G. Wilson | Alcohol & Meth |
| 515 | 01/31/2018 | Fresno County Superior Court | John F. Vogt | Alcohol & THC |
| 516 | 02/06/2018 | Madera County Superior Court | Joseph A. Soldani | Alcohol |
| 517 | 02/14/2018 | Madera County Superior Court | Joseph A. Soldani | Alcohol |
| 518 | 02/15/2018 | San Joaquin Co. Superior Court | Richard Mallett | Alcohol & Cocaine |
| 519 | 03/12/2018 | Alameda Co. Sup. Ct. (Dublin) | Roy Hashimoto | Alcohol |
| 520 | 07/10/2018 | U.S. District Court (Fresno) | Stanley A. Boone | Cocaine |
| 521 | 09/26/2018 | Kern County Superior Court | Kenneth C.Twisselman II | THC DUI |
| 522 | 10/16/2018 | Madera County Superior Court | Mitchell C. Rigby | THC DUI |
| 523 | 04/25/2019 | Deposition No. 50 | | DUI Drugs & Alcohol |
| 524 | 06/03/2019 | Los Angeles Co. Superior Court | Robert S. Draper | DUI Drugs & Alcohol |
| 525 | 08/20/2019 | Multnomah Co. OR Circuit Court | Jerry Hodson | Ethyl Sulfate |
| 526 | 03/04/2021 | Santa Barbara Sup. Ct. (Santa Maria) | James F. Iwasko | Alcohol DUI |
| 527 | | | | |
| 528 | | | | |
| 529 | | | | |
| 530 | | | | |
| 531 | | | | |
| 532 | | | | |
| 533 | | | | |
| 534 | | | | |

*California, except as noted     **Visalia, except as noted*

Telephone & Fax: (559) 435-4447
P.O. Box 14084 • Fresno, CA 93650
abarbour@lightspeed.net




**ALAN D BARBOUR, PhD, CLB (Ret)**
*Fellow of The Chartered Society
of Forensic Sciences*

Consulting Forensic Toxicologist
Forensic Toxicology " Blood Alcohols " Mass Spectrometry

**Inspection and evaluation of clinical and toxicology laboratory records**
**Testimony, specializing in drug and alcohol tests and their interpretation**
**Analysis of hypothetical drinking histories**

More than forty years' experience in forensic toxicology and clinical laboratory science. Fully qualified to direct clinical laboratories, forensic toxicology laboratories, and SAMHSA certified employment drug screening laboratories. Recognized as an expert in more than five hundred Justice, Municipal, Superior and U.S. District Court cases to date. Wide-ranging experience in developing new tests, writing procedure manuals, trouble-shooting existing procedures, demographic studies, quality assurance and record keeping in both clinical and forensic laboratories. International consulting practice.

## PROFESSIONAL CREDENTIALS

B.S. With Distinction and honors in chemistry, San Jose State College
Ph.D. in physical organic chemistry, University of California at Santa Cruz
Clinical Laboratory Director (U.S. Department of Health, Education & Welfare)
Clinical Chemist (National Registry in Clinical Chemistry)
Forensic Alcohol Supervisor (State of California)
Clinical Laboratory Bioanalyst (State of California, CLIA Laboratory Director)
Breath Alcohol Technician, Instructor (U.S. Department of Transportation)
Diplomate, American Board of Forensic Examiners
Fellow, American College of Forensic Examiners
Fellow, The Chartered Society of Forensic Sciences

## PUBLICATIONS

"Another Case of Postmortem Electrolytic Synthesis of Methamphetamine." *Bulletin of the International Association of Forensic Toxicologists* **XXXVII** (3), 47 (2007).
"Industrial Accident: *In Morte* Electrolytic Synthesis of Methamphetamine." *Bulletin of the International Association of Forensic Toxicologists* **XXXIII** (2), 28 (2003).
"Simplified Estimation of Widmark "r" Values by the Method of Forrest." *Science & Justice* **41**(1): 53-54 (2001).
"Death After Extraordinary Methamphetamine Overdose Following Apparent Cocaine Binge." *Bulletin of the International Association of Forensic Toxicologists* **XXXI** (1), 8-9 (2001).
"Phencyclidine, Alcohol, and Driving Under the Influence." *Bulletin of the International Association of Forensic Toxicologists* **XXX** (1), 15-17 (2000).
"Simultaneous Extraction of Cocaine and its Metabolites With Diatomaceous Earth Columns and Derivatisation with DMF Dialkyl Acetals." *Bulletin of the International Association of Forensic Toxicologists* **XXX** (1), 13-15 (2000).
"Suicidal Overdose of Doxylamine." *Bulletin of the International Association of Forensic Toxicologists* **XXIX** (3), 5 (1999).
"Toxicology and Drug Screening." Laboratory Procedures for Medical Office Personnel, C.A. Stepp and M.A. Woods, eds., W.B. Saunders, (1998).
"GC/MS Analysis of Propylated Barbiturates." *Journal of Analytical Toxicology* **15** (4), 214-215 (1991).
"California Association of Toxicologists Home Page." http://www.Cal-Tox.org, 1997-2004
"WWW Virtual Library: Forensic Toxicology." http://www.abarbour.net/vlibft.html
"Alan Barbour's Forensic Toxicology Page." http://www.abarbour.net

## PROFESSIONAL ASSOCIATIONS

The Chartered Society of Forensic Sciences
National Association of Medical Examiners

Telephone & Fax: (559) 435-8259
P.O. Box 14084 • Fresno, CA 93650
abarbour@lightspeed.net





## ALAN D BARBOUR, PhD, CLB (Ret)

*Fellow of The Chartered Society*
*of Forensic Sciences*

Consulting Forensic Toxicologist
Forensic Toxicology • Blood Alcohols • Mass Spectrometry

**Inspection and evaluation of clinical and toxicology laboratory records**
**Testimony, specializing in drug and alcohol tests and their interpretation**
**Analysis of hypothetical drinking histories**

## STANDARD FEES

| | |
|---|---|
| Preliminary Consultations | *gratis* |
| Hourly Rate (portal to portal, eight hours per day maximum charge) | $200 |
| Retainer (applied to final bill) | $400 |
| Telephone, fax, copies | *gratis* |
| Auto mileage (round trip) | IRS rate |
| Other expenses (airfare and lodging paid in advance) | actual cost, GSA rate |

For clearly defined cases flat rates can be negotiated, and for clients of limited means adjustments will be made.  Should the attorney be handling the case on a *pro bono* basis I will similarly remit my fees, but not my costs, should I accept the case.

*Alan D Barbour*

EIN:  77-0382740
CAGE Code:  4QQTØ

Telephone & Fax: (559) 435-8259
P.O. Box 14084 • Pinedale, CA 93650
abarbour@lightspeed.net

United States District Court
Northern District of California
San Jose Division
Case Name: *Dominguez v. City of San Jose, et al.*
Case No.: 5:18-cv-04826 BLF

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, under penalty of perjury, certify and declare:

That I am a citizen of the United States, over 18 years of age, a resident of or employed in the County where the herein described mailing took place, and not a party to the within action.

That my business address is 125 S. Market Street, Suite 1200, San Jose, California 95113-2288.

That on behalf of John Kevin Crowley, I served the foregoing document(s) described as:

**PLAINTIFFS' REBUTTAL EXPERT WITNESS DISCLOSURE**

on the following person(s) in this action, via U.S. Mail & e-mail transmission, as set forth below:

Marin J. Clouse, Sr. Deputy City Attorney      marin.clouse@sanjoseca.gov
City of San Jose
Office of the City Attorney
200 E. Santa Clara Street, 16th Floor
San Jose, CA 95113-1905

I declare that the above service was made at the direction of a member of the bar of this Court.

Executed on June 18, 2021, at San Jose, California.

Sally M. Wagner

# EXHIBIT 3

# DAVID E. BALASH

FIREARMS EXAMINER * FORENSIC SCIENCE CONSULTANT
41906 Echo Forest Ct. * Canton, Michigan 48188
Phone (734) 981-6788* Fax (734) 981-6459

September 27, 2021

Mr. John Kevin Crowley
Attorney at Law
125 South Market Street
San Jose, California 95113-2288

RE:    Dominquez v. San Jose Police Department, et al
Federal Court - Northern District of California
Case No.: 5:18-cv-04826

The following list of police reports, evidence examinations, photographs, depositions, autopsy protocol, scene visit and video were reviewed by the undersigned and were used as source material for the opinions and conclusions reached in this report.

- 5/21/21      Proposed Stipulated Protective Order, Case No. 5:18-cy-04826-BLF
- 6/8/21       188 pages of police reports on this case
- 6/8/21       109 pages of police reports on this case
- 6/11/21      Flash drive containing;
      Depositions of officers Pena and Lopez
      Scene photographs
      Sweatshirt photographs
      Trajectory photographs
      Officer photographs
      3164 Penitencia Creek home video surveillance
      3158 Penitencia Creek home video surveillance
      Car exterior photographs
      Photographs taken at the Medical Examiner's Office – None during the Autopsy.
      Autopsy Protocol
- 9/3/21       Dropbox link containing;
      575 Photographs taken on this case.
- 9/3/21       San Jose's production of documents – 7 pages
- 9/7/21       Dropbox link containing;
      Officer Pena's video statement
      Scene photographs
      Body camera footage from two officers at the shooting.
- 9/9/21       Fly to San Jose – examine evidence (sweatshirt of Mr. Dominquez, bullet fragments from the autopsy, bullet fragments from the Dominquez vehicle and view the scene. Return to Michigan on 9/10/21.
- 9/9/21       Request to examine the involved Kia, however it was not maintained as evidence by the San Jose Police Department.

1

- 9/10/21     Defendant's Expert reports and disclosures
- 9/24/21     Report on the Fatal Shooting of Jacob Dominquez on 9/15/2017, the County of Santa Clara, Jeffery F. Rosen District Attorney

QUALIFICATIONS FOR OPINION

The opinions and conclusions reached on the above-mentioned shooting are based on the following:

- My review of all the above listed material and evidence.
- My experience as a Michigan State Police Officer for over 25 years rising to the rank of D/Lt. in charge of the Firearms, Tool-Mark and Bombs and Explosive Unit of the MSP Northville Forensic Science Laboratory
- My experience for over 20 years as a member of the Michigan State Police Forensic Science Laboratory in the Firearms Identification, Tool Mark, Bombs and Explosive Unit.
- The examination of hundreds of firearms for safety and function testing prior to firing as well as determining the causes of reported firearm failures.
- My experience with the Michigan State Police as a Crime Scene Analyst participating in and supervising hundreds of crime scene investigations during my years with the department.
- My experience at photographing and collecting evidence at crime scenes while with the Michigan State Police.
- My experience at photographing, participating in and collecting evidence at autopsies for over 20 years.
- Training sessions on crime scene reconstruction both as a member of the Michigan State Police and as a civilian examiner.
- My experience in investigating shooting crime scenes for over 20 years as a member of the Michigan State Police and then continuing to utilize that experience as a self-employed examiner in assessing shooting crime scenes for the past 28+ years.
- My experience at having examined hundreds of shooting victims at crime scenes, autopsies, hospitals and funeral homes.
- My experience at taking and interpreting X-rays in bomb squad work and training as well as at using and interpreting X-rays at crime scenes, autopsies and hospitals for the past 48+ years.
- I continue to follow new developments in the field of forensic testing through caseload and review of journals in the subject area.
- Training and review of new materials/techniques through the internet.
- See a copy of my C.V. for more specific information

2

INFORMATION

The following is a brief summary of the events leading up to the shooting death of Jacob Dominquez by San Jose Police Officer Michael Pina on September 15, 2017 as understood by the undersigned from reviewing the above listed material.

Mr. Dominquez was wanted on a felony warrant by the San Jose Police Department and was actively being pursued/surveilled for at least the past two days by members of the San Jose Police Department VCT squad. Information was obtained on the whereabouts of Mr. Dominquez and a surveillance team of approximately 12 officers in individual vehicles were assigned. The officers were advised that the suspect may be armed with a silver revolver due to .357 magnum caliber ammunition that was discovered during the serving of a search warrant.

Officers were aware that Mr. Dominquez frequently violated traffic laws by speeding, running stop signs and red lights, weaving in and out of traffic and making sudden "U" turns in an apparent effort to detect if he was being followed by law enforcement. This erratic pattern of driving required the pursuit teams to remain well out of sight so normal tailing was not possible, therefore a fixed wing aircraft was employed to allow the tailing vehicles to remain well back of the subject vehicle. The fixed wing aircraft advised the VCT team that the Dominquez vehicle had settled down and was traveling normally. A short time later the aircraft advised that the Dominquez vehicle, a black KIA Sportage, was stopped at the light on Penitencia Creek Road at the intersection of N. White Road.

At this point Officer Pena was the first car behind the suspect, Officer Ferguson was the second car with Officer Lopez in the third car. Officer Pena then pulled his undercover vehicle directly in front of the suspect's vehicle with Officer Pena's front passenger door either touching or very close to the front of Mr. Dominquez's front bumper roughly making the letter "T" with the two vehicles. Officer Pena immediately exits his vehicle and takes a position near the left front wheel of Officer Ferguson's vehicle with his M-4 rifle pointed at the suspect in the driver's seat of the Kia. Officer Pena reportedly yells "hands up-show me your hands and if you move, I will shoot you" to Mr. Dominquez in the Kia vehicle. At this time Officer Pena reports that Mr. Dominquez does not raise his hands for several seconds and then does raise his hands all while interacting with Officer Pena through a partially opened driver's door window. Then according to Officer Pena, Mr. Dominquez quickly lowers both of his hands toward his right lap area and leans his body forward (interview demonstration) at which time Officer Pena fires two shots at Mr. Dominquez because he believes he is reaching for a firearm. No firearm was located in the vehicle or on Mr. Dominquez.

When Officer Pena places his vehicle in a "T" position to the Dominquez vehicle, Officer Ferguson quickly positioned the right front tire of his vehicle very close to the driver's door of Mr. Dominquez's vehicle and immediately exits his vehicle with his M-4 rifle

standing in his open door and then standing on the floor board of his vehicle pointing his rifle over the roof of his vehicle. Officer Ferguson has essentially the same view of Mr. Dominquez as does Officer Pena and they are standing only 4-6 feet apart along the side of his vehicle. Officer Lopez quickly arrives positioning his vehicle immediately to the rear of and actually strikes the rear bumper of the Dominquez vehicle and immediately exits his vehicle with his M-4 rifle at which time two shots are heard on the body camera.

A flash bang is heard being deployed several seconds later and then all the officers retreat to cover positions for approximately 15 to 30 minutes before having a canine released into the Kia to determine the status of Mr. Dominquez.

COMMENTS AND OBSERVATIONS

The fatal wound to Mr. Dominquez's left lower jaw area was caused by a damaged fired rifle bullet in this examiner's opinion. The damage would have been the result of the bullet impacting the door window glass prior to striking Mr. Dominquez causing the large irregular bullet wound of entry. The fact that there was no exit from a .223 caliber rifle bullet attests to the severe damage done to this bullet prior to striking Mr. Dominquez. The bullet jacket recovered at autopsy was nearly complete, however the majority of the bullet core material (lead) was missing. This is not unusual given the fact that the bullet was badly damaged by the glass in this examiner's opinion. The weight of the bullet jacket and core material recovered at autopsy approximates ½ of an intact bullet in this caliber, with the missing core material possibly accounted for in the injuries to the left neck area of Mr. Dominquez or the remaining core material was not recoverable.

A bullet strike is noted in the interior of the Kia in the "B" pillar on the passenger's side of the vehicle. This hole is essentially a first strike bullet hole of entry and was caused by an undamaged/slightly damaged fired rifle bullet (note the perfectly round entry hole) in this examiner's opinion. Evidence technicians removed one portion of core material with some apparent jacket material from the area of the "B" pillar during the vehicle inspection at the police facility. The material recovered would represent only a portion of a whole fired rifle bullet, however the area in which the bullet struck could easily account for the missing jacket (inside the steel structure of the "B" pillar or much of the bullet could have escaped the vehicle after striking the interior of the passenger rear door) at the scene. The recovered core material was also approximately ½ the weight of a single fired rifle bullet in the .223 caliber class of bullets, however in noting the uniform bullet hole of entry pictured below with the damaged exit hole in the "B" pillar, this could not have been the missing portion of the fatal bullet in this examiner's opinion. This bullet hole was caused by an undamaged intact fired rifle bullet in the .223 class caliber.

4



Photo # 12363200



Photo # 12363185

The report issued by the Santa Clara County District Attorney Jeffery F. Rosen states that the Santa Clara County Criminalists concluded the following:

1. Officer Pena fired two successive shots approximately ½ second apart;
2. The projectile that killed Dominquez was a fragment of a copper (jacketing) recovered from his body. The combined weight of the (jacketing) and the lead core recovered from the doorframe amounted to the approximate weight of a single .223 bullet;
3. Only a single bullet entered the vehicle, meaning that the other shot fired by Officer Pena was a miss;

5

4. There was no way to tell definitively if the miss was the first or second shot, but according to firearms experts, when two shots are fired in rapid succession, a miss is more likely to occur on the second shot due to recoil.

5. The bullet that entered the vehicle struck the driver's window, shattering it;

6. Upon impact with the glass, the bullet broke up with the lead core going through the forearm of Dominquez's hooded sweatshirt and ultimately lodging in the rear passenger door frame;

7. The (jacketing) fragment that broke away upon impact with the glass traveled in a path that penetrated Dominquez's head, neck and spine causing his death;

8. Dominquez was leaning back in his seat immediately after the shooting;

9. There were two holes in the left forearm of the hooded sweatshirt (the hole on the frontside of the left sleeve was approximately 12 inches up from the edge of the cuff and the hole located on the backside of the left sleeve was approximately 11.5 inches up from the edge of the cuff) that were caused by a single bullet passing through (entrance and exit).

After reviewing the above reasons given by the District Attorney, this examiner is troubled by the sheer number of miss-representations contained in those 9 points which will be addressed below:

1. The Santa Clara Criminalists did NOT state that this was from one bullet due to the combined weight of the two fragments. What they did say in their report was that "It is not possible to determine if Items SJ182278-28 and SJ182278-28 are from one or more projectiles.

2. The criminalists did not say that one shot missed.

3. Apparently the District Attorney believes that a fired rifle bullet can break up causing the bullet jacket and core to separate and only the bullet jacket will be severely deformed and that the core, apparently undamaged by the violent interaction with the window glass now travels as an undamaged projectile to strike the "B" pillar leaving a perfectly round .223 caliber hole. It should be noted that if the hole in the "B" pillar were caused only by a .223 caliber **bullet core**, the hole would only be approximately .180 inches in diameter due the missing jacket. Did anyone take this into account? Bullet manufacturers design jacketed bullets to not have the core material and the jacket separate when impacting a target.

4. The recoil of .223 Remington caliber cartridge in a M-4 rifle (or in other semi-auto rifles) is designed to not cause muzzle jump. This is one of the reasons this caliber rifle is so popular, it is powerful and yet easy to fire and has very little recoil. For anyone to suggest that the recoil of a .223 caliber semi-auto rifle as the reason for a missed shot from less than ten feet into a large vehicle from a well-trained officer is ludicrous.

5. The turning of the bullet core approximately at a 45 degree or greater angle and then have it penetrate the sweatshirt and the "B" pillar needs explanation?

6. On page 18 of that report the District Attorney agrees that Mr. Dominquez's hands were probably up when Officer Pena fired his weapon.

The undersigned also examiner the black sweatshirt worn by Mr. Dominquez when he was shot. The reports issued by the Santa Clara Crime laboratory documents the thorough examination of the sweatshirt and the undersigned agrees with the conclusions drawn by the crime laboratory that the holes in the left sleeve of the black sweatshirt were consistent with the passage of a high-speed projectile. The below shown photographs depict the holes in the outside lower left sleeve (DSC-3555) and the inside lower left sleeve (DSC-3550) of the sweatshirt. This clearly indicates the passage of a bullet through the lower sleeve of the sweatshirt from the outside to the inside approximately 11-12 inches up from the cuff, however the bullet does not strike Mr. Dominquez.



DSC-3555



DSC-3550

Investigators examining the black Kia being driven by Mr. Dominquez conducted trajectory testing on the bullet hole located in the "B" pillar on the passenger side of the vehicle. The examinations consisted of placing a wooden dowel into the bullet strike in the "B" pillar with a colored string attached near the front of the dowel and then drawing that string out through the driver's side window. The below shown photograph shows this testing by the Santa Clara Crime Laboratory personnel.



Photo # 12363278

Laboratory photographs #12363212e+line through 12363278ce depict various trajectories from the single bullet strike in the "B" pillar with most of the string trajectory lines coming out of the driver's side window near the door handle, however in one of the photographs the orange-colored trajectory line appears to this examiner to be coming out further forward towards the windshield area of the vehicle. The reason these trajectory projections are important is that it appears the investigators are trying to correlate the bullet strike in the "B" pillar with a portion of the bullet from the fatal injury to Mr. Dominquez. The undersigned was unable to reproduce the above listed photos in this report due to the formatting in which the photographs were received by the undersigned.

The importance of the above material is that it appears investigators thought that the bullet strike in the "B" pillar was a portion of the fatal bullet strike to Mr. Dominquez and then it appears that a second version of the trajectory test was that the "B" pillar strike was an independent fired bullet. Investigators could have facilitated the examinations had they not used string taped to a wooden dowel (as shown in the above photo) and simply pulled the trajectory string all the way through the hole in the "B" pillar, centered that

8

string in the middle of the exit hole while centering the string in the center of the entrance hole and then projecting the string outside the driver's door window. This would have given them a much more accurate flight path of the bullet causing the hole in the "B" pillar. Investigators could have/should have utilized a laser to more accurately determine the angle of the bullet in the "B" pillar. Refer to photographs #'s 12363299 and 12363185 included in this report on page 5.

OPINIONS AND CONCLUSIONS

Officer Pena's vehicle is the first to block in the Dominquez vehicle and Officer Pena immediately exits his vehicle and takes a position near the left front wheel /engine area of Officer Ferguson's vehicle which has blocked the driver's door of the Dominquez vehicle. Officer Pena reportedly begins yelling "show your hands" and "don't move or I will shoot you" commands to the driver of the stopped vehicle. Officer Pena states at first Mr. Dominquez does not comply with the hands up order, however after a few seconds he raised his hands. Within seconds Officer Pena states that Mr. Dominquez then quickly lowers his hands to his lap area and leans forward and it is at this time that Officer Pena fires 2 rounds at Mr. Dominquez stating that he (Pena) thought that Dominquez was reaching for firearm. No firearm was recovered from the vehicle or Mr. Dominquez.

The evidence clearly shows that the fatal wound to Mr. Dominquez (only one bullet wound) struck the partially lowered driver's side window prior to striking the victim in the lower left mouth area with no exit wounds associated with this fatal bullet strike, therefore the bullet hole in the "B" pillar had to be the result of a fragment of the fatal bullet core or an independent bullet strike. The independent bullet version accounts for both the holes in the sweatshirt as well as the round bullet entrance hole in the "B" pillar. The fragment of bullet core from the fatal shot version fails to explain either the round .223 caliber size bullet hole in the "B" pillar and does not explain how the holes in the sweatshirt were created. Officer Pena fired two rounds at Mr. Dominquez with only one bullet striking him. For the bullet strike in the "B" pillar to have been a fragment of the fatal bullet strike, the second shot fired by Officer Pena would have had to completely miss the vehicle (a distance of less than 10 feet with a person using a scoped rifle) as there are no other bullet holes in the Kia or any reported bullet strikes in the vicinity of the shooting. Officer Pena missing with the second shot is not a credible possibility in this examiner's opinion.

Having dismissed the possibility of a missed second shot, then the bullet strike in the "B" pillar was a direct bullet strike and the holes in the lower left sleeve of the sweatshirt had to have been caused by the passage of this fired bullet. The outer (entrance) bullet strike in the sweatshirt reportedly had powdered glass imbedded in the fabric (County of Santa Clara Crime Laboratory) which indicate that the second shot impacted glass prior to striking the sweatshirt, however the glass would have already been shattered from the first shot and would not have offered any substantial resistance to a bullet passing as would intact/non-damaged glass in this examiner's opinion.

9

After carefully reviewing the available information and evidence on this case it is the opinion of the undersigned examiner that Mr. Dominquez had to have had his arms/hands up above the level of the driver's door metal body for the bullet to have impacted the left sweatshirt sleeve and then struck the "B" panel, therefore the statement of Officer Pena that both of Mr. Dominquez's hands were down and out of sight when he fired his weapon is not correct. Mr. Dominquez's left arm/hand was above the level of the window opening in his vehicle when the bullet penetrated the sweatshirt. With the two fired rounds only separated by approximately ½ second and the shot to the sweatshirt (likely the second round fired), it is apparent that at least Mr. Dominquez's left hand/arm was up and above the driver's side window ledge when both rounds were fired.

The undersigned reserves the right to change or modify any of the opinions and conclusions expressed in this report if additional information or evidence becomes available.

Respectfully submitted,

David E. Balash

- A copy of my C.V. is attached
- A copy of my testimony document is attached

10

**DAVID E. BALASH**
**41906 Echo Forest Ct.**
**Canton, Michigan 48188**
**Phone # 734-981-6788  Fax 734-981-6459**

## CURRICULUM VITAE

**PERSONAL:**    Born: Detroit, Michigan 1-19-45
Raised: Bay City, Michigan
Married for over 49 years with 2 children

**CURRENT**    3-1-92 – Present.  I have been working as an Independent Firearms Examiner/Forensic Science Consultant. This work entails examination of evidence, case evaluations and crime scene re-construction consistent with work I performed at a crime laboratory.

**POSITION:**     03/2000 – May 2001 Supervision of the Oakland County Sheriff's Department Crime Laboratory Firearms Identification Unit in Pontiac, Michigan including responsibility for the training of a deputy sheriff as a firearms examiner.

**EMPLOYMENT**    Michigan Department of State Police - Enlisted 9-18-66. Graduated from
**HISTORY:**    recruit school 12-2-66 and assigned to the Niles Post. Transferred to the Sandusky Post from 5/69 until 12/71. Assigned to the Forensic Science Division on 1-2-72 – Promoted to D/Sgt. on 12/73 – Promoted to D/Lt. on 3/15/81 and retired as a D/Lt. on 2-29-92.

**POSITION:**    D/Lt. - Laboratory Specialist:  Firearms/Tool Marks/Bomb Squad Unit Supervisor and the Crime Scene Assignment / Processing Supervisor for the Michigan State Police Northville Forensic Laboratory. This laboratory provided services free of charge for over 120 police agencies in Southeast Michigan. The Michigan State Police Northville Forensic Laboratory was one of the first A.S.C.L.A.D. Accredited laboratories in Michigan.

**DUTIES:**    * Duties and responsibilities of an enlisted Michigan State Police Officer.
* Supervisor of the trained firearms staff and the responsibility for training new examiners and assisting current examiners;
* Research new methods of analysis both in the laboratory and at crime scenes; laboratory analysis of all submitted firearms, fired bullets, fired cartridge cases and ammunition;
* Analysis of gunpowder patterns and gunshot residue cases;
* Determination of bullet entrance and exit holes, bullet trajectories and flight paths;
* Examination of weapons for operability, safety, functioning and alterations of mechanisms;
* Examination of air rifles for function and power;
* Blood spatter interpretation;

1

**DUTIES CONT:**          * Tool mark and physical match examinations;
                         * Develop and administer in-house proficiency testing for the firearms unit and
                           the bomb squad;
                         * Serial number restorations;
                         * Formulating crime scene processing plans and directing crime scene crews
                           comprised of both enlisted and civilian employees;
                         * Crime scene investigation and reconstruction;
                         * Crime scene photography and the instructing of laboratory personnel in crime
                           scene photography;
                         * Evidence collection and preservation in the laboratory, at crime scenes and
                           at autopsy;
                         * Advise medical personnel and assist them at autopsies;
                         * Responsible for all bomb calls and explosive destruction complaints received
                           by the laboratory from over 120 police agencies in SE Michigan;
                         * Provide expert court testimony when requested;
                         * Administrative duties in the absence of the laboratory director.

