1   NORA FRIMANN, City Attorney (93249)
    ARDELL JOHNSON, Assistant City Attorney (95340)
2   MAREN CLOUSE, Chief Deputy City Attorney (228726)
    KENDRA MCGEE-DAVIES, Sr. Deputy City Attorney (260459)
3   Office of the City Attorney
    200 East Santa Clara Street, 16th Floor
4   San José, California  95113-1905
    Telephone Number: (408) 535-1900
5   Facsimile Number:  (408) 998-3131
    E-Mail Address:  cao.main@sanjoseca.gov
6
    Attorneys for CITY OF SAN JOSE and OFFICER
7   MICHAEL PINA

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11  JESSICA DOMINGUEZ, INDIVIDUALLY        Case Number:  5:18-cv-04826-BLF
    AND AS GUARDIAN AD LITEM FOR
12  JACOB DOMINGUEZ, JORDAN                **REQUEST TO ADDRESS MATTERS
    DOMINGUEZ AND JALIYAH                  WITH THE COURT**
13  DOMINGUEZ,

14                     Plaintiffs,

15             v.

16  CITY OF SAN JOSE, SAN JOSE POLICE
    DEPARTMENT and DOE POLICE
17  OFFICERS 1, 2 AND 3, and DOES,
    inclusive,
18
                       Defendants.
19

20

21

22

23

24

25

26

27

28

1    Pursuant to the Court's instructions, Defendants hereby notify the Court of two

2    matters they would like to address with the Court before opening statements.

3    Plaintiffs' Animations

4    Plaintiffs have indicated their intent to use computer-rendered animations purporting

5    to depict the shooting at issue in this case. Plaintiffs have three sets of animations, one

6    purportedly depicting Officer Pina's account of the event; a second depicting the account

7    explained by Defendants' shooting reconstruction expert Rocky Edwards; and a third

8    depicting the account explained by Plaintiffs' ballistics expert Robert Balash. Each set of

9    animations depicts two views, one from a seeming birds' eye view and one from the view

10   of someone seated in the vehicle next to Mr. Dominguez. In addition, each set of

11   animations is rendered in multiple speeds, from real-time to 10 times slower. The

12   animations are available here:

13   https://www.dropbox.com/sh/opnz9eo53v62y0m/AABs00kqdQSkI_MHMbP7flD_a?dl=0[1]

14   Defendants ask that the animations be excluded because they do not accurately

15   reflect the testimony of any witness and do not meet the standards of Federal Rule of

16   Evidence 901; Plaintiffs disclosed no expert witness who could testify as to how the

17   animations were prepared or attest that they accurately depict, and do not distort, the

18   scene; and they are misleading and unfairly prejudicial under Federal Rule of Evidence

19   403.

20   To begin with, all the animations show Mr. Dominguez in positions that no one

21   testifies he was in. The animations showing the accounts of expert witnesses Mr. Edwards

22   and Mr. Balash show Mr. Dominguez with both arms and hands raised. Neither expert

23   testified about the position of either of Mr. Dominguez's hands, and both experts disclaim

24   any ability to determine anything about the position of Mr. Dominguez's right arm and

25   hand. The animations purporting to depict Officer Pina's account show Officer Pina

26   _____

27   [1]  This link includes three videos to which Defendants do not object because they are not

28   animations, but rather presentations of video evidence. (Two of the videos begin with the

     title "NVR_Sherlock," and the third is titled "Body Cams Combined."

shooting while Mr. Dominguez is leaning forward, whereas Officer Pina has testified (and will testify at trial) that he fired his rifle as Mr. Dominguez was sitting back up.

Further, the animations do not accurately depict Officer Pina's rifle and the equipment on it. In particular, the animations show a laser extending from Officer Pina's rifle to Mr. Dominguez. Officer Pina did not have a laser on his rifle. Nor do the animations accurately depict his use of the sighting optic on the rifle, as he has testified about. The impact of these omissions is especially glaring in the animations that purport to be from inside the car. Those animations show Officer Pina staring straight ahead, with his rifle lowered and not obstructing his face. The animations depict the incident in that way is contrary to the evidence.

Other details are obviously in error as well. For instance, the interior of Mr. Dominguez's vehicle is depicted as gray, whereas the photo evidence shows the interior upholstery, steering wheel, and door panels were black. That detail matters because Mr. Dominguez was wearing a black sweatshirt. Similarly, Plaintiffs' animations portray a silver strip along the lower edge of the cars' window frames. The photo evidence shows that was black. The position of the cars is also inconsistent with the photo evidence and other evidence gathered at the scene. The photos show the silver SUV much closer to the subject vehicle, and the hood and engine of the vehicle that officers are standing behind appears shorter in the animations than in scene photos.

Those errors raise concern about the apparent distortion of the perspective and dimensions of the scene. The animations from the birds' eye view show officers in close proximity to Mr. Dominguez. Indeed, all the heads of the figures depicting Officer Pina and Mr. Dominguez appear to be about the same size in the animations, even though they are at varying distances from the point of perspective. And in the animations from the perspective inside the car, both officers appear very close in the window. In short, it appears the creator of the videos exercised a great deal of artistic license.

"The critical issues regarding admission of demonstrative exhibits are whether the introducing party lays the proper foundation of fairness and accuracy of the depiction."

