# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

JESSICA DOMINGUEZ, et al.,

             Plaintiffs,

     v.

CITY OF SAN JOSE, et al.,

             Defendants.

Case No.  18-cv-04826-BLF

**ORDER DENYING PLAINTIFFS' MOTION FOR A NEW TRIAL; GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES; DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW; AND DENYING DEFENDANTS' MOTION FOR A NEW TRIAL OR REMITTITUR**

[Re:  ECF Nos. 183, 179]

In the aftermath of an alleged armed robbery involving Plaintiff Jacob Dominguez, officers obtained a warrant for his arrest and sought his apprehension upon locating Mr. Dominguez on September 15, 2017.  While he was driving near Penitencia Creek Park in San Jose, California, three police vehicles pulled up and blocked Mr. Dominguez's vehicle's movement using a vehicle containment technique.  Officers emerged from the vehicles, took out firearms, and ordered Mr. Dominguez to raise his hands.  The confrontation, which lasted less than one minute, ended with Officer Michael Pina shooting and killing Mr. Dominguez as Mr. Dominguez sat in the driver's seat of his vehicle.  This suit, brought against Officer Pina, the City of San Jose, and the San Jose Police Department by Mr. Dominguez's wife (individually and as guardian ad litem for Mr. Dominguez and their three children) and the estate of Jacob Dominguez, alleges that Officer Pina violated Mr. Dominguez's and the family's constitutional and statutory rights when he shot and killed Mr. Dominguez.

1    Now before the Court are the parties' post-trial motions.  Plaintiffs filed a motion for a new

2    trial and a motion for attorneys' fees.  *See* ECF Nos. 183 ("PPTM"), 186 ("PPTM Reply").

3    Defendants oppose the motion.  ECF No. 185 ("PPTM Opp.").  Defendants filed a motion for

4    judgment as a matter of law and a motion for a new trial or remittitur.  *See* ECF Nos. 179

5    ("DPTM"), 184 ("DPTM Reply").  Plaintiffs oppose the motion.  *See* ECF No. 181 ("DPTM

6    Opp.").  The Court held a hearing on the motions on February 23, 2023.  The Court DENIES

7    Plaintiffs' motion for a new trial; GRANTS IN PART AND DENIES IN PART Plaintiffs' motion

8    for attorneys' fees; DENIES Defendants' motion for judgment as a matter of law; and DENIES

9    Defendants' motion for a new trial or remittitur.

10   ## I.    BACKGROUND

11   The facts are well known to the parties and the Court need not recite them in detail here.

12   *See* ECF No. 70 (Order Re Summary Judgment).  On August 19, 2022, trial began; it lasted for six

13   days.  *See* ECF Nos. 154, 155, 156, 163, 164, 166.  On August 31, 2022, the jury returned a

14   verdict after deliberating for three days.  *See* ECF Nos. 169, 171, 174 (trial logs); 188 (verdict

15   form).  The jury also returned a verdict on the special interrogatory.  *See* ECF No. 189.  The jury

16   found for Plaintiff the estate of Jacob Dominguez on the Fourth Amendment claim, but without

17   punitive damages.  *See* ECF No. 188.  And the jury found for Defendants on the Fourteenth

18   Amendment and Bane Act claims.  *Id.*  As for the special interrogatory, the jury answered "Yes"

19   to the following question: "Did decedent Jacob Dominguez drop his hands and lean forward

20   before Michael Pina fired his weapon?"  *See* ECF No. 189.

21   The Court entered Judgment on September 16, 2022.  ECF No. 178.  The parties then filed

22   the instant motions.  *See* PPTM; DPTM.  The Court held a hearing on the motions on February 23,

23   2023.  *See* ECF No. 191.

24   ## II.   PLAINTIFF'S MOTION FOR A NEW TRIAL

25   ### A.    Legal Standard

26   Under Federal Rule of Civil Procedure 59, a court "may, on motion, grant a new trial on all

27   or some of the issues."  Fed. R. Civ. P. 59(a).  A court may grant a new trial "if the verdict is

28   contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to

prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)).  A judge should only grant a new trial if she "is left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (quoting 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2806, at 48-49 (1973)).  The court is not required to view the trial evidence in the light most favorable to the verdict when it considers a Rule 59(a) motion. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).  Instead, "the district court can weigh the evidence and assess the credibility of the witnesses." *Id.* (citing *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010)).  "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Id.* (citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).

**B.    Analysis**

Plaintiffs request a new trial on their Fourteenth Amendment, Bane Act, and punitive damages claims.  *See* PPTM at 5-12.  Plaintiffs assert that the Court should grant a new trial because the jury was confused by the special interrogatory and the jury considered extrinsic evidence in reaching its decision.  *See id.*

The verdict form given to the jury had the following as the final question:

> TO ASSIST THE COURT
>
> Please answer Question 12 only if you answered "Yes" to Question 1, above.
>
> QUESTION 12: Did decedent Jacob Dominguez drop his hands and lean forward before Michael Pina fired his weapon?
>
> _____ YES  _____ NO

*See* ECF No. 188.  Over the course of its deliberations, the jury submitted several questions to the Court, three of which are relevant here.

> Note No. 5:
>
> Question:  The jury asks the Court for the purpose of Question 12 on the verdict form and what it means to "assist the court," as well as the consequences of our answer to this question.

3

Answer:  There are certain issues that the Court decides and other issues that the jury decides.  In deliberating on your verdict you should consider each question separately according to the instructions on the verdict form and only address Question 12 after you have completed the other questions.  You must consider the totality of the evidence in rendering your verdict.

Note No. 6:

Question:  Does answer "Yes" to Question 12 trigger legal action against Officer Pina?

Answer:  I am deleting Question 12 from your verdict form.  Please do not give that Question or any possible consequences of it further discussion or deliberation.  If it is necessary for you to answer Question 12 after you complete your deliberations on Questions 1-11, I will provide further instructions.

Note No. 7:

Question:  Will a "yes" answer to number #1 on the jury verdict form result in further legal actions against M. Pina?  Assuming no punitive damages.

Answer:  That is not an issue for the jury to consider.  Please only consider the evidence in combination with the jury instructions.

*See* Declaration of John Kevin Crowley in Support of Plaintiffs' Motion for a New Trial, ECF No. 183-3 ("Crowley NT Decl.") ¶¶ 2-4, Exs. 1-3.

Plaintiffs argue that the notes provided by the jury indicate that the special interrogatory improperly confused and misled the jury.  PPTM at 2, 5-9.  Plaintiffs further argue that the notes indicate that the special interrogatory caused the jury to improperly consider extrinsic evidence— the consequences of their verdict to Officer Pina.  *Id.* at 2, 9-12.  And, Plaintiffs argue, the fact that the jury was confused and considered extrinsic evidence is supported not only by the notes, but by the fact that the jury found for Plaintiff on the Fourth Amendment claim but found for Defendants as to the Fourteenth Amendment, Bane Act, and punitive damages claims.  *Id.* at 2, 8.

Federal Rule of Civil Procedure 49 allows the Court to require a jury to return a special verdict "in the form of a special written finding on each issue of fact."  Fed. R. Civ. P. 49(a)(1).  A Court may do so by "submitting written questions susceptible of a categorical or other brief answer."  Fed. R. Civ. P. 49(a)(1)(A).  "The decision '[w]hether to submit special interrogatories to the jury is a matter committed to the discretion of the district court.'"  *Ruvalcaba v. City of Los*

4

*Angeles*, 167 F.3d 514, 521 (9th Cir. 1999) (quoting *Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143, 1149 (9th Cir. 1996)).

The Court disagrees with Plaintiffs that the special interrogatory requires a new trial as to the Fourteenth Amendment, Bane Act, and punitive damages claims. The use of the special interrogatory was proper. *See* Fed. R. Civ. P. 49(a)(1). And neither the notes from the jury nor the substance of the verdict require the Court to find otherwise. In answering the jury's questions, the Court informed the jury that it should not consider the interrogatory before answering the other questions, and it went so far as to remove the special interrogatory after Note No. 6. *See* Crowley NT Decl., Exs. 1-2. The Court also correctly informed the jury that it should not consider the consequences to Officer Pina in reaching its verdict. *See id.*, Exs. 2-3. "[J]urors are presumed to follow the instructions given." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 545 n.12 (9th Cir. 1991) (citing *United States v. Escalante*, 637 F.2d 1197, 1202 (9th Cir. 1980)). The Court finds no reason to determine otherwise here. Therefore, the notes from the jury do not indicate that the special interrogatory improperly confused the jury.

And as to the substance of the verdict itself, the Court determines that the verdict is internally consistent and consistent with the evidence. The Fourteenth Amendment claim, Bane Act claim, and punitive damages claim all required a finding above and beyond what the Fourth Amendment claim required. The Fourth Amendment claim required excessive force. *See* ECF No. 188. The punitive damages claim associated with the Fourth Amendment claim required that the violation of Jacob Dominguez's Fourth Amendment right have been committed with "malice, oppression, or reckless disregard of his Constitutional right." *See id.* The Ninth Circuit has recognized that a Fourteenth Amendment claim "demands more" than a Fourth Amendment claim. *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056-57 (9th Cir. 2022) (holding Fourteenth Amendment plaintiff must show "not just that the officers' actions were objectively unreasonable and thus violated [decedent's] Fourth Amendment rights, but that the officers' actions 'shock[ed] the conscience' and thus violated the plaintiffs' Fourteenth Amendment rights"). And the Ninth Circuit has recognized that a Fourth Amendment violation is not a per se violation of the Bane Act. *See Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 519-20 (9th Cir. 2018). The verdict was

thus not internally inconsistent or incongruous, as asserted by Plaintiffs.  The verdict is therefore not a basis for the Court to determine that the jury was improperly influenced by the special interrogatory.

Plaintiffs also argue that the jury improperly considered extrinsic information or evidence. PPTM at 9-12.  But Plaintiffs cannot point to any extrinsic evidence that the jury considered in this case.  The special interrogatory was not extrinsic evidence.  And the fact that the jury discussed and thought about the consequences of its verdict as to Officer Pina is not the same as the jury considering outside evidence.  Further, as stated above, the jurors were presumed to have followed the Court's instruction not to consider the consequences to Officer Pina.  *See Alaska Airlines*, 948 F.2d at 545 n.12.  Because the jury did not obtain or consider any extrinsic evidence, Plaintiffs are not entitled to a new trial on this basis.

The Court DENIES Plaintiffs' motion for a new trial.

## III.    PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

### A.    Legal Standard

Pursuant to 42 U.S.C. § 1988, "in federal civil rights actions the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." *Barnard v. Theobald*, 721 F.3d 1069, 1076-77 (9th Cir. 2013) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983)).  "Congress passed § 1988 'to attract competent counsel to prosecute civil rights cases.'"  *Id.* (quoting *Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008)).  "Consequently, 'a court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception.'"  *Id.* (quoting *Mendez*, 540 F.3d at 1126).  At the same time, "the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (internal citations omitted).

"District courts must calculate awards for attorneys' fees using the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)); *see also Hensley*, 461 U.S. at 429.  "The lodestar figure is

United States District Court
Northern District of California

calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) (quoting *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988)). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.  Once calculated, the lodestar amount, which is presumptively reasonable, may be further adjusted based on other factors not already subsumed in the initial lodestar calculation. *Morales v. City of San Rafael*, 96 F.3d 359, 363-64, n.8-9 (9th Cir. 1996) (identifying factors) (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

### B.    Analysis

Plaintiffs bring a motion for attorneys' fees and costs.  *See* PPTM at 12-18.  They provide supporting documentation.  *See* Declaration of John Kevin Crowley in Support of Motion for Attorney Fees, ECF No. 183-1 ("Crowley Fee Decl."); Declaration of Nevin C. Brownfield in Support of Plaintiffs' Motion for Attorneys Fees and Costs, ECF No. 183-2 ("Brownfield Fee Decl."); Supplemental Declaration of Nevin C. Brownfield in Support of Plaintiffs' Motion for Attorneys' Fees and Costs, ECF No. 192 ("Brownfield Supp. Fee Decl.").

#### 1.  Prevailing Party

Plaintiffs assert that they are entitled to attorneys' fees because they are the prevailing party, as they prevailed on the Fourth Amendment excessive force claim.  PPTM at 12-14.

When counsel seeks fees for both successful and unsuccessful claims, the Ninth Circuit instructs district courts to follow a two-part analysis.  "First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901 (9th Cir. 1995) (quoting *Thorne v. City of El Segundo,* 802 F. 2d 1131, 1141 (9th Cir. 1986).  "Echoing the Supreme Court's description of related-claim cases, [the Ninth Circuit has] said that related claims involve a common core of facts *or* are based on related legal theories." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (emphasis in original).

United States District Court
Northern District of California

Where the Court finds that the claims are unrelated, "the final fee award may not include time expended on the unsuccessful claims." *Schwarz,* 73 F.3d at 901 (quoting *Thorne,* 802 F.2d at 1141). If, on the other hand, "the unsuccessful and successful claims are related . . . the court must apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive. Such decisions are within the district court's discretion." *Id.* (quoting *Thorne,* 802 F.2d at 1141).

The Fourth Amendment claim was related to the Fourteenth Amendment and Bane Act claims. All claims involved a common core of facts—the shooting of Jacob Dominguez by Officer Pina. No party argues otherwise. Further, the Court determines that Plaintiffs obtained an "excellent result," having prevailed on the Fourth Amendment claim. Again, no party argues otherwise. Plaintiffs are entitled to full compensation.

Defendants do argue that Plaintiffs are not the "prevailing party" for purposes of attorneys' fees because Defendants are entitled to judgment as a matter of law. PPTM Opp. at 9. But, for the reasons described below, the Court will deny Defendants' motion for judgment as a matter of law. Plaintiffs are therefore the prevailing party for purposes of Section 1988.

## 2. Amount of Fees

### a. Rates

Under § 1988, fees "'are to be calculated according to the prevailing market rates in the relevant community,' taking into consideration 'the experience, skill, and reputation of the attorney.'" *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (first quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984); then quoting *Schwarz*, 73 F.3d at 906). The fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Dang*, 422 F.3d at 814. "[T]he relevant community is the forum in which the district court sits," here the Northern District of California. *Camacho*, 523 F.3d at 979.

Plaintiffs' counsel request the following rates: $725/hour for Mr. Crowley, who has over

40 years of legal experience and normally charges $650/hour, *see* Crowley Fee Decl. ¶¶ 4, 13; $500/hour for Mr. Brownfield, who has about 20 years of legal experience and normally charges $350-500/hour, *see* Brownfield Decl. ¶¶ 4, 6-7; and $190/hour for Ms. Wagner, a paralegal who has over 25 years of experience, *see* Crowley Fee Decl. ¶ 11.

Plaintiffs submit a Declaration from Jaime A. Leaños, an experienced civil rights attorney licensed to practice in the Northern District of California, who states that he believes a rate of $725/hour is reasonable for Mr. Crowley.  *See* Crowley Fee Decl., Ex. 3 ("Leaños Decl.") ¶¶ 24-25.

Defendants dispute only the hourly rate for Mr. Crowley.  *See* PPTM Opp. at 9.  They assert that the Court should pay his customary rate of $650/hour, not the higher requested rate of $725/hour.  *Id.*  The Court agrees with Defendants, and it will grant Mr. Crowley his customary rate of $650/hour.

The Court notes that the rates are reasonable based on the prevailing rates in the Northern District.  *See, e.g.*, *Human Rights Def. Ctr. v. Cnty. of Napa*, 2021 WL 1176640, at *11 (N.D. Cal. Mar. 28, 2021) (approving hourly rates of $950 for an attorney with about 40 years of experience; $625 for an attorney with about 10 years of experience; $650 for an attorney with about 20 years of experience; and $260 and $350 for paralegals with 10 and 30 years of experience, respectively); *Californians for Disability Rights v. California Dep't of Transp.*, No. C 06-05125 SBA (MEJ), 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010) (finding $740, $640, $660, and $570 to be reasonable hourly rates for attorneys at Disability Rights Advocates with 26, 23, 19, and 10 years of experience, respectively); *Dixon v. City of Oakland*, No. C-12-05207 DMR, 2014 WL 6951260, at *7, *9 (N.D. Cal. Dec. 8, 2014) (approving hourly rates in an individual civil rights case of $725 and $695 for partners; $325, $350, and $400 for associates with 2, 3, and 5 years of experience; and $200 for paralegals); *A.D. v. State of California Highway Patrol*, No. C 07-5483 SI, 2013 WL 6199577, at *5-6 (N.D. Cal. Nov. 27, 2013) (approving hourly rates in a wrongful death case of $725 for attorneys with 34 to 40 years of experience and $425 for attorney with 9 years of experience); *Davis v. Prison Health Servs.*, No. C 09-2629 SI, 2012 WL 4462520, at *9-10 (N.D. Cal. Sept. 25, 2012) (approving hourly rates of $675-750 for attorneys with close to 30

9

years of experience and $180 for a paralegal with 25 years of experience); *Aguilar v. Zep Inc*., No.

13-cv-00563-WHO, 2014 WL 4063144, at *4 (N.D. Cal. Aug. 15, 2014) (approving hourly rates

in an employment case of $700 for a partner with 31 years of experience and $650 for an attorney

with 22 years of experience).

The Court approves rates of $650/hour for Mr. Crowley; $500/hour for Mr. Brownfield;

and $190/hour for Ms. Wagner.

b.   Hours

The Court next considers the hours expended.  The Court cannot "uncritically" accept the

Plaintiffs' representations of hours expended; rather, the Court must assess their reasonableness.

*Sealy, Inc. v. Easy Living, Inc*., 743 F.2d 1378, 1385 (9th Cir. 1984).  In making this

determination, the Court can reduce hours when documentation is inadequate, or when the

requested hours are redundant, excessive, or unnecessary.  *Hensley*, 461 U.S. at 433-34.

Plaintiffs seek fees for 618 hours for Mr. Crowley; 86.6 hours for Mr. Brownfield, and

85.5 hours for Ms. Wagner.  *See* Crowley Fee Decl. ¶¶ 11, 14, Exs. 1-2; Brownfield Fee Decl. ¶ 8.

Plaintiffs submit detailed time sheets for Mr. Crowley and Ms. Wagner.  *See* Crowley Fee Decl.,

Exs. 1-2.  Defendants do not contest that the hours spent by Mr. Crowley and Ms. Wagner are

reasonable.  *See* PPTM Opp.  The Court has reviewed the time sheets and finds that the hours

spent by Mr. Crowley and Ms. Wagner are reasonable.

Defendants do contest the hours for Mr. Brownfield.  PPTM Opp. at 9-10.  The original

declaration submitted by Mr. Brownfield stated that he spent 86.6 hours on the case, "which

consisted of attendance at each day of trial, concurrent daily trial preparation, review of daily trial

transcripts and preparation of written memoranda."  Brownfield Fee Decl. ¶ 8.  Defendants

asserted that Mr. Brownfield did not explain how much time he spent on which tasks or why those

tasks were necessary.  PPTM Opp. at 9-10.  The Court allowed Mr. Brownfield to submit a

supplemental declaration, which he did.  *See* Brownfield Supp. Fee Decl.  In the supplemental

declaration, Mr. Brownfield states that he spent 44.5 hours attending "proceedings in Court for

pre-trial conferences, jury selection, trial (including analysis and preparation of summations of

daily trial transcripts, witness examination outlines and strategizing with co-counsel) and post-trial

jury deliberations." *Id.* ¶ 2(A).  He spent the remaining 42.1 hours preparing, responding to, or editing various written motions and memoranda, including: "motions *in limine*; motion to amend the complaint; written discovery to defendant regarding net worth; jury instructions and verdict forms; pre-trial statement; administrative motion for introduction of demonstrative evidence; stipulations re: jurors; response to defendants' request for court order; motion for new trial; [and] motion for attorneys' fees." *Id.* ¶ 2(B).  In Reply, Defendants again assert that Mr. Brownfield has failed to justify that his work was reasonable.  ECF No. 193 ("D. Fee Reply") at 1-2.  Defendants object to the fact that Mr. Brownfield does not identify how much time he spent on specific activities, such as how long each task took, nor does he identify when he performed each task.  *Id.* at 2.  Defendants argue that they, and the Court, cannot determine whether the hours spent by Mr. Brownfield were reasonable.  *Id.*

The Court finds that the 44.5 hours spent by Mr. Brownfield in Court were reasonable.  It was reasonable for Plaintiffs to have two attorneys at trial, especially for a case of this magnitude. *See Custom Homes by Via LLC v. Bank of Oklahoma*, No. CV-12-01017-PHX-FJM, 2014 WL 2778822, at *2 (D. Ariz. June 19, 2014) (rejecting defendant's argument that the fees from second counsel's "attendance at trial were duplicative and excessive because he did not speak or enter an appearance" as "[i]t is not unreasonable to have a second counsel at trial").  The fact that Defendants had two attorneys at trial further supports that Mr. Brownfield's hours at trial were reasonable.  *See Wallis v. BNSF Ry. Co.*, No. C13-40 TSZ, 2014 WL 1648472, at *4 (W.D. Wash. Apr. 23, 2014) ("The Court finds the presence of two attorneys to be reasonably necessary, given the nature and complexity of the case, and, as Plaintiff notes, Defendant was represented by two attorneys throughout the trial as well.").  The 44.5 hours spent by Mr. Brownfield in Court were thus reasonable.

But the Court finds that a reduction of Mr. Brownfield's hours spent working on motions and other written documents is warranted.  As stated above, the Court can reduce hours where the documentation is inadequate.  *Hensley*, 461 U.S. at 433-34.  Contemporaneous billing records are preferred, but not required.  *Lexington Luminance LLC v. Feit Elec. Co.*, No. CV 18-10513-PSG (KSx), 2020 U.S. Dist. LEXIS 246266, at *17 (C.D. Cal. Oct. 20, 2020).  But "task descriptions

offered in support of a motion for attorneys fees can be so general and/or repetitive . . . that the Court cannot properly discern the nature of the work performed, *e.g.*, drafting, research, revising, editing, cite-checking, etc., or the reasonableness of the time expended on those tasks." *Id.* at \*17-18. In a case pointed to by Defendants, a district court determined time entries were too general where the attorney submitted one summary entry of 3.5 hours for an opening brief in support of a fee motion and one entry of 2.2 hours for the reply brief. *Id.* at \*16-18. Here, the entries are even more generalized, as Mr. Brownfield submits one summary entry for all motion practice in the case. In looking at the motions identified by Mr. Brownfield and the time records of Mr. Crowley, the Court determines that a 30% reduction in hours is appropriate. The Court will award 29.5 hours to Mr. Brownfield for his time spent on motions and other written memoranda, for a total of 74 hours for Mr. Brownfield.

The Court therefore approves 618 hours for Mr. Crowley; 74 hours for Mr. Brownfield, and 85.5 hours for Ms. Wagner.

### c. Lodestar Calculation

Based on the foregoing, the total lodestar calculation is summarized in the following table:

|  | Hourly Rate | Hours Requested | Hours Excluded | Hours Awarded | Total Tentatively Awarded |
|---|---|---|---|---|---|
| **Mr. Crowley** | $650 | 618 | 0 | 618 | $401,700.00 |
| **Mr. Brownfield** | $500 | 86.6 | 12.6 | 74 | $37,000.00 |
| **Ms. Wagner** | $190 | 85.5 | 0 | 85.5 | $16,245.00 |
|  |  |  |  | **Total** | $454,945.00 |

### 3. Multiplier

Plaintiffs seek a multiplier, but they do not specify a requested amount. PPTM at 17-18. The lodestar amount, while presumptively reasonable, may be adjusted based on other factors not already subsumed in the initial lodestar calculation. *Morales*, 96 F.3d at 363-64, n.8-9 (citing *Kerr*, 526 F.2d at 70). "The twelve *Kerr* factors bearing on the reasonableness are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to

perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Id.* at 363 n.8 (quoting *Kerr*, 526 F.2d at 70). "Under the lodestar approach, many of the *Kerr* factors have been subsumed as a matter of law." *Id.* (citing *Cunningham*, 879 F.2d at 487).

Mr. Crowley states in his declaration that the case was difficult and time-consuming. Crowley Fee Decl. ¶¶ 7-8. Plaintiffs also argue that the "undesirability" of the case was high, as evidenced by the fact that three other attorneys consulted by Plaintiffs before Mr. Crowley refused to take the case. PPTM at 18; Crowley Fee Decl. ¶ 6.

Defendants argue that a multiplier is improper. Fee Reply at 2-3. They argue that a multiplier is available only in "exceptional circumstances," and the fact that Plaintiffs' counsel took the case on contingency does not qualify as an exceptional circumstance. *Id.* at 2. They also assert that the fact that the case was time-consuming does not justify a multiplier, as that fact is reflected in the hours spent on the case, which in turn is reflected in the lodestar. *Id.* at 3.

The Court notes that the case was complex, but the time-consuming and difficult nature of the case has been subsumed into the lodestar calculation. But the Court finds that a modest multiplier is justified on the basis of undesirability, as Mr. Crowley was the fourth attorney consulted by Plaintiffs to take on this case. The Court finds that a multiplier of 1.2 is appropriate on balance, as reflected in the totals below:

| Attorneys | Total Tentatively Awarded | Multiplier | Total Awarded |
|---|---|---|---|
| **Mr. Crowley** | $401,700.00 | 1.2 | $482,040.00 |
| **Mr. Brownfield** | $37,000.00 | 1.2 | $44,400.00 |
| **Ms. Wagner** | $16,245.00 | 1.2 | $19,494.00 |

13

| | |
|---|---|
| Total | $545,924.00 |

### 4. Costs

Plaintiffs also request costs. *See* Crowley Fee Decl., Ex. 4. Section 1988 allows counsel to "recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986), *reh'g denied and opinion amended*, 808 F.2d 1373 (9th Cir. 1987)).

Defendants object to many of the specific line item costs on a variety of bases. *See* PPTM Opp. at 10-11; Declaration of Maren J. Clouse in Opposition to Plaintiffs' Motion for Attorneys' Fees, ECF No. 185-1 ("Clouse Fee Decl."). Defendants object to specific costs for the following reasons: (1) certain costs are non-recoverable expert fees; (2) certain costs are duplicative; and (3) certain costs are unnecessary. PPTM Opp. at 10-11.

####   a.  Undisputed

First, several costs are unopposed by Defendants. These costs, identified below, are GRANTED.

| Item | Cost |
|---|---|
| County process, SJPD | $80.00 |
| Filing Fee for US District Court Complaint | $400.00 |
| County Process, service on City of San Jose | $50.00 |
| County Process, service on SJPD | $30.00 |
| Atkinson & Baker, deposition of Officer Lopez | $776.75 |
| Salois & Associates, Exhibits A-E | $337.00 |
| Atkinson & Baker, deposition of Defendants' experts | $1651.38 |
| Check to Daniel L. Sudakin, M.D., Defendants' expert, deposition | $650.00 |
| Check to John Black, Defendants' expert, deposition | $480.00 |
| Salois & Associates, deposition transcript of Scott DeFoe | $345.00 |
| Salois & Associates, deposition of David Balash | $234.60 |
| Postage - delivered to District Court on 4/1/2022 | $8.02 |
| Atkinson & Baker, deposition of Rocky Edwards | $801.90 |
| County process, chambers copies | $133.00 |
| County process, chambers copies | $84.00 |
| Talty Court Reporters, transcriptions of police officer interviews | $1351.00 |
| Stamps.com, hard copies of interview transcripts to opposing counsel | $7.54 |
| Court reporter for trial | $3000.00 |
| County process, chambers copies | $86.80 |

| | |
|---|---|
| County process, chambers copies | $55.00 |
| Copyman, copies of exhibit binders | $4231.10 |
| Talty Court Reports, transcripts of BWC of officers | $2166.00 |
| Court reporter for trial | $7082.80 |
| County process, served supoena on Officer Lopez and witness fee | $317.50 |
| County process, served supoena on Officer Ferguson | $405.00 |
| | |
| **Total Granted** | **$24,764.39** |

b.  Expert Fees

Defendants object to certain identified costs as being unrecoverable expert fees.  PPTM Opp. at 10.  Plaintiffs concede that expert fees are not recoverable.  PPTM Reply at 9.  And the Court agrees.  *See* 42 U.S.C. § 1988(c).

But Plaintiffs dispute that certain costs identified by Defendants as expert fees are actually expert fees.  PPTM Reply at 9.  Specifically, Plaintiffs assert that costs related to the creation of the replica Kia car are properly recoverable as litigation costs.  *Id.* at 9.  Plaintiffs argue that, while an expert witness did use the mockup vehicle during testimony, it could have been introduced as a demonstrative exhibit and was not tied to the expert witness.  *Id.*  The Court agrees with Plaintiffs that costs related to the replica Kia were not "expert fees."  The Court will grant these costs.  The Court will also grant the two costs from Dietz Associates, as they are related to fact discovery and are not expert fees.  The Court's ruling on the costs objected to as expert fees are as follows:

| Item | Cost | Ruling |
|---|---|---|
| UPS letter and check to expert Defoe | $43.66 | DENY |
| Next delivery sent to expert | $43.66 | DENY |
| Check to expert Allman | $1,875.00 | DENY |
| UPS to expert David Balash | $37.47 | DENY |
| Allman & Petersen Economics | $750.00 | DENY |
| On-scene consulting expert | $2,625.00 | DENY |
| Salois & Associates, deposition of Phil Allman | $205.00 | DENY |
| On-scene consulting | $8,375.00 | DENY |
| Hyatt hotel for expert David Balash | $137.14 | DENY |
| Flight for expert David Balash | $639.40 | DENY |
| Dietz Associates, Inc., DMW VIN Registration search | $150.00 | GRANT |
| Dietz Associates, intent to contact registered owner of vehicle | $222.76 | GRANT |
| Salois & Associates, deposition of Alan Barbour | $205 | DENY |
| Check to Michael Skrzypek, expert | $5,000.00 | DENY |

United States District Court
Northern District of California

15

| | | |
|---|---|---|
| Check to David Balash on 5/21/2021 | $3,500.00 | DENY |
| Sent expert fee to David Balash on 5/21/2021 | $55.29 | DENY |
| Allman & Petersen Economics | $937.50 | DENY |
| Check to Steve Marshall | $2,200.00 | GRANT |
| IMS Consulting & Expert Services | $15,000.00 | DENY |
| A1 Auto Wreckers | $1,476.63 | GRANT |
| IMS Consulting & Expert Services | $10,372.75 | DENY |
| UPS, delivery of deposition transcripts to Barbour | $43.86 | DENY |
| Round trip for David Balash | $1,547.20 | DENY |
| Signia Hotel for expert David Balash | $650.73 | DENY |
| Signia Hotel for expert Philip Allman | $332.82 | DENY |
| Signia Hotel for expert Alan Barbour | $487.11 | DENY |
| Steven Marshall re: Car for Trial | $5,065.68 | GRANT |
| Signia Hotel, parking for Alan Barbour | $26.00 | DENY |
| Phillip Allman, expert trial prep and testimony | $2,687.50 | DENY |
| Emporium Logistics Co. | $3,375.00 | DENY |
| Michael Skrzypek | $3,932.95 | DENY |
| Alan Barbour, expert services for trial | $2,787.00 | DENY |
| On-scene consulting, DeFoe | $8,270.11 | DENY |
| David Balash, expert, trial fees | $8,594.00 | DENY |
| | | |
| **Total Granted** | $9,115.07 | |

c.   Duplicative Costs

Defendants identify two duplicative costs in Plaintiffs' submission: (1) $1,651.38 to Atkinson & Baker for deposition of Defendants' experts and (2) $650 for a check to Defendants' expert Daniel Sudakin for deposition.  PPTM Opp. at 10.  Each is listed twice in the submission. The Court agrees that these costs are duplicative.  The Court will DENY the duplicative costs. The Court included each cost only once in the above table for Undisputed Costs.

d.   Unnecessary Costs

Finally, Defendants object to several costs as unnecessary.  PPTM Opp. at 10-11. Plaintiffs counter that these costs could have been charged to a client and that Defendants "attempt[] to interject opinion as to the propriety of these costs."  PPTM Reply at 9.

First, Defendants argue that two costs related to Sheila Franco, Mr. Dominguez's girlfriend at the time of his death, were unnecessary because information about Ms. Franco would not have been helpful to Plaintiffs in this case.  PPTM Opp. at 10-11.  These costs were (1) $874.85 on

criminal court documents and (2) $389.80 to a detective service. *Id.* Second, Defendants argue that a cost of $1,587.48 for a video of the family was unnecessary, as they objected to the video as hearsay and the Court did not allow it. *Id.* at 11. Third, Defendants object to a $50 cost for service on Melissa A. Dupee, arguing that her name was not identified in any disclosures or witness list, and there is no indication of what she was served with or why. *Id.* Fourth, Defendants object to costs totaling $2,461.62 for hotel and flights for a witness named Albert Chavez because Plaintiffs never called the witness. *Id.* Fifth, Defendants object to a $1,100 cost for an investigator tasked to interview jurors after the verdict, arguing that they were unnecessary because the Court indicated it would not consider juror statements in post-trial motions. *Id.* And finally, Defendants object to a $75 cost for personal delivery of a demand letter to the San Jose City Attorney, arguing that personal delivery was not necessary. *Id.* The Court rules as follows on these costs:

| Item | Cost | Ruling |
|------|------|--------|
| DetectiveInc, info on Sheila Franco | $874.85 | GRANT |
| Detective Inc | $369.80 | GRANT |
| Check to Gina Favorito (video of family) | $1,587.48 | DENY |
| County process, service on Melissa A. Dupee | $50.00 | GRANT, Ms. Dupee is a county lab tech |
| Signia Hotel for witness Albert Chavez Jr. | $742.21 | DENY |
| Flight for witness Albert Chavez | $977.20 | DENY |
| Signia Hotel for expert Albert Chavez | $742.21 | DENY |
| Dietz Associates, interview of jurors | $1,100.00 | DENY |
| County process, personal delivery of demand letter to City Atty | $75.00 | GRANT |
| | | |
| **Total Granted** | $1,369.65 | |

    e.   Conclusion

The total costs granted by the Court are as follows:

| Table | Amount |
|-------|--------|
| Table 1 | $24,764.39 |
| Table 2 | $9,115.07 |
| Table 3 | $1,369.65 |
| | |
| **Total** | $35,249.11 |

United States District Court
Northern District of California

### 5. Conclusion

The Court GRANTS a total of $545,924.00 in attorneys' fees and $35,249.11 in costs to Plaintiffs.

## IV. DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. Legal Standard

A district court may grant a motion for judgment as a matter of law pursuant to Rule 50(a) or (b) "when the evidence presented at trial permits only one reasonable conclusion," *i.e.*, "if no reasonable juror could find in the non-moving party's favor." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 (9th Cir. 2008) (first quoting *Santos v. Gates*, 287 F.3d 846, 851 (9th Cir. 2002); then quoting *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1072 (9th Cir. 2005)); *see also* Fed. R. Civ. P. 50(a)-(b). "The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party. If conflicting inferences may be drawn from the facts, the case must go to the jury." *Torres*, 548 F.3d at 1205-06 (quoting *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000)). "A jury's inability to reach a verdict does not necessarily preclude a judgment as a matter of law." *Headwaters Forest Def. v. Cnty. of Humboldt*, 240 F.3d 1185, 1197 (9th Cir. 2000), *vacated on other grounds*, 534 U.S. 801 (2001). The same standard applies to a motion for judgment as a matter of law made after a mistrial because of jury deadlock. *See id.* at 1197 n.4.

### B. Analysis

Defendants argue for judgment as a matter of law on the basis that Officer Pina is entitled to qualified immunity. *See* DPTM at 8-18. "In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021). Defendants contest both prongs. DPTM at 8-18. The Court will address each in turn.

But first, because some of Defendants' argument in support of its motion is based on the answer to the special interrogatory, the Court will first address Plaintiffs' argument that use of the special interrogatory was improper. DPTM Opp. at 21-23. Plaintiffs argue that the special

interrogatory should be "disregarded in the Court's qualified immunity analysis." *Id.* at 23.  In opposition to Defendants' post-trial motion, Plaintiffs' reiterate the arguments made in their motion for a new trial that the special interrogatory confused the jury and caused the jury to improperly consider the consequences of its verdict to Officer Pina.  *Id.* at 22.  For the reasons discussed above, the Court declines to disregard the special interrogatory on that basis.  Plaintiffs also argue that the special interrogatory was "incomplete and indefinite," as it did not track the law on the use of force, and the answer to the special interrogatory is not sufficient to grant qualified immunity.  *Id.* at 21-23.  But these are not reasons to disregard the special interrogatory; rather, they are arguments as to why the Court should not grant qualified immunity regardless of the jury's answer to the special interrogatory.  The Court determines that the special interrogatory was not improper.  But the Court will consider Plaintiffs' arguments about the limitations of the special interrogatory in determining whether to grant judgment as a matter of law.

### 1.  Step One

Defendants argue that the Court should determine that Officer Pina did not use excessive force as a matter of law.  DTPM at 9-14.  Analysis of the reasonableness of force under the Fourth Amendment involves a totality of the circumstances inquiry.  Courts first consider the governmental interests at stake, such as "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  On the other side, courts also consider the plaintiff's interests by looking to the "type and amount of force inflicted" and "the severity of injuries" experienced by the plaintiff.  *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018).  "[B]ecause questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury." *Tan Lam v. City of Los Banos*, 976 F.3d 986, 997 (9th Cir. 2020) (quoting *Barnard v. Theobald*, 721 F.3d 1069, 1076 (9th Cir. 2013)).

Here, the jury determined, based on the evidence presented at trial, that Officer Pina used excessive force when he shot Jacob Dominguez.  ECF No. 188.  To grant judgment as a matter of

law, the Court would need to determine that no reasonable juror could find that Officer Pina used

excessive force.  And that is not the case.  The jury instructions on excessive force stated that the

jury could "consider all of the circumstances known to the officer on the scene," which included:

> (1) the nature of the crime or other circumstances known to the officer
> at the time force was applied;
> (2) whether Jacob Dominguez posed an immediate threat to the safety
> of the officers or to others;
> (3) whether Jacob Dominguez was actively resisting detention or
> arrest, or attempting to evade arrest by flight;
> (4) the amount of time the officer had to determine the type and
> amount of force that reasonably appeared necessary, and any
> changing circumstances during that period;
> (5) the type and amount of force used;
> (6) the availability of alternative methods to take Jacob Dominguez
> into custody;
> (7) the number of lives at risk (motorists, pedestrians, police officers)
> and the parties' relative culpability: i.e., which party created the
> dangerous situation, and which party is more innocent;
> (8) whether it was practical for the officer to give warning of the
> imminent use of force, and whether such warning was given;
> (9) whether a reasonable officer would have or should have
> accurately perceived a mistaken fact; and
> (10)   whether there was probable cause for a reasonable officer to
> believe that the suspect had committed a crime involving the
> infliction or threatened infliction of serious physical harm.

ECF No. 170 at 26-27.

The jury heard six days of evidence.  Because the jury found for Plaintiff the estate of

Jacob Dominguez on the Fourth Amendment claim, the Court views the evidence in the light most

favorable to Plaintiff in deciding the motion for judgment as a matter of law.  Defendants make

much of the fact that the jury did not grant punitive damages and that the jury found for

Defendants on the Fourteenth Amendment and Bane Act claims, arguing that such a verdict means

the jury must have credited Defendants' version of events.  DPTM at 6-8.  But, as discussed

above, punitive damages, the Fourteenth Amendment claim, and the Bane Act claim all require a

higher showing than the Fourth Amendment claim.  The Court "must search for a reasonable way

to read the verdicts as expressing a coherent view of the case." *El-Hakem*, 415 F.3d at 1073

(quoting *Toner ex rel. Toner v. Lederle Labs.*, 828 F.2d 510, 512 (9th Cir. 1987)).  The Court can

easily do so here.  Therefore, contrary to Defendants' argument, the fact that the jury did not grant

punitive damages and found for Defendants on the Fourteenth Amendment and Bane Act claims

1    does not mean the jury completely credited Defendants' version of events.  *See* DPTM at 6-8.  The

2    Court will thus view the evidence in the light most favorable to the Plaintiffs, as it is required to

3    do.  *See Torres*, 548 F.3d at 1205-06.

4         The Court will first provide a bit of background.  There had been an armed robbery of an

5    Arco gas station in San Jose.  On September 15, 2017, Officer Szemeredi held a briefing on the

6    armed robbery case.  Vol. II at 402:4-9. [1]  Officers were informed that a detective had obtained an

7    arrest warrant for Mr. Dominguez.  *Id.* at 402:22-403:10.  Officer Pina stated that, at the briefing,

8    he was informed that the firearm from the armed robbery was still outstanding and that a

9    confidential informant stated that Mr. Dominguez was armed with a revolver.  *Id.* at 403:3-10.

10        Officers surveilled Mr. Dominguez, and they were eventually able to stop his vehicle using

11   a vehicle containment strategy.  *See* Vol. II at 414:9-415:1.  Officer Pina ordered that Mr.

12   Dominguez put his hands up, which Mr. Dominguez eventually did.  *Id.* at 416:6-22.  Officer Pina

13   testified that Mr. Dominguez had his hands with his "thumbs a little over the shoulders, between

14   the ears at the shoulders." *Id.* at 419:8-9.  Officer Ferguson, another officer on the scene, testified

15   that Mr. Dominguez had his hands up after his vehicle was stopped, and there was nothing in his

16   hands.  Vol. I at 147:4-10.  Officer Lopez, another officer on the scene, also testified that, after

17   being stopped, Mr. Dominguez put both hands up, and he did not have any weapons in his hands.

18   Vol. II at 256:20-25, 258:9-10.  Officer Pina testified at trial that Mr. Dominguez then "quickly

19   dropped his hands and moved forward," and Officer Pina thought he was reaching for a weapon.

20   *Id.* at 420:23-421:17.  Officer Pina testified at trial that Mr. Dominguez then quickly started to

21   come back upright, and Officer Pina made the decision to shoot.  *Id.* at 423:4-19.

22        The jury also heard evidence that, in an investigation just after the shooting, Officer Pina

23   stated that Mr. Dominguez "just looks at me, leans back with his hands, looks back at me, and

24   then I fire my weapon."  Vol. II at 364:15-25.  This would appear to contradict the testimony of

25   Officer Pina at trial.  The jury heard evidence that there was no weapon inside of the car.  Vol. III

26   at 594:17-20.  The jury could infer that it would not make sense for Mr. Dominguez to reach

27

28   ─────────────────────
[1] The citations refer to the Volumes of the trial transcript.  *See* ECF Nos. 158 (Vol. I), 159 (Vol.
II), 160 (Vol. III).

United States District Court
Northern District of California

down, looking like he was reaching for a weapon, if there was no weapon in the car. *See Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014). The jury heard evidence that Officers Ferguson and Lopez, both of whom were on the scene, did not shoot at Mr. Dominguez. Vol. II at 237:3-5, 22-23; 267:25-268:1.

The jury heard testimony from Plaintiffs' expert on ballistics, David Balash. He testified that the bullets were fired about 0.33 seconds apart. Vol. III at 503:19-504:2. Balash testified that, based on the location of the bullet hole in Mr. Dominguez's sweatshirt, Mr. Dominguez's left arm had to be above "the metal part of the door," meaning above the windowsill, when it was hit by the second bullet. *Id.* at 509:18-510:2. Balash testified that the left arm had to have been "up and above the frame of the driver's side door" when hit by the second bullet. *Id.* at 524:11-16. He testified that, based on the bullet hole in the sweatshirt, if Mr. Dominguez's hands had been down when the bullet was shot, the bullet would have had to have gone through the driver's side door, which it did not. *Id.* at 521:22-522:3. The jury could have credited this evidence, determining that Mr. Dominguez's hands were up when he was shot.

The jury also heard evidence as to the propriety of Officer Pina's actions prior to shooting. Plaintiffs presented an expert witness on police practices, Scott Defoe. Defoe testified that the weapon used to kill Mr. Dominguez—an M4 Colt assault rifle—contains a sighting mechanism that allows the officer to use it from 25 yards away from a suspect. Vol. III at 575:17-24. He also testified that the weapon system should have been used in a 45-degree angle instead of "up on target," so that Officer Pina could have seen what Mr. Dominguez was doing. *Id.* at 576:3-12. He stated that Officer Pina should not have stood "adjacent from 10 to 12 feet away" from Mr. Dominguez because such a location did not provide cover, and Officer Pina would have wanted to get cover and to "create some time and distance." *Id.* at 576:13-577:21, 579:19-21. Defoe testified that if Officer Pina "reasonably believed that someone is armed with a gun, he wouldn't stand outside that individual's window." *Id.* at 593:22-23. Defoe noted that there were seven to nine additional officers responding, as well as a K9 team. *Id.* at 576:23-24. Defoe testified that, even if Mr. Dominguez had dropped his hands, it still would not necessarily have been reasonable for Officer Pina to shoot Mr. Dominguez, noting that "people drop their hands all the time during

United States District Court
Northern District of California

vehicle stops." *Id.* at 597:17-23, 598:1.  Defoe testified that no one had seen Mr. Dominguez with a gun, including at the robbery three days prior.  *Id.* at 621:2-9.

There was also testimony on this issue from the other officers.  Officer Ferguson, who was on the scene, testified that the goal of the containment is to slow things down.  Vol. I at 148:5-8.  He also testified that "standing in open air, 10 feet perpendicular from a suspect [an officer] believe[s] has a gun," is not what the officers were trained to do.  Vol. I at 148:18-22.  Officer Lopez testified that, at the briefing session prior to the containment strategy being carried out, there was no evidence that any police officer had actually seen Mr. Dominguez possess a weapon.  Vol. II at 245:25-246:3.

This evidence, along with other evidence presented during the trial, was sufficient for a reasonable juror to determine that Officer Pina used excessive force.  The Court cannot say that, based on the evidence presented at trial, no reasonable juror would have found for Plaintiff on the Fourth Amendment claim.  The Court therefore will not grant judgment as a matter of law on this claim.  The Court next turns to step two of the qualified immunity analysis.

### 2.  Step Two

Under the second step of the qualified immunity analysis, the Court must "consider whether the law was clearly established at the time of the challenged conduct." *Felarca*, 891 F.3d at 816 (citing *Sjurset v. Button*, 810 F.3d 609, 615 (9th Cir. 2015)).  The Supreme Court recently reiterated the longstanding principle that "the clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019).  Defining the right at too high a level of generality "avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).  "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff*, 572 U.S. at 778-79.  There can, however, be "the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1164 (9th Cir.

United States District Court
Northern District of California

23

1   2020) (quoting *Wesby*, 138 S. Ct. at 590).  Defendants argue that it was not clearly established that

2   Officer Pina could not use lethal force under the circumstances presented in this case.  DPTM at

3   15-18.

4   "Because the jury found for [Plaintiff] on the[] excessive force claim[], we 'construe the

5   trial evidence in the light most favorable to [Plaintiff] in determining whether [his] rights were

6   clearly established.'" *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 794 (9th Cir. 2018)

7   (quoting *Morales v. Fry*, 873 F.3d 817, 826 (9th Cir. 2017)).  The Court will "analyze the clearly-

8   established prong of [its] qualified immunity inquiry by 'considering the jury's factual findings in

9   the special interrogatories and construing the evidence regarding the remaining factual disputes

10  most favorably to'" Plaintiff, because the jury returned a verdict in his favor on the Fourth

11  Amendment claim.  *Tan Lam*, 976 F.3d at 1000 (quoting *Jones v. Treubig*, 963 F.3d 214, 228 (2d

12  Cir. 2020)).

13  Just last year, the Ninth Circuit decided *Peck v. Montoya*, 51 F.4th 877 (9th Cir. 2022).

14  While *Peck* was decided after the events that occurred in our case, the Ninth Circuit's analysis of

15  what was clearly established at the time of the incident at issue in *Peck* is helpful.  In *Peck*, the

16  Ninth Circuit was addressing qualified immunity on summary judgment in the case of a police

17  shooting of an unarmed individual.  *Id.*  The Ninth Circuit determined that the officers who shot

18  the decedent were not entitled to qualified immunity because, viewing the evidence in the light

19  most favorable to the plaintiff, the plaintiff "was unarmed and not about to arm himself." *Id.* at

20  888.  The court recognized that, in light of its previous cases, "officers may not kill suspects

21  simply because they are behaving erratically, nor may they 'kill suspects who do not pose an

22  immediate threat to their safety or to the safety of others simply because they are armed.'" *Id.* at

23  887-88 (quoting *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997)) (citing *Estate of Lopez

24  v. Gelhaus*, 871 F.3d 998, 1011-12 (9th Cir. 2917); *George v. Morris*, 736 F.3d 829, 838 (9th Cir.

25  2013); *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991)).  The

26  Ninth Circuit explained that it has "repeatedly distinguished between a suspect who is actively

27  reaching for a weapon and a suspect who is armed but not reaching for a weapon." *Id.* at 888.  It

28  further recognized that "the Fourth Amendment does not necessarily 'require[] officers to delay

24

their fire until a suspect turns his weapon on them,' and '[i]f the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat.'" *Id.* (quoting *George*, 736 F.3d at 838). "But where . . . a jury could find that no such movement occurred, [the Ninth Circuit's] cases would clearly establish that the use of deadly force would be impermissible." *Id.* (citing *George*, 736 F.3d at 838; *Curnow*, 952 F.2d at 325; *Cruz*, 765 F.3d at 1079).

The court in *Peck* looked to *Cruz v. City of Anaheim*, which Defendants rely on here. *See* 765 F.3d 1076 (9th Cir. 2014). In that case, officers confronted a suspected gang member during a traffic stop, believing he was armed. *Id.* at 1077-78. The Ninth Circuit affirmed the district court's denial of qualified immunity based on a dispute of fact as to whether the plaintiff was reaching for his waistband at the time he was shot. *Id.* at 1078. The court stated that "[i]t would be unquestionably reasonable for police to shoot a suspect in Cruz's position if he reaches for a gun in his waistband, or even if he reaches there for some other reason," especially "[g]iven Cruz's dangerous and erratic behavior up to that point." *Id.* But the court went on to say that "[c]onversely, if the suspect *doesn't* reach for his waistband or make some similar threatening gesture, it would clearly be unreasonable for the officers to shoot him after he stopped his vehicle and opened the door." *Id.* at 1078-79 (emphasis in original).

Defendants argue that Officer Pina is entitled to qualified immunity because "the undisputed evidence and the jury's verdict and findings" establish the facts as follows:

> Officer Pina had reason to believe Mr. Dominguez was armed with a gun when he attempted to take him into custody on September 15, 2017; when officers contained Mr. Dominguez's vehicle, he initially tried to drive away, then reluctantly put his hands up after repeated commands by officers; Officer Pina warned Mr. Dominguez he would be shot if he moved; Mr. Dominguez, still in the driver's seat, dropped his hands and leaned forward; Officer Pina then fired two shots, the first of which struck and killed Mr. Dominguez; from the time officers attempted to contain Mr. Dominguez's vehicle to the time of the shooting, less than 20 seconds elapsed.

DPTM at 17. But the Court disagrees, considering the jury's factual finding in the special interrogatory and construing the evidence regarding the remaining factual disputes most favorably to Mr. Dominguez.

United States District Court
Northern District of California

1    The special interrogatory asked, "Did decedent Jacob Dominguez drop his hands and lean

2    forward before Michael Pina fired his weapon?"  ECF No. 188.  And the jury answered, "Yes."

3    *Id.*  "Answers to special interrogatories do not present a square conflict with the general verdict

4    where such answers do not exhaust all of the possible grounds on which the finding implicit in the

5    general verdict may have been based."  *United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 407 (9th

6    Cir. 1964) (citing *Arnold v. Panhandle & Santa Fe Ry. Co.*, 353 U.S. 360, 361 (1956)).  And a

7    Court must reconcile the jury's answers when possible.  *See Sanchez v. Jiles*, No. CV 10-09384

8    MMM (OPx), 2013 WL 12242221, at *9 n.26 (C.D. Cal. Sept. 12, 2013) (collecting cases).  The

9    special interrogatory does not create a conflict with the general verdict finding that Officer Pina

10   used excessive force.  The Court can easily reconcile the verdict and special interrogatory.

11   The Court determines that Officer Pina is not entitled to qualified immunity because,

12   considering the answer to the special interrogatory and viewing the evidence in the light most

13   favorable to Mr. Dominguez, the facts do not establish that Mr. Dominguez posed an immediate

14   threat to the safety of Officer Pina.  *See Sanchez*, 2013 WL 12242221, at *10 ("The court

15   concludes, therefore, that the jury's responses to the special interrogatories do not establish

16   beyond question that [Defendant] is entitled to qualified immunity.").  The special interrogatory

17   does not specify how far Mr. Dominguez's hands dropped, or whether he dropped them both at the

18   same time.  Nor does the question establish how far Mr. Dominguez leaned over.  It is possible

19   that Mr. Dominguez had dropped his hands only slightly, such that they were still in view of the

20   officers.  Further, the question does not specify whether Mr. Dominguez had sat back up or

21   brought his arms back up before Officer Pina fired.  The Court determines that a reasonable jury

22   could have found that, in dropping his hands, Mr. Dominguez was "behaving erratically," and that

23   the drop of the hands did not constitute "a furtive movement [or] harrowing gesture."  *See Peck*,

24   51 F.4th at 887-88.

25   And there is substantial evidence, summarized above, that Mr. Dominguez did not appear

26   to be reaching for a weapon at the time he was shot.  The ballistics expert presented evidence that

27   Mr. Dominguez's left arm was up above the windowsill when hit by the second bullet.  There was

28   evidence that, in the investigation immediately after the shooting, Officer Pina stated that Mr.

United States District Court
Northern District of California

1    Dominguez leaned back immediately prior to being shot.  And there was evidence that the other

2    officers on the scene did not shoot Mr. Dominguez.  Additionally, Plaintiffs' expert opined that

3    Officer Pina's view was diminished because he was only looking at Mr. Dominguez directly

4    through the sighting mechanism of his weapon, which restricted Officer Pina's ability to see what

5    Mr. Dominguez was doing.  The jury heard testimony that Mr. Dominguez was not armed, which

6    the Ninth Circuit has stated could be interpreted by a reasonable jury to question an officer's

7    testimony that a plaintiff made an action looking like he was reaching for a weapon.  *Cruz*, 765

8    F.3d at 1079.  There was of course no testimony from Mr. Dominguez that he did not look like he

9    was reaching for a weapon, but the jury could have relied on the other evidence provided by

10   Plaintiffs and chosen not to credit the testimony of Officer Pina.  There was also evidence that Mr.

11   Dominguez's vehicle had been successfully contained by the vehicle containment strategy and that

12   there were several officers on the scene.   This evidence further supports a jury finding that Mr.

13   Dominguez was "behaving erratically," but not appearing to be reaching for a weapon, and that

14   Mr. Dominguez did not pose an immediate threat to officer safety.

15          The Court therefore determines that, viewing the evidence in the light most favorable to

16   the Plaintiff and consistent with the jury's verdict and answer to the special interrogatory, a

17   reasonable jury could have found that Mr. Dominguez was behaving erratically at the time he was

18   shot, but not actively reaching for a weapon, nor making any other furtive movement or harrowing

19   gesture.  Therefore, it was clearly established that Officer Pina could not use lethal force against

20   Mr. Dominguez.  *See Peck*, 51 F.4th at 887-88 (citing *Harris*, 126 F.3d at 1204; *Lopez*, 871 F.3d

21   at 1011-12; *George*, 736 F.3d at 838; *Curnow*, 952 F.2d at 325).  Officer Pina is not entitled to

22   qualified immunity.

23   **V.     DEFENDANTS' MOTION FOR A NEW TRIAL OR REMITTITUR**

24          **A.     Legal Standard**

25          As stated above, under Federal Rule of Civil Procedure 59, a court "may, on motion, grant

26   a new trial on all or some of the issues."  Fed. R. Civ. P. 59(a).  A court may grant a new trial "if

27   the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious

28   evidence, or to prevent a miscarriage of justice."  *Molski*, 481 F.3d at 729 (quoting *Passantino*,

212 F.3d at 510 n.15).  A judge should only grant a new trial if she "is left with the definite and firm conviction that a mistake has been committed." *Landes*, 833 F.2d at 1371-72 (citation omitted).  The court is not required to view the trial evidence in the light most favorable to the verdict when it considers a Rule 59(a) motion. *Experience Hendrix*, 762 F.3d at 842.  Instead, "the district court can weigh the evidence and assess the credibility of the witnesses." *Id.* (citing *Kode*, 596 F.3d at 612).  "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Id.* (citing *Murphy*, 914 F.2d at 187).

### B.    Analysis

Defendants also bring a motion for a new trial or, in the alternative, remittitur, on the basis that the damages award was excessive.  DPTM at 18-21.  The Ninth Circuit has recognized that, under Rule 59(a), a motion for a new trial can be granted on the basis of excessive damages. *See Molski*, 481 F.3d at 729 ("Historically recognized grounds [for granting a Rule 59 motion] include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940))).  When a court, "after viewing the evidence concerning damages in a light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives": (1) it may grant a motion for a new trial or (2) it may deny the motion conditional on the prevailing party accepting a remittitur. *Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983).

The jury awarded Plaintiff the estate of Jacob Dominguez one million dollars for pre-death pain and suffering.  ECF No. 188.  The jury was instructed that the amount was for the "pain and suffering Jacob Dominguez experienced before he died."  ECF No. 170 at 32.  Defendants argue that the amount is excessive "because there was no evidence before the jury that Mr. Dominguez survived for any period of time or experienced any pain after being shot."  DPTM at 19.  Defendants point the Court to two cases.  In *Willis v. City of Fresno*, the district court conducted a small survey of other cases computing damages for pre-death pain and suffering.  No. 1:09-CV-01766-BAM, 2017 WL 5713374, at *7 (E.D. Cal. Nov. 28, 2017).  The court there ultimately granted an award of $25,000 for the decedent's pre-death pain and suffering. *Id.* at *8.  The

United States District Court
Northern District of California

1  evidence established that the decedent had survived for about 15-30 seconds after the final

2  gunshots.  *Id.* at *4.  In *Estate of Casillas v. City of Fresno*, the district court upheld an award of

3  $250,000 for pain and suffering, determining that it was not against the weight of the evidence.

4  No. 1:16-CV-1042 AWI-SAB, 2019 U.S. Dist. LEXIS 111722, at *53 (E.D. Cal. July 2, 2019).

5  The court considered the fact that the decedent struggled for at least ten minutes after he was shot,

6  and that he died at the hospital six hours after the incident.  *Id.*

7  　　　The Court declines to find that the jury's verdict was against the weight of the evidence.

8  The evidence at trial established that after Mr. Dominguez was shot, the officers sent a police dog

9  into the car with Mr. Dominguez.  *See* Vol. II at 239:10-20.  Officer Ferguson testified that even

10  after Mr. Dominguez was shot, "whether or not he was still alive was in question."  *Id.* at 239: 20.

11  It was not confirmed that Mr. Dominguez was dead until after the dog had "finished his task."  *Id.*

12  at 239:14-16.  The jury heard testimony that that dog would have "interacted . . . aggressively"

13  with Mr. Dominguez.  Vol. III at 544:3-7.  The dog was in the car with Mr. Dominguez for

14  approximately 47 seconds.  Vol. II at 373:20-374:14.

15  　　　In their brief, Defendants identify the damages awards from other cases, combined with the

16  amount of time that the decedents in those cases survived.  DPTM at 20.  But "pain and suffering

17  damages cannot be supported entirely by rational analysis."  *Willis*, 2017 WL 5713374, at *8.

18  They are "inherently subjective, involving experience and emotions, as well as calculation."  *Id.*

19  The Court finds that the damages award is not excessive in light of the evidence.  The jury heard

20  evidence that supported the conclusion that Mr. Dominguez survived after being shot and was then

21  mauled to death by a police K9.  And the circumstances of this case, as with all cases, are unique.

22  For example, neither of the cases cited by Defendants involved a situation where the decedent was

23  being attacked by a police dog after being shot.  The Court determines that the damages award was

24  not excessive.

25  **VI.   ORDER**

26  　　　For the foregoing reasons, IT IS HEREBY ORDERED THAT:

27  　　　1.　　Plaintiffs' motion for a new trial is DENIED;

28  　　　2.　　Plaintiffs' attorneys' fees motion is GRANTED IN PART and DENIED IN PART;

3.    Defendants' motion for judgment as a matter of law is DENIED; and

4.    Defendants' motion for new trial or remittitur is DENIED.


Dated:  March 29, 2023

_____
BETH LABSON FREEMAN
United States District Judge