**COURT
TESTIMONY:**             Expert testimony has been accepted in Michigan Circuit Courts for the
                         Counties of Wayne, Washtenaw, Oakland, Monroe, Livingston, Lenawee,
                         Macomb, Allegan, Roscommon, Leelanau, Grand Traverse, Calhoun,
                         Shiawassee, Chippewa, St. Clair and Kent Counties. Expert testimony has also
                         been given in the District Courts for Wayne, Oakland, Washtenaw, Lenawee and
                         Livingston Counties and the Probate Courts in Wayne, Oakland, Washtenaw and
                         Monroe Counties. I have also testified in United States District Courts of
                         Michigan, Oklahoma, Indiana, Pennsylvania, California, Alabama, Maryland.
                         Florida and Ohio as well as the State Circuit Courts for Wisconsin, Illinois,
                         Mississippi, Oklahoma, New York, Delaware, Maryland and California. These
                         testimonies exceed 400 occasions.

**DEPOSITION
TESTIMONY:**             I have offered expert testimony at depositions on over 75 occasions.

**EDUCATION:**

**1972 - 1974**          **BA - Madonna College, Livonia, Michigan**
                         Major: Social Science        Minor: Criminal Justice

**1965 - 1966**          **Michigan State University, E. Lansing, Michigan**
                         General Studies

**1963 - 1965**          **Delta College, Bay City, Michigan**
                         General Studies

**PROFESSIONAL**     * Association of Firearm and Tool Mark Examiners - Life Member
**ASSOCIATIONS:**     * International Association of Bomb Technicians and Investigators –
                           Life Member
                    *International Wound Ballistics Association through 2010
                    * International Association of Bloodstain Pattern Analysts through 2010
                    * Disaster Assistance and Recovery Team - Retired 2-29-92
                    * FBI Bomb Data Program - Retired 2-29-92
                    * Michigan State Police Command Officers Association
                    * Treasurer of the Echo Forest Home Owners Association – 2014 – Currently

**PROFESSIONAL TRAINING AND EXPERIENCE:**

| | | |
|---|---|---|
| **3-1-92 to** **Present** | Independent Firearms Examiner/ Forensic Science Consultant | |
| **9-18-66** | Enlisted - Michigan State Police | Trooper |
| **1-2-72 to** **2-29-92** | Michigan State Police Northville Forensic Laboratory | Firearms, Tool Marks, Bombs and Explosives |
| **2-27-78 to** **3-9-78** | Smith and Wesson Firearms Springfield, Massachusetts | Armorer School |
| **2-89** | Sig/Sauer Firearms | Armorer School |
| **2-90** | American Academy of Forensic Science - | 1 Week seminar/training in Cincinnati, Ohio |
| **6-89** | Glock Firearms | Armorer School |
| **8/89** | Michigan State Police – Conversion training on 9mm Sig/Sauer Model 226 semi-auto pistol | 40 hours training |
| **9-89** | Blood Spatter Interpretation | 3 Day Workshop |
| **10-97** | International Wound Ballistics Association | 2 Day Conference |
| **1-87** | Federal Bureau of Investigation Training Academy - Quantico, Virginia | 1 Week School Bombs and Equipment |
| **3-74** | Tours of various firearms, ammunition and explosive plants | Two Week Program |
| **8-73** | Hazardous Explosive Devices Course at the U.S. Army Redstone Arsenal - Huntsville, Alabama | Three Weeks Improvised Explosive Devices School |

3

**PROFESSIONAL TRAINING AND EXPERIENCE CONT:**

| | | |
|---|---|---|
| **Late 1980's** | Advanced explosives program given by the BATF in Glenco, Georgia | Two-Week School |
| **1980's** | 3 A.F.T.E. training seminars | |
| **1972 – 1992** | Many classes in photography. These classes were instructed by Kodak representatives as well as local photography experts. | Several one-week schools |
| **3-91, 11-88 5-85, 1-82 10-77, 1-76** | Hazardous Explosive Devices Course at the U.S. Army Redstone Arsenal - Huntsville, Alabama | 6 - One Week Refresher Schools |
| **2-72 thru 2-92 & 1995** | Michigan State Police Bomb Squad training and explosive refresher courses. | Higgins Lake and other training sites |
| **1973 thru 1992** | Basic X-Ray training and interpretation at the Hazardous Devices School in Huntsville Alabama in 1973 and at all the subsequent refresher schools as well, including setting up the portable X-Ray's, intensifying screens and film, taking the X-Ray and reading the film to determine a course of action. X-Ray training, including fluoroscopy, continued throughout my remaining 19 years in the department, these skills being used at crime scenes, in the laboratory and at autopsies. | |
| **2-72 thru Present** | Many classes and seminars offered mostly through the Michigan State Police covering firearms training, crime scene processing, blood spatter analysis and investigative techniques which have not been noted in this C.V. | |
| **1995 – 2004** | Attended 6 – S.H.O.T.  Shows (Shooting, Hunting, Outdoors and Technology) to remain current in the field of firearms, ammunition and technology. | |

**Quality training does not always take place in an academic setting.  Some of the most valuable training I have received, unfortunately, has come at the expense of the lives of others.  I have worked on thousands of cases that were submitted to the laboratory for analysis, as well as participating in hundreds of crime scene investigations. Each case that an examiner works on teaches that examiner. During the course of my career the following listed cases stand out as significant investigations:**

> \* Inkster Police Shooting - July, 1987.  Three police officers were murdered at the Bungalow Motel in Inkster, Michigan. I headed the crime scene investigation and subsequent examination of over 400 items of evidence. My Circuit Court testimony lasted five days.

**PROFESSIONAL TRAINING AND EXPERIENCE CONT:**

* Crash of Northwest Flight 255 – August 1987 – resulting in the death of 156 people.  As assistant coordinator of the crash site, my responsibilities were to assemble recovery teams for body and property removal, grid the site and facilitate the recovery/identification effort. This crash led to the formation of the Disaster Assistance Recovery Team (D.A.R.T.) of which I was the Vice-Chairman. I have also assisted in the investigation of two other major airplane accidents.

* Ecorse Police Officer Eddie Atkins – Prosecution for Homicide in 1974.
* Shooting death of Detroit Police Officer Freddie Jackson.
* Bombing death of Michael Vincenza.
* Shooting death of Ypsilanti Police Officer Douglas Downing.
* Shooting death of Leonard Bontekoe by a Ypsilanti Police Officer.
* Beating death of Dorothy Tyburski – her body was in a freezer for 2 years.
* Billy Hardesty Case.
* Shooting of Davern Riley by Detroit PD
* Shooting death of Michael Hill by Detroit PD
* Shooting death of Sharon Solomon near Flint Michigan – Homicide/Suicide?
* Shooting death of Mr. Timmerman in Allegan, Michigan
* Shooting death of 4 people at a furniture store in Mississippi – I was retained by the defense and subpoenaed by the Prosecution for at least 5 trials on the same evidence against the same defendant.
* The 2008 discovery of firearms errors at the Detroit Police Laboratory
* The shooting death of banker David Widlak
*  There are multiple shooting cases both as an enlisted police officer as well as a civilian examiner which also could have been included in the above list of noteworthy cases.

**TEACHING EXPERIENCE:**

| | | |
|---|---|---|
| **6/91, 2/92, 10/92** | Schoolcraft College | 13 - two week evidence |
| **11/93, 1/95, 11/95** | | collection and |
| **9/96, 3/97, 11/97** | | preservation classes |
| **10/98, 10/99** | | |
| **10/00 & 3/02** | | |
| **1982 - 1984** | Detroit Edison Nuclear Security Personnel | 7 - two-day classes Firearms/Explosives |
| **1972 - 1992** | Michigan State Police | Many classes on Firearms Identification Bombs and Explosives Evidence Collection |
| **1997** | Michigan State Police | 2 Basic Crime Scene Photography Classes |

| | | |
|---|---|---|
| **Many Classes**<br>**1972 - 1997** | Local Police Agencies | Firearms Identification<br>Bombs and Explosives<br>Evidence Collection |
| **1972 - 1999** | University of Michigan<br>University of Detroit<br>Wayne State University<br>Madonna University<br>Henry Ford Community College<br>Schoolcraft Community College<br>Washtenaw Community College<br>Mercy College | Guest lectures on<br>Firearms Identification,<br>Tool Marks, Bombs and<br>Explosives. Crime<br>Scene Analysis |
| **1998 & 1999** | Michigan Defense Attorney's Assosication | Three presentations on<br>utilizing a firearms/crime<br>scene expert. |
| **2011** | Presentation to the 36th District Court Judges | Firearms Identification /<br>Crime Scene Expert |
| **2017** | I.A.B.T.I. training session at the Capital City Airport in Lansing, Michigan which included robot training and case reviews. | |
| **2017** | Old case review with MSP Northville Explosive Unit covering several old laboratory cases involving death by explosives. | |

**PUBLICATIONS:**

| | | |
|---|---|---|
| **1973 AFTE** | A unique .25 auto caliber jacketed hollow point bullet made by Winchester-Western for the J.J. Jovino Co. of New York. | |
| **1998 AFTE** | FRANGIBLE BULLETS: A FIREARMS EXAMINERS NIGHTMARE. | |

5/30/2017

# EXHIBIT 4

NORA FRIMANN, City Attorney (93249)
ARDELL JOHNSON, Assistant City Attorney (95340)
MAREN J. CLOUSE, Senior Deputy City Attorney (228726)
Office of the City Attorney
200 East Santa Clara Street, 16th Floor
San José, California  95113-1905
Telephone Number: (408) 535-1900
Facsimile Number:  (408) 998-3131
E-Mail Address:  cao.main@sanjoseca.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JESSICA DOMINGUEZ INDIVIDUALLY AND JESSICA DOMINGUEZ AS GUARDIAN AD LITEM FOR JAD (1), JAD (2) AND JAD (3),<br><br>                    Plaintiffs,<br><br>          v.<br><br>CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT AND DOE POLICE OFFICERS 1, 2 AND 3,<br><br>                    Defendants. | Case Number:  5:18-cv-04826-BLF<br><br>**DEFENDANTS' DISCLOSURE OF EXPERT WITNESSES** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Pursuant to Federal Rule Civil Procedure Rule 26, Defendants CITY OF SAN JOSE, et al. disclose the following retained witnesses who will provide expert testimony:

1. John R. Black, D.B.A.

2. Rocky Edwards

3. Daniel Sudakin, M.D.

In accordance with Federal Rule of Civil Procedure Rule 26, this disclosure is accompanied by the written reports of Dr. Black, Mr. Edwards, and Dr. Sudakin, along with their curriculum vitae, fee schedules and lists of sworn testimony.

Pursuant to Federal Rule Civil Procedure Rule 26, Defendants also disclose the following non-retained witnesses who will provide expert testimony:

1.      Sgt. Mauricio Jimenez, San Jose Police Department.  He is presently assigned as a Sergeant for the Critical Response Unit.  The factual basis for his testimony includes applicable SJPD policies and training relating to use of force, officer-involved shootings, surveillance, apprehensions and apprehension tactics, and the Critical Response Unit, as well as the facts underlying the incident on September 15, 2017 as presented in his testimony and the testimony of other percipient witnesses.  He will offer expert opinion testimony on how the surveillance, tactics, and force used by SJPD officers in the apprehension of Jacob Dominguez conformed to the policies and practices of the San Jose Police Department and the Critical Response Unit.  Sgt. Jimenez is a non-retained expert whose duties as an employee of the City of San Jose do not regularly involve giving expert testimony in civil litigation on the above matters.

Defendants reserve the right to identify in rebuttal one or more expert witnesses who will provide testimony on any subjects to be addressed by any expert designated by Plaintiffs.  Defendants also reserve the right to elicit expert testimony at trial from any witness disclosed as an expert by any party in this litigation.


Dated:  May 21, 2021                                          NORA FRIMANN, City Attorney

                                                             By:  /s/ Maren J. Clouse
                                                                  MAREN J. CLOUSE
                                                                  Chief Deputy City Attorney

                                                             Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Case No. 5:18-cv-04826-BLF

JESSICA DOMINGUEZ INDIVIDUALLY AND JESSICA DOMINGUEZ AS GUARDIAN AD LITEM
FOR JAD (1), JAD (2) AND JAD (3), Plaintiffs,
vs.
CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT, MICHAEL PINA, AND DOE POLICE
OFFICERS 2 through 5, Defendants

EXPERT WITNESS REPORT; Dated 20-MAY-2021

1. I am John R. Black, and I am providing this report at the request of the office of the City Attorney, City of San Jose, California, working with Chief Deputy City Attorney Maren J. Clouse as counsel for the Defendants. In doing so, I state the following:

2. I have been asked to review and give expert opinion in the matter of United States District Court, Northern District of California; Case No. 5:18-cv-04826-BLF.

3. I am over the age of eighteen and competent to testify and render an expert opinion in the matter herein.

4. I am receiving compensation for my examination, review, and testimony *(when required)* related to this matter at the rate of three hundred and twenty dollars per hour.

5. I professionally consult in the areas of police use of force, police policy, police systems dynamics, business strategy, socio-cultural dynamics, and the linking of intelligence-sensemaking to operations-decision-making for Department of Defense (DoD) projects involving complexity, wicked problem challenges, and similar.

6. I was employed for approximately 23 years *(retired 2017)* as a Washington County Sheriff's Deputy in Hillsboro, Oregon. I am police/patrol certified and have held the positions of Patrol Deputy, Patrol Corporal, Patrol Sergeant, Training Sergeant, Professional Standards Sergeant, Internal Affairs Sergeant, Services Division Lieutenant, Jail Operations Lieutenant, Patrol Operations Lieutenant (East and West Precinct), Investigations Lieutenant, and head of Professional Standards -Internal Affairs. I also acted as the representative to the Washington County Human Rights Council.

7. I routinely advised the Washington County Sheriff's Office in matters related to training, police practices, internal affairs investigations, personnel matters, and police use of force. I served as the final subject matter review of the Washington County deputy's use of force. Additionally, I routinely reviewed and advised executive and command levels on use of force related policy matters for the WCSO.

8. I have held the positions of defensive tactics instructor, firearms instructor, senior defensive tactics instructor, and lead defensive tactics instructor for the Washington County Sheriff's Office (WCSO), Mobile Response Team (MRT) commander, Mental Health Response Team (MHRT) commander, and acted as a senior advisor to the use of force and survival skills program for all training to Washington County deputies. Additionally, I was also the Washington County Interagency Crisis Negotiations Unit (CNU) commander and assisted with the Washington County Interagency Major Crimes Team (MCT) oversight. I also acted as intelligence lead and oversight for the Special Investigations Unit (SIU).

9. I hold Oregon Department of Public Safety Standards & Training police certifications at basic, intermediate, advanced, supervisory, and management levels. Additionally, I am a graduate of the National Institute of Corrections Executive Leadership Course and the Oregon State Sherriff's Association Command College.

10. I have been employed by the Oregon Department of Public Safety Standards & Training as a defensive tactics, and senior defensive tactics instructor (use of force, arrest & control techniques, high-risk handcuffing, impact weapons, OC spray, and similar subjects) vehicle stops instructor and confrontational simulation instructor.

11. I served as a Sergeant Major in the United States Army, Active and Reserve forces, for over thirty years and routinely advised in matters of Rules of Engagement and proper Use of Force to include proper police use of force in Afghanistan and Bosnia. I am a graduate of the United States Army Sergeant's Major Academy. My military occupation specialties also included psychological operations, civil affairs, communications, operations & intelligence, training certifications, and security operations.

12. I received my doctorate from Capella University in the school of Business, studying how business intelligence (the way people interpret and process information) and their use of visualization to gain insight during the decision process when dealing with complexity and sensemaking. Additionally, I was previously enrolled in doctoral studies at Walden University in the School of Public Policy and Administration with an emphasis on terrorism, mediation, and peace. Specifically, human decision factors, complexity theory/wicked problem theory, and processes related to decisions in critical environments where I completed all course work.

13. I remain current in the field of decision research, police use of force research, systems thinking-approach, and related fields. I most recently presented at the two below listed national/international conferences. *(Complete listing of presentations or publications are included within my curriculum (CV) as an attachment to this opinion).*

   a. 2021 Annual Society for Decision Professionals Conference (SDP-DAAG 2021); Black, J. R. (2021, April 14, 2021). *Evolving Decision-making in Law Enforcement; Looking at all sides of the Coin*. SDP-DAAG 2021, Virtual.

   b. 2021 Annual Society for the Advancement of Management (SAM) Conference; Black, J. R., Taylor, P. L., Lewinski, W., & Wallentine, K. (2021, March 2021). *An Exploration of Sensemaking, Decision-making, and Management in Policing; The Value of Management Research(ers) in Law Enforcement*. SAM 2021 International Business Annual Conference, Virtual.

14. I routinely present and act as a panel member for topics ranging from firearms training, the application of use of force principles and their investigation, police reform, and how one might incorporate systems thinking and sensemaking-decision-making frameworks into policing. In addition, I have acted as presenter for matters related to use of force at county and state levels to include county commissioners and the Oregon State Sheriff's Association.

15. I have trained thousands of police officers, deputies, soldiers in use of force, survival skills, and the potential use of deadly and non-deadly physical force for over twenty-two years in multiple states and countries. I continue my education in this field and remain current via attending and conducting training. My most recent certifications include the Force Science Institute Advanced specialist certification, Right Question Institute training from the Harvard Kennedy school, and ongoing training and use of the Cynefin framework from Cognitive Edge. I have also attended the National Emergency Management Institute as a train-the-trainer for type III incident command.

16. Additionally, I am trained in the cognitive interviewing of witnesses and those involved in officer-involved shootings and events that often elicit high stress or arousal conditions that can affect attention, perception, reaction, decision-making, and memory.

17. I have consulted, been retained, rendered expert consult, deposition, advice, or testimony in over fifty matters since 1999 *(Complete listing is included within my curriculum by today (CV) as an attachment to this opinion)*. I am currently involved in the below active cases or matters;

   a. Use of Force Expert, advising in the matter of the police shooting of C. Walker by Northern Territory Constable Z. Rolfe. (Criminal charge of murder stemming from police use of force). Retained by the defense as of April 2021. The case is ongoing.

b.  Use of Force Expert advising in appeal of Chicago Police Department Officer (Luigi Sarli). COPA Board Appeal Process; case # 21 PB 2986. Retained by the defense as of April 2021. The case/appeal is ongoing.

c.  Use of Force consulting for Jackson County, OR// JUAN ANTHONY SANCHO, an individual, plaintiff, vs. JACKSON COUNTY, OREGON, UNITED STATES DISTRICT COURT DISTRICT OF OREGON MEDFORD DIVISION. Case # :20-cv-01232-CL. January 2021-Retained for the defense; ongoing.

d.  HOWARD McCay, an individual, Plaintiff, V. SEATTLE POLICE OFFICERS JEREMY BOHANNON, JOSHUA BRILLA, WALKER DICKSON, DORIAN KORIEO, AIMEE LACLAIRE, SCOTT LAPIERRE, GERARDO MORENO, BRENDAN SULLIVAN, and ROXANNE ZECH, Defendants. In the UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WASHINGTON AT SEATTLE; Case # 2:20-cv-01212: Retained by the plaintiff. Case settlement reached in favor of the plaintiff (expected May 2021).

e.  JESSICA DOMINGUEZ INDIVIDUALLY AND JESSICA DOMINGUEZ AS GUARDIAN AD LITEM FOR JAD (1), JAD (2) AND JAD (3), Plaintiffs, vs. CITY OF SAN JOSE, SAN JOSE POLICE DEPARTMENT, MICHAEL PINA, AND DOE POLICE OFFICERS 2 through 5, Defendants. In the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA. Case # 5:18-cv-04826. Retained by the defense as of February 2021, the case is ongoing.

f.  AMANDA WEST, individually and as Personal Representative of the Estate of PATRICK EASTON WEST; PATRICK ERROL WEST; and BERTHA WEST, Plaintiffs, v. THE CITY OF MONTESANO, WASHINGTON; THE CITY OF ABERDEEN, WASHINGTON; THE CITY OF HOQUIAM, WASHINGTON; BRETT VANCE; DALE GREEN, ANDY SNODGRASS; and DAVID PETERSON; Defendants. In the UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WASHINGTON AT TACOMA. Case # 3:21-cv-05077. Retained by the plaintiff as of February 2021, the case is ongoing.

g.  St. Helens Police Department (Ofc. Adam Raethke) against Ms. Ashley Andrews. Retained as a consultant for Defense of Ofc. Raethke (Criminal and Civil). October 2020-Present/ongoing.

h.  Use of Force by Washington County Deputy Rian Alden against Mr. Albert Molina. Retained as a consultant and expert for Defense of Dep. Alden (Criminal and Civil). October 2020-Present/ongoing.

i.  SABBE, Remi v Washington County. Retained by the defense as a strategy consultant, 2018-present.

18. In giving this declaration and opinion, I have reviewed the following evidence and materials on which I base my conclusions and opinion:

    a. Complaint(s) and answer(s); case 5:18-cv-04826-BLF

    b. Related police reports to include reports and operational plans

        a. CRU operational plan dated 9/15/2017

        b. 17-258-0283 Lab Reports

        c. 17-258-0283 Coroner Report

        d. 17-258-0283 Police Report

        e. CAD log for P172580763

        f. CAD log for P172580283

    c. Related training documentation and policy

        a. Training log/file, California Post summary for Michael Pina

        b. Covert response unit (CRU) training logs/training summaries; 2016 & 2017

        c. San Jose Police Department; Policies Rules and Procedures "Duty Manual" dated 2017

    d. Related reviews or investigations

        a. County of Santa Clara "Report on the fatal shooting of Jacob Dominguez September 15, 2017" dated March 8, 2019

    e. Interviews and Transcripts (note: related video-audio files were reviewed to verify transcripts and consider potential impactors to memory or investigative process)

        a. 1728228 - Interview Transcript of Ofr Kristopher Ferguson

        b. 1728229 - Interview Transcript of Ofr Alvaro Lopez

        c. 1728230 -Interview Transcript of Ofr Michael Pina

        d. Notes taken from an interview of M. Pina by myself dated May 14, 2021

    f. Depositions

        a. Deposition of Ms. Jessica Dominguez dated February 19, 2021

        b. Deposition of Sgt. Michael Pina dated March 3, 2021

        c. Deposition of Ofc. Alvaro Lopez dated March 1, 2021

        d. Deposition of Ofc. Kristoffer Ferguson dated March 4, 2021

    g. Related diagrams, photographs, or graphical representations and demonstratives

        a. Graphic 7 & Graphic 8

        b. Consolidated file of investigative photographs denoted as SJ0189-SJ0763

    h. Related audio files (No transcript provided)

        a. SJ1666 - 10.02.2017 Rhiannon Borunda.wma

        b. SJ1667 - 11.17.2017 Leslie Bradley.wma

        c. SJ1668 - 17-258-0283 Carlos Lavato Phone Interview 9.28.17.wma

i.  Related video documentation/recordings to include: *(Note: the video does not appear to have been time synced and in some cases differences greater than 10 seconds. Original times are used.)*

    a.  Police body-worn camera (BWC) video

- SJ1751.mp4

- SJ1753.mp4

- SJ1759.mp4

- SJ1760.mp4

- SJ1761.mp4

- SJ1762.mp4

- SJ1763.mp4

- SJ1764.mp4

- SJ1765.mp4

- SJ1766.mp4

    b.  SJ1664 - 3158 Penitencia Creek Rd video

- NVR_Sherlock_ch3_main_20170915190000_20170915190500.avi

- NVR_Sherlock_ch3_main_20170915190500_20170915191000.avi

- NVR_Sherlock_ch3_main_20170915191000_20170915191500.avi

    c.  SJ1665 - 3164 Penitencia Creek Rd video

- HCVR_ch6_main_20170915183000_20170915183022.avi

- HCVR_ch6_main_20170915183034_20170915183259.avi

- HCVR_ch6_main_20170915183317_20170915183624.avi

- HCVR_ch6_main_20170915183628_20170915183705.avi

- HCVR_ch6_main_20170915183714_20170915183734.avi

- HCVR_ch6_main_20170915183756_20170915183926.avi

- HCVR_ch6_main_20170915183956_20170915184041.avi

- HCVR_ch6_main_20170915184048_20170915184051.avi

- HCVR_ch7_main_20170915183000_20170915183016.avi

- HCVR_ch7_main_20170915183038_20170915183214.avi

- HCVR_ch7_main_20170915183219_20170915183307.avi

- HCVR_ch7_main_20170915183315_20170915183459.avi

- HCVR_ch7_main_20170915183503_20170915183618.avi

- HCVR_ch7_main_20170915183636_20170915183732.avi

- HCVR_ch7_main_20170915183801_20170915183923.avi

- HCVR_ch7_main_20170915183934_20170915183948.avi

- HCVR_ch7_main_20170915183955_20170915184039.avi

j.  Related research, both in general and specific areas, includes human performance factors, memory, attention, perception, sensemaking, decision-making, investigative techniques, and similar. Specific research cited or used within this opinion is annotated by APA citation standards or footnotes. All research cited is either peer-reviewed, awaiting publication, or ongoing research by recognized institutions.

## Preamble:

1.  The evidence from this case, upon which my opinion is based, is consistent with the information that other experts in police use of force and I rely upon in analyzing police officers' use of physical force. Subsequently, I reserve the right to amend or modify my opinions based on additional evidence, new research, or information that may be provided. In instances where differing accounts of events are present, I have based my analysis on that which is most probable based on the evidence analyzed from the scene and the witnesses' accounts.

2.  A proper review or analysis of police use of force demands that the reviewer guard against injecting hindsight into the review process. The basis of this comes from research and understanding error (Dekker, 2014) and recognizing that since the actor making decisions is incapable of determining the future, it is unfair that a reviewer knowing the future uses that as a measuring stick to judge the actor. This concept is also demanded by US Supreme Court case law. [1]

3.  Additionally, it is recognized that video evidence is limited in that it is a two-dimensional representation of a three-dimensional event. Subsequently, while an essential piece of evidence, it is taken as a single view and perspective of the entire event. While of great value in determining what occurred in an event, a video's limitations make it most helpful in showing overt actions versus those actions that may be less

---

[1] Graham v. Connor (et al), 490 U.S. 386; 109 S. Ct. 1865, 104 L. Ed. 2d 443 (Supreme Court of the United States 1989)

noticeable in a two-dimensional image.

4. Police officers are trained that the factors and framework from which a decision to use physical force is made are derived from the United States Constitution and its amendments and reflected in US Supreme Court case law and Federal Court decisions.

5. Police Officers are trained that the use of force must be objectively reasonable based on the totality of the circumstances [2]. Officers are trained that force may be used for self-defense, defense of another, to overcome active resistance while effecting an arrest, to prevent an escape from legal custody, to maintain the safety and security of a facility, such as a jail or a courthouse, or to prevent the escalation of an event or situation into a potentially harmful situation to citizens or others.

6. Police officers are trained that when using physical force, it will often occur in dynamic, rapidly changing situation(s) and that it may occur in rapidly evolving situations that are often tense and uncertain.[3] As reflected in US Supreme Court case law, analysis of a use of force event must consider the totality of the circumstances and the context surrounding the application of force. [4]

7. Additionally, each instance of force may be considered in itself a separate act and therefore a different decision. Analysis of use of force decisions at this level can be referred to as decision-point analysis or segmentation. Research recognizes that use of force decision-making is a process consisting of multiple decision points occurring in a dynamic environment (Hine et al., 2018). While the use of decision point analysis may help understand an event, police officers are routinely trained that their use of force will be examined in the context of the event's totality and not by the use of 20/20 hindsight or each decision point separately.

8. Police officers are trained that use of force events are often dynamic and fluid in nature and that an officers' response allows for the need to increase or decrease their use of force as required. It is expected that a police officer would reasonably escalate the level of force dependent upon their perception of a subject's (suspect, threat, actor, and similar) behaviors, the perceived threat, or the resistance encountered.

---

[2] Graham v. Connor (et al), 490 U.S. 386; 109 S. Ct. 1865, 104 L. Ed. 2d 443 (Supreme Court of the United States 1989)
[3] Graham v. Connor (et al), 490 U.S. 386; 109 S. Ct. 1865, 104 L. Ed. 2d 443 (Supreme Court of the United States 1989).
[4] Graham v. Connor (et al), 490 U.S. 386; 109 S. Ct. 1865, 104 L. Ed. 2d 443 (Supreme Court of the United States 1989)

9. Equally, it is expected that a police officer can de-escalate their use of physical force (again dependent upon a subject's behavior, resistance, and the level of control needed ) when feasible, to resolve a situation safely.

10. The SJPD maintains a covert response unit (CRU) which is considered a specialized team with selection criteria and conducts advanced tactical training in such areas as apprehension techniques of high-risk threats, advanced weapon skills, surveillance, and tactical operational planning. In the years 2016 and 2017, Sgt. Pina attended multiple training iterations (on average monthly) that train the aforementioned subjects.[5,6] Use of force decision-making was integrated into the related CRU scenario training.

**General Understandings from Research:**

1. Action vs. Reaction:

   a. Action versus reaction is a well-researched phenomenon and a needed understanding for this analysis. In the simplest terms, it is the question or idea of what really occurs when a person reacts to another person's action. Perception and reaction time when driving is something that most people have experienced and is well studied (Krauss & Olson, 2015). For example, if one was driving and the car in front of them slammed on their brakes, you, the driver, react to avoid a collision. You would first have to recognize that the car ahead of you is braking abruptly. Next, this recognition (or stimulus) would have to translate into a choice (I need to brake now, hard). Finally, this choice has to be translated into the movement of your leg/foot to both find and step on the brake pedal. Most drivers do this simple act (and often are not even conscious of it) every day while driving. What is interesting to note is that this routine and straightforward task takes time, even for the most skilled drivers. This is why we have often been taught to follow multiple car lengths behind the car ahead of us to have time to react. Looking at this from another perspective would be that if you follow too closely, there is no way that you can react and stop in time.

   b. Specific peer-reviewed and ongoing research has been done to explore how quickly a person can point a firearm at another person and pull the trigger. For example, in one study, a novice or untrained person, while seated in the driver position of a car, was able to grab a pistol located and hidden near their thigh, bring it up, and fire their first shot in approximately.25 seconds on average (Lewinski, 2000). To place this in context, the blink of an eye takes approximately .30 seconds, only slightly longer. In another study, where the driver had hidden a firearm below the

---

[5] As described in interview by M. Pina; dated May 14, 2021
[6] Covert response unit (CRU) training logs/training summaries; 2016 & 2017

officer's line of sight, they attempted to locate and shoot the officer. It took the person/driver approximately .57 seconds (Dysterheft Robb et al., 2013) to locate and lethally engage the approaching officer. In the same study, it took the average officer .37 seconds to recognize and react to the action of the driver. This would leave only .20 seconds for the average officer to make a decision and perform that decision successfully. Research has shown that the greatest amount of time (almost ¾ of the time used when reacting (Lewinski et al., 2014)) is used in recognizing and interpreting the stimulus, as compared to executing the motor skill.

c.  In other peer-reviewed research, the comparative response times between police officers and suspects were studied (Blair et al., 2011). Specifically studied was whether a police officer could execute the action of shooting a pistol that they already had pointed at the suspect before the suspect could bring their pistol up (which was down near their side) and shoot the police officer. This study specifically recognized that the officer's act of shooting involved recognizing the suspect's movements, interpreting the movements, selecting an appropriate action, and ultimately squeezing the trigger of the pistol. This research showed that the time for a suspect to shoot an officer compared to an officer's reaction time to respond and engage the suspect by shooting to be almost equal (.38 seconds for a suspect with .39 seconds for the reacting officer (Blair et al., 2011)). Similar research has shown that it takes the average officer .31 seconds to recognize a stimulus (such as movement) and pull the trigger of a pistol (Lewinski et al., 2014).

d.  Interestingly, related studies have been done in areas involving how fast arms and hands move from different positions. These research studies are often found in sports (Kimm & Thiel, 2015) and the medical community. For example, in one particular medical-related study, the subject started from a seated position with their hands resting on their thighs (Degoede et al., 2001). The study examined the different response times it took for the subjects (based on different stimuli) to raise their hands to their shoulder level. In this study, the motor time averaged approximately .28 seconds. Adding in a commonly accepted value of reaction time (200ms) referenced in multiple studies (Lewinski et al., 2015; Lewinski et al., 2014; Welchman et al., 2010), the total time from response to completing the movement can be determined. To move one's hands from the area of one's thighs (while in a seated position) to shoulder level would most likely occur in slightly less than half a second if one was responding to a stimulus reacting. In contrast, if one was the initiator of the movement, they could do the same movement in less than 1/3 of the second.

e.  Additional ongoing, but only preliminary (pilot research), supports a similar understanding when attempting to perform similar actions with a long gun taking, which took police officers .99 seconds on average to aim and fire their first shot when reacting to a simulated threat (Lewinski et al., 2015).

f. Summarizing some of the concepts related to reaction time, movement, stimulus, initiation as compared to reacting is that when a suspect initiates action, the police officer is actively seeking information, cues, movement indicators, or similar, and they will be at a disadvantage. The reality is that "police officers are required to react to apparent dangers and apparent weapons because normal conditions and lag time do not often allow an officer to ascertain with certainty whether a weapon is present (Ross, 2013, p. 91)." Therefore, police officers are routinely trained that the initiator of an action (often the suspect) will have an advantage. Subsequently, it will be their use of sound tactics and their focus on the most critical information in a potentially lethal encounter that will give them the best chance of survival. Related to the concepts of action/reaction and advantage/disadvantage is the knowledge that once action or the recognition of action occurs, situations can move extremely fast, almost occurring in the blink of an eye.

g. Therefore, research would indicate that when the suspect/threat is the initiator of the action, the officer will be unable to react quicker than the suspect. Subsequently, officers are trained to use such things as available cover, concealment, and tactics to remove (or at least reduce) the advantage of the initiator if possible. For example, issuing commands that require an action from the suspect makes the officer the initiator with the suspect reacting, potentially giving the officer an advantage. In addition, overwhelming a suspect by sensory stimuli, a show of force, or sensory distraction can also potentially disrupt the suspect's ability or intent to initiate.

h. However, research also tells us that once an officer is reacting to the movement of a threat or suspect that they will not be faster than the threat/suspect. To stop the threat, they would need to rely on shot placement, accuracy, and use of cover (which can allow them to return fire even if the initiator got off the first shot). As stated by Hontz over twenty years ago is the realization "that an officer could be covering a subject in a ready position, watching the subject's hands, and the subject could draw his weapon and fire a round before the officer could shoot (1999, p. 470)."

2. Decision Making: Attention, Perception, Choice, & Implementation:

a. The act of deciding is something we do hundreds of times every day, often without giving it much conscious thought or reflection. Yet, to decide or choose, a series of complex processes are occurring. First, to comprehend what we will be deciding about, we must focus our attention on the issue or situation. Then, from where our attention is focused or attending to, we construct or choose a perception. This perception (or in some cases multiple perceptions) then determines our choice options; the decision. *(Note: even the act of what we attend to is in of itself a decision, whether conscious or occurring below the level of conscious thought.)* Finally, the choice or decision is then acted on or implemented.

b.  A simple example can again be taken from driving a motor vehicle. Imagine the same situation described earlier of the following a car too closely that slams on its brakes. If you happen to be looking elsewhere, perhaps had focused your attention on a cellular text message, or simply had been daydreaming, you would be unable to perceive what was happening quickly. This is in part because you had not been attending to information (brake lights of the car in front of you, or how it was moving) that was significant. Since you did not perceive that the car was rapidly coming to a halt, the choice to also step down on your brakes hard to avoid a collision never entered your mind. Attention and perception are perpetually intertwined as the precursor to decision-making and choices.

c.  Human attention is a scarce and limited resource, and decision-makers are selective (either at a conscious level or below the level of consciousness) to the cues and stimuli that they attend to as a way of conserving this resource (Orquin et al., 2018). Stated another way, it would be expected, especially in high-stress situations, that those involved only focus their attention on the most critical cues linked to survival or successfully navigating a dangerous situation (Lewinski, 2008; Vickers & Lewinski, 2012).

d.  Attention takes time. Research has shown that shifting attentional focus completely from one object to another can take anywhere between .20 and .60 seconds (Lewinski et al., 2014). As shown prior, a lethal threat can aim and fire a weapon from a concealed position in approximately the same time. This means that an officer must maintain a singular attentional focus on specific cues when involved in a high-stress or survival-type situation.

e.  We will often focus our available attention on seeking information that allows us to recognize a significant pattern. Multiple studies suggest that time pressure and high stress will cause people to be more selective in the information they seek and their focus of attention (Oh et al., 2016). In the same study, it was also shown that one becomes more selective, but they will also begin to discount and ignore information that has less relevance and less importance in solving the task at hand.

f.  There are many instances (to include critical stress situations) where the deliberative process is not the primary decision process (de Vries et al., 2010; Kibele, 2006; Vickers, 2007). For example, research indicates that during high pressure, time-constrained, and survival type scenarios, those making decisions (such as police officers) often rely on their cognitive blueprints or schema (similarly referred to sometimes as heuristics or as intuition in the context of naturalistic decision-making).

g. These blueprints or schema are constructed from our prior experiences and training. This intuitive/heuristic type of decision-making will often be the default decision process when encountering high stress or time-compressed situations (Hine et al., 2018; Klein, 2015; Klein et al., 2010).

h. Pattern recognition is a critical component of decision-making (Kibele, 2006). Police officers seek out patterns of information related to a blueprint or meaningful schema often constructed from training and experience. Experts recognize patterns or schema from memory and then use quick mental simulation or modeling to select the first choice they perceive as adequate (Hine et al., 2018; Klein et al., 1997). This concept is often referred to as satisficing and is well documented and researched in the areas of decision-making (Hine et al., 2018; Oh et al., 2016; Simon, 1956; Stüttgen et al., 2012) and heuristics (Bendor et al., 2009; Gigerenzer & Brighton, 2009; Gigerenzer & Gaissmaier, 2011; Hafenbrädl et al., 2016; Simon, 1956).

i. Heuristics can be thought of as mental shortcuts for decision-making. In fact, in the research literature, heuristics are viewed by some as general rules of thumb (Hafenbrädl et al., 2016). They are a simple tool or strategy that can allow the decision-maker to function quickly and efficiently without conscious deliberation. Using the driving example throughout this analysis (following too closely), a general rule of thumb-heuristic often taught is always to leave yourself enough room to stop. The driver does not constantly calculate each stopping distance; instead, through experience, training, and blueprints (schema), they constantly adjust their following distance (at an almost intuitive unconscious level) to have enough room to stop safely.

j. In lethal force encounters, the officer seeks critical information related to movement, weapons, indicators of intent, and similar that, when aggregated, allows them to recognize that they are about to be shot. Once this recognition occurs, the response (arguably similar to a fast and frugal heuristic (Hafenbrädl et al., 2016)) is almost instantaneous.

k. Again, an example of this is driving a vehicle. Building upon the following too closely scenario... You hear your favorite song and, without thinking, look down (for only a moment) to adjust your phone/radio. Your primary vision and attention have briefly shifted focus. Then your peripheral vision detects the change in movement from the car in front of you as it was coming to an immediate stop. You drop the phone (it's no longer important). Then, without thinking, you begin to apply the brake as you intently focus on the information critical to the outcome, the distance between the front of your vehicle and their rear bumper, and the speed by which it is decreasing.

l.   In this example, it is doubtful there was any conscious deliberation about what you needed to do to navigate your way through this; you simply acted using a known pattern that was successful in the past (the heuristic that involved braking, steering, and focusing your attention).

m.   Much in the same way, police officers are trained to notice the most important cues during a potential life-and-death situation, to recognize and seek that information that is most critical to their survival and successfully navigating the situation. For example, a common rule of thumb or heuristic for police officers is to control the hands. This can either be done by seeing that the hands contain no objects that can harm the police officer or physically control the hands using physical control techniques or restraints. At the most basic level, this is because hands (and the things they control) can kill you. A second common rule of thumb/heuristic is that guns, knives, and things that can hurt you are often kept in the waistband and the pockets (when dealing with a person) or in consoles and under the seat (within arms reach yet hidden) when dealing with a person in a vehicle. Subsequently, police officers are trained to keep a suspect's hands away from the waistband, consoles, glove boxes and moving to areas where a weapon could be hidden in a vehicle (such as under the seat).

3.   Investigation Observations:

a.   Initial interviews of the involved officers were taken approximately 15 hours after the beginning of their shift and with no sleep. Research shows that sleep cycles help consolidate memory (Honig & Lewinski, 2008; International Association of Chiefs of Police, 2016; Remsberg, 2014), as does recovery time to purge the residuals of high-stress events such as adrenaline and similar compounds. Thus, if the affected officers were still consolidating memory during the first interview, several possible things may have occurred.

   1)   First, the initial interview would most likely be inconsistent with subsequent interviews since memory consolidation continued to occur after the first interview.

   2)   Second, aspects of the first interview, such as leading questions or interpretations by the investigator, video utilized as a recall mechanism, could have modified the involved officers' memory.

   3)   This potential effect is considered during my analysis.

b.   The video files are not time-synched or anchored. When using video, standard practice is to sync the videos from a common known point in time. One then adjusts for such things as frame rates or storage algorithms. Timestamps on the body-worn camera videos differ significantly (in some cases over 10 seconds), as do the timestamps on the witness security footage. Because of this, I

have chosen to use the clearest video and its subsequent timestamps.[7] The times mentioned are not considered a true representation of the time of day or occurrence within the event.

**Incident described:**

1. The incident that culminated in the use of lethal force by Sgt. Pina is described as follows. This description is an aggregate from the evidence provided and focuses on significant information used to understand and analyze Sgt. Pina's use of force.

2. Lead up to the event [8]:

   a. On September 12, 2017, members of the Regional Auto Theft Task Force (RATTF) conducted surveillance on Andrew Anchondo as he was driving a stolen Mercedes. The team observed the stolen Mercedes pull into the Arco gas station at 2357 Quimby Road in San Jose. Andrew Anchondo was the driver, Patricia Ruiz was the front passenger, and Jacob Dominquez was the rear seat passenger.

   b. Upon arriving at the Arco, Dominguez exited the vehicle, entered the station's convenience store, paid for gas, and bought some water. Dominguez then returned to the Mercedes, after which Anchondo masked himself up with a bandana, entered the store, and robbed three employees at gunpoint (described as a black handgun) of approximately $350 in cash.

   c. Once RATTF learned an armed robbery occurred inside the Arco station, the San Jose Police Department's (SJPD) Covert Response Unit (CRU) took over surveillance and apprehension of the vehicle's occupants due to the nature of the crime and Anchondo being a suspect in a gang-related shooting that occurred the week before. Surveillance was ultimately lost, and the operation was terminated for the day.

   d. On Wednesday, September 13, 2017, the Santa Clara County Probation Department notified SJPD that Anchondo, Ruiz, and Sheila Franco, the girlfriend of Jacob Dominguez, were at 17641 CalleMazatlan, Morgan Hill. Members of CRU set up surveillance at that location at around noon that day. The three people were seen entering a Chevy Malibu, which CRU stopped using the Vehicle Control Tactic, or "VCT," a method used by law enforcement to apprehend a suspect during a vehicle pursuit.

      a. If executed correctly, the suspect vehicle has no room to maneuver forward or backward,

---

[7] SJ1766, BWC footage from Ofc. Ferguson
[8] County of Santa Clara "Report on the fatal shooting of Jacob Dominguez September 15, 2017" dated March 8, 2019

making it impossible to drive off.

e.  CRU took Anchondo and Ruiz into custody and released Franco after being detained. However, the firearm used in the Arco robbery was not recovered.

f.  Late Friday morning on September 15, 2017, CRU Officer Peter Szemeredi conducted a briefing to advise other CRU members of the Operational Plan ("OP Plan") to apprehend Dominguez on an arrest warrant for the Arco station armed robbery. Officer Michael Pina was present.

g.  CRU personnel were advised in the OP Plan of specific safety concerns in that Dominguez is an active SJG [San Jose Grande] gang member and believed to be armed with a revolver. The handgun used in the Arco robbery is currently outstanding. Dominguez is aware he is wanted, and it is believed that he is aware of surveillance tactics and may be familiar with CRU Cars/personnel. [9][10]

h.  Dominguez was eventually located driving the black Kia near Brokaw Road and Junction Avenue, where CRU reinitiated surveillance. During the surveillance, Dominguez engaged in counter-surveillance tactics such as driving on the shoulder, passing vehicles, stopping in the middle of the street and making illegal U-turns. Consequently, CRU decided to follow at a distance and rely on aerial surveillance to let Dominguez "cool down." [11]

i.  Before 7:00 p.m., aerial surveillance announced that Dominguez started driving normally and turned eastbound on Penitencia Creek from northbound Capitol Expressway. Officer Fonseca kept driving straight on Capitol Expressway, and Officer Pina turned eastbound on Penitencia Creek, making him the lead car. Officer Pina was followed closely by Officer Ferguson and Officer Lopez.

3.  Execution of VCT:

a.  Video shows the execution of VCT [12]; no concerns noted.

---

[9] County of Santa Clara "Report on the fatal shooting of Jacob Dominguez September 15, 2017" dated March 8, 2019.
[10] CRU operational plan dated 9/15/2017
[11] 1728230 -Interview Transcript of Ofr Michael Pina & As described in interview by M. Pina; dated May 14, 2021
[12] HCVR_ch6_main_20170915183034_20170915183259.avi

b. Demonstratives [13], diagrams [14], and photos[15] also show positions of vehicles in the execution of the VCT; no concerns noted.

c. Interview(s) [16] indicate that Ofc. Pina confirmed the selection of location from the air unit and ensured that the VCT did not pose a significant risk to the public.

4. Apprehension (VCT to Shooting Decision):

   a. General:

   1) Sirens are heard in multiple videos. Officers are plainclothes, using ballistic vests with identification showing that they are police officers. This is confirmed via photos.

   2) In addition to their standard police equipment and carry, Officers Pina and Ferguson use an AR 15, .223 caliber tactical rifle. The rifle is customarily attached or slung to their vest by a two-point quick release sling. The optics on the rifle are an Aimpoint red dot sight/scope. This configuration is confirmed via photos, video, and interviews.

   3) Multiple Officers issued verbal commands and directed Mr. Dominguez to raise his hands or keep his hands up.

   4) Ferguson Video (Clearest video and times used for comparison and calculation. Times are not synced.) [17]

   - 02:03:01Z        He is "stopped all by himself," an apparent reference to Dominguez.

   - 02:03:24Z        police sirens are heard, his car accelerates.

   - 02:03:26Z        Out of Vehicle, "let me see your fucking hands."

   - 02:03:28-30Z      Pina can be heard saying "keep your fucking hands up" and something similar to moving you're going to get shot. Ferguson can be heard directing the flash bang-up. Verbal commands continue.

---

[13] Graphic 7 & Graphic 8
[14] 17-258-0283 Police Report
[15] Consolidated file of investigative photographs denoted as SJ0189-SJ0763
[16] 1728230 -Interview Transcript of Ofr Michael Pina & As described in interview by M. Pina; dated May 14, 2021
[17] SJ1766, BWC footage from Ofc. Ferguson

- 02:03:39Z       Ferguson out of the vehicle with weapon positioned and issuing verbal commands. Dominguez is assumed to have hands still up (approximately 13 seconds have passed since the first command).

- 02:03:40-43Z       Situation appears to escalate with increased commands telling Dominguez to keep his hands up. At 02:03:42Z, Ferguson appears to duck slightly as Pina fires shots.

  - Two shots are heard in approximately half a second [18].

- 02:03:56Z Flashbang is tossed by vehicle 3 (Lopez)

b.   Pina Video [19]

- Shows Pina at the front of vehicle 2 (Ferguson); some commands are heard. One can approximate Pina's position, the firing of rounds, and cadence from body movement and based on the position of Ferguson/weapon.

c.   Crime lab reports [20]

- The County of Santa Clara Crime Laboratory reports state the time between the two shots of Ofc. Pina as .535 seconds. This time is considered accurate and used throughout this report.

- Concluded within the report is that Ofc. Pina fired two shots from his rifle, of which one struck Mr. Dominguez. Additionally, based on additional forensic evidence and their analysis, it is reasonably certain that it was Ofc. Pina's first shot struck Mr. Dominguez.

- Additionally observed is that the left sleeve/forearm area of the sweatshirt worn by Mr. Dominguez at the time of the shooting also had a bullet hole in it that would've been caused by Ofc. Pina's first-round or shot.

---

[18] SJ1766, BWC footage from Ofc. Ferguson & 17-258-0283 Lab Reports
[19] SJ1764, BWC footage from Ofc. Pina
[20] 17-258-0283 Lab Reports

b.   Actions and behavior of Mr. Dominguez:

1)   During the VCT, he placed his car into reverse and was subsequently blocked and contained by Ofc. Lopez. [21]

2)   Mr. Dominguez stares at Ofc. Pina during initial seconds of contact when Ofc. Pina is giving him commands from his position near the front of vehicle two. When Ofc. Pina tells him to put his hands up initially; Mr. Dominguez does not comply and continues to stare at Ofc. Pina. When commanded by Ofc. Pina to put his hands up again and something to the effect that he will be shot, he replies, "fuck you, shoot me bitch." [22] However, he does raise his hands to a level where they can be seen near his shoulders. Ofc. Ferguson recalls conversation between Ofc. Pina and Mr. Dominguez, but not exact words or statements.

3)   Mr. Dominguez, from the position where he had raised his hands earlier, is reported to have quickly lowered his hands while leaning his body forward. It is purported that his hands moved down to the area near the bottom of the driver seat, and in doing so, they were no longer visible.[23]

c.   Perceptions, decisions, and actions of Ofc. Pina.

1)   Ofc. Pina identified Mr. Dominguez before executing the VCT. [24]

2)   Ofc. Pina estimates he was about 10 feet from Mr. Dominguez prior to the shooting.[25]

[21] 1728228 - Interview Transcript of Ofr Kristopher Ferguson & 1728229 - Interview Transcript of Ofr Alvaro Lopez & 1728230 - Interview Transcript of Ofr Michael Pina & Deposition of Ofc. Alvaro Lopez dated March 1, 2021
[22] 1728230 - Interview Transcript of Ofr Michael Pina & Deposition of Sgt. Michael Pina dated March 3, 2021 & As described in interview by M. Pina; dated May 14, 2021
[23] Interview Transcript of Ofr Kristopher Ferguson & 1728229 - Interview Transcript of Ofr Alvaro Lopez & 1728230 - Interview Transcript of Ofr Michael Pina & Deposition of Ofc. Alvaro Lopez dated March 1, 2021
[24] 1728230 -Interview Transcript of Ofr Michael Pina & As described in interview by M. Pina; dated May 14, 2021
[25] 1728230 - Interview Transcript of Ofr Michael Pina & Deposition of Sgt. Michael Pina dated March 3, 2021 & As described in interview by M. Pina; dated May 14, 2021

3) Scene reconstruction similarly estimates the distance at somewhere between 10 and 12 feet. [26]

4) Ofc. Pina perceived, based on the facial expressions of Mr. Dominguez and the fact that he had initially raised his hand, communicated with them that Mr. Dominguez was able to hear and understand him. [27]

5) Ofc. Pina remembers looking over the top of the Aimpoint site while his rifle was being held in a low ready vision issuing the initial set of commands to Mr. Dominguez. [28]He recalls being only able to see through the driver's window (partially rolled down) the head and upper shoulder area and potentially as far down to the mid-torso and elbows of Mr. Dominguez.

6) Ofc. Pina remembers being wholly focused on the hands of Mr. Dominguez. Ofc. Pina does not clearly remember visual information about Dominguez, the inside of the vehicle, or other external information other than the hands, facial expressions, and body movement of Mr. Dominguez.[29]

   - His focus, attention, and memory of visual information would commonly be expected and occur in such an event. The aforementioned research in this analysis supports this conclusion.

7) Ofc. Pina is acutely focused on the suspect's hands and potential movement. He detected the movement of Mr. Dominguez's hands (downward and out of sight) and body (leaning forward and down) and interpreted/perceived the movement as reaching for a potential firearm. Ofc. Pina believed that if Mr. Dominguez's hands were allowed to come back up, either he or Ofc. Ferguson would be shot. [30]

---

[26] Graphic 7 & Graphic 8
[27] Deposition of Sgt. Michael Pina dated March 3, 2021
[28] As described in interview by M. Pina; dated May 14, 2021
[29] 1728230 - Interview Transcript of Ofr Michael Pina & Deposition of Sgt. Michael Pina dated March 3, 2021 & As described in interview by M. Pina; dated May 14, 2021
[30] 1728230 - Interview Transcript of Ofr Michael Pina & Deposition of Sgt. Michael Pina dated March 3, 2021 & As described in interview by M. Pina; dated May 14, 2021

8) Also noted is that prior to moving his hands downward, Mr. Dominguez had placed his hands where they could be seen and held them up. For Ofc. Pina, this downward movement of the hands represented the exact opposite of what was expected. [31] Ofc. Pina believed/perceived that Mr. Dominguez was reaching for a weapon. The body movement of Mr. Dominguez reinforced this perception. The aforementioned research in this analysis supports the perception that the movement or action of Mr. Dominguez (which he interpreted as reaching for a weapon) would be quicker than he could react.

9) When Mr. Dominguez's hands went down, Ofc. Pina began to raise his weapon and gain a sight picture through his Aimpoint site by attempting to place the red dot of the optic on any available target presented by Mr. Dominguez [32].

10) The only part of Mr. Dominguez that could be seen through the optics was the head and neck /upper shoulder area when he took his first shot.[33]

11) Ofc. Pina attempted to adjust his sight picture for a possible second shot. He remembers the body movement of Mr. Dominguez as seen through his Aimpoint scope as continuing to come upright into the seat. [34] Ofc. Pina was still unable to see the hands of Mr. Dominguez when he took his second shot.  The two shots occur in approximately half a second (.535 seconds)[35]. He states that when he took the second shot, based on the continuing movement of Mr. Dominguez and the lack of any contradictory information, he still perceived Mr. Dominguez as a lethal threat.[36]

12) After the second shot, Ofc. Pina recalls that the movement of Mr. Dominguez's body changed in that he stopped coming up and back, shifted slightly to the right, his head turned away from him, and he was no longer staring at them. [37]Ofc. Pina transitioned from looking through his Aimpoint site to a low ready and did not take a third shot. At

---

[31] 1728230 - Interview Transcript of Ofr Michael Pina & As described in interview by M. Pina; dated May 14, 2021
[32] As described in interview by M. Pina; dated May 14, 2021
[33] Deposition of Sgt. Michael Pina dated March 3, 2021 & As described in interview by M. Pina; dated May 14, 2021
[34] As described in interview by M. Pina; dated May 14, 2021
[35] SJ1766, BWC footage from Ofc. Ferguson & 17-258-0283 Lab Reports
[36] Deposition of Sgt. Michael Pina dated March 3, 2021 & As described in interview by M. Pina; dated May 14, 2021
[37] As described in interview by M. Pina; dated May 14, 2021

this point, Ofc. Pina determined he was no longer a lethal threat. Ofc. Pina began to peel back to the rear vehicles.[38]

13) Ofc. Pina recalls that his decision process was neither conscious nor deliberate. He acted immediately, thinking that either he or his fellow officers were about to be shot. He recalls performing as he had been trained, including training about action vs. reaction.

- It is probable that Ofc. Pina had quickly determined the most critical things that he needed to focus on in this high-stress and critical/survival environment. It is also likely that his decision process (influenced by the environment and his attentional focus) was almost automatic and occurring below the level of conscious choice or deliberate thought. This type of decision-making is not uncommon in such situations and supported by the aforementioned research in this analysis.

**Conclusions:**

1. Sgt. Pina and the CRU executed a VCT to apprehend Mr. Dominguez. They believed that Mr. Dominguez was armed with a firearm (pistol), was considered a dangerous felon, had been displaying erratic behavior indicating that he knew he was under surveillance. It was also believed that he would attempt to escape to avoid arrest. Evidence presented and examined during my analysis supports these beliefs and conclusions of the CRU and Sgt. Pina.

2. The VCT is a commonly accepted tactic used by police to apprehend potentially violent suspects in a vehicle that can potentially be mobile. A properly executed VCT creates sensory overload within the suspect while preventing them from escaping either in their vehicle or on foot. In a properly executed VCT, all three officer vehicles would simultaneously move into their final positions (blocking the suspect vehicle). The evidence presented and examined during my analysis shows that the VCT was performed adequately (vehicles two and three did have a slight lag before coming to a complete stop). The VCT accomplished its desired goals safely. Similarly, two days prior, the CRU had also performed a VCT to apprehend related suspects to Mr. Dominguez.

3. Mr. Dominguez eventually first raised his hands in response to Sgt. Pina's initial set of commands. This would indicate that Mr. Dominguez was able to hear and comprehend the commands given by Sgt. Pina. With the hands of Mr. Dominguez being in view, he was to some degree controlled and contained, and no force (other than a heightened sense of presence with firearms being pointed and verbalization by the officers) was used. There is no evidence presented that contradicts this conclusion.

---

[38] As described in interview by M. Pina; dated May 14, 2021

4.  Mr. Dominguez was commanded to keep his hands up and that if he were to move, he would be shot. Instead, Mr. Dominguez moved his hands quickly in a downward motion and out of sight. During this motion of Mr. Dominguez's hands, his body is described as bending or leaning forward while continuing to look in the direction of the officers from approximately 11′ away. Sgt. Pina's interpretation of these actions combined with previous behaviors was that Mr. Dominguez was reaching for a firearm with the intent to either shoot him or his fellow officers. Sgt. Pina's interpretation of Mr. Dominguez's actions and behaviors is that of a reasonably trained and experienced police officer.

5.  Sgt. Pina decided to shoot (first shot) based on his perceptions of Mr. Dominguez's actions and behaviors, which he had interpreted as a lethal threat to himself or his fellow officers. Based on the research and my analysis, Sgt. Pina did not have sufficient time to ascertain with any degree of certainty if Mr. Dominguez actually had gained control of a firearm. Sgt. Pina's decision to shoot was based on his interpretation/perception of the actions and behaviors of Mr. Dominguez (taken in the totality and context of all things that led up to that moment).

    a.  This conclusion is also supported by a body of research that suggests that the strongest predictor and whether a police officer will use force or not is the suspect's behavior (Cojean et al., 2020; Hine et al., 2018). It was only through observation after the fact, a hindsight analysis, that it was determined that no firearm was present or under the control of Mr. Dominguez.

    b.  Research also supports the reasoning that the initiator of an action will always have an advantage over the person reacting to the same action. In this case, Sgt. Pina is reacting to the downward movement of Mr. Dominguez's hands, perceiving them to be reaching for a weapon. Regardless of Mr. Dominguez's intent, we can never know why he moved his hands quickly downward from a position where they were easily seen. Sgt. Pina's actions, prior training, schema, attentional focus, and visual focus support the conclusion that he believed that he knew he was reacting to the initiating action of Mr. Dominguez and at a potentially lethal disadvantage.

6.  Sgt. Pina's second shot was similarly based on the continuing movement or actions of Mr. Dominguez, which Sgt. Pina interpreted/perceived as a continuing lethal threat. Sgt. Pina's interpretation of Mr. Dominguez's actions and behaviors is that of a reasonably trained and experienced police officer.

7.  No evidence examined during my analysis caused me to reject any of the aforementioned conclusions.

    a.  Consideration is given to the holes in the left arm of the sweatshirt of Mr. Dominguez. Hypothetically, starting from the point where Mr. Dominguez's body was leaning forward, and his hands were out of view, we can impose the time of approximately .28 seconds as an approximate time for him to bring his hands back into view of Ofc. Pina.

b. However, within the same time, it would be likely that Ofc. Pina had already shifted his view to the Aimpoint optic and was focused acutely on placing the red dot on the available target presented. In short, it would not be expected that he would see nor perceive the arm of Mr. Dominguez since it would most likely be outside of his field of view.

c. Additionally, since Ofc. Pina was reacting; he would be anywhere from ¼ to a ½ a second behind Mr. Dominguez's movements. Therefore it is likely that by the time Ofc. Pina had detected critical cues, interpreted the information, shifted attention, and executed the motor action (that resulted in his first trigger pull); the continuing movement of Mr. Dominguez to an upright position could result in his left arm being within the trajectory of the first bullet. If this occurred, it would have been compounded by the fact that Ofc. Pina's vision, attentional focus, seeking of critical information (for the most part) remained unchanged until after the second shot, where the movement and actions of Mr. Dominguez changed. This then resulted in Ofc. Pina not shooting a third time as he changed his attentional focus, no longer looking through the Aimpoint optic.

8.  My professional review of this case concludes the following: Ofc (now Sgt.) Pina's actions/response was consistent with accepted practices and training of a reasonable officer for the appropriate use of physical force as dictated by the situation and in response to Mr. Dominguez's actions. Additionally, my analysis also indicates that the actions that led to Sgt. Pina's use of lethal force was first predicated by the actions and choices of Mr. Dominguez. A police officer's choice of a reasonable response is based on training, experience and measured against the standard of the reasonable officer. Additionally noted is that police officers are trained to examine the range of possible, feasible, and reasonable alternatives and choose one response from that range.

9. In this case, the force applied stemmed from a reasonable choice and is consistent with the training of a reasonably trained police officer subject to the same performance limitations and factors that research has shown to affect humans involved in similar situations. Cited research is found in Attachment A (References Cited).

The foregoing facts and conclusions are true based on my personal knowledge and experience, and I make this declaration under the penalty of perjury.

This 20th day of May 2021.


_____

Dr. John R. Black

## Attachment A: References Cited

Bendor, J. B., Siegel, D. A., & Kumar, S. (2009). Satisficing: A 'Pretty Good' Heuristic. *The BE Journal of Theoretical Economics*, *9*(9).

Blair, J. P., Pollock, J., Montague, D., Nichols, T., Curnutt, J., & Burns, D. (2011). Reasonableness and Reaction Time. *Police Quarterly*, *14*, 323-343. https://doi.org/10.1177/1098611111423737

Cojean, S., Combalbert, N., & Taillandier-Schmitt, A. (2020). Psychological and sociological factors influencing police officers' decisions to use force: A systematic literature review. *International journal of law and psychiatry*, *70*, 101569. https://doi.org/https://doi.org/10.1016/j.ijlp.2020.101569

de Vries, M., Witteman, C. L. M., Holland, R. W., & Dijksterhuis, A. (2010). The Unconscious Thought Effect in Clinical Decision Making: An Example in Diagnosis. *Medical Decision Making*, *30*(5), 578-581. https://doi.org/10.1177/0272989x09360820

Degoede, K. M., Ashton-Miller, J. A., Liao, J. M., & Alexander, N. B. (2001). How Quickly Can Healthy Adults Move Their Hands to Intercept an Approaching Object? Age and Gender Effects. *The Journals of Gerontology Series A: Biological Sciences and Medical Sciences*, *56*(9), M584-M588. https://doi.org/10.1093/gerona/56.9.m584

Dekker, S. (2014). *The field guide to understanding 'human error'* (Third edition. ed.). Ashgate.

Dysterheft Robb, J., Lewinski, W., Pettitt, R., & O'Neill, D. (2013). The influence of officer positioning on movement during a threatening traffic stop scenario. *Law Enforcement Executive Forum*, *13*, 98-109.

Gigerenzer, G., & Brighton, H. (2009). Homo Heuristicus: Why Biased Minds Make Better Inferences. *Topics in cognitive science*, *1*(1), 107-143. https://doi.org/10.1111/j.1756-8765.2008.01006.x

Gigerenzer, G., & Gaissmaier, W. (2011). Heuristic Decision Making. *Annual Review of Psychology*, *62*(1), 451-482. https://doi.org/10.1146/annurev-psych-120709-145346

Hafenbrädl, S., Waeger, D., Marewski, J. N., & Gigerenzer, G. (2016). Applied Decision Making With Fast-and-Frugal Heuristics. *Journal of Applied Research in Memory and Cognition*, *5*(2), 215-231. https://doi.org/10.1016/j.jarmac.2016.04.011

Hine, K. A., Porter, L. E., Westera, N. J., Alpert, G. P., & Allen, A. (2018). Exploring Police Use of Force Decision-Making Processes and Impairments Using a Naturalistic Decision-Making Approach. *Criminal Justice and Behavior*, *45*(11), 1782-1801. https://doi.org/10.1177/0093854818789726

Honig, A., & Lewinski, W. (2008). A Survey of the Research on Human Factors Related to Lethal Force Encounters: Implications for Law Enforcement Training, Tactics, and Testimony. *Law Enforcement Executive Forum*, *4*.

Hontz, T. A. (1999). Justifying the Deadly Force Response. *Police Quarterly*, *2*(4), 462-476. https://doi.org/10.1177/109861119900200404

International Association of Chiefs of Police. (2016). Officer-Involved Shootings: A Guide for Law Enforcement Leaders. In (pp. 46). Washington, DC: Office of Community Oriented Policing Services.

Kibele, A. (2006). Non-consciously controlled decision making for fast motor reactions in sports—A priming

approach for motor responses to non-consciously perceived movement features. *Psychology of Sport and Exercise*, *7*(6), 591-610. https://doi.org/https://doi.org/10.1016/j.psychsport.2006.05.001

Kimm, D., & Thiel, D. V. (2015). Hand Speed Measurements in Boxing. *Procedia Engineering*, *112*, 502-506. https://doi.org/10.1016/j.proeng.2015.07.232

Klein, G. (2015). A naturalistic decision making perspective on studying intuitive decision making. *Journal of Applied Research in Memory and Cognition*, *4*(3), 164-168. https://doi.org/10.1016/j.jarmac.2015.07.001

Klein, G., Calderwood, R., & Clinton-Cirocco, A. (2010). Rapid Decision Making on the Fire Ground: The Original Study Plus a Postscript. *Journal of Cognitive Engineering and Decision Making*, *4*, 186-209. https://doi.org/10.1518/155534310X12844000801203

Klein, G., McCloskey, M., Pliske, R., & Schmitt, J. (1997). Decision skills training. *Proceedings of the Human Factors and Ergonomics Society .. Annual Meeting*, *1*, 182.

Krauss, D. A., & Olson, P. L. (2015). *Forensic aspects of driver perception and response* (Fourth edition. ed.). Lawyers & Judges Publishing Company.

Lewinski, W. (2000). WHY IS THE SUSPECT SHOT IN THE BACK? Finally, Hard Data on How Fast the Suspect Can Be In 11 Different Shooting Scenarios. *The Police Marksman*(December), 20-28.

Lewinski, W. (2008). The Attention Study: A Study on the Presence of Selective Attention in Firearms Officers. *Law Enforcement Executive Forum*, *8*(6), 107-139.

Lewinski, W., Dysterheft Robb, J., Bushey, J., & Dicks, N. (2015). Ambushes Leading Cause of Officer Fatalities - When Every Second Counts: Analysis of Officer Movement from Trained Ready Tactical Positions. *Law Enforcement Executive Forum*, *15*. https://doi.org/10.19151/LEEF.2015.1051a

Lewinski, W., Hudson, W., & Dysterheft, J. (2014). Police Officer Reaction Time to Start and Stop Shooting: The Influence of Decision-Making and Pattern Recognition. *Law Enforcement Executive Forum*, *14*(2), 16.

Oh, H., Beck, J. M., Zhu, P., Sommer, M. A., Ferrari, S., & Egner, T. (2016). Satisficing in split-second decision making is characterized by strategic cue discounting. *Journal of Experimental Psychology: Learning, Memory, and Cognition*, *42*(12), 1937-1956. https://doi.org/10.1037/xlm0000284

Orquin, J. L., Perkovic, S., & Grunert, K. G. (2018). Visual Biases in Decision Making. *Applied Economic Perspectives and Policy*, *40*(4), 523-537.

Remsberg, C. (2014). *Reasons For Delaying Interviews With OIS Survivors*. Force Science Institute. Retrieved May 22 from https://www.forcescience.org/2014/05/force-science-institute-details-reasons-for-delaying-interviews-with-ois-survivors/

Ross, D. L. (2013). Assessing Lethal Force Liability Decisions and Human Factors Research. *Law Enforcement Executive Forum*, *13*(2), 85-107.

Simon, H. A. (1956). Rational choice and the structure of the environment. *Psychological Review*, *63*(2), 129-138. https://doi.org/10.1037/h0042769

Stüttgen, P., Boatwright, P., & Monroe, R. T. (2012). A Satisficing Choice Model. *Marketing Science*, *31*(6), 878-

899. https://doi.org/10.1287/mksc.1120.0732

Vickers, J. N. (2007). *Perception, cognition, and decision training : the quiet eye in action*. Human Kinetics.

Vickers, J. N., & Lewinski, W. (2012). Performing under pressure: Gaze control, decision making and shooting performance of elite and rookie police officers. *Human Movement Science*, *31*(1), 101-117. https://doi.org/10.1016/j.humov.2011.04.004

Welchman, A. E., Stanley, J., Schomers, M. R., Miall, R. C., & Bülthoff, H. H. (2010). The quick and the dead: when reaction beats intention. *Proceedings of the Royal Society B: Biological Sciences*, *277*(1688), 1667-1674. https://doi.org/10.1098/rspb.2009.2123

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

TO:           Maren J. Clouse, Senior Deputy City Attorney
              Office of the City Attorney, City of San Jose
              200 E. Santa Clara St., 16th Floor
              San Jose, CA. 95113

FROM:         Rocky Edwards & Heather Heider
              Rock Forensics, Inc.
              160 W. Foothill Parkway #105-190
              Corona, CA 92882

DATE:         May 19, 2021

SUBJECT:      Dominguez v. City of San Jose, et al.
              Case No. 5:18-cv-04826-BLF

## INTRODUCTION

This comprehensive evaluation is being submitted by Rocky Edwards (Edwards) and Heather Heider (Heider) of Rock Forensics, Inc.

## SCOPE OF INVESTIGATION

Rock Forensics, Inc. was requested to evaluate and report findings regarding the September 15, 2017 Officer Involved Shooting (OIS) that occurred at the intersection of Penitencia Creek Road and North White Road in the City of San Jose, California. Specifically, Rock Forensics, Inc. was asked to evaluate the physical firearm-related evidence in this matter and determine if the evidence was consistent with the statements of the involved San Jose Police Officers. This evaluation was based upon the below listed investigative materials provided and the evidence reviewed.

## INCIDENT SYNOPSIS

Members of the San Jose Police Department's Covert Response Unit (CRU) conducted a vehicle control tactic (VCT) on the vehicle Dominguez was driving. After the successful application of the VCT, an OIS occurred resulting in Dominguez's death.

## INVESTIGATIVE MATERIALS REVIEWED

Body Worn Camera (BWC)
- SJ1751.mp4
- SJ1753.mp4
- SJ1759.mp4

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

- SJ1760.mp4
- SJ1761.mp4
- SJ1762.mp4
- SJ1763.mp4
- SJ1764 - Pina.mp4
- SJ1765 - Jimenez.mp4
- SJ1766 - Ferguson.mp4
- AXON_Body_2_Video_2017-09-15_1847.mp4
- AXON_Body_2_Video_2017-09-15_1902.mp4
- AXON_Body_2_Video_2017-09-15_1903.mp4
- AXON_Body_2_Video_2017-09-15_1904-file 2.mp4

Officer Interviews
- 1728228 - Interview Transcript of Ofr Kristopher Ferguson.pdf
- 1728229 - Interview Transcript of Ofr Alvaro Lopez.pdf
- 1728230 -Interview Transcript of Ofr Michael Pina.pdf
- Number 02 Channel Ch4 Room Homicide Room 2 01-15-23 SD.mp4
- Number 01 Channel Ch3 Room Homicide Room 2 23-33-40 SD.mp4
- Number 02 Channel Ch4 Room Homicide Room 2 23-33-40 SD.mp4
- Number 01 Channel Ch3 Room Homicide Room 2 23-33-40 SD.mp4
- Number 02 Channel Ch4 Room Homicide Room 2 23-33-40 SD.mp4
- FOR PRODUCTION Number 01 Channel Ch3 Room Homicide Room 2 02-14-35 SD-final.mp4
- FOR PRODUCTION Number 02 Channel Ch4 Room Homicide Room 2 02-14-35 SD-final.mp4

Video
- NVR_Sherlock_ch3_main_20170915190000_20170915190500.avi
- NVR_Sherlock_ch3_main_20170915190500_20170915191000.avi
- NVR_Sherlock_ch3_main_20170915191000_20170915191500.avi
- HCVR_ch6_main_20170915183000_20170915183022.avi
- HCVR_ch6_main_20170915183034_20170915183259.avi
- HCVR_ch6_main_20170915183317_20170915183624.avi
- HCVR_ch6_main_20170915183628_20170915183705.avi
- HCVR_ch6_main_20170915183714_20170915183734.avi
- HCVR_ch6_main_20170915183756_20170915183926.avi
- HCVR_ch6_main_20170915183956_20170915184041.avi
- HCVR_ch6_main_20170915184048_20170915184051.avi
- HCVR_ch7_main_20170915183000_20170915183016.avi
- HCVR_ch7_main_20170915183038_20170915183214.avi
- HCVR_ch7_main_20170915183219_20170915183307.avi
- HCVR_ch7_main_20170915183315_20170915183459.avi
- HCVR_ch7_main_20170915183503_20170915183618.avi
- HCVR_ch7_main_20170915183636_20170915183732.avi

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

- HCVR_ch7_main_20170915183801_20170915183923.avi
- HCVR_ch7_main_20170915183934_20170915183948.avi
- HCVR_ch7_main_20170915183955_20170915184039.avi

Interviews
- SJ1668 - 17-258-0283 Carlos Lavato Phone Interview 9.28.17.WMA
- SJ1667 - 11.17.2017 Leslie Bradley.WMA
- SJ1666 - 10.02.2017 Rhiannon Borunda.WMA

Depositions
- Sgt. Michael Pina.pdf
- Officer Alvaro Lopez.pdf
- Officer Kristoffer Ferguson.pdf

Documents
- 17-258-0283 Coroner Report.pdf
- 17-258-0283 Lab Reports.pdf
- 17-258-0283 Police Report.pdf
- CAD.pdf
- Event Details.pdf
- exam request 1.pdf
- exam request 1a.pdf
- notes 0.pdf
- notes 1.pdf
- report 0.pdf
- report 1.pdf
- J.Dominguez OIS 2-15-2017.pdf
- Autopsy Receipt.pdf
- Autopsy.pdf
- Examiner #1.pdf
- Inv. Report.pdf
- Receipt.pdf
- Notes  Laundrie.pdf
- Notes Laundrie (2).pdf
- Notes Martinez.pdf
- 17-258-0283.pdf
- 17-258-0283pina.pdf
- comm log 0.pdf
- comm log 1.pdf
- DOMINGUEZ031518-083941AM.PDF

Diagrams
- 17-258-0283evidence.pdf
- 17-258-0283evidence2.pdf
- 17-258-0283namesandplates.pdf
- 17-258-0283pina.pdf

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

- Leica Scans

Photos
- photos.pdf
- LCV Mapping
  - _DSC0175.JPG - _DSC0259.jpg
  - BL-flipped.tif
  - BL+FL-flipped.jpg
  - bottomLcuff-flipped.tif
  - BR+FR-flipped.jpg
  - BRcuff-flipped.tif
  - FL-flipped.tif
  - FLcuff-flipped.tif
  - FLmid-flipped.tif
  - FRcuff-flipped.tif
  - topLcuff-flipped.tif
  - _DSC0175.NEF - _DSC0259.NEF
- Photos of Officer Ferguson
  - 12342425.jpg
  - 12342428.jpg
  - 12342431.jpg
  - 12342434.jpg
  - 12342437.jpg
  - 12342440.jpg
  - 12342443.jpg
- Photos of Officer Lopez
  - 12342446.jpg
  - 12342449.jpg
  - 12342452.jpg
  - 12342455.jpg
  - 12342458.jpg
  - 12342461.jpg
- Photos of Officer Pina
  - 12342464.jpg
  - 12342467.jpg
  - 12342470.jpg
  - 12342473.jpg
  - 12342476.jpg
  - 12342479.jpg
  - 12342482.jpg
  - 12342485.jpg
  - 12342488.jpg
- Canine Photos
  - AXON_Body_2_Video_2017-09-15_1910-file 2-1924ce.tif

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

- o AXON_Body_2_Video_2017-09-15_1910-file 2-5539ce.tif
- o AXON_Body_2_Video_2017-09-15_1910-file 2-6262ce.tif
- o AXON_Body_2_Video_2017-09-15_1910-file 2-6285ce.tif
- o AXON_Body_2_Video_2017-09-15_1910-file 2-6286ce.tif
- o AXON_Body_2_Video_2017-09-15_1910-file 2-6289ce.tif
- o AXON_Body_2_Video_2017-09-15_1910-file 2-6401ce.tif
- o AXON_Body_2_Video_2017-09-15_1910-file 2-6454ce.tif
- o AXON_Body_2_Video_2017-09-15_1910-file 2-6498ce.tif
- o AXON_Body_2_Video_2017-09-15_1910-file 2-7789ce.tif
- o AXON_Body_2_Video_2017-09-15_1910-file 2-7801ce.tif
- o AXON_Body_2_Video_2017-09-15_1910-file 2-7849ce.tif
- o AXON_Body_2_Video_2017-09-15_1910-file 2-7939ce.tif
- Position
  - o 12343340ce.jpg
  - o 12343340ce.tif
  - o 12343433ce.tif
  - o 12343850ce-window.tif
  - o 12343850ce.tif
  - o 12343952ce.tif
  - o 12343979ce.tif
  - o 12344000e.tif
  - o AXON_Body_2_Video_2017-09-15_1847_28885ce.tif
  - o AXON_Body_2_Video_2017-09-15_1847_28886ce.tif
  - o AXON_Body_2_Video_2017-09-15_1847_29053ce.tif
  - o AXON_Body_2_Video_2017-09-15_1847_29095ce.tif
  - o AXON_Body_2_Video_2017-09-15_1847_29101ce.tif
  - o AXON_Body_2_Video_2017-09-15_1847-29066ce.tif
  - o AXON_Body_2_Video_2017-09-15_1902-4444ce.tif
  - o AXON_Body_2_Video_2017-09-15_1902-4609ce.tif
  - o AXON_Body_2_Video_2017-09-15_1903-294ce.tif
  - o AXON_Body_2_Video_2017-09-15_1903-852ce.tif
  - o AXON_Body_2_Video_2017-09-15_1903-853ce.tif
- Projectiles and Trajectories
  - o 12352505.jpg
  - o 12363212e+line.tif
  - o 12363227ce+line.tif
  - o 12363230ce.tif
  - o 12363239+line.tif
  - o 12363266ce.tif
  - o 12363278ce.tif
  - o audio_of_gunshots_from_1847.bmp
  - o DSC_1880ce.tif
  - o DSC_1881ce.tif
  - o DSC_1884ce.tif

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

- ○ DSC_1885ce.tif
- ○ trace photos.tif
- Sweatshirt
  - ○ 12344003e-bw.tif
  - ○ 12344003e.tif
  - ○ 12352442ce.tif
  - ○ 12352445e.tif
  - ○ 12352451ce.tif
  - ○ 12352457e.tif
  - ○ _DSC0483.jpg - _DSC0484.jpg
  - ○ B-DSC_3552.jpg - B-DSC_3554.jpg
  - ○ BLsleeve-DSC_3555.jpg
  - ○ BRsleeve-DSC_3557.jpg
  - ○ F-DSC_3523.jpg
  - ○ F-DSC_3528.jpg
  - ○ FLsleeve-DSC_3550.jpg
  - ○ FRsleeve-DSC_3549.jpg
  - ○ _DSC0483.NEF - _DSC0484.NEF
  - ○ DSC_3523.NEF
  - ○ DSC_3528.NEF
  - ○ DSC_3549.NEF
  - ○ DSC_3550.NEF
  - ○ DSC_3552.NEF
  - ○ DSC_3553.NEF
  - ○ DSC_3554.NEF
  - ○ DSC_3555.NEF
  - ○ DSC_3557.NEF
  - ○ ir Hole  B.tif
  - ○ ir Hole A again 2.tif
  - ○ ir Hole A again.tif
  - ○ ir Hole A.tif
  - ○ ir total holes again 2.tif
  - ○ ir total holes again.tif
  - ○ ir total holes with paper.tif
  - ○ ir total holes.tif
  - ○ DSCF1420.jpg - DSCF1452.jpg
  - ○ B-LAB_6714.jpg - B-LAB_6716.jpg
  - ○ BLsleeve-LAB_6721.jpg
  - ○ BLsleeve-LAB_6721c.jpg
  - ○ BLsleeve-LAB_6722.jpg - BLsleeve-LAB_6723.jpg
  - ○ BLsleeve-LAB_6725.jpg - BLsleeve-LAB_6726.jpg
  - ○ BLsleeve-LAB_6729.jpg
  - ○ BLsleeve-LAB_6741.jpg - BLsleeve-LAB_6742.jpg
  - ○ BRsleeve-LAB_6732.jpg - BRsleeve-LAB_6734.jpg

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

- o BRsleeve-LAB_6736.jpg - BRsleeve-LAB_6736c.jpg
- o BRsleeve-LAB_6739.jpg
- o F-LAB_6655.jpg - F-LAB_6656.jpg
- o F-LAB_6659.jpg - F-LAB_6661.jpg
- o F-LAB_6678.jpg - F-LAB_6679.jpg
- o F-LAB_6681.jpg - F-LAB_6694.jpg
- o F-LAB_6704.jpg
- o F-LAB_6707.jpg
- o FLsleeve-LAB_6662.jpg - FLsleeve-LAB_6667.jpg
- o FLsleeve-LAB_6674.jpg - FLsleeve-LAB_6677.jpg
- o FLsleeve-LAB_6743.jpg
- o FRsleeve-LAB_6657.jpg - FRsleeve-LAB_6658.jpg
- o FRsleeve-LAB_6695.jpg
- o FRsleeve-LAB_6698.jpg - FRsleeve-LAB_6703.jpg
- o FRsleeve-LAB_6712.jpg
- o FRsleeve-LAB_6712c.jpg
- o FRsleeve-LAB_6740.jpg
- o LAB_6655.NEF - LAB_6679.NEF
- o LAB_6681.NEF - LAB_6695.NEF
- o LAB_6698.NEF - LAB_6704.NEF
- o LAB_6707.NEF
- o LAB_6712.NEF
- o LAB_6714.NEF - LAB_6716.NEF
- o LAB_6721.NEF - LAB_6723.NEF
- o LAB_6725.NEF - LAB_6726.NEF
- o LAB_6729.NEF
- o LAB_6732.NEF - LAB_6734.NEF
- o LAB_6736.NEF
- o LAB_6739.NEF - LAB_6743.NEF
- Position, Bullet, Sweatshirt (Video Stills)
  - o AXON_Body_2_Video_2017-09-15_1847_28885.png
  - o AXON_Body_2_Video_2017-09-15_1847_28886.png
  - o AXON_Body_2_Video_2017-09-15_1847_29053.png
  - o AXON_Body_2_Video_2017-09-15_1847_29095.png
  - o AXON_Body_2_Video_2017-09-15_1847_29101.png
  - o AXON_Body_2_Video_2017-09-15_1847-29066.png
  - o AXON_Body_2_Video_2017-09-15_1902-4444.png
  - o AXON_Body_2_Video_2017-09-15_1902-4609.png
  - o AXON_Body_2_Video_2017-09-15_1903-294.png
  - o AXON_Body_2_Video_2017-09-15_1903-852.png
  - o AXON_Body_2_Video_2017-09-15_1903-853.png
  - o AXON_Body_2_Video_2017-09-15_1910-file 2-1924.png
  - o AXON_Body_2_Video_2017-09-15_1910-file 2-5539.png
  - o AXON_Body_2_Video_2017-09-15_1910-file 2-6262.png

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

- AXON_Body_2_Video_2017-09-15_1910-file 2-6285.png
- AXON_Body_2_Video_2017-09-15_1910-file 2-6286.png
- AXON_Body_2_Video_2017-09-15_1910-file 2-6289.png
- AXON_Body_2_Video_2017-09-15_1910-file 2-6401.png
- AXON_Body_2_Video_2017-09-15_1910-file 2-6454.png
- AXON_Body_2_Video_2017-09-15_1910-file 2-6498.png
- AXON_Body_2_Video_2017-09-15_1910-file 2-7789.png
- AXON_Body_2_Video_2017-09-15_1910-file 2-7801.png
- AXON_Body_2_Video_2017-09-15_1910-file 2-7849.png
- AXON_Body_2_Video_2017-09-15_1910-file 2-7939.png
- AXON_Body_2_Video_2017-09-15_project.afp
- Video Stills
  - AXON_Body_2_Video_2017-09-15_1847_28885.png
  - AXON_Body_2_Video_2017-09-15_1847_28886.png
  - AXON_Body_2_Video_2017-09-15_1847_29053.png
  - AXON_Body_2_Video_2017-09-15_1847_29095.png
  - AXON_Body_2_Video_2017-09-15_1847_29101.png
  - AXON_Body_2_Video_2017-09-15_1847-29066.png
  - AXON_Body_2_Video_2017-09-15_1902-4444.png
  - AXON_Body_2_Video_2017-09-15_1902-4609.png
  - AXON_Body_2_Video_2017-09-15_1903-294.png
  - AXON_Body_2_Video_2017-09-15_1903-852.png
  - AXON_Body_2_Video_2017-09-15_1903-853.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-1924.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-5539.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-6262.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-6285.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-6286.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-6289.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-6401.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-6454.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-6498.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-7789.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-7801.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-7849.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2-7939.png
  - AXON_Body_2_Video_2017-09-15_1910-file 2.mp4
- Scene Photos 1 (232 images numbered 12343235.jpg thru 12343928.jpg where the labels are n+1 (every third number))
- Photos of Pina's Rifle (16 images numbered 12342491.jpg thru 12342536.jpg where the labels are n+1 (every third number))
- Photos of Scene (94 images numbered 12343931.jpg thru 12344210.jpg where the labels are n+1 (every third number))

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

- Evidence Photos (93 images numbered 12351387.jpg thru 12363809.jpg where the labels are n+1 (every third number))
- Autopsy Photos (60 images numbered 12352328.jpg thru 12352505.jpg where the labels are every third number)
- Bullet in B Pillar (58 images numbered 12363122.jpg  thru 12363293.jpg where the labels are every third number)
- Untitled 2.png
- Untitled.png
- Image001.jpg
- Bloodstain
    - 12363272ce.tif
    - 12363272ce-bw.tif
    - 12344036e.tif
    - 12344006e.tif
    - 12344006e-bw.tif
    - 12344006e (1).tif
    - 12343997e.tif
    - 12343919e.tif
    - 12343907e.tif
    - 12343904ce.tif
    - 12343904ce-bw.tif
    - 12343889e.tif
    - 12343883e.tif
    - 12343883e-bw.tif
    - 12343880e.tif
    - 12343880e-bw.tif
    - 12343877e.tif
    - 12343877e-bw.tif
    - 12343874e.tif
    - 12343874e-bw.tif
    - 12343859e.tif
    - 12343859e-bw.tif
    - 12343856e.tif
    - 12343856e-bw.tif
    - 12343436e.tif
- Car Exterior
    - 12343376ce.tif
    - 12343514.tif
    - 12343835ce.tif
    - 12343838ce.tif
    - 12343841ce.tif
    - 12343850e.tif
    - 12343925ce.tif

CONFIDENTIAL REPORT – ROCK FORENSICS, INC.                                                                9

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

- o 12343952e.tif
- o 12343970e.tif
- o 12343973ce.tif
- o 12343976ce.tif
- o 12344165ce.tif
- o 12363122ce.tif
- o 12363215ce.tif
- Car Interior
  - o 12343853.jpg
  - o 12343862e.tif
  - o 12343865e.tif
  - o 12343868e.tif
  - o 12343871e.tif
  - o 12343886e.tif
  - o 12343892e.tif
  - o 12343895e.tif
  - o 12343898e.tif
  - o 12343922e.tif
  - o 12344009e.tif
  - o 12344012e.tif
  - o 12344021e.tif
  - o 12344024e.tif

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

---

**INVESTIGATIVE PROCESS**

**Scene**

1.  The OIS occurred on Friday, September 15, 2017 at approximately 7:04 p.m. in the evening in the east bound lanes of Penitencia Creek Road at the intersection of North White Road in a primarily residential neighborhood in San Jose, California. [SJ0049]

    a.  Penitencia Creek Road runs east and west with two lanes of traffic with a left-hand turn lane in each direction. The street was divided by double yellow lines.

    b.  North White Road was a two lane north-south street divided by a cement median. There was also a left-hand turn lane in each direction.

    c.  Based upon the Santa Clara County Crime Lab's (SCCCL) diagrams, the eastbound lanes of Penitencia Creek Road at the approximately location of the OIS measured approximately 34' across (north to south and inclusive of the E/B left hand turn lane and the #1 and #2 E/B lanes). [17-258-0283evidence2.pdf, Notes Martinez.pdf, pp. 12]

2.  At the time of the OIS the weather was cool with an approximate ambient temperature of between 65° and 68° Fahrenheit and mild winds between 12 and 16 miles per hour. [https://www.wunderground.com/history/daily/KSJC/date/2017-9-15]

3.  The OIS occurred during dusk with the sun setting at approximately 6:57 p.m. (civil twilight/dusk at 7:22 p.m.)
    [https://www.timeanddate.com/sun/@5392181?month=9&year=2017]

    a.  Civil twilight/dusk refers to the position of the sun (approximately 6° below the horizon), however due to the scattering of the light in Earth's atmosphere, artificial light is not generally required. [https://www.timeanddate.com/astronomy/civil-twilight.html]

---

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF



Graphic 1

**Graphic 1** (above) and **Graphic 2** (below) represent visual overviews of the location of the OIS. The graphics utilize Google Earth underlays.



Graphic 2

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

4. Per the SCCCL crime scene photographs, a black four-door, 2016 Kia Sportage (Texas Plate No. GTX1026) was at located in the number two eastbound lane of Penitencia Creek Road facing eastbound past the white limit line.

    a. The left, front (driver's) window was shattered, and numerous pieces of glass were noted on the roadway below the window, on the driver's seat and on the driver's floorboard. All other windows appeared rolled up and intact. [17-258-0283.pdf, pp. 6]

        i. San Jose Police Department personnel determined at the scene that the driver's door window mechanism could still be rolled up, which indicated that the window was partially down at the time it was shattered. [17-258-0283.pdf, pp. 6]

    b. The driver's seat was reclined approximately 60° from the horizontal plane (30° backwards from the vertical plane)

12343973ce.tif

Graphic 3

**Graphic 3 (above)** represents a very approximate angle of how the driver's seat was reclined at the time of the OIS. The graphic is meant to merely assist the reader in visualizing Dominguez's seat position. The process included rotating the vehicle base to be in line with a 0° horizontal plane and then measuring the seat's angle of recline through Adobe Photoshop. This method is not exact, however provides the reader with an approximation of the recline angle.

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

c. The rear bumper of the vehicle was in contact with the front bumper of San Jose
Police Department unmarked unit (gray Toyota 4-Runner CA License No. 7FKX456).

5. SCCCL recovered the following firearm-related evidence:

| Evidence Item (E/I) # | Description | Location Recovered | Photograph |
|---|---|---|---|
| 1 (Barcode SJ182278-1) | .223 Discharged Cartridge Case (DCC) "SPEER 15 223 REM" | Unmarked San Jose unit assigned to Officer Ferguson (Dark Gray Buick Lacrosse CA 7TVL357) parked facing southeast north of the Kia Sportage in the #1 and #2 lanes of Penitencia Creek Road. [SJ0029] |  SJ0455 |
| 1 Cont. | | |  SJ0461 |

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

| Evidence Item (E/I) # | Description | Location Recovered | Photograph |
|---|---|---|---|
| | 1 Cont. | |  SJ0543 |
| | 1 Cont. | |  SJ0545 |
| 4 (Barcode SJ182278-4) | .223 DCC "SPEER 15 223 REM" | Under unmarked San Jose PD unit assigned to Officer Ferguson [SJ0032] *Vehicle removed for photograph* |  SJ0467 |

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

| Evidence Item (E/I) # | Description | Location Recovered | Photograph |
|---|---|---|---|
| | 4 Cont. | | SJ0470 |
| | 4 Cont. | | SJ0550 |
| | 4 Cont. | | SJ0551 |

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

| Evidence Item (E/I) # | Description | Location Recovered | Photograph |
|---|---|---|---|
| 20 (Barcode SJ182278-19) | Copper Jacketing from autopsy "muscle R neck" | |  SJ0665 |
| | 20 Cont. | |  SJ0667 |
| 29 (Barcode SJ182278-28) | Projectile | Associated with bullet hole "C," removed from the interior right rear door of the Kia Sportage [SJ0035] |  SJ0742 |

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

| Evidence Item (E/I) # | Description | Location Recovered | Photograph |
|---|---|---|---|
| | 29 Cont. | |  SJ182278-28 SJ0750 |
| | 29 Cont. | |  SJ0753 |

a. Evidence Item #20 (copper jacketing removed from right side of neck during autopsy) was later determined by SCCCL to a be a "…copper jacket of a nominal 22 caliber rifle bullet (indeterminate nose design) that had been fired through a barrel with six lands and grooves of conventional right twist rifling. The jacket weighed 31.5 grains. Additionally, a fired copper jacket fragment with indeterminate rifling and weighing four grains was also submitted. Multicolored possible fibers were collected from the copper jacket for return within the original packaging." [SJ1706]

   i. "Powdered glass and possible bone were recovered from the jacketing." [SJ1709]

b. Evidence Item #29 (projectile removed from the passenger side of the Kia Sportage) was a "…copper and lead bullet fragment weighing 29.1 grains and having no

recognizable firearm produced markings. It was possibly the core of a fired bullet. A clear possible fiber was collected from the bullet fragment…" [SJ1706]

  i.   "Polymetric material was recovered from the projectile." [SJ1708]

c.   The SCCCL concluded that "It is not possible to determine if Items SJ182278-19 [Evidence Item 20 – jacket from autopsy] and SJ182278-28 [Evidence Item 29 – projectile from passenger side of Kia Sportage] are from one or more projectiles. The combined weights of both items is [are] consistent with some bullets loaded in .223 Remington (nominal .22) caliber cartridges." [SJ1706]

6.   SCCCL documented a single bullet hole within the OIS scene. The bullet hole (labeled "A" by SCCCL) was located in the interior of the passenger side "B" pillar approximately 45" up from ground level.

a.   Bullet hole "B," which was associated to bullet hole "A" was located on the "B" pillar's exterior approximately 45 ½" up from ground level.

b.   Bullet hole "C," which was associated to bullet holes "A" and "B" was located on the interior of the right rear passenger door approximately 45" up from ground level. [SJ0035]

7.   Based upon tempered glass fragments located in the frame of the driver's side window, the SCCCL estimated that a bullet struck the window at approximately 53" above ground level.



SJ0284

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF





Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF



Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF





Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF



8. SCCCL personnel completed a timeline of events based upon evaluation of surveillance and body worn camera video that captured the OIS. They determined that the time between shots fired was approximately 0.535 seconds. [Jacob Dominguez OIS Video Timeline.doc, SJ1769]]

**Jacob Arturo Dominguez ("Dominguez")**

1. At the time of the OIS, Dominguez was a 32-year-old (DOB: 10/30/1983) male Hispanic who was approximately 5'07" tall and weighed approximately 180lbs. [SJ0042]

2. At the time of the OIS, Dominguez was seated in the left front (driver's) seat of the black Kia Sportage.

3. At the time of the OIS, Dominguez was wearing a black knit cotton-polyester hooded sweatshirt labeled "ProBAY" size 2XL (later collected as Evidence Item 28 / Barcode SJ82278-27). [SJ0156, SJ1706]

   a. During examination, SCCCL located two defects in the left sleeve of the sweatshirt they labeled "A" and "B." Based upon testing, both defects were consistent with the passing of a bullet.

---

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

i.  Hole "A" was approximately 5/16" x 5/16" in size and located on the frontside of the left sleeve approximately 12" up from the edge of the cuff.

    1.  The area of the sweatshirt adjacent hole "A" tested positive for lead.

ii.  Hole "B" was approximately ½" x ¾" in size and located on the backside of the left sleeve approximately 11 ½" up from the edge of the cuff.

    1.  The area of the sweatshirt adjacent hole "B" tested positive for lead. This area had a more pronounced response than the area surrounding hole "A."

    2.  The area of the sweatshirt adjacent hole "B" tested positive for nitrates.

    3.  A small copper fragment and a possible glass fragment were embedded in the fibers near hole "B."  Later microscopic and scanning electron microscope (SEM) examinations revealed additional glass fragments and a "…high concentration of powdered glass embedded in the fabric threads."

iii.  Additional small holes were documented in between the holes "A" and "B."

iv.  Neither soot nor gunpowder residues were observed around either hole utilizing both traditional and Infrared Red (IR) photography.

v.  SEM and microscopy revealed that a high concentration of particulate was not observed surrounding the interior and exterior sides of hole "A" on the front of the left sleeve of the sweatshirt nor was it located on the interior side of hole "B."

    1.  Based upon these findings, SCCCL concluded that, "Assuming the two holes in the left sleeve were created by the same projectile, that projectile impacted glass prior to entering the back of the left sleeve and exited the front of the left sleeve of the sweatshirt." [SJ1715]

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF





Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF





Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF



4. No other bullet-related defects were located in Dominguez's clothing worn at the time of the OIS.

5. During autopsy, the Deputy Medical Examiner documented a bullet-related injury/gunshot wound (GSW) to the left corner of Dominguez's mouth.

    a. The GSW was located 6 ¼" below the top of his head and 1 ½" to of the left of the anterior midline.

    b. The entry GSW was described as a ½" diameter round defect with a 1/16" to 1/8" wide red marginal abrasion that was widest at the 2 o'clock position that demonstrated multiple 1/8" to 1 ½" long radiating lacerations.

    c. The wound was surrounded by multiple 1/16" x 1/8" irregular red abrasions consistent with fragmentation injury.

    d. Soot was not visible on the skin edges or within the hemorrhagic wound track.

    e. No stippling or gunpowder particles were on the skin surrounding the GSW.

    f. The wound track sequentially consisted of perforating the skin and subcutaneous tissue of the face, lower lip, mandible, tongue, and the soft tissues of the neck before

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

penetrating the muscles on the right side of the first and second cervical vertebral bodies.

g.   A 2.4-gram deformed metal jacket fragment was recovered from the cervical bodies from where it was lodged. (Later labeled E/I #20)

h.   The trajectory was from front to back, left to right and downward.

**Projectile did not continue.**

  Copper Jacket Recovered.

**Projectile did not continue.**

  Copper Jacket Recovered

Entrance

*Graphic 4a*

**Graphic 4a (above)** and **Graphic 4b (right)** are visual representations of the trajectory of the projectile path as documented by the Deputy Medical Examiner during autopsy. The graphics are meant merely to assist the reader in better visualizing the approximate location of the GSW.

Entrance   *Graphic 4b*

*NOTE: **The GSW was not perforating in nature. The rod is extended beyond the projectile's termination point to better assist the viewer in visualizing the approximate overall trajectory**.*

CONFIDENTIAL REPORT – ROCK FORENSICS, INC.

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

**Officer Michael Pina ("Pina")**

1. At the time of the OIS Pina was dressed in plain clothes consisting of jean pants, a t-shirt, a hat, and a tactical raid vest over his shirt. The vest had a San Jose Police Department patch on the front and the word "POLICE" on the back. Pina was assigned to the Covert Response Unit (CRU). [SJ0079]

2. At the time of the OIS, Pina's service/duty firearm that was utilized during the OIS was a Colt Defense M4 Carbine 5.56 x 45mm caliber rifle, serial number LE143767. [SJ0079, Notes Laundrie (2).pdf, pp. 1, SJ0203, SJ1771]

   a. Note: the firearm was also reported as a department issued Commando AR-15, .223 caliber rifle. [SJ0079]

   b. The capacity of the service/duty firearm's magazine was 30 cartridges. Prior to the OIS, Pina had loaded his magazine with 28 or 29 cartridges. [Notes Laundrie.pdf, pp. 1]

   c. During the OIS, Pina's service/duty rifle was loaded with SPEER 15 223 REM" ammunition. [SJ1771]

      i. The specific ammunition used was Speer LE Gold Dot Duty Ammunition .223 REM, which has a bullet weight of 75 grains and a muzzle velocity of approximately 2775 feet per second.
      [https://www.speer.com/ammunition/gold_dot/rifle/gold_dot_rifle_pers onal_protection/19-24469.html]

   d. After the OIS the firearm was determined to be loaded with one cartridge in the chamber and 28 cartridges in the magazine. [Notes Laundrie (2).pdf, pp.1]

   e. Examination of the rifle by SCCCL determined that it functioned properly, the safety was operational, and the trigger pull was measured to be approximately 7¼ pounds. No damage, modifications or excessive wear was noted. [SJ1771]

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

---

**PROFESSIONAL OPINIONS**

A firearms-related evaluation was completed based upon review of the provided documentation of the incident. The recovered physical evidence, photographs, interviews, videos provided of the incident, documentation of Dominguez's GSW by the Deputy Medical Examiner at autopsy, the laboratory/examination findings of the SCCCL, and statements made by the officers were all considered.

The following professional opinions were established:

1. Due to the lack of soot and stippling around the GSW, as well as statements made by the involved officers, the locations of the recovered discharged cartridge cases and the video recordings during and directly after the incident, Dominguez's GSW is consistent with having been fired from a distance.

    a. Based upon the statements of Officer Pina and the measurements and diagrams produced by SCCCL, this distance is approximately 10 – 12 feet.

2. Based upon the statements of the involved officers, the location of Dominguez in the front, left (driver's) seat of the Kia Sportage, the video recordings of the incident, the diagrams and measurements of the scene by SCCCL, and the trajectory of Dominguez's GSW, Officer Pina was located north to northeast of Dominguez and fired in south to southwest direction.

3. Although the SCCCL could not definitively determine whether the copper jacket recovered from the right, backside of Dominguez's neck during autopsy (E/I #20) and the bullet core recovered from bullet hole C adjacent the "B" pillar of the Kia Sportage (E/I #29) were from the same projectile/missile (based upon bullet weight alone), it is most likely that each piece of evidence is from two separate and distinct shots. This is based upon the following:

    a. Analysis of the video recordings of the scene by SCCCL determined that the two shots were fired approximately 0.535 seconds apart.

    b. The characteristics of the bullet hole "A" in the interior "B" pillar of the right side of the Kia Sportage was consistent with a bullet hole made by a bullet in stable flight that had not begun to yaw due to striking an intermediary object (i.e., tempered glass vehicle window, etc.) prior to creating the hole.

        i. Bullet holes "A," "B," and "C" are consistent with the bullet path of a single shot.

    c. No other bullet holes and/or impacts were located within the Kia Sportage and all other windows had been rolled up and remained intact after the OIS.

---

CONFIDENTIAL REPORT – ROCK FORENSICS, INC.                                          30

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

    d.   No other bullet holes were located within the entirety of the OIS scene.

4. The copper jacketing recovered from Domínguez's right rear neck at autopsy (E/I #20) was likely the result of the first of Officer Pina's two shots. The second shot fired ("B" pillar) did not strike the tempered glass of the driver's side window nor did it strike Dominguez or his sweatshirt. This is based upon the following:

    a.   The analysis performed by the SCCCL that determined that the copper jacketing (E/I #20) contained both glass fragments and textile fibers.

    b.   The speed at which tempered glass fractures is between 4,000 – 5,000 feet per second[1] (approximately 2700 to 3,400 miles per hour). The time between shots fired was approximately 0.535 seconds. There was sufficient time between the two shots for the tempered glass to have fractured. Subsequently, analysis of the of the bullet core recovered adjacent the "B" pillar of the interior right side of the Kia Sportage (E/I #29) determined that glass and fiber particles were not present. The trace evidence documented by the SCCCL during examination on the recovered core (E/I #29) from the "B" pillar disclosed the presence of polymers (plastic).

    c.   The characteristics of the bullet hole "A" in the "B" pillar of the interior right side of the Kia Sportage are consistent with the passing of a bullet in stable gyroscopic flight.

5. Based upon these same set of facts and the analysis of the bullet-related defects in the left sleeve of Dominguez's sweatshirt by SCCCL, it is likely that Dominguez's left arm was in a position adjacent the left side of his face nearly simultaneously to having received the GSW to the left side of his mouth. Neither Dominguez's overall movement nor the specific movement of his left arm prior to and directly after the shot fired can be determined as the forensic evidence does not reveal the position of Dominguez's body and/or left arm prior to the first gunshot (resulting in Dominguez's GSW).

6. Based upon the trajectory of Dominguez's GSW (starting at the left corner of his mouth and terminating lower in the right cervical region of his neck – back to front, left to right and downward), the measurements and diagrams produced by SCCCL and the statements of Officer Pina, Dominguez's face was likely turned some degree counterclockwise from his shoulders and towards Officer's Pina's direction at the time of being shot.

---

[1] F. Barstow, H. Edgerton, 1939; Glass-Fracture Velocity, Journal of the American Ceramic Society, Volume 22, Issue 1-12

https://ceramics.org/ceramic-tech-today/ceramic-video/video-speed-of-cracks-in-glass

https://www.wired.com/story/use-a-slo-mo-video-to-calculate-how-fast-glass-shatters/

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

7.  During his deposition, Officer Pina stated the following:

Atkinson Baker, a Veritext Company
www.depo.com

| | |
|---|---|
| 1 | A.   I was trying to track where he was going and as he |
| 2 | was coming back up, so his only target area was shoulders up. |
| 3 | Q.   So you pulled the trigger when he started coming |
| 4 | back up? |
| 5 | A.   I remember finding my sight while he was leaning |
| 6 | forward, and as he was coming back looking at me, looking |
| 7 | kind of back movement is when I started firing.  I can't say |
| 8 | for sure exactly what he was doing as he was coming up |
| 9 | because I remember he's now -- I'm now looking at him solely |
| 10 | through the aim point of my rifle. |
| 11 | Q.   When did you release the safety? |
| 12 | A.   Just right before I shot. |
| 13 | Q.   And when you pulled the trigger, was he back up in |
| 14 | an erect position or partially erect?  Can you describe that |
| 15 | for us? |
| 16 | A.   After I shot him? |
| 17 | Q.   No, before. |
| 18 | A.   Before I pulled the trigger, he was -- he had |
| 19 | already been leaning low and then coming -- like I could just |
| 20 | turn my chair, so if you're me over there, he's now coming up |
| 21 | in this direction. |
| 22 | Q.   Okay.  So at that point, could you see where -- |
| 23 | what his hands were doing? |
| 24 | A.   No. |

Sgt. Michael Pina.pdf, pp. 97

a.  The firearm-related evidence is not inconsistent with Officer Pina's statements regarding his actions during the OIS.

---

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

**Graphic 5** (left) is a visual representation of the approximate counterclockwise turn of Dominguez's head during the OIS and meant merely to assist the reader in better visualizing the trajectory of the GSW as documented by the Deputy Medical Examiner during autopsy. The angle cannot be determined exactly.

Graphic 5



Graphic 6

**Graphic 6** (above) is a visual representation of the OIS and meant merely to assist the reader in better visualizing the locations of firearm-related items within the scene (including E/I #1 and E/I #4 – discharged cartridge cases). The graphic is proportional and utilizes both a Google Earth and SCCCL diagram underlay.

CONFIDENTIAL REPORT – ROCK FORENSICS, INC.

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

# Graphic 7

**Graphic 7** (above) is a visual representation of the OIS and meant merely to assist the reader in better visualizing the locations of items within the scene including the involved vehicles, Officer Pina, Dominguez and the bullet holes in/adjacent to the Kia Sportage's right "B" pillar. The graphic is proportional and utilizes both a Google Earth and SCCCL diagram underlay. The approximate trajectory (red) is meant to provide a visual approximation of both shots fired by Officer Pina and is based upon the measurements and diagrams produced by SCCCL.

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF



**Graphic 8** (above) is a visual representation of the OIS and meant merely to assist the reader in better visualizing the locations of items within the scene including the involved vehicles, Officer Pina and Dominguez. The graphic is proportional and utilizes both a Google Earth and SCCCL diagram underlay. This southward looking view is meant only to provide a visual approximation of the scene looking from the north to the south.

**These opinions are subject to change if additional facts are received at a future date.**

Dominguez v. City of San Jose, et al.
Case No. 5:18-cv-04826-BLF

----------------------------------- END -----------------------------------

| | |
|---|---|
| *Rocky L. Edwards* | 05/19/2021 |
| Rocky L. Edwards | Date |
| *Heather E. Heider* | 05/19/2021 |
| Heather E. Heider | Date |

**Curriculum Vitae Rocky Edwards**
**Forensic Firearms & Toolmark Examiner**

---

ROCKY EDWARDS FORENSIC FIREARM & TOOLMARK EXAMINER & SHOOTING
RECONSTRUCTION

## EDUCATION

The University of the State of New York (Excelsior College) Bachelor of Science Degree                      1993

El Paso Community College Associate of Science                      1988

## AWARDS

Santa Ana Police Department, Departmental Wide Award for work in 3D Analysis                      2014

August Vollmer Award, International Association of Chiefs of Police (IACP)                      2009

Exceptional Quality Service Award – City of Santa Ana, CA                      2005

Orange County District Attorney's Award of Excellence                      2005

## EXPERT QUALIFICATION STATEMENT

I have testified in over 550 cases in firearms-related cases (Best Estimate) as an expert witness. I began my career in law enforcement 42 years ago. I was trained as a Special Agent in the United States Army Criminal Investigation Division (CID) in 1984 and served as a Special Agent for ten (10) years until my retirement in 1994. As a Federal Agent, I processed, diagrammed, and reconstructed crime scenes as part of the normal course of investigation. In 1989, I trained and studied at the US Army Crime Laboratory for two (2) years in the field of Forensic Firearm and Toolmark Examination. My training included microscopic analysis, the study of ammunition and ammunition components, gunpowder production and manufacturing techniques, reloading of ammunition, toolmark examination, gunshot wound analysis, processing of clothing for gunshot residues, bullet path interpretation, firearm functionality, and shooting reconstruction. I have been a Forensic Firearm Examiner for twenty-seven (30) years. I have worked as a Forensic Firearm Examiner in ASCLD Accredited Laboratories in the US Army and the Los Angeles Police Department. I have thirty-seven (37) years of crime scene processing as both a Special Agent (detective) and as a Forensic Firearm Examiner. Throughout my career I have utilized various scientific methods and techniques to collect, preserve and analyze physical evidence at crime scenes. I have investigated all categories of crimes, e.g. homicides, assaults, and officer involved shootings (OIS), and have conducted war/ combat shooting reconstructions from incidents in Somalia and Yugoslavia.

I am qualified as an expert in California Superior Court in the areas of Forensic Firearm and Toolmark Examination as well as Shooting Reconstruction. I am qualified in the US Federal Court system as an expert in Forensic Firearm and Toolmark Identification. I have qualified as a Forensic Firearm Examiner in all branches of the military and NATO Countries (Britain and Canada). I am qualified as an expert in the states of New Mexico and Arizona. I have worked both for defense and prosecution at both the state and federal levels.

I have been trained in firearm-related injuries and have studied at the Letterman Army Medical Center, Preside of San Francisco, and the Armed Forces Institute of Pathology in Washington, D.C. I have attended autopsies throughout my career. I also attended advanced training at the Southwestern institute of Forensic Sciences, Parkland Memorial Hospital, Dallas Texas, in microscopic examination, wound ballistics and the analysis and study of ricochet bullets. See below for further details.

**CRONOLOGICAL SUMMARY OF EXPERIENCE**

**Shooting Reconstruction, Bullet Path Analysis, Wound Ballistics, Forensic Firearm & Toolmark Examiner**

Responsible for the forensic examination of firearms, ammunition and ammunition components; the microscopic examination of questioned bullets, cartridge cases and toolmarks; the restoration of obliterated serial numbers; distance determinations (both gunshot residue and shotgun pattern analysis); fracture or physical matches; bullet path analysis, trajectory analysis and the examination of security devices; crime scene Investigation; responsible for the diagramming, preparation of written reports regarding findings and the presentation of those findings in State and Federal Jurisdictions; court qualified in 3D topographical comparative analysis of fired bullets; advises local jurisdictions on policies regarding forensic firearm examinations

I possess additional expertise in the processing of gunshot residues (GSR) and bullet impacts on clothing.

**POSITIONS HELD & RESPONSIBLITES**

**Firearm and Tool-mark Examiner & Consultant, Stockton Police Department**                    **2013 to 2019**

Responsible for the forensic examination of firearms, ammunition and ammunition components; the microscopic examination of questioned bullets, cartridge cases and toolmarks; the restoration of obliterated serial numbers; distance determinations (both gunshot residue and shotgun pattern analysis); fracture or physical matches; and the examination of security devices.

Responsible for the preparation of written reports regarding findings, the presentation of findings in judicial or non-judicial proceedings and gunshot wound analysis; provides training and lectures to officers and detectives; Creates and implements policy regarding forensic firearm examinations and procedures; evaluates firearm security-related policies and procedures; completes crime scene investigations, shooting reconstruction, diagramming of crime scenes related to firearm evidence and trajectory analysis.

**Firearm and Tool-mark Examiner, Santa Ana Police Department**                    **1996 to 2016**

Responsible for the examination of firearms, ammunition and ammunition components; the microscopic examination of questioned bullets, cartridge cases and toolmarks; the restoration of obliterated serial numbers; distance determinations (both gunshot residue and shotgun pattern analysis); fracture or physical matches; and the examination of security devices.

Responsible for the preparation of written reports regarding findings, the presentation of findings in judicial or non-judicial proceedings and gunshot wound analysis; provides training and lectures to officers and detectives; Creates and implements policy regarding forensic firearm examinations and procedures; evaluates firearm security-related policies and procedures; completes crime scene investigations, shooting reconstruction, diagramming of crime scenes related to firearm evidence and trajectory analysis; provides forensic analysis on assigned Officer Involved Shootings.

**Firearm and Tool-mark Examiner, Consultant, Los Angeles Police Department**      **1993 to 1996**

Responsible for the examination of firearms, ammunition and ammunition components; the microscopic examination of questioned bullets, cartridge cases and toolmarks; the restoration of obliterated serial numbers; distance determinations (both gunshot residue and shotgun pattern analysis); fracture or physical matches; and the examination of security devices.

Responsible for the preparation of written reports regarding findings, the presentation of findings in judicial or non-judicial proceedings and gunshot wound analysis; provides training and lectures to officers and detectives; Creates and implements policy regarding forensic firearm examinations and procedures; evaluates firearm security-related policies and procedures; completes crime scene investigations, shooting reconstruction, diagramming of crime scenes related to firearm evidence and trajectory analysis; provides forensic analysis on assigned Officer Involved Shootings.

**Firearm and Tool-mark Examiner, United States Army Criminal Investigation Laboratory Ft. Gillem, Georgia and Frankfurt Germany- Casework with US Army, US Navy, US Air Force & US Marines NATO Forces - Britain & Canada**      **1989 to 1993**

Responsible for the examination of firearms, ammunition and ammunition components; the microscopic examination of questioned bullets, cartridge cases and toolmarks; the restoration of obliterated serial numbers; distance determinations (both gunshot residue and shotgun pattern analysis); fracture or physical matches; and the examination of security devices.

Responsible for the preparation of written reports regarding findings, the presentation of findings in judicial or non-judicial proceedings and gunshot wound analysis; provides training and lectures to officers and detectives; Creates and implements policy regarding forensic firearm examinations and procedures; evaluates firearm security-related policies and procedures; completes crime scene investigations, shooting reconstruction, diagramming of crime scenes related to firearm evidence and trajectory analysis; provided forensic firearm-related European Theater coverage and assisted in crime scene reconstruction on incidents which occurred in Desert Storm, Somalia and Yugoslavia.

**Special Agent, United States Army Criminal Investigation Command (CID) 3rd Region Ft Polk Field Office, Leesville, La & 6th Region, Ft Bliss Field Office, El Paso, TX**      **1983 to 1989**

Special Agent/Team Chief investigating and supervising Special Agents in the investigation of felony crimes, e.g. homicides, firearm-related incidents, sex crimes, drug-related offenses and economic crimes in the United States Army; processed, photographed, collected evidence, diagrammed, reconstructed and analyzed crime scenes; collected and preserved physical and testimonial evidence; supervised and trained probationary Criminal Investigators/Special Agents; provided written reports and testified in C Court proceedings; managed informants and conducted threat assessments of key and suspected targets (personnel and key area targets); assigned to Protective Services of dignitaries.

**Military Police Investigator (MPI), 2nd Region, Frankfurt Germany**                                            **1980 to 1983**

Military Police Investigator responsible for the investigation of misdemeanor crimes, e.g. burglary, theft, vandalism, minor drug-related offenses, etc.; interviewed witnesses, completed suspect interrogations; crime scene processing, diagramming; and other duties as assigned.

**Military Police (MP), 230th MP Company, Rhine Ordinance Barracks, Kaiserslautern, Germany**                                            **1978 to 1980**

Military Police Officer responsible for patrol of Kaiserslautern, Germany; detained and apprehended suspects; interviewed witnesses; conducted traffic and crowd control; completed accident investigation; provided convoy escort; trained in combat MP duties and field exercises.

**Military Police (MP), 164th Military Police Company, Miesau, Germany**                                            **1977 to 1978**

Military Police Officer responsible for security and convoy transport of nuclear devices; monitored operations and security of military/civilian personnel servicing and working on nuclear devices.

**TECHNICAL/SPECIALIZED TRAINING**

- Forensic Shooting Incident Reconstruction Course, Forensic Science Consultants, San Diego County Sheriff's Office, San Diego, CA
- US Army Criminal Investigation Laboratory Firearm & Tool-mark (Firearm, Microscopic Comparisons, Tool-Mark Examiner, Wound Ballistics, Shooting Reconstruction, Clothing Analysis) Training Course, 2 years
- Wound Ballistic Training Course, Letterman Army Medical Center, Presidio of San Francisco, CA
- Wound Ballistic Training Course of Study at the US Armed Forces Institute of Pathology, Washington, DC Wound Ballistic Study at Medical Examiner's Office, Boston, MA
- Advanced Training in Comparative Analysis and Ricochet Analysis, Southwestern Institute of Forensics Services, Dallas, Tx
- US Army Criminal Investigation Academy, Ft. McClellan, Alabama, Sixteen (16) weeks training as a Special Agent in Army CID.
- US Army Military Police Academy, Vilseck Germany. Eight (8) weeks training as a Military Police Investigator.
- Street Survival Training, Dallas, TX
- Glock Police Armorers Course (Pistol), Smyrna, GA
- Smith & Wesson Armorer's Course (Pistol/Revolver), Smith and Wesson Factory, Springfield, MA Sturm, Ruger & Co. Armorers Course (Pistol, Revolver, Rifle and Shotgun) Ruger Factory, Newport, NH Sig Sauer Inc, Armors Course, Ilion, NY
- Beretta and M-16 Armors Training Course, Aberdeen Providing Grounds, Aberdeen, MD
- Opposing Forces Weapons Center, (WARSAW PACT WEAPONS), ie. AK47, AKM, AKMS, FPK, RPK and DUSKA Machine Gun.
- Remington Arms Inc, Armorer's Course, Remington Factory, Ilion, NY
- Charter Arms Inc. Factory Tour and Manufacturing Techniques, Shelton, Connecticut
- Dan Wesson, Factory Tour and Manufacturing Techniques, Monson, Massachusetts H&K Armorers Course, San Antonio, TX
- Winchester Arms Company, Manufacturing Techniques and Factory Tour, New Haven, CT Marlin Firearms Company, Manufacturing Techniques and Factory tour, North Haven, CT Savage Arms Company, Manufacturing and Factory Training Tour, West Springfield, MA Colt firearms Manufacturing Plant, Hartford, CT
- Colt firearms Manufacturing Plant (Factory 2), West Hartford, CT
- TECHNICAL/SPECIALIZED TRAINING (Continued)
- Winchester Ammunition Manufacturing Plant Training Tour, Olin, IL Remington Ammunition Manufacturing Plant Training Tour, Lonoke, AR
- Surreptitious Entry/Technical Surveillance Course, Atlanta, GA Foley-Belsaw Basic and Advanced Locksmith Course, Atlanta, GA
- Medeco High Security Locksmith Course, Medeco Factory, Salem, VA
- Serial Number Restoration Course, California Criminalistics Institute (CCI), Santa Ana, CA Firearms Collection, Smithsonian Institute, Washington, DC
- Firearms Collection, National Rifle Association, Washington, DC Radford Army Ammunition Plant (propellant), Radford, VA
- Thompson Center Arms, Manufacturing Tour and Plant, Rochester, NH Beretta USA Inc., Firearms Manufacturing Plant, Accokeek, MD
- West Point Firearms Collection, West Point Museum, States Military Academy, West Point, NY
- American Lock Company, Manufacturing Tour and Plant, Crete, IL Stanley Tools, Manufacturing Plant, Cheraw, SC
- Cooper Tools, Manufacturing Plant, Sumter, SC
- Wilson Arms Company, Manufacturing Plant, Bradford, CT

- H.K. Porter Tool Manufacturing Plant, Statesboro, GA Schrade Knife Manufacturing Plant, Ellenville, NY Camilius Knife Manufacturing Plant, Camilius, NY Utica Knife Manufacturing Plant, Utica, NY
- Marksman and Beeman BB & Air Rifle Manufacturing Plant, Huntington Beach, CA

- Drug Enforcement Cover/Surveillance Course, Drug Enforcement Administration (DEA), Anniston, AL Protective services Course, Military Police School, Department of the Army, Fort McClellan, AL Advanced Fraud Investigations Course (White Collar/Economic Crimes), Ft. Mc Clellan, AL Philippines National Police Crime Laboratory International Tour, Manila, Philippines

## MEMBERSHIPS

- Distinguished Member, Association of Firearm and Toolmark Examiners (AFTE)

## PROFESSIONAL TRAINING COURSES/SEMINARS

| | |
|---|---|
| Annual Training Conference, Association of Firearm and Toolmark Examiners, Omaha, NB | 1990 |
| Annual Training Conferences, Association of Firearm and Toolmark Examiners; Houston, TX | 1991 |
| Annual Training Conference, Association of Firearm and Toolmark Examiners, Miami, FL | 1992 |
| Training Conference, International Association of Forensic Sciences, Dusseldorf, Germany | 1993 |
| Annual Training Conference, Association of Firearm and Toolmark Examiners, Indianapolis, IN | 1995 |
| Annual Training Conference, Association of Firearm and Toolmark Examiners, Annapolis, Ma | 1997 |
| Annual Training Conference, Association of Firearm and Toolmark Examiners, St. Louis, MO | 2000 |
| Annual Training Conference, Association of Firearm and Toolmark Examiners, San Antonio, TX | 2002 |
| Annual Training Conference, Association of Firearm and Toolmark Examiners, San Francisco, CA | 2007 |
| Annual Training Conference, AFTE Henderson, NV | 2010 |
| Annual Training Conference, Association of Firearm and Toolmark Examiners, Chicago, IL | 2011 |
| Annual Training Conference Association of Firearm and Toolmark Examiners Seattle, WA | 2013 |
| Annual Training Conference Association of Firearm and Toolmark Examiners, San Diego, CA | 2014 |
| Annual Training Conference Association of Firearm and Toolmark Examiners, Dallas, TX | 2016 |
| Annual Training Conference Association of Firearm and Toolmark Examiners, New Orleans, LA | 2016 |
| Homicide Investigators Conference, New Orleans, LA | 2016 |
| Annual Training Conference, Association of Firearm and Toolmark Examiners, Denver, CO | 2017 |
| Annual Training Conference, Association of Firearm and Toolmark Examiners, Charleston, Virgina | 2018 |
| Annual Training Conference, Association of Firearm and Toolmark Examiners, Chicago, IL | 2019 |
| NE Regional Training Conference, AFTE, FBI Academy Quantico, Virgina | 2019 |

**FORENSIC SCIENCE PRESENTATIONS**

- "The Advance Combat Rifles" (Combat rifles tested by the United States Army for the future), presented before members of the 22nd Annual Meeting for the Association of Firearm and Tool Mark Examiners, (AFTE), Houston, Texas, 1991
- Tracking Firearm Related Incidents, (AFTE Training Seminar) Dallas, TX
- Tracking Firearm Related Incidents, Interpol Forensic Firearm Seminar, Pretoria, South Africa
- 3D Topographical Examinations using the IBIS Bulletrax System, Interpol Forensic Firearm Seminar, Montreal, Canada
- 3D Topographical Examinations Using IBIS Bulletrax System, Cancun, Mexico

**AGENCY ASSISTS**
- Federal Bureau of Investigations (FBI)
- Alcohol Tobacco & Firearms (ATF)
- Hawthorne Police Department (HPD)
- Anaheim Police Department (APD)
- Inglewood Police Department (IPD)
- Simi Valley Police Department (SVPD)
- Oxnard Police Department (OPD)
- Tustin Police Department (TPD)
- Fullerton Police Department (FPD)
- El Cajon Police Department (ECPD)
- Canadian Military (Quebec Canada)

**FORENSIC SCIENCE PUBLICATIONS**

- Rocky L. Edwards, "Circumferential Fractures", AFTE Journal 1991
- Rocky L. Edwards & Michael I. Kelley, "Straight-Line Knives"', AFTE Journal 1992
- Rocky L. Edwards & Michael I. Kelley, "FPK Sniper Rifle: AFTE Journal 1993
- Rocky L. Edwards & James Moss, "MFS Ammunition"., AFTE Journal 1993
- Rocky L. Edwards "Fighting Gang Violence through NIBIN" Forensic Technology Inc. Website

**GUEST SPEAKER APPEARENCES**

- Association of Firearm and Toolmark Examiners (AFTE) Training Seminar, San Francisco, 2006
- 13 Critical Tasks Workshop presented to District Attorney's, ATF and Law Enforcement, Indiana 2008
- International Forensic Science Symposium, South Africa 2006
- International Forensic Science Symposium, Mexico 2008
- European Network of Forensic Science Institutes (ENFSI), Cyprus 2010
- International Forensic Firearms Symposium, Interpol, Lyon, France 2011
- Association of Firearms & Toolmark Examiners (AFTE) Training Seminar, "3D Analysis of Fired Bullets Through Obliterated Barrels," Chicago, ILL, 2011
- International Forensic Science Symposium, Montreal Canada, 2013
- Association of Firearm & Toolmark Examiners (AFTE) Training Seminar Dallas, TX 2014

**<u>CERTIFICATIONS</u>**

- Certified by the United States Department of the Army to Conduct Forensic Examinations for Department of Defense as a Firearm & Toolmark Examiner.

**TESTIMONY**

*2014 – Present: Trial and Deposition Testimony (Note: Testimony from 1990 to 2013 not listed)*

| Case Name | Case Number | Type of Testimony |
|---|---|---|
| People v. Foshay | CR-20124578 | Deposition Jury Trial |
| United States v. Perez | Unk | Jury Trial |
| People v. Andrade | 106812 | Jury Trial |
| People v. Miller et al. | 105785 | Jury Trial |
| People v. Quiruz | 103586 | Jury Trial |
| People v. Ruiz | 108254 | Jury Trial |
| People v. McDonald et al. | 117008 | Jury Trial |
| People v. McKenzie | 115377 | Jury Trial |
| People v. Corrales et al. | 116547 | Jury Trial |
| People v. Edwards et al. | 119923 | Jury Trial |
| People v. Richardson | 120882 | Jury Trial |
| People v. Torn et al. | 121959 | Jury Trial |
| People v. Farley | 121923 | Jury Trial |
| People v. Queen | 122965 | Jury Trial |
| People v. Gomez | 10CF3362 | Jury Trial |
| People v. Brambila | 10VF3025 | Jury Trial |
| People v. Castro | 09CF1139 | Jury Trial |
| People v. Tlamasico | 10CF1258 | Jury Trial |
| People v. Rodriquez | 12CF0355 | Preliminary Hearing |
| People v. Romero | 10CF2439 | Jury Trial |
| People v. Carter | 12CF0863 | Jury Trial |
| People v. Gomez | 12CF1430 | Jury Trial |
| People v. Figueroa | 10CF0530 | Jury Trial |
| People v. Mendoza | 11CF3286 | Preliminary Hearing |
| People v. Uriate et al. | 11CF0192 | Jury Trial |
| People v. Carranza | 11CF2429 | Jury Trial |
| People v. Flores | 11CF2519 | Preliminary Hearing |
| Juvenile Matter | J149878 | Jury Trial |
| People v. Gonzalez | 09CF1140 | Jury Trial |
| People v. Nhem et al. | 10CF0102 | Jury Trial |
| People v. Cabezas et al. | 11CF0862 | Jury Trial |
| People v. Orozco et al. | 12NF3903 | Jury Trial |
| People v. Estudilla et al. | 12NF3769 | Jury Trial |
| People v. Velasquez et al. | 13CF2197 | Jury Trial |

| | | |
|---|---|---|
| People v. Balanzar | 13CF0451 | Jury Trial |
| People v. Marquez | 13CF2128 | Preliminary Hearing |
| People v. Quirino | 14CF1858 | Jury Trial |
| People v. Lopez | 10CF3188 | Jury Trial |
| People v. Merida et al. | 10CF1982 | Jury Trial |
| People v. Cerda | 12CF3286 | Jury Trial |
| People v. Sanchez et al. | 12HF1198 | Jury Trial |
| People v. Montes | 12CF2292 | Jury Trial |
| People v. Alcala | 12CF3455 | Jury Trial |
| People v. Vega | 07CF2786 | Jury Trial |
| People v. Burciaga | 10CF2410 | Jury Trial |
| People v. Salinas | 12CF3719 | Jury Trial |
| People v. Ayala | 12CF0772 | Jury Trial |
| People v. Lopez | 14CF2507 | Jury Trial |
| People v. Medina | 13CF1715 | Jury Trial |
| People v. Dannelley | 14CF2336 | Jury Trial |
| People v. Wojtal | 14CF0232 | Jury Trial |
| People v. Daniels | 14CF0866 | Jury Trial |
| People v. Tellez | 13CF2980 | Jury Trial |
| People v. Quezada et al. | 14CF2240 | Grand Jury |
| People v. Sanchez | 08CF1227 | Jury Trial |
| People v. McDonald | 14CF2681 | Grand Jury Jury Trial |
| People v. Mendez et al. | 15CF0568 | Jury Trial |
| People v. Sotelo et al. | 12C1604 | Jury Trial |
| People v. Ochoa | 13CF3311 | Preliminary Hearing |
| Escobedo v. City of Los Angeles | CV15-04911-DSF(RAO) | Designated, Settled |
| DeLeon v. City of Los Angeles | CV16-03721FMO (RAO) | Report written, Pending trial |
| Sarasith v. City of Los Angeles | CV16-02548 JAK (MRWx) | Deposition, Settled |
| Curry v. City of Los Angeles | CV16-04125DSF (PJW) | Deposition, Testified, Settled |
| Watkins v. City of Los Angeles | CV17-00485 JFW (FFMx) | Report, Testified,Defense Verdict |
| Nicholson v. City of Los Angeles | CV15-07594DDP (RAO) | Deposition, Summary Judgement |
| Jimmy Truong v. State of CA | DA Case No: 16F01554 | Testified |
| Mendez v. City of Los Angeles | CV18-1230 | Federal Complaint withdrawn |
| Sanchez v. City of Los Angeles | CV18-1230 | Federal Complaint withdrawn |
| Dominquez v. City of Los Angeles | CV17-04557 DMG | Designated, Deposition, trial, Defense Verdict |
| M.A.C. v. City of Los Angeles | CV16-04477 DMG | Designated, Deposition, Defense Verdict |
| McCullum v. City of Los Angeles | CV14-03262 DMG | Designated, Deposition Completed |

| | | |
|---|---|---|
| Barron vs State of California | 30-2017-00911997CUCRCJC | Designated, Deposed,Testified |
| Barragan vs City of Los Angeles | 2:17cv-04364-R-AGR | Report Rendered, Settled |
| Risher Vs City of Los Angeles | CV17-00995 | Designated, Deposed |
| Vaughn vs City of Los Angeles | F067-15 | Report, Deposed- Testified |
| Santibanez vs City of Los Angeles | CV17-04189 ODW | Report,  Deposed |
| Villanueva vs State of California | 8:17-CV-01302-JLS-KES | Report, Trial – State Prevailed |
| Gonzales vs City of Los Angeles | CV17-06432 R (SSX) | Report, Defense Verdict |
| SJCDA Jury Trial 06937 DA# CR-2017 - 35081 | Jury Testimony ref: CR# SP16-26227/26-06937 | Report, Testimony, Guilty Verdict |
| SJCDA Trial Aaron Moore Trial (17-22579, 17-23512, and 17-24492) | Aaron Moore Trial (17-22579, 17-23512, and 17-24492) | Report, Two plaintiffs plead guilty, 3rd Defendant guilty all counts |
| DeAndrew Jordan vs State of California | 17-47789 | Plead Guilty |
| Jerrell Brown | (Minnesota) MPD CAPRS 8-268508 | Appeal – Defense Case - Case Transfered - Case transfered |
| MJLH et.al vs City of Pasadena | Case No: 2:18-03249 | Report – Settled |
| Mora v City of Garden Grove | Case No: 8:19-cv-00418-JLS-JDE | Settled |
| Nelson v City of Los Angeles | Case No: 08-07-20581 | Rule 26 Completed - Deposed |
| Ewnetu et. al. v.  County of Los Angeles | Case No: BC702015 | Working- Report prepared |
| Morgan v. City of LA | Case No: CV17-06693 (JEMx) | Rule 26 Report Submitted, Deposed-Feb 3, 2020. |
| Barrillas-Flores v City of LA | Case No. F076-17 | Designated -Deposed |
| Hernandez v City of LA | Case No.  009-18 | Designated - Working |
| Sandoval v City of LA | Case No. F082-17 | Designated - Working |
| Magana v City of LA | Case No. F036-18 | Designated - Deposed-Working |
| Starks v County of Los Angeles | Case No. 19STCV38462 | Designated - Deposed -Sum Judgement |
| Cooke vs State of California | Case No. F016-17 | Designated - State Court-Working |
| Dominguez v. City of San Jose | Case No. 18-cv-04826 | Designated - Working |
| Speer v City of San Bernandino | 5:20-cv-00044-JGB (SPx) | Rule 26 Report , Depo Pending |
| Guardado vs State of California | | Working |

38 Civil Cases
Career Estimate on
depositions around 25

**Additional Testimonial Experience**

- Provided testimony for both Prosecution and Defense in the following courts: United States Military Court (United States and Germany)
- United States Military Article 32 Hearings (United States and Germany)
- Canadian Military Court (Canada & Germany)
- Superior Court Los Angeles
- Superior Court Kern County Superior Court
- Ventura County Court
- San Bernardino County Superior Court
- San Diego County
- Superior Court Orange County
- Superior Court Riverside County
- Superior Court San Joaquin County
- Federal Court, Duong Trial, FBI, AUSA, San Jose, CA (Federal Trial) Prosecution
- Court qualified expert witness in using advanced ICM 3D analysis in bullet comparisons, Gonzales vs. State of California, 2012.
- Oregon Case, Christensen Death Row Federal Appeals Court Resentenced-Murder 1 - Manslaughter Reconstruction (Removed from Death Row)
- Federal Court, Los Angeles, CA

**Rocky Edwards**
**Firearms Consultant**

**(323-216-1584)**
*rockforensics@gmail.com*

**EFFECTIVE: JANUARY 2018**

# GENERAL FEE SCHEDULE AND EXPENSE POLICY
# FOR CONSULTING SERVICES

•<u>HOURLY RATE:</u>  **$200.00 PER HOUR for all professional services rendered, including consultation, administrative set-up file, report writing, computer analysis and preparation of diagrams &/or court exhibits, research, site inspections & shooting reconstruction, travel time, preparation for testimony, and telephone conferences which exceed 30 minutes. Travel time is calculated portal-to-portal and from the actual time of departure and arrival. Any work or meetings specifically requested by the client to be performed on a Saturday, Sunday, or holiday will be at the hourly rate of $275.00.**

• <u>RETAINER:</u>  **Normally, a minimum retainer of $3,000.00 must be received prior to working on the case or reviewing of documents. The retainer may be negotiable after initial consultation with the client. The retainer is also required if the client declares the consultant, with or without his permission, as an expert witness to the court or opposing counsel. Preliminary telephonic discussions of potential cases are welcome and there is no charge for this service. RETAINERS ARE NOT REQUIRED FROM GOVERNMENTAL AGENCIES. The retainer will be credited toward work completed with the first hour ($200.00) as non-refundable in the event the matter is resolved or settled after consultant is retained, but before completing the work requested.**

• <u>DEPOSITIONS AND COURT TESTIMONY:</u>  **The fee for deposition is $475.00 PER HOUR (minimum one hour) and $475.00 PER HOUR for court testimony with no minimum requirement. The client is responsible for payment of travel time of consultant to and from the deposition or court at the rate of $200.00 PER HOUR. This also includes preparation and "waiting time" prior to and following testimony. Payment of the minimum fee must be received from deposing counsel prior to the start of and/or continuation of the deposition. The client is responsible for notifying opposing counsel of the deposition fee.**

•<u>CHARGES FOR OUT-OF-STATE SERVICES OR DEPOSITIONS:</u> **These services are $1,800.00 PER DAY. This also includes work that is performed outside of the Los Angeles metropolitan area in excess of 250 miles. Travel, lodging, meals, and other incidental expenses are the responsibility of the party requesting the service or deposition. Generally, travel costs are payable in advance.**

• <u>INVOICES:</u> **Itemized invoices submitted to the client are payable within 30 days of receipt. The statement may include incidental expenses such as parking fees and film processing. The client is invited to request explanation for any portion of a statement. Any unpaid balance in excess of sixty (60) days may reflect a service charge of 1.5% per month. All work may cease on the case, including trial appearance, with a balance that is delinquent for more than forty five (45) days.**

**It is the responsibility of the client to pay the invoice upon receipt and not to request that the payment be delayed until monies are received by the client from whatever source. The client is identified as the law firm representing either the plaintiff or defendant, not the party or parties that they represent as legal counsel for this particular action. It is understood that the client and consultant are entering into a professional relationship and that the client is solely responsible for payment of all professional services.**

**FEESC12**

# Curriculum Vitae (as of February 1, 2021):
## Daniel L. Sudakin, MD, MPH, FACMT, FACOEM, FAACT, FASAM

Daniel L. Sudakin, MD, MPH, FACMT, FACOEM, FAACT, FASAM
9370 SW Greenburg Rd, Suite 201
Portland, OR 97223
(503) 477-6622
www.medicaltox.com
sudakind@medicaltox.com

Practicing Addiction Medicine at Aspire PDX
www.aspirepdx.com

### EDUCATION, BOARD CERTIFICATIONS, PROFESSIONAL HONORS

| | |
|---|---|
| 2015: | Fellow, American Academy of Clinical Toxicology |
| 2015: | Fellow, American Society of Addiction Medicine |
| 2014: | Board certified in Addiction Medicine (American Board of Addiction Medicine) |
| | • Certified by the American Board of Preventive Medicine in 2021 |
| 2014-7: | Member, American Board of Emergency Medicine, Medical Toxicology Sub-board |
| 2004: | Fellow, American College of Medical Toxicology |
| 2004: | Fellow, American College of Occupational and Environmental Medicine |
| 2000: | Board certified in the subspecialty of Medical Toxicology (American Board of Preventive Medicine). |
| | • Recertified in 2009, 2020. |
| 2000: | Board certified in the specialty of Public Health and General Preventive Medicine (American Board of Preventive Medicine). |
| | • Recertified in 2010, 2020. |
| 1998-2000: | Medical Toxicology Fellowship, Veterans Administration Medical Center, Portland, Oregon |
| 1999: | Master of Public Health (Biostatistics and Epidemiology), Oregon Health and Science University, Portland, Oregon |
| 1996-8: | Residency, Public Health and General Preventive Medicine (Occupational and Environmental Medicine track), Oregon Health Sciences University, Portland, Oregon |
| 1995-6: | Clinical Anesthesiology, Year One, Stanford University Health Services, Palo Alto, California |
| 1994-5: | Internal Medicine Internship, Legacy Hospitals, Portland, Oregon |
| 1994: | Doctor of Medicine, Wayne State University School of Medicine, Detroit, Michigan |
| 1993: | Alpha Omega Alpha, National Medical Honor Society |
| 1990: | Bachelor of Science (Biopsychology), University of Michigan, Ann Arbor |

## EMPLOYMENT INFORMATION, AND ACADEMIC APPOINTMENTS

2017-present:         Private Practice, Addiction Medicine, at Aspire PDX

2016:                 Addiction Medicine Physician at Ascension Medical Group

2014-2016:            Director of Addiction Medicine, Pathways Northwest

2014-2016:            Affiliate Faculty, Oregon State University Department of Environmental
                      and Molecular Toxicology

2006-2014:            Associate Professor (with indefinite tenure), Oregon State University
                      Department of Environmental and Molecular Toxicology

2000-2006:            Assistant Professor, Oregon State University Department of
                      Environmental and Molecular Toxicology

2008-present:         Affiliate Associate Professor, Oregon Health and Science University,
                      Department of Emergency Medicine

1999-present:         Consulting and expert witness services (Daniel L. Sudakin, MD, MPH,
                      LLC, Medicaltox Consulting)

## PART-TIME EMPLOYMENT

2015-2016:   Medical Director, ACME Counseling (Corvallis, Oregon)
2004-2008:   Veritox, Inc., Medical Toxicologist
1997-2000:   Oregon Medical Assistance Programs, Drug Utilization Review Council
             Member
1998-1999:   Adjunct Faculty, Occupational Health Clinics, Oregon Health and Science
             University
1996-1998:   Urgent Care Provider, Kaiser Permanente, Northwest Region Clinics

## PUBLICATIONS, PRESENTATIONS, AND TECHNICAL REPORTS

### Journal Articles

Sudakin D.  Naltrexone:  Not Just for Opioids Anymore.  *Journal of Medical Toxicology*,
2016;12(1)71-5.

Rohlman Diana, Syron Laura, Hobbie Kevin, Anderson Kim A., Scaffidi Christopher, Sudakin
Daniel, Peterson Elena S., Waters Katrina M., Haynes Erin, Arkin Lisa, Feezel Paul, and Kincl
Laurel. A. community-based approach to developing a mobile device for measuring ambient

2

air exposure, location, and respiratory health. *Environmental Justice.* August 2015, 8(4): 126-134.

Madeen E, Corley RA, Crowell S, Turteltaub K, Ognibene T, Malfatti T, McQuistan TJ, Garrard M, Sudakin D, Williams DE.  Human in vivo pharmacokinetics of [$^{14}$C]dibenzo[*def,p*]chrysene by accelerator mass spectrometry following oral microdosing. *Chemical Research in Toxicology*, 2014; December 10.

Motorykin O, Schrlau J, Jia Y, Harper B, Harris S, Harding A, Stone D, Kile M, Sudakin D, Massey Simonich SI.  Determination of parent and hydroxyl PAHs in personal PM2.5 and urine samples collected during Native American fish smoking activities.  Accepted for publication and in press in *Science of the Total Environment*, 2015;505:694-73.

Kile L Molly, Coker S Eric, Smit  Ellen, Sudakin  Daniel, Molitor  John, Harding K Anna.  A cross-sectional study of the association between ventilation of gas stoves and chronic respiratory illness in U.S. children enrolled in NHANESIII.  *Environmental Health* 2014, **13**:71.

Sudakin DL, Cardenas A, Smit E, Harding A. Naphthalene biomarkers and relationship with hemoglobin and hematocrit in white, black, and Hispanic adults: Results from the 2003-4 National Health and Nutrition Examination Survey. *Journal of Medical Toxicology* (2013).9(2):133-8.

Keith DJ, Butler JA, Berner B, Dixon B, Johnson S, Garrard M, Sudakin DL, Christensen JM, Hagen TM.  Age and gender dependent bioavailability of R- and R,S-alpha lipoic acid:  a pilot study.  *Pharmacol Res* (2012). 66(3):199-206.

Sudakin DL, Stone D.  Dialkyl phosphates as biomarkers of organophosphates:  The current divide between epidemiology and clinical toxicology.  *Clinical Toxicology* (2011).49(9):771-81.

Sudakin DL, Stone D, Power L.  Naphthalene mothballs:  Emerging and recurring issues and their relevance to environmental health.  Current Topics in Toxicology. 2011, Volume 7. Pages 13-19.

Caleb J. Banta-Green, Jennifer A. Field, et al. (2009). "The spatial epidemiology of cocaine, methamphetamine and 3,4-methylenedioxymethamphetamine (MDMA) use: a demonstration using a population measure of community drug load derived from municipal wastewater." *Addiction* **2009.** 104(11):1874-80.

Stone DL, Sudakin DL, Jenkins JJ.  "Longitudinal trends in organophosphate incidents reported to the National Pesticide Information Center, 1995-2007."  *Environ Health* 2009;8:18.

Sudakin DL, Power LE.  "Regional and Temporal Variation in Methamphetamine-related Incidents:  Applications of Geographic Information Systems and Spatial Scan Statistics." *Clinical Toxicology* (2009), 47(3):243-7.

Sudakin Daniel L; Power Laura E   Regional variation in the severity of pesticide exposure outcomes: applications of geographic information systems and spatial scan statistics.   *Clinical Toxicology* (Philadelphia, Pa.)  (2009), 47(3), 248-52.

Sudakin DL, Fallah P.  "Toxigenic Fungi and Mycotoxins in Outdoor, Recreational Environments. *Clinical Toxicology.* 2008;46(8):738-44.

Sudakin DL.  "Fatality After a Single Dermal Application of Lindane Lotion." *Arch Environ Occup Health.* 2007;62(4):201-3.

Power LE, Sudakin DL.  "Pyrethrin and pyrethroid exposures in the United States:  a longitudinal analysis of incidents reported to poison centers.  *J Med Toxicol.* 2007;3(3):94-9.

Sudakin DL.  "Informational Sources on Pesticides and Health (Appendix)" Invited publication in *Journal of Agromedicine,* 2007;12(1):77-82.

Sudakin DL, Power, LE. "Longitudinal Trends in the Incidence of Organophosphate Exposures in the United States." *Journal of Toxicology and Environmental Health, Part A.* 2007;70(2):141-7.

Sudakin DL.  "Pyrethroid Insecticides:  Advances and Challenges in Biomonitoring. *Clinical Toxicology* 2006;*44(1)*:31-7.

Sudakin DL.  "Pesticide Exposures:  Web-Based Resources for Health Care Providers" *Journal of Agromedicine* 2005;10(1):43-9.

Sudakin DL.  "Occupational Exposure to Phosphine Gas?  A Suspected Case Report and Review of the Literature" *Human and Experimental Toxicology* 2005;24:27-33.

Sudakin DL.  "Biopesticides" *Toxicological Reviews* 2003:22(2):83-90.

Sudakin DL, Trevathan W.  "DEET:  A Review and Update of Safety and Risk in the General Population" *Journal of Toxicology--Clinical Toxicology* 2003;41(6):831-9.

Sudakin DL.  "Trichothecenes in the Environment:  Relevance to Human Health" *Toxicology Letters* 2003;143(2):97-107.

Sudakin DL.  "Dietary Aflatoxins and Chemoprevention of Cancer:  A Clinical Review." *Journal of Toxicology--Clinical Toxicology* 2003;41(2):195-204.

Sudakin DL, Horowitz BZ, Giffin S.  "Regional Variation in the Incidence of Symptomatic Pesticide Exposures:  Applications of Geographic Information Systems." *Journal of Toxicology--Clinical Toxicology* 2002;40(6):767-773.

Sudakin DL.  "*Stachybotrys chartarum:*  Current Knowledge of its Role in Disease." *Medscape General Medicine,* February 29, 2000.

Sudakin DL, Mullins ME, Horowitz BZ, Abshier V, Letzig L.  "Intermediate Syndrome After Malathion Ingestion Despite Continuous Infusion of Pralidoxime." *Journal of Toxicology--Clinical Toxicology,* 2000;38(1):47-50.

Sudakin DL.  "Toxigenic Fungi in a Water-Damaged Building:  An Intervention Study." *American Journal of Industrial Medicine* 1999:34(2)183-90.

**Book Chapters**

Sudakin DL. "Rodenticides." Hamilton & Hardy's Industrial Toxicology, 6th Edition (2015).

Sudakin DL. "Cholinesterase Inhibitors: Organophosphates and Carbamates" in Advanced Hazmat Life Support, 4th Edition (2014)

Sudakin DL.  "DEET" in Hayes' Handbook of Pesticide Toxicology, Third Edition (2010).

Sudakin DL.  "Fungicides" in Critical Care Toxicology:  Diagnosis and Management of the Critically Poisoned Patient (2005).

Sudakin DL. "Mycotoxins and Toxigenic Fungi" in Medical Toxicology, Third Edition (2004).

**Invited, Peer-Selected Presentations at Regional and National Scientific Meetings**

Invited Speaker, Northwest Institute of Addiction Studies. Portland, Oregon. July 11, 2019. Lecture title: "Medication Assisted Treatment: Challenges and Opportunities."

Continuing Medical Education Lecture, American College of Medical Toxicology Addiction Medicine Academy.  Clearwater Beach, Florida. March 26, 2015.  Lecture title: "Naltrexone: Not Just for Opioids Anymore."

Continuing Medical Education lecture, Good Samaritan Regional Medical Center.  Corvallis, Oregon.  July 25, 2014.  Lecture title: "Opioid Use Disorders:  Treatment Options in the Outpatient Setting.

Continuing Medical Education lecture, American Occupational Health Conference.  Orlando, Florida. April 29, 2013.  Lecture title: "Pesticides and Biomonitoring:  The Growing Divide Between Epidemiology and Clinical Toxicology."

Continuing Medical Education webinar, Centers for Disease Control and Prevention. August 29, 2012. Presentation title: "Pesticide Residues in the Indoor Environment:  Assessment and Health Effects."

5

Invited Speaker, Platform Session (Epidemiology), North American Congress of Clinical Toxicology.  Toronto, Ontario, Canada.  September 15, 2008.  Presentation title: "Regional Variation in Methamphetamine-related Incidents:  Applications of GIS and Spatial Scan Statistics."

Invited Speaker and Session Organizer, American Occupational Health Conference.  New Orleans, LA.  May 9, 2007.  Lecture title: "Perchlorate and Other Environmental Chemicals: Clinical and Epidemiological Studies of Effects on Thyroid Function."

Invited Speaker, American College of Medical Toxicology Spring Meeting.  Miami, FL. March 17, 2007.  Lecture titles: "Pesticides and Food Poisoning," and "Organophosphates: Biomarkers of Exposure, Effect, and Genetic Susceptibility."

Invited Speaker, American Occupational Health Conference.  Millennium Series:  Emerging Issues in Toxicology.  Los Angeles, CA.  May 9, 2006.  Lecture title: "Challenges in Interpreting Biomonitoring Studies:  Insecticides as Example."

Invited Speaker, Pesticide Regulatory Education Program.  University of California, Davis. August 8, 2005.  Lecture title: "Pesticides:  Real Risks, Perceived Risks, and Informational Resources."

Invited Speaker, Northwest Association of Occupational and Environmental Medicine Annual Meeting.  Mt. Hood, Oregon.  February 26, 2005.  Lecture title: "Interpreting Data from Biomonitoring Studies:  The CDC Third Report of Human Exposure to Environmental Chemicals."

Invited Speaker, American Industrial Hygiene Association Tele-Web Conference: Toxicological and Occupational Medicine Perspectives on Molds and Mycotoxins.  February 16, 2005.  Lecture title: "Clinical Toxicology of Mycotoxins."

Invited Speaker, Environmental Protection Agency Regional Emergency Response Meeting. Las Vegas, Nevada.  February 8, 2005.  Lecture title: "Inhalation Risks from Phosphide Fumigants, Methyl Bromide, and other Restricted Chemicals."

Invited Speaker, Western Migrant Stream Forum.  San Diego, California.  January 29, 2005. Lecture title: "Pesticide Toxicology:  Electronic Resources for Clinicians and Public Health Providers."

Invited Speaker, Agency for Toxic Substances and Disease Registry / American College of Medical Toxicology Chemical Weapons of Convenience/Opportunity Course.  Oregon Health and Science University, Portland, OR.  December 11, 2004.  Lecture title: "Hazards of Fumigants and Cyanide."

Invited Speaker, American College of Occupational and Environmental Medicine, State of the Art Conference.  San Antonio, TX.  November 6, 2004.  Lecture title: "Methylmercury and other Environmental Neurotoxins."

Invited Speaker, Oregon Department of Health Services, Public Health Grand Rounds. Portland, OR.  Portland, OR.  August 25, 2004.  Lecture title: "Pesticide Exposures:  Internet Resources for Clinicians and Public Health Providers."

Invited speaker, American Industrial Hygiene Association Conference and Exposition. Atlanta, GA.  May 12, 2004.  Lecture title: "Human Mycotoxicoses and Biomarkers of Exposure to Mycotoxins."

Invited speaker, American Occupational Health Conference, Millenium Lecture Series (Agricultural Toxicology).  Kansas City, MO.  May 2, 2004.  Lecture title: "Pesticides and Electronic Resources for Clinicians."

Invited speaker, Agency for Toxic Substances and Diseases Registry Partners in Public Health Meeting, Atlanta, Georgia.  March 30, 2004.  Lecture title: "The NPMMP:  An Informational Resource in the Clinical Toxicology of Pesticides."

Invited speaker, Northwest Occupational and Environmental Medicine Winter Meeting, Mt. Hood, Oregon.  February 22, 2004.  Lecture title: "Phosphine Gas Poisoning:  Epidemiology and Clinical Toxicology."

Invited speaker, Pesticide Safety, Health, and Medicine Course (Pacific Northwest Agricultural Safety and Health Center), Yakima, Washington.  February 19, 2004.  Lecture: "Acute Toxicity of Pesticides."

Invited speaker, Recognition, Management and Prevention of Asthma and Pesticide Illnesses: A Course for Health Care Professionals, Environmental Professionals, Emergency Responders, School Leaders, and Nez Perce Community Members.  Lapwai, Idaho, July 30, 2003.  Lecture: "Pesticide Surveillance Tracking Systems, and Interaction with the National Pesticide Information Center"

Invited speaker, 2003 Northwest Association of Occupational and Environmental  Medicine Winter Meeting (Mt. Hood, Oregon).  March 1, 2003.  Lecture: "Mycotoxins:  Exposure Sources, Pathways, and Clinical Toxicology"

Invited speaker, American College of Occupational and Environmental Medicine, State of the Art Conference. Baltimore, Maryland October 27, 2002. Lecture: "Fungicides and Fumigants"

Symposium organizer and presenter, American Academy of Clinical Toxicology, Occupational and Environmental Toxicology Symposium.  North American Congress of Clinical Toxicology.  Palm Springs, California. September 27, 2002. Symposium title: "Mycotoxins in

the Indoor and Outdoor Environment." Lecture: "Mycotoxins:  Exposure Sources, Pathways, and Clinical Toxicology"

Invited speaker, Agriculture Safety and Health Mini-Symposium, Center for Research in Occupational and Environmental Toxicology, Oregon Health and Science University.  March 18, 2002, Portland, Oregon. Lecture: "Organophosphates in Agriculture:  In and Out of the Field"

Invited speaker, American College of Medical Toxicology Symposium Presentation for Fellows-in-Training.  Lecture: "The Medical Toxicologist as Epidemiologist" North American Congress of Clinical Toxicology, Montreal, Quebec. October 6, 2001

Invited speaker, Council of State and Territorial Epidemiologists Annual meeting. Lecture: "Case Finding Through Collaboration With Poison Control Centers and Other National Telecommunication Services."  June 12, 2001.  Portland, Oregon.

**Other Peer-Reviewed Presentations:**

Environmental Medicine Presentation Package, a 1-hour audiovisual Powerpoint presentation prepared with contract funding from the Association of Occupational and Environmental Clinics.  Title: "Recognizing, Treating and Preventing Health Risks from Agricultural Pesticides."  Completed August, 2007.

**Published abstracts and Poster Presentations (peer reviewed):**

Madeen EP, Corley R, Turtletaub K, Olgnibene T, Malfatti M, Garrard M, Sudakin D, McQuistan T, Williams DE.  In vivo human pharmacokinetics of dibenzo (def,p) chrysene following microdosing:  Bridging the gap between high dose animal data and environmentally relevant human exposures. (October, 2012). Presented at the 25th Annual Superfund Research Program meeting, Research Triangle Park, North Carolina.

Cardenas A, Sudakin D, Smit E, Harding A. Naphthalene exposure and relationship withhemoglobin and hematocrit in White, Black, and Hispanic adults:  Results from the 2003-4 National Health andNutrition Examination Survey. (October, 2012). Presented at the American Public Health Association Meeting, San Francisco, CA.

Stone DL and Sudakin DL.  "Longitudinal Trends in Organophosphate Incidents Reported to NPIC:  Role of Regulation." Presented as a Poster at the North American Congress of Clinical Toxicology meeting.  September 22, 2009. San Antonio, TX.  Published in *Clinical Toxicology.*

Sudakin DL, Power, LE.  "Regional Variation in Methamphetamine-related Incidents: Applications of GIS and Spatial Scan Statistics."  Presented as a Platform Presentation at the North American Congress of Clinical Toxicology meeting.  September 15, 2008.  Toronto, Canada.  Published in *Clinical Toxicology* 2008;46(7).

Chiaia, Aurea C.; Sudakin, Daniel L.; Banta-Green, Caleb; Field, Jennifer A.   Determination of illicit drugs and biomarkers in raw municipal wastewater influent as a tool for drug epidemiology.   Abstracts of Papers, 234th ACS National Meeting, Boston, MA, United States, August 19-23, 2007.

Sudakin DL.  "Fatality After a Single Dermal Application of Lindane Lotion."  Presented at the European Association of Poison Centers and Clinical Toxicologists meeting.  May 4, 2007.  Athens, Greece.  Published in Clinical Toxicology 2007;45(4).

Power LE, Sudakin DL.  "Non-Specific Reporting of "Other" Pesticide Classifications in Annual Poison Control Center Reports."  Presented at the European Association of Poison Centers and Clinical Toxicologists meeting.  May 4, 2007.  Athens, Greece.  Published in Clinical Toxicology 2007;45(4).

Sudakin DL.  "Longitudinal Trends in the Incidence of Organophosphate Exposures Reported to Poison Centers in the United States.  Presented at the European Association of Poison Centers and Clinical Toxicologists meeting.  April 21, 2006.  Published in Clinical Toxicology 2006;44.

Sudakin DL.  "Pyrethroid Insecticides:  Advances and Limitations in Biomonitoring".  Accepted for presentation at the North American Congress of Clinical Toxicology.  September 13, 2004.  Seattle, WA.  Published in *Journal of Toxicology—Clinical Toxicology* 2004;42(5):788.

Sudakin DL, Horowitz BZ, Giffin S.  "Regional variation in the incidence of symptomatic pesticide exposures: applications of GIS".  Presented at the International Society for Exposure Assessment / International Society for Environmental Epidemiology Meeting.  August 11, 2002.  Vancouver, British Columbia.  Published in *Epidemiology* 2002;13(4): page S208

Thomsen C, Horowitz BZ, Sudakin DL.  "Improving reporting by a poison center to a pesticide poisoning surveillance system."  Presented at the International Society for Exposure Assessment / International Society for Environmental Epidemiology Meeting.  August 11, 2002.  Vancouver, British Columbia.  Published in *Epidemiology* 2002;13(4): page S211

Sudakin DL.  "Toxigenic Fungi and Mycotoxins in the Indoor Environment."  Mycological Society of North America.  June 22, 2002.  Corvallis, OR.

Sudakin DL, Wagner SL.  "Human Pesticide Exposures, Trends and Informational Needs."  North American Congress of Clinical Toxicology.  October, 2001.  Montreal, Quebec.  Abstract published in *Journal of Toxicology--Clinical Toxicology* 2001;39(5):528.

Sudakin DL, Horowitz BZ, Giffin S.  "Regional Variation in the Incidence of Intentional Exposures."   North American Congress of Clinical Toxicology, Tucson, Arizona, September, 2000.  Abstract published in *Journal of Toxicology--Clinical Toxicology* 2000;38(5).

Mirkin D, Sudakin DL, Horowitz BZ, Parker S.  "Plumbism in Pregnancy Treated with DMSA."  North American Congress of Clinical Toxicology, Tucson, Arizona, September, 2000.  Abstract published in *Journal of Toxicology--Clinical Toxicology* 2000;38(5).

Mirkin D, Sudakin DL. "Lead Chelation in the Neonate."  North American Congress of Clinical Toxicology, Tucson, Arizona, September, 2000.  Abstract published in *Journal of Toxicology--Clinical Toxicology* 2000;38(5).

Sudakin DL, Horowitz BZ.  "Geographic Information Systems and Poison Center Management."  North American Congress of Clinical Toxicology.  La Jolla, California. September, 1999.  Abstract published in *Journal of Toxicology--Clinical Toxicology,* 1999;37(5).

Sudakin DL, Horowitz BZ.  "Geographic Distribution of Hospitals and their Influence on Poison Center Penetrance." North American Congress of Clinical Toxicology.  La Jolla, California.  September, 1999.  Abstract published in *Journal of Toxicology--Clinical Toxicology,* 1999;37(5).

Sudakin DL, Mullins ME, Horowitz BZ, Abshier V.  "Intermediate Syndrome After Malathion Ingestion Despite Continuous Infusion of 2-PAM."  North American Congress of Clinical Toxicology La Jolla, California, September, 1999.  Abstract published in *Journal of Toxicology--Clinical Toxicology,* 1999;37(5).

### **Non-credit Seminars (Continuing Education Lectures for Faculty, Fellows, Residents and Medical Students at Oregon Health and Science University, and Portland State University)**

- Invited Lecture, Portland State University Counseling 507: Addiction Pharmacology. Lecture Title: Treatment of Opioid, Alcohol, and Stimulant Use Disorders in the Outpatient Setting. October 25, 2017.
- Invited Lecture, Portland State University Counseling 507: Addiction Pharmacology: Title: Medication Assisted Treatment Options in the Outpatient Setting. April 8, 2016.
- Invited Lecture, Western Regional Toxicology Fellowship Meeting, Oregon Health and Science University
    - Biomarkers of pesticide poisoning, April 24, 2014
- Invited Lecture, Oregon Health and Science University Medical Toxicology Fellowship Program
    - Dram Shop Cases and Widmark Calculations. October 3, 2018.
    - THC and per se DUI limits. August 17, 2018.
    - Addiction medicine update: 2016. August 15, 2016.
    - Kratom and other remedies in opioid withdrawal syndrome, June 11, 2015
    - Naltrexone in clinical practice, February 19, 2015
    - Buprenorphine in clinical practice and overdose, February 28, 2014
    - Methamphetamine death while in police custody, August 5, 2013

10

- o   Postmortem redistribution of THC, May 13, 2013
- o   Biomarkers of Exposure to Pesticides, February 26, 2013
- Invited Speaker, Oregon Health Sciences University Preventive Medicine Resident Lecture Series, Portland, Oregon:
  - o   "Biotechnology and Food Safety," February 3, 2005
  - o   "Pesticide Toxicology:  Electronic Resources for Health Care Providers," December 9, 2005
  - o   "Dietary Aflatoxins and Chemoprevention of Cancer," April 24, 2003
  - o   "Regulatory and Clinical Toxicology of Dietary Supplements" May 22, 2003
  - o   "Mold in the Indoor Environment: Role of Mycotoxins in Building-Related Illness" June 6, 2002
  - o   "Pesticide Exposures:  Clinical and Regulatory Issues," January 10, 2002.
- Invited Speaker, Oregon Health and Science University Medical Toxicology Fellowship Lecture Series, Portland, Oregon.
  - o   "Antidotes in the Treatment of Aflatoxin-associated Liver Disease" June 6, 2002

**Technical Reports (peer-reviewed)**

Co-author (Thomas Kurt, MD), with the ACMT Clinical Practice Committee.  American College of Medical Toxicology Comment:  Institute of Medicine Report on Damp Indoor Spaces and Health. June, 2006.

Expert writer, Centers for Disease Control and Prevention (CDC), ***Third National Report on Human Exposure to Environmental Chemicals.***  Published July 21, 2005.
Sections authored and updated include:
*Pyrethroid Pesticides*
*Herbicides*
*Organophosphate Insecticides: Specific Metabolites*
*Organophosphate Insecticides: Dialkyl Phosphate Metabolites*
*Organochlorine insecticides*
*Other Pesticides (including DEET)*

**Acknowledged Contributions to Peer-Reviewed Publications and Reports:**
Pesticide Poisoning from Synthetic Pyrethroids, Oregon Department of Health Services Communicable Disease (CD) Summary 2004;53(6).
Acute Idiopathic Pulmonary Hemorrhage in Infants:  Recommendations from the Working Group for Investigation and Surveillance, *Morbidity and Mortality World Report,* Centers for Disease Control and Prevention.  March 12, 2004;53(RR02)1-12.
Poisoning by an Illegally Imported Chinese Rodenticide Containing Tetramethylenedisulfotetramine: New York City, 2002.  *Morbidity and Mortality  World Report,* Centers for Disease Control and Prevention.  March 14, 2003;52(10):199-201.
Agency for Toxic Substances and Disease Registry (ATSDR) Case Studies in Environmental Medicine.  Radiation Exposure from Iodine-131.  November, 2002.
http://www.atsdr.cdc.gov/HEC/CSEM/iodine/iodine131.pdf

11

**Letters to the Editor:**

Sudakin DL. "Bioaerosol Lung Damage in a Worker with Repeated Exposure to Fungi in a Water-damaged Building" *Environmental Health Perspectives* 2001;109(11):516.

Sudakin DL, Mullins ME, Horowitz BZ.  "Poison Control Centers and Occupational Exposures." *Journal of Occupational and Environmental Medicine,* 2000;42(1):1-2.

Sudakin DL.  "Mycotoxins and Pulmonary Hemorrhage."  *Archives of Pediatrics and Adolescent Medicine,* 1999;153:205.

Sudakin DL.  "Integrating Preventive Medicine in a Medical Resident Practice."  *Archives of Internal Medicine* 1998;158(15):1719.

Sudakin DL.  "Effects of Mycotoxins in Health and Disease."  *Journal of the American Medical Association.* 1997:278(13):1063.


**Non-refereed Publications (outreach, research and related activities featured in):**

*BBC News,* "DEET Bug Repellent, Toxic Worry."  August 5, 2009.

*Oregon's Agricultural Progress,* Winter, 2008:  "New Method Pinpoints Meth Hotspots."

*Oregon State University News and Communication Services,* September 15, 2008.  "OSU Study Uses New Method to Identify Meth Hot Spots in Oregon."

*Oregon's Agricultural Progress,* Fall, 2005.  "Profile:  Dr. Dan Sudakin Spans the Worlds of Public Health, Medicine, and Toxicology."

*Forbes,* April 11, 2005, Daniel Fisher, "Dr. Mold"

*Los Angeles Times,* July 5, 2004, Kelly Young, "Repellent Works, but Fears Linger"

*Wall Street Journal*, June 26, 2004, Tara Pope-Parker, "Backyard Dilemna:  Which is Worse DEET or Possibility of West Nile Virus?"

*Pesticide and Toxic Chemical News,* June 21, 2004, "Mysterious Poisoning Death Attributed to Pesticide"

*Jacksonville Daily News,* June 13, 2004, Roselee Papandrea, "Odd Poison Killed Child"

*American College of Medical Toxicology Newsletter,* Spring, 2004, "Toxicologists in the News"

*Ag Connections* (National Institute of Occupational Safety and Health, Agricultural Research Centers), Spring, 2003, "Logging In:  Valuable Resources"

*Science,* April 14, 2000, Michael Hagmann, "A Toxic Mold's Legacy Revisited"


## TEACHING AND ADVISING


**Course Development and Instruction at Oregon State University:**

Instructor, Oregon State University, Toxicology 429/529:  Toxic Substances in Food.

Instructor, Oregon State University, Toxicology 512:  Target Organ Toxicology (Neurotoxicology lecture sequence).

Guest Lecturer, Oregon State University, Public Health 540 (Environmental Health).  April 20, 2010. Lecture: "Pesticide Residues in Food:  Toxicology and Risk Assessment."

Guest Lecturer, Oregon State University, Biology/Toxicology 430/430H/530 (Baccalaureate Core), Biotechnologies:  Agriculture, Food, and Resource Issues.  2004-2010.  Lectures:  Tacogate (Starlink Corn and Plant-Incorporated Protectants), and Dietary Supplements

Guest Lecturer and Moderator, Oregon State University, Public Health 591 (Environmental Policy). October 14, 2009.

Guest Lecturer, Oregon State University, Toxicology 360 (Baccalaureate Core).  Lecture:  Your Body Fighting the Toxin.  October 13, 2009.

Guest Lecturer, Oregon State University, Toxicology 360 (Baccalaureate Core).  Lecture:  Your Body Fighting the Toxin.  October 12, 2008.

Guest Lecturer, Oregon State University, Public Health 512:  Occupational and Environmental Health.  Lecture:  Regulation and Clinical Toxicology of Pesticides.  October 13, 2005.

Guest Lecturer, Oregon State University, Public Health 512:  Occupational and Environmental Health. Lecture:  Pesticide Toxicology.  May 11, 2005.

Guest Lecturer, Oregon State University, Food, Science, & Technology 102:  Maraschino Cherry. Lecture:  Food Toxicology and the Maraschino Cherry.  February 9, 2005.

Guest Lecturer, Oregon State University, Animal Science 490:  Toxicants and Poisonous Plants. November 22, 2004.  Lecture:  Dietary Exposure to Aflatoxins in Food and Animal Feed.

Guest Lecturer, Oregon State University, Public Health 448/548:  Public Health Toxicology and Risk Assessment.  October 29, 2004.  Lecture:  Arsenic Toxicology and Epidemiology

Guest Lecturer, Oregon State University, Public Health 542:  Environmental and Occupational Health. Lecture:  Pesticide Toxicology and Informational Resources.  April 21, 2004.

Guest Lecturer, Oregon State University, Food, Science, & Technology 102:  Maraschino Cherry. Lecture:  Food Toxicology and the Maraschino Cherry.  February 11, 2004.

Guest Lecturer, Oregon State University, Public Health 411:  Environmental Health Policy and Regulations.  Lecture:  Regulation and Toxicology of Dietary Supplements.  November 24, 2003.

Guest Lecturer, Oregon State University, Public Health 542:  Environmental and Occupational Health. Lecture:  Pesticide Toxicology and Informational Resources. May 28, 2003.

Guest Lecturer, Oregon State University, Public Health 591:  Issues and Research in Addictive Behaviors.  Lecture:  Marijuana Addiction. February 27, 2003.

Guest Lecturer, Oregon State University, Toxicology 507 Seminar. Toxicoepidemiology: Applications of GIS.  November 12, 2001.

## GRANTS, COOPERATIVE AGREEMENTS, CONTRACTS

Co-Investigator: Dietary HDAC Inhibitors (funded by NIH R01 CA 122959-01A2), 2012-2014

Co-Investigator:  Pharmacokinetics of Phenanthrene and I3C in Post-Menopausal Women (funded by NIH (funded by NIH P01 CA090890), 2010-2014

Co-Investigator: Lipoic Acid Bioavailability in Young and Elderly Adults- Phase II (funded by USANA), 2009-2014

National Pesticide Medical Monitoring Program (U.S. EPA Cooperative Agreement)
Principal Investigator (2001-2010).

National Pesticide Information Center (U.S. EPA Cooperative Agreement)
Co-Principal Investigator (2001-2015).

Integrative Health Science Facility Core (IHSFC), Environmental Health Science Center (funded by National Institute of Environmental Health Sciences). Co-Director of Clinical Research Center (2006-2014).

13

Superfund Research Program (SRP), funded by the National Institute of Environmental Health Sciences. Director, Research Translation Core (RTC), 2009-2014

Principal Investigator, Memorandum of Understanding, Oregon Department of Agriculture. Consultation activities to the State of Oregon Pesticide Analytical and Response Center.  2001-2014

Contract, Environmental Medicine Presentation Package (Pesticide Residues in the Indoor Environment: Clinical Toxicology and Health Effects).  Contract awarded by the American College of Medical Toxicology. August, 2010.

Contract, Environmental Medicine Presentation Module (Recognizing, Diagnostic, and Preventing Pesticide Illness in Agricultural Workers).  Contract awarded by the Association of Occupational and Environmental Clinics. July 2006-June 2007.

Principal Investigator, Oregon Health and Science University Medical Research Foundation Grant. Grant title:  Monitoring Community Drug Abuse: Methamphetamine in Municipal Wastewater and its Spatial Correlation with Poisoning Incidents in Oregon. Project period 8/1/06-8/1/08.

## SERVICE

### Service to the Profession

Member, US EPA National Advisory Committee to Develop Acute Exposure Guideline Levels for Hazardous Substances (NAC/AEGL, 2006-2010)

Member and Fellow, American College of Occupational and Environmental Medicine
       Occupational and Clinical Toxicology Committee
              Committee chair (2005-2008)
              House of Delegates (2004-5)

Member and Fellow, American College of Medical Toxicology
       Ethics Task Force
       Grants and Contracts Committee

Review Panel, Medical Toxicology of Natural Substances:  Foods, Fungi, Medicinal Herbs, by Donald Barceloux (2008).

National Review Board, Pesticide Information Gateway project of the *National Strategies for Health Care Providers:  Pesticides Initiative.*  National Environmental Education and Training Foundation, Inc..  December, 2002.
              Peer-reviewer of technical documents: "National Pesticide Competency Guidelines for Medical and Nursing Education" and "National Pesticide Practice Skills Guidelines for Medical and Nursing Practice"

14

Member, Roster of Experts in Biological Sciences.  Food and Agriculture Organization of the United Nations/World Health Organization Joint Expert Committee on Food Additives (2002)

Invited member of Peer Review Panels:

Scientific Review Panel, National Institute of Environmental Health Sciences (NIEHS), Environmental Health Science Centers.  August, 2010.

EPA Region 10 Project Proposal: "An Evaluation of the Human Health Effects of TCE Contamination at the View-Master Toy Factory in Beaverton, OR."  August 26, 2005

NIEHS RFA ES-03-004: "Centers for Children's Environmental Health and Disease Prevention Research."  August 4, 2003

EPA 2002 STAR "Biomarkers for the Assessment of Exposure & Toxicity in Children" Washington, D.C., August 23, 2002

Member, Editorial Board
*Journal of Medical Toxicology* (2005-2014)
Section Editor (Occupational and Environmental Toxicology)

Peer Reviewer for scientific journals:
*American Journal of Emergency Medicine*
*Pharmacodepidemiology and Drug Safety*
*Toxicology Letters*
*Archives of Environmental and Occupational Health*
*Journal of Toxicology--Clinical Toxicology*
*Journal of Medical Toxicology*
*Medscape General Medicine*
*Pediatrics*
*Perceptual and Motor Skills (Psychological Reports)*
*Pesticide Biochemistry and Physiology*

Abstract Review Committee, North American Congress of Clinical Toxicology, 2000-2001, 2007, 2008, 2009.

Reviewer of Technical Documents and Extension Publications:

Purdue Pesticide Programs, Cooperative Extension Service.  *Farm Family Exposure to Pesticides:  A Conversation with Farm Women.*

Agency for Toxic Substances and Diseases Registry (ATSDR) *Chemical and Technical Summary Document for DEET.*  May, 2004

15

Western Wood Products Association Technical Report:  *Mold, Housing, and Wood.* 2001.

Expert Panel Member, Centers for Disease Control and Prevention Environmental/Laboratory Investigation Panel for Acute Idiopathic Pulmonary Hemorrhage, July 2000.

Research Advisory Committee for NIEHS grant R01 ES98707, "Reducing Pesticide Exposure in Minority Families" 2001-2004

Research Advisory Committee for EPA Cooperative Agreement, "Saving Lives by Changing Practice" 2005-present

Invited speaker, Sacred Heart Medical Center Weekly Physician Conference.  Eugene, OR. June 14, 2005.  Lecture: "Pediatric Toxicology:  Heavy Metals and Dietary  Supplements."

Invited speaker, OHSU School of Dentistry Continuing Education Lecture Series.  Portland, OR. February 10, 2005.  Lecture: "Toxicology of Dental Amalgams"

Invited speaker, Advanced Hazmat Life Support, Provider Course (Lecture Topics:  Toxic Inhalations and Antidotes in Detail).  September 25, 2004.  Eugene, Oregon

Invited speaker, Good Samaritan Regional Medical Center, Corvallis, OR.  April 23, 2004. Lecture: "Chemical Exposures in the Workplace."

Invited speaker, Advanced Hazmat Life Support, Provider Course (Lecture Topics:  Toxic Inhalations and Antidotes in Detail). September 27, 2003.  Brooks, Oregon

Invited speaker, Continuing Medical Education lecture, Good Samaritan Hospital.  Lecture: "Pesticide Exposure in the Home."  May 12, 2001, Corvallis, Oregon

Invited speaker, Northwest Association of Occupational and Environmental Medicine monthly meeting.  Lecture:  "Mold: Indoor Air and the Occupational Physician" May, 2000

## Service to the Public (Professionally Related)

Appointee, Governor's Cannabis Research Task Force (Oregon), 2015-6

Invited Speaker, OSU Extension Non-Crop Vegetation Management Conference, Corvallis, OR. January 28, 2010.  Title: "Health Effects of Herbicides"

Testimony in support of Oregon House Bill 3450 (Carbon Monoxide Poisoning), to Oregon Human Services Committee.  Salem, OR.  April 6, 2009.

Invited Speaker, Corvallis, Oregon.  Public Outreach Session of the Pacific Northwest Association of Toxicologists Annual Meeting.  September 20, 2008.  Presentation: "Methamphetamine:  Health Risks in the Lab and in the Community."

Invited Speaker, Eugene, Oregon.  Pesticide Applicator Training Course:  Policy and Practice. February 7, 2006.  Presentation: "Longitudinal Trends in Organophosphate Incidents in the United States."

Invited Speaker, Oregon Vegetation Management Association Course.  Seaside, Oregon. November 14, 2005.  Presentation: "Reliable Resources in Pesticide Toxicology"

Invited Speaker, OSU Extension Service Non-Crop Vegetation Management Course. Corvallis, Oregon.  February 2, 2005.  Presentation: "Case Studies of Pesticide Poisoning and Lessons Learned for Pesticide Applicators."

Invited Speaker, Benton County Environmental Health Advisory Committee Public Meeting. Corvallis, Oregon.  September 28, 2004.  Presentation: "Children's Health and the Environment."

Invited Speaker, Corvallis Senior Center.  Corvallis, Oregon.  August 20, 2004.  Lecture: "Medications and Dietary Supplements:  A Physician's Perspective"

Invited Speaker, Central Oregon Pest Management Course.  Bend, Oregon.  February 18, 2004. Lecture: "Pesticides and Effects in Humans"

Invited Speaker, OSU Extension Service Non-Crop Vegetation Management Course.  Corvallis, Oregon.  February 11, 2004.  Lecture: "Pesticide Poisoning:  Signs and Symptoms

Invited Speaker, Oregon State University Extension Service:  Pesticide Chemistry, Toxicology, and Policy Short Course. Ontario, Oregon.  February 10, 2004.  Lecture: "Pesticides and Effects in Humans

Invited Speaker, Willamette Dietetic Association, Corvallis, Oregon.  January 26, 2004 Lecture: "Dietary Supplements:  Regulation and Toxicity"

Invited Speaker, American Society of Safety Engineers Chapter meeting, Salem Oregon.  August 5, 2003.  Lecture: "Chemical Incidents:  Responding to Disasters and Avoiding the Pitfalls"

Oregon State University, EHSC SMILE Program High School Challenge Event in IAQ, Environmental Physician Expert session, Oregon State University, April 25, 2003.

Invited Speaker, North American Truffling Society, Corvallis, Oregon, April 8, 2003.  Presentation: "Mycotoxins:  Human Health Hazards from Above-ground Fungi"

Invited Speaker, 2003 Southern Oregon Pesticide Recertification Short Course.  January 22, 2003, Medford, Oregon.  Presentations: "Pesticide Poisoning:  What the Pesticide Applicator Should Know" and "Pesticide Poisonings in Oregon and the Pacific Northwest"

Invited speaker, 2003 Chemical Applicator Short Course, January 15, 2003, Portland, Oregon. Lecture: "Pesticide Poisoning:  Signs, Symptoms, and First Aid"

Invited Presenter, Oregon Private Pesticide Applicator CORE Training Video.  "Pesticide Exposures: What the Pesticide Applicator Should Know," November 8, 2002

Invited Speaker, EHSC Summer Institute for Pilot School teachers.  "The Role of the Public Health Physician."  June 18, 2002.  Corvallis, Oregon.

Invited Speaker, Wilbur-Ellis Company Private Pesticide Applicators- Core Credit Meeting, Albany, Oregon, March 6, 2002. Presentation: "Pesticide Exposures in Oregon"

Invited Speaker, Pacific Northwest Agricultural Chemistry, Toxicology, and Policy Short Course, Eugene, Oregon, February 20, 2002.  Lectures: "Pesticides and Effects on Humans" and "Pesticide Exposures in Oregon and the Pacific Northwest"

Invited Speaker, Chemical Applicators Short Course, Portland, Oregon.  January 10, 2002. "Pesticide Exposures in Oregon, What the Pesticide Applicator Should Know"

## AWARDS

2006:  Winner, American Academy of Clinical Toxicology, Lampe-Kunkle Award for Research in Natural Products of Toxicology.

1998:  Winner, Resident Paper Competition, Oregon Health and Science University Sommer Memorial Lecture.  Paper: "*Stachybotrys chartarum:*  Current Knowledge of Its Role in Disease."

18

## Trial and Deposition Testimony of Daniel L. Sudakin, MD, MPH

1.  **Fazli v. Action Management**
    Deposition testimony, February 16, 2021

2.  **Olmos v. ABM Industries, Inc.**
    Deposition testimony, February 2, 2021

3.  **Zacharias v. Velqui-I, LLC, et al.**
    Deposition testimony, November 23, 2020

4.  **Rose v. Holt**
    Deposition testimony, July 30, 2020

5.  **Serrano v. Premo**
    Deposition testimony, March 20, 2020

6.  **Glisson v. Lee**
    Deposition testimony, March 3, 2020

7.  **Bruner v. H & H Roofing**
    Deposition testimony, October 11, 2019

8.  **Marchese v. Farbenbloom**
    Deposition testimony, September 25, 2019

9.  **State of Washington v. Heng**
    Trial testimony, September 18, 2019

10. **Vakoff v Arapahoe House**
    Trial testimony, March 7, 2019

11. **Revel v. Fromm**
    Deposition testimony, January 14, 2019

12. **Maria Vega Gonzalez v. SAIF**
    Deposition testimony, January 4, 2019

13. **Deyo-Bundy v. SAIF**
    Hearing testimony, August 23, 2018

14. **State of Washington v. Donald Siegler**
    Hearing testimony, July 18, 2018

15. **Rapp v. Boone Hospital Center**
    Deposition testimony, March 19, 2018

16. **Williams v. Stoltz**
    Deposition testimony, March 6, 2018

17. **Graves v. Bonyo**
    Deposition testimony, February 23, 2018

18. **Oregon v. Logan**
    Trial testimony, February 2, 2018

19.   **Longmire v. 1022 10th St HOA**
       Deposition testimony, June 16, 2017
       Trial testimony, November 3, 2017

20.   **Keene v. Mitchell**
       **Superior Court of State of California, County of Los Angeles**
       Deposition testimony, April 19, 2017

# Daniel L. Sudakin, MD, MPH, FAACT, FACMT, FACOEM
## Medical Toxicology, Addiction Medicine, Preventive medicine
### 9370 SW Greenburg Rd, Suite 201
### Portland, OR 97223

May 5, 2021

Maren J. Clouse
Chief Deputy City Attorney
Office of the City Attorney, City of San Jose
200 E. Santa Clara St., 16th Floor
San Jose, CA 95113

Re: Jessica Dominguez vs. City of San Jose, *et al.*. United States District Court, Northern District of California. Case No.: 5:18-CV-04826.

Dear Ms. Clouse,

This report has been prepared in reference to the above-captioned matter. I have been asked to review the records in this matter, and provide opinions in relation to the drugs that were found in Mr. Jacob Arturo Dominguez' blood, and how the level of drugs might have influenced his behavior.

The report begins with a summary of my qualifications and experience. The report includes a list of materials that I have reviewed in this matter. The report concludes with the opinions I have derived, based on my knowledge, training, experience, and review of materials.

**Qualifications and Experience:**

I am a medical doctor, with board certification in medical toxicology, addiction medicine, and preventive medicine. I am licensed to practice medicine in the State of Oregon and devote greater than 50% of my professional time to the active clinical practice of medicine. I specialize in addiction medicine, and provide patient care at a private practice located in Portland, Oregon. My clinical practice integrates addiction medicine, medical toxicology, and preventive medicine.

I have extensive experience in the diagnosis and treatment of substance use disorders (addiction). My clinical experience in addiction medicine includes the recognition of substance use disorders involving alcohol as well as illicit stimulant drugs, such as methamphetamine and phencyclidine (PCP). My training and experience include the evaluation of acute intoxication from drugs including PCP and methamphetamine, as well as the effects of these types of drugs on human behavior.

I also specialize in medical toxicology, which is a field of clinical medicine that focuses on the recognition and clinical management of intoxication and overdoses from illicit drugs, including methamphetamine and PCP. As a medical toxicologist, I have training and experience in the interpretation of laboratory tests for illicit drugs in postmortem blood samples. I also specialize in preventive medicine, which is a field of medicine that focuses on epidemiology, biostatistics, and human health behaviors.

I am a Fellow of the American Society of Addiction Medicine. I am a Fellow of the American College of Medical Toxicology. I am also a Fellow of the American Academy of Clinical Toxicology. My status as Fellow in these professional organizations represents peer recognition of my contributions to these respective areas of medicine.

A complete list of my background, qualifications, and publications in the past ten years is attached as an Appendix to this report. My hourly rate for consulting or testimony is $650 per hour. I have spent approximately 7.5 hours in the process of reviewing materials and preparing this report. I have attached a complete list of testimony I have provided for the past four years.

**Materials Reviewed:**

1. Santa Clara County Medical Examiner, Report of Investigation;
2. County of Santa Clara Crime Laboratory, Controlled Substance Report;
3. Deposition of Jessica Dominguez;
4. Deposition of Officer Alvaro Lopez;
5. Deposition of Officer Kristoffer Ferguson;
6. Deposition of Sergeant Michael Pina.

**Opinions:**

1. **Mr. Dominguez had an alcohol use disorder (addiction) and used illicit drugs, specifically phencyclidine and methamphetamine.**

Mr. Dominguez' spouse (Jessica Dominguez) testified that between June of 2016 and May of 2017, Mr. Dominguez was not living with his family. Mr. Dominguez was living at Homes of a Loving Father, which is a sober living house for people seeking recovery from drug or alcohol abuse. Mrs. Dominguez testified that her husband entered that program because he felt like he needed help and he did not want to drink alcohol anymore. Mrs. Dominguez testified that she agreed that it made sense for him

2

to go into a sober living program so that he could have the tools that he needed to not drink.

In August of 2017, Mr. Dominguez left the sober living house and did not complete the program. Mrs. Dominguez has testified that she thinks her husband was asked to leave the program by the person in charge because her husband had left the house one evening when he was not supposed to. Mrs. Dominguez testified that after leaving the sober living program, her husband was drinking, and that he did not return home to live with his family. She also testified that she thought her husband might have been using illegal drugs during the time period after he left the sober living home. Mrs. Dominguez said the reason she thought he might have been using illegal drugs was that was the only reason why he did not come home to live with his family. He had never been away from his family for that long, and Mrs. Dominguez was trying to find programs and resources to help her husband.

When a person is not able to abstain from drinking alcohol, and they continue to drink even when it has had a significant and negative impact on their relationships with family, that means the person has a diagnosis of alcohol use disorder (alcohol addiction). The testimony indicates that when Mr. Dominguez left the sober living house, he was not receiving treatment for his addiction. People who suffer from untreated alcoholism are at high risk of abusing drugs, including illicit drugs.

A blood sample obtained from Mr. Dominguez at the time of his autopsy was analyzed for alcohol and other drugs. The results of the toxicology analysis demonstrated methamphetamine at a concentration of 1400 nanograms per milliliter (ng/mL). The metabolite (breakdown product) of methamphetamine, amphetamine, was also detected at 170 ng/mL. In addition, the drug phencyclidine was detected at a concentration of 150 ng/mL. No alcohol or other drugs were detected.

The results of the toxicology testing confirm the presence of methamphetamine and PCP in Mr. Dominguez' blood at the time of his death, which indicates that he had used both of these drugs at some time prior to his death. A baggie containing a large amount of methamphetamine (8.55 g) was found in his vehicle.

## 2. Phencyclidine use can cause significant and unpredictable effects on behavior.

Phencyclidine (PCP) is a powerful hallucinogenic drug, known by its street name of "angel dust." It is an illicit drug that is usually abused by smoking, but sometimes by ingesting, snorting, or intravenous injection. People who abuse PCP have described desired effects like euphoria, reduced inhibitions, a sense of strength and power, and an altered sense of time and space. Many adverse effects can occur with illicit PCP use including intense paranoia, panic reactions, hallucinations, and delirium (clouding of consciousness).

PCP intoxication can cause profound and unpredictable effects on a person's behavior. In a series of 1,000 people with PCP intoxication, some of the most commonly observed behaviors included violence, agitation, and bizarre actions. When a person is under the influence of PCP, they may experience delusions (false beliefs) that they have superpowers. Most cases of serious injury or fatalities from illicit PCP use occur from accidental and self-inflicted trauma from the behavioral effects of the drug, and the inability to perceive imminent danger.[1]

Most of the effects of PCP on behavior resolve within 24 hours after the drug is taken into the body. With high doses or chronic (repeated) abuse of PCP, some users can develop an acute psychosis that resembles schizophrenia resulting in delusions, hallucinations, and disorganized thought patterns. This can result in persistent violent, aggressive, or disorganized behavior that can last for several days.

In frequent users of PCP, and after overdoses, the drug can be detected in blood samples for several days after it is last used. The detection of PCP in blood confirms recent use of the drug, but the level of PCP in a blood sample does not have a strong correlation to behavioral abnormalities. A wide range of blood concentrations, from 5-300 ng/mL, have been reported among people showing abnormal behavioral effects after using PCP.

The interpretation of PCP levels in blood obtained after death is complicated by postmortem redistribution, which means that the level of the drug in the body can change after the time of death. PCP is a drug that can undergo postmortem redistribution. The amount of postmortem redistribution depends, in part, on the amount of time that has elapsed between death and the collection of the blood specimen. When postmortem redistribution occurs, this usually results in a measured level of PCP in the blood sample that is artificially higher than it was at the time of death.

In this matter, the postmortem blood specimen was collected from Mr. Dominguez approximately 62 hours (2.5 days) after he died. This is a long interval of time during which postmortem redistribution of PCP in the blood is likely to have occurred. For this reason, the PCP level measured in Mr. Dominguez' postmortem blood (150 ng/mL) is probably higher than it was at the time he died.

As postmortem redistribution is a complicated and poorly studied phenomenon in toxicology, there is no scientific method that can be used to estimate or extrapolate back to determine what the PCP concentration was in Mr. Dominguez' blood at the time of death. It is unknown when Mr. Dominguez last used PCP in relation to the time he died on September 15, 2017.

---

[1] Barceleaux D. Chapter 34: Phencyclidine and Phencyclidine Analogues. In Barceleaux D (editor): Medical Toxicology of Drug Abuse: Synthesized Chemicals and Psychoactive Plants, First Edition. John Wiley and Sons, 2012. Pages 608-632.

4

### 3.  Methamphetamine abuse causes behavioral abnormalities including impulsivity and impaired judgment.

Methamphetamine is a powerful and addictive brain stimulant that can result in profound and long-lasting effects on human behavior. It is an illicit drug that can be abused by snorting, smoking, or by intravenous injection. Methamphetamine doses of 40 mg or higher typically result in subjective effects including a sense of euphoria, wakefulness, strength and power, and difficulty concentrating. The euphoric effects of methamphetamine use usually diminish within six to 12 hours.

Over time, methamphetamine users develop tolerance to the effect of the drug, resulting in having to take a higher dose to get the desired effect. Methamphetamine abusers will often use the drug in binges, taking it multiple times over the course of a day. Long term users of methamphetamine frequently experience significant adverse effects including symptoms of anxiety, confusion, insomnia, mood disturbances, and violent behavior.[2] Heavy methamphetamine users can develop a psychosis similar to schizophrenia that can result in unpredictable and violent behavior. These psychotic symptoms can persist for months after person has stopped using methamphetamine.

Methamphetamine abuse results in significant impairment in the user's executive function. Executive function refers to a person's ability to think, plan, reason, and use good judgment. Clinical research has consistently shown that people who abuse methamphetamine demonstrate impulsive behaviors as a result of their impaired executive function. Impulsivity is a tendency of a person to act without thinking about the potential negative consequences of their action. The inability of a person to control their impulsive behaviors can result in an ongoing cycle of methamphetamine abuse. These impulsive behaviors often lead to significant medical, psychological, and social consequences to the methamphetamine user.

Although the acute stimulant effects of methamphetamine typically diminish and resolve within 12-24 hours, research has shown that the impairment of executive function, and more specifically, impulsive behaviors can persist for weeks to months after the person stops using the drug.[2,3]

Methamphetamine has a half-life of about 12 hours in the body, and in frequent users it can be detected in the blood for up to 2-3 days after it is last used. The detection of methamphetamine and its breakdown product, amphetamine, in a blood sample confirms use of the drug. In one study of methamphetamine abusers demonstrating signs of irrational behavior and violence, the blood methamphetamine concentrations ranged from 0.15 – 0.56 mg/L. In another study of blood samples from individuals

[2] NIDA. 2021, April 13. What are the long-term effects of methamphetamine misuse?. Retrieved from https://www.drugabuse.gov/publications/research-reports/methamphetamine/what-are-long-term-effects-methamphetamine-misuse on 2021, May 5

[3] Liu WL, et al.. Impulse Inhibition Ability with Methamphetamine Dependents Varies at Different Abstinence Stages. Frontiers in Psychiatry. Volume 12 (2021): 1-6.

involved in criminal activity, the average methamphetamine concentrations was 0.308 mg/L. In this matter, the level of methamphetamine that was detected in the postmortem blood from Mr. Dominguez was 1.4 mg/L (equivalent to 1400 ng/mL).

There are limited data on the interpretation of methamphetamine in postmortem blood. Similar to PCP, methamphetamine is a drug that can undergo postmortem redistribution. In this matter, the blood specimen was collected from Mr. Dominguez approximately 62 hours (2.5 days) after he died. This is a long interval of time during which postmortem redistribution of methamphetamine and amphetamine in the blood is likely to have occurred. For this reason, the level of methamphetamine and amphetamine in Mr. Dominguez' postmortem blood is probably artificially higher than it was at the time he died. There is no scientific method that can be used to estimate or extrapolate back to determine what the methamphetamine concentration was in Mr. Dominguez' blood at the time of death. It is unknown when Mr. Dominguez last used methamphetamine in relation to the time he died on September 15, 2017.

**4. The effects of these drugs increased the risk of impulsive behavior in Mr. Dominguez.**

When police officers attempted to apprehend Mr. Dominguez on September 15, 2017, Mr. Dominguez initially complied with the officers' commands to put his hands up. The officers testified that after a few seconds, Mr. Dominguez then brought both his hands down at the same time and leaned forward. He was then shot by one of the police officers.

The failure to comply with the commands of the apprehending police officers could be interpreted as an impulsive behavior. The risk of such an impulsive behavior would have been significantly increased by his use of methamphetamine. Any use of PCP on the date of the incident would have added to the risk of impulsive behavior.

The opinions in this report are all expressed with a reasonable degree of medical probability. If additional information becomes available, I reserve the right to add to or modify these opinions.

Sincerely,

*Daniel Sudakin, MD, MPH*

Daniel L. Sudakin, MD, MPH, FACMT, FAACT, FASAM

6

## **PROOF OF SERVICE**

CASE NAME:    DOMINGUEZ v. CITY OF SAN JOSE

CASE NO.:        5:18-cv-04826-BLF

I, the undersigned declare as follows:

I am over 18 years of age and not a party to this action.  My business address is 200 East Santa Clara Street, San Jose, California  95113-1905, and is located in the county where the service described below occurred.

On May 21, 202, I caused to be served the within:

**DEFENDANTS' DISCLOSURE OF EXPERT WITNESSES**

☒    by ELECTRONIC TRANSMISSION, with a copy of this declaration, to an electronic address listed below.

I further declare that the electronic transmission was sent on May 21, 2021, before 5:00 p.m., and that the City of San Jose, City Attorney's electronic address is CAO.Main@sanjoseca.gov.

The above-described transmission was reported as sent by a transmission report available for printing from the computer.

Addressed as follows:

John Kevin Crowley                              Attorneys Plaintiff, Jessica Dominguez
The Crowley Firm
125 South Market Street, Suite 1200
San Jose, CA 95113
Phone Number:  (408) 288-8100
Fax Number:  (408) 288-9409
Email: jkc@gedlaw.com
           mariela@gedlaw.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on May 21, 2021, at San Jose, California.

V. Burrow