REQUEST TO ADDRESS MATTERS WITH THE COURT                    Case No. 5:18-cv-04826-BLF

*Atchison, Topeka & Santa Fe Ry. Co. v. Brown & Bryant, Inc.*, 2000 WL 36740982, at *1 (E.D. Cal. Aug. 15, 2000) (citing *United States v. Walema*, 1999 WL 728510, at *1 (9th Cir. 1999)). *See also Dahlberg v. MCT Transp., LLC*, 571 F. App'x 641, 647 (10th Cir. 2014) (foundation requires that "the proffered demonstrative exhibit fairly and accurately" represents the evidence). In the case of animations, courts expect that the party offering the animation will be able to explain that that the figures are accurately placed in an accurate model. *See, e.g.*, *United States v. Astarita*, 2018 U.S. Dist. LEXIS 97347, at *42 (D. Or. June 11, 2018). Animations are typically the product of expert testimony, with courts expecting that an expert can explain how the animations are prepared, including an explanation for how dimensions and relative positioning and distance are accurately rendered. *See, e.g.*, *Gomez v. Fachko*, 2021 U.S. Dist. LEXIS 215771, at *11-14 (N.D. Cal. Nov. 8, 2021) (excluding proffered animation where the individual who prepared it made inconsistent statements about the preparation process and did not provide the animation file); *Diaz v. Cty. of Ventura*, 2021 U.S. Dist. LEXIS 245752, at *6-8 (C.D. Cal. Nov. 22, 2021) (excluding animations where proponent "does not explain his methodology for determining the relative positioning of and distances between the figures at the scene"). Plaintiffs identified no expert in animations during discovery, and there is no such witness included on their trial witness list. There is no indication Plaintiffs have any witness who could say anything about the extent to which the videos accurately represent the dimensions and spatial lay-out of the scene, particularly from the perspectives chosen for the animations. Plaintiffs have no basis to show that the animations fairly and accurately portray the incident, or any account of it.

Inability to show accuracy of the animations aside, the animations should be excluded because they are misleading and unfairly prejudicial. That is particularly so because the animations portray what are effectively guesses about the position of Mr. Dominguez's head, arms, and hands. They are misleading, in a very graphic form, which has the potential to create in jurors' minds a readily accessible, but unsupported, image of what occurred in the incident. In addition, the two perspectives offered are not ones that

officers would have had during the incident and therefore distort the relevant inquiry: whether Officer Pina behaved reasonably under the circumstances confronting him. In particular, the animations from the perspective of someone seated in the car are unfairly prejudicial. They would put jurors in the perspective of having a figure (who is rendered to resemble Officer Pina) pointing a gun and shooting them. The animations from that view are designed to appeal to jurors' emotions. Meanwhile, the animations provide no actual evidence for jurors' benefit. The risk of misleading jurors and unfairly appealing to their emotions significantly outweighs the negligible probative value of the animations.

Questioning Regarding Officer Pina's Family

Defendants ask the Court to prohibit any questioning concerning Officer Pina's family. When he was interviewed following the shooting, Officer Pina told detectives: "I honestly thought that he [Jacob Dominguez] was – if his hands were coming up that he was going to shoot me or Kris Ferguson, who was standing right next to me. The whole – the whole day I'm thinking he's armed and dangerous and I – I have a family …." Defendants seek a ruling that, even if evidence of that statement or similar testimony from Officer Pina is elicited at trial, there be no further questions about Officer Pina's family. Officer Pina should not be posed, and should not have to answer, questions about the make-up of his family or which family members he was referring to in that statement. Such detail is not relevant to any issue in the case. Moreover, in light of the threats that have been made to Officer Pina as a result of the incident at issue, Officer Pina has a significant interest in keeping any further detail about his family confidential. Defendants do not object to introduction of Officer Pina's prior statement but ask the Court to prohibit any questioning seeking further evidence about his family.

Conduct of Public Attendees

Defendants are aware that supporters of Plaintiffs are broadly encouraging members of the public to attend jury selection and trial, including via social media posts. Defendants reiterate the concern that prospective jurors and jurors not be in contact with members of the public while waiting to enter the courthouse and moving around the

5

building. In addition, Defendants ask that members of the public be reminded that no photographs or recordings may be taken of any trial proceedings or participants.

Further, Defendants have asked that Plaintiffs' witnesses be excluded from the courtroom before they have testified, to which Plaintiffs have agreed. Defendants are concerned that a large number of attendees in the courtroom may make it difficult to ensure that no witnesses are also present. Defendants will be unable to recognize the bulk of Plaintiffs' witnesses, as they were not disclosed during discovery and not deposed. Defendants suggest the burden is on Plaintiffs to ensure that their witnesses are not present in the courtroom and ask that if it turns out a witness has heard other court proceedings, he or she should be excluded from testifying.

Respectfully submitted,

Dated:  August 17, 2022

NORA FRIMANN, City Attorney

By:   _/s/ Maren Clouse_
MAREN CLOUSE
Chief Deputy City Attorney

Attorneys for DEFENDANTS

REQUEST TO ADDRESS MATTERS WITH THE COURT                    Case No. 5:18-cv-04826-BLF

1